- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

### Count VII – Negligent Misrepresentation
### (Defendant S&P)

369.    For this claim against S&P, Pittsburgh FHLB incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

370.    Pittsburgh FHLB alleges negligent misrepresentation against S&P regarding AC5, EAC1, KAB7, MAA7, and QAJ6.

371.    S&P assigned materially false and misleading credit ratings to the Certificates.

372.    This false and misleading information was communicated to, and relied on by, Pittsburgh FHLB.

373.    S&P made materially false and misleading misrepresentations and omissions concerning the meaning of its ratings and what they purported to measure, which were communicated to Pittsburgh FHLB, as alleged with particularity in paragraphs 170-72, 203-20.

374.    S&P made false and misleading representations in the course of its business as raters of Certificates and had a pecuniary interest therein.

375.    S&P had an incentive to ensure that the investments offered in the Certificates received AAA ratings in that S&P received higher compensation for rating structured investment products and if the bonds had not been rated AAA, S&P would not have been paid.

376.    S&P held special expertise in its ability to rate the Certificate and had a duty to conduct a reasonable investigation of the truthfulness of its representations regarding the credit ratings assigned to the Certificates.

81040543. 1

377.   It was foreseeable to S&P that Pittsburgh FHLB, one of the investors, would rely on the information concerning the credit quality of the Certificates and the ratings assigned by S&P as the ratings were distributed to a limited audience of institutional investors for the purpose of demonstrating a likelihood of default and/or loss.

378.   The credit ratings were solicited and paid for by Countrywide so that Countrywide could offer the Certificates for investment to Pittsburgh FHLB.

379.   The ratings were not offered gratuitously or as a report for a general interest publication.

380.   The ratings on the bonds were not a matter of public interest or concern.

381.   S&P understood that the potential investors who would rely on the ratings were a limited number of institutional investors with specific requirements that restricted them from investing in anything but AAA-rated bonds.

382.   S&P knew at all times that Pittsburgh FHLB to whom the false and misleading credit ratings and underwriting standards were communicated, would and did rely on its misrepresentations and omissions, as alleged with particularity above.

383.   Pittsburgh FHLB justifiably relied on S&P's materially misleading statements and omissions, as pled with particularity above.

384.   Pittsburgh FHLB suffered injury by acting in justifiable reliance on the misrepresentations and omissions of S&P in an amount to be proved at trial.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB against S&P for all damages sustained as a result of S&P's wrongdoing, in an amount to be proven at trial, including interest thereon;

- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

### Count VIII – Negligent Misrepresentation
### (Defendant Fitch)

385.   For this claim against Fitch, Pittsburgh FHLB incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

386.   Pittsburgh FHLB alleges negligent misrepresentation against Fitch regarding AC5, EAC1, KAB7, and MAA7.

387.   Fitch assigned materially false and misleading credit ratings to the Certificates.

388.   This false and misleading information was communicated to, and relied on by, Pittsburgh FHLB.

389.   Fitch made materially false and misleading misrepresentations and omissions concerning the meaning of its ratings and what they purported to measure, which were communicated to Pittsburgh FHLB, as alleged with particularity in paragraphs 170-72, 203-21.

390.   Fitch made false and misleading representations in the course of its business as raters of Certificates and had a pecuniary interest therein.

391.   Fitch had an incentive to ensure that the investments offered in the Certificates received AAA ratings in that Fitch received higher compensation for rating structured investment products and if the bonds had not been rated AAA, Fitch would not have been paid.

392.   Fitch held special expertise in its ability to rate the Certificate and had a duty to conduct a reasonable investigation of the truthfulness of its representations regarding the credit ratings assigned to the Certificates.

81040543. 1

393.   It was foreseeable to Fitch that Pittsburgh FHLB, one of the investors, would rely on the information concerning the credit quality of the Certificates and the ratings assigned by Fitch as the ratings were distributed to a limited audience of institutional investors for the purpose of demonstrating a likelihood of default and/or loss.

394.   The credit ratings were solicited and paid for by Countrywide so that Countrywide could offer the Certificates for investment to Pittsburgh FHLB.

395.   The ratings were not offered gratuitously or as a report for a general interest publication.

396.   The ratings on the bonds were not a matter of public interest or concern.

397.   Fitch understood that the potential investors who would rely on the ratings were a limited number of institutional investors with specific requirements that restricted them from investing in anything but AAA-rated bonds.

398.   Fitch knew at all times that Pittsburgh FHLB to whom the false and misleading credit ratings and underwriting standards were communicated, would and did rely on their misrepresentations and omissions, as alleged with particularity above.

399.   Pittsburgh FHLB justifiably relied on Fitch's materially misleading statements and omissions, as pled with particularity above.

400.   Pittsburgh FHLB suffered injury by acting in justifiable reliance on the misrepresentations and omissions of Fitch in an amount to be proved at trial.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB against Fitch for all damages sustained as a result of Fitch's wrongdoing, in an amount to be proven at trial, including interest thereon;

81040543. 1

- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

### Count IX – Violation of the Pennsylvania Securities Act of 1972
### (Defendants Countrywide)

401.    For this claim against Defendants Countrywide, Pittsburgh FHLB incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

402.    Pittsburgh FHLB brings this count pursuant to the Pennsylvania Securities Act of 1972, 70 P.S. §1-501, against Countrywide regarding AC5, EAC1, KAB7, MAA7, and QAJ6.

403.    Countrywide misrepresented the underwriting standards that were used in making the loans that were in the mortgage loan pools and misrepresented the credit quality of AAA-rated bonds issued from each Trust purchased by Pittsburgh FHLB, as pled with particularity in paragraphs 136-72, 222-43.

404.    Countrywide and the Rating Agencies worked together to structure the tranches and assign them credit ratings. Countrywide obtained the ratings for the Certificates from the Rating Agencies and then provided the misleading AAA credit ratings to Pittsburgh FHLB, with the Rating Agencies' knowledge, participation, and approval, as pled with particularity above.

405.    By providing ratings, Countrywide was representing that it had sufficient facts to provide those ratings. To the extent that Countrywide may claim the ratings are opinions, the ratings were nonetheless fraudulent because Countrywide did not genuinely and reasonably believe them and they were without basis in fact.

406.    Countrywide had the motive and opportunity to commit fraud, as pled with particularity in paragraphs 273-79.

407.   Countrywide offered and sold the Certificates by means of the Offering Documents, which included the registration statement, prospectus, supplemental prospectus, and oral communication.  The Offering Documents each contained untrue statements of material facts.  The Offering Documents also omitted to state material facts required to be stated therein, or omitted to state material facts necessary to make the statements, in the light of the circumstances under which they were made, not misleading, as pled with particularity above.

408.   Countrywide knew or, in the exercise of reasonable care, should have known of the material misstatements and omissions contained in the Offering Documents, as pled with particularity in paragraphs 136-72, 222-43.

409.   Countrywide made the materially misleading statements and omissions with the intent that Pittsburgh FHLB rely on the statements and for the purpose of inducing Pittsburgh FHLB to buy and retain the Certificates.

410.   Countrywide made the material misrepresentations and/or omissions of material fact in connection with the sale of the securities AC5, EAC1, KAB7, MAA7, and QAJ6.

411.   Pittsburgh FHLB justifiably relied on Countrywide's materially misleading statements and omissions in the Offering Documents, as pled with particularity above.

412.   All losses sustained by Pittsburgh FHLB associated with the securities at issue resulted from Pittsburgh FHLB's reliance on Countrywide's material misrepresentations and omissions, in an amount to be proved at trial.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB against Countrywide, jointly and severally, for all damages sustained as a result of

81040543. 1

Countrywide's wrongdoing, in an amount to be proven at trial, including interest thereon;

- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

### Count  X – Violation of § 11
### (Defendants Countrywide)

413.    For this claim against Defendants Countrywide, Pittsburgh FHLB incorporates by reference all preceding paragraphs as if fully set forth herein except that for the purposes of this count, Pittsburgh FHLB expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this cause of action is based solely on claims of strict liability and/or negligence under the 1933 Act.

414.    Pittsburgh FHLB brings this count pursuant to section 11 of the 1933 Act, 15 U.S.C. § 77k, against Countrywide regarding AC5, EAC1, KAB7, MAA7, and QAJ6.

415.    Pittsburgh FHLB purchased the securities from the Defendants, as displayed in the chart in paragraph 64, pursuant to the Offering Documents, which included the registration statement, prospectus, and supplemental prospectus, and the ratings from the Rating Agencies.

416.    Countrywide purchased the Certificates from the issuing Trust with an intent to distribute them, or to offer or sell the Certificates in connection with the distribution.

417.    The Offering Documents and ratings, and corresponding oral and written representations, contained untrue statements of material facts.  The Offering Documents and ratings also omitted to state material facts required to be stated therein, or omitted to state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.

81040543. 1

418.    Countrywide had a duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained in the Offering Documents not misleading.

419.    Countrywide should have known, in the exercise of reasonable care, of the material misstatements and omissions contained in the Offering Documents.

420.    Countrywide did not have a reasonable basis for believing, and failed to make a reasonable investigation to ensure, that statements contained in the Offering Documents were true and that there were no omissions of material facts necessary to make the statements contained therein not misleading.

421.    When Pittsburgh FHLB purchased the Certificates, it did not know that the Defendants' statements were untrue and did not know that Defendants' statements contained material omissions.  In the exercise of reasonable care, Pittsburgh FHLB could not have known that the statements were untrue and/or omitted material facts at the time it purchased the Certificates.

422.    Pittsburgh FHLB was without knowledge of the facts concerning the wrongful conduct alleged herein and could not reasonably have discovered the facts more than one year before the commencement of this action.  Less than three years have elapsed between the time the securities upon which this count is based were offered to the public and the time Pittsburgh FHLB filed this complaint, or the time other plaintiffs proceeding as class representatives, filed complaints regarding the same Certificates.

81040543. 1

423.    All losses sustained by Pittsburgh FHLB associated with the securities at issue resulted from Countrywide's untrue statements and/or omissions of material facts in the Offering Documents, in an amount to be proved at trial.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB against Countrywide jointly and severally, for all damages sustained as a result of Countrywide's wrongdoing, in an amount to be proven at trial, including interest thereon;

- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

### Count XI – Violation of § 11
### (Defendants Moody's)

424.    For this claim against Defendants Moody's, Pittsburgh FHLB incorporates by reference all preceding paragraphs as if fully set forth herein except that for the purposes of this count, Pittsburgh FHLB expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this cause of action is based solely on claims of strict liability and/or negligence under the 1933 Act.

425.    Pittsburgh FHLB brings this count pursuant to section 11 of the 1933 Act, 15 U.S.C. § 77k, against Moody's regarding EAC1, KAB7, MAA7, and QAJ6.

426.    Pittsburgh FHLB purchased the securities from the Defendants, as displayed in the chart in paragraph 64, pursuant to the Offering Documents, which included the registration statement, prospectus, and supplemental prospectus.

427.   Countrywide purchased the Certificates from the issuing Trust with an intent to distribute them, or to offer or sell the Certificates in connection with the distribution.

428.   The Rating Agencies, including Moody's, also acted as underwriters in the sale of the Certificates.  The Rating Agencies participated in the distribution of the Certificates, participated in the structuring of the MBS, participated in establishing the necessary level of credit enhancements required for a Certificate's particular credit rating, and participated in the preparation of the Offering Documents.  The Rating Agencies were necessary to the distribution of the Certificates.

429.   The Offering Documents, and corresponding oral and written representations, contained untrue statements of material facts regarding the loan underwriting standards and what the ratings purported to measure.  The Offering Documents also omitted to state material facts required to be stated therein, or omitted to state material facts necessary in order to make these statements, in the light of the circumstances under which they were made, not misleading.

430.   For the purposes of this Count, Pittsburgh FHLB does not seek to hold Moody's liable for the false AAA ratings assigned to the Certificates.

431.   Moody's had a duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained in the Offering Documents not misleading.

432.   Moody's should have known, in the exercise of reasonable care, of the material misstatements and omissions contained in the Offering Documents regarding the loan underwriting standards and what the ratings purported to measure.

81040543. 1

433.   Moody's did not have a reasonable basis for believing, and failed to make a reasonable investigation to ensure, that these statements contained in the Offering Documents were true and that there were no omissions of material facts necessary to make the statements contained therein not misleading.

434.   When Pittsburgh FHLB purchased the Certificates, it did not know that the Offering Documents' statements were untrue and did not know that the Offering Documents contained material omissions.  In the exercise of reasonable care, Pittsburgh FHLB could not have known that the statements were untrue and/or omitted material facts at the time it purchased the Certificates.

435.   Pittsburgh FHLB was without knowledge of the facts concerning the wrongful conduct alleged herein and could not reasonably have discovered the facts more than one year before the commencement of this action.  Less than three years have elapsed between the time the securities upon which this count is based were offered to the public and the time Pittsburgh FHLB filed this complaint, or the time other plaintiffs proceeding as class representatives, filed complaints regarding the same Certificates.

436.   All losses sustained by Pittsburgh FHLB associated with the securities at issue resulted from the untrue statements and/or omissions of material facts in the Offering Documents, in an amount to be proved at trial.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB against Moody's for all damages sustained as a result of Moody's' wrongdoing, in an amount to be proven at trial, including interest thereon;

- Awarding rescission or a rescissory measure of damages; and

81040543. 1

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

## Count XII – Violation of § 11
### (Defendant S&P)

437.   For this claim against Defendants S&P, Pittsburgh FHLB incorporates by reference all preceding paragraphs as if fully set forth herein except that for the purposes of this count, Pittsburgh FHLB expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this cause of action is based solely on claims of strict liability and/or negligence under the 1933 Act.

438.   Pittsburgh FHLB brings this count pursuant to section 11 of the 1933 Act, 15 U.S.C. § 77k, against S&P regarding AC5, EAC1, KAB7, MAA7, and QAJ6.

439.   Pittsburgh FHLB purchased the securities from the Defendants, as displayed in the chart in paragraph 64, pursuant to the Offering Documents, which included the registration statement, prospectus, and supplemental prospectus.

440.   Countrywide purchased the Certificates from the issuing Trust with an intent to distribute them, or to offer or sell the Certificates in connection with the distribution.

441.   The Rating Agencies, including S&P, also acted as underwriters in the sale of the Certificates. The Rating Agencies participated in the distribution of the Certificates, participated in the structuring of the MBS, participated in establishing the necessary level of credit enhancements required for a Certificate's particular credit rating, and participated in the preparation of the Offering Documents. The Rating Agencies were necessary to the distribution of the Certificates.

442.   The Offering Documents, and corresponding oral and written representations, contained untrue statements of material facts regarding the loan underwriting standards and what

62

the ratings purported to measure. The Offering Documents also omitted to state material facts required to be stated therein, or omitted to state material facts necessary in order to make these statements, in the light of the circumstances under which they were made, not misleading.

443.    For the purposes of this Count, Pittsburgh FHLB does not seek to hold S&P liable for the false AAA ratings assigned to the Certificates.

444.    S&P had a duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained in the Offering Documents not misleading.

445.    S&P should have known, in the exercise of reasonable care, of the material misstatements and omissions contained in the Offering Documents regarding the loan underwriting standards and what the ratings purported to measure.

446.    S&P did not have a reasonable basis for believing, and failed to make a reasonable investigation to ensure, that these statements contained in the Offering Documents were true and that there were no omissions of material facts necessary to make the statements contained therein not misleading.

447.    When Pittsburgh FHLB purchased the Certificates, it did not know that the Offering Documents' statements were untrue and did not know that the Offering Documents contained material omissions. In the exercise of reasonable care, Pittsburgh FHLB could not have known that the statements were untrue and/or omitted material facts at the time it purchased the Certificates.

448.    Pittsburgh FHLB was without knowledge of the facts concerning the wrongful conduct alleged herein and could not reasonably have discovered the facts more than one year

before the commencement of this action. Less than three years have elapsed between the time

the securities upon which this count is based were offered to the public and the time Pittsburgh

FHLB filed this complaint, or the time other plaintiffs proceeding as class representatives, filed

complaints regarding the same Certificates.

449.    All losses sustained by Pittsburgh FHLB associated with the securities at issue

resulted from the untrue statements and/or omissions of material facts in the Offering

Documents, in an amount to be proved at trial.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB

   against S&P for all damages sustained as a result of S&P's wrongdoing, in an amount

   to be proven at trial, including interest thereon;

- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate

   by the Court, plus attorneys' fees and costs of suit.

### Count  XIII – Violation of § 11
### (Defendant Fitch)

450.    For this claim against Defendant Fitch, Pittsburgh FHLB incorporates by

reference all preceding paragraphs as if fully set forth herein except that for the purposes of this

count, Pittsburgh FHLB expressly excludes and disclaims any allegation that could be construed

as alleging fraud or intentional or reckless misconduct, as this cause of action is based solely on

claims of strict liability and/or negligence under the 1933 Act.

451.    Pittsburgh FHLB brings this count pursuant to section 11 of the 1933 Act, 15

U.S.C. § 77k, against Fitch regarding AC5, EAC1, KAB7, and MAA7.

452.   Pittsburgh FHLB purchased the securities from the Defendants, as displayed in the chart in paragraph 64, pursuant to the Offering Documents, which included the registration statement, prospectus, and supplemental prospectus.

453.   Countrywide purchased the Certificates from the issuing Trust with an intent to distribute them, or to offer or sell the Certificates in connection with the distribution.

454.   The Rating Agencies, including Fitch, also acted as underwriters in the sale of the Certificates. The Rating Agencies participated in the distribution of the Certificates, participated in the structuring of the MBS, participated in establishing the necessary level of credit enhancements required for a Certificate's particular credit rating, and participated in the preparation of the Offering Documents. The Rating Agencies were necessary to the distribution of the Certificates.

455.   The Offering Documents and ratings, and corresponding oral and written representations, contained untrue statements of material facts regarding the loan underwriting standards and what the ratings purported to measure. The Offering Documents also omitted to state material facts required to be stated therein, or omitted to state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.

456.   For the purposes of this Count, Pittsburgh FHLB does not seek to hold Fitch liable for the false AAA ratings assigned to the Certificates.

457.   Fitch had a duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained in the Offering Documents not misleading.

81040543. 1

458.   Fitch should have known, in the exercise of reasonable care, of the material misstatements and omissions contained in the Offering Documents regarding the loan underwriting standards and what the ratings purported to measure.

459.   Fitch did not have a reasonable basis for believing, and failed to make a reasonable investigation to ensure, that these statements contained in the Offering Documents were true and that there were no omissions of material facts necessary to make the statements contained therein not misleading.

460.   When Pittsburgh FHLB purchased the Certificates, it did not know that the Offering Documents' statements were untrue and did not know that the Offering Documents statements contained material omissions.   In the exercise of reasonable care, Pittsburgh FHLB could not have known that the statements were untrue and/or omitted material facts at the time it purchased the Certificates.

461.   Pittsburgh FHLB was without knowledge of the facts concerning the wrongful conduct alleged herein and could not reasonably have discovered the facts more than one year before the commencement of this action.   Less than three years have elapsed between the time the securities upon which this count is based were offered to the public and the time Pittsburgh FHLB filed this complaint, or between the time other plaintiffs proceeding as class representatives, filed complaints regarding the same Certificates.

462.   All losses sustained by Pittsburgh FHLB associated with the securities at issue resulted from the untrue statements and/or omissions of material facts in the Offering Documents, in an amount to be proved at trial.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

81040543. 1

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB against Fitch for all damages sustained as a result of Fitch's wrongdoing, in an amount to be proven at trial, including interest thereon;

- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

### Count XIV – Violation of § 12
### (Defendants Countrywide)

463.    For this claim against Defendants Countrywide, Pittsburgh FHLB incorporates by reference all preceding paragraphs as if fully set forth herein except that for the purposes of this count, Pittsburgh FHLB expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this cause of action is based solely on claims of strict liability and/or negligence under the 1933 Act.

464.    Pittsburgh FHLB brings this count pursuant to section 12 of the 1933 Act, 15 U.S.C. § 77l, against Countrywide regarding AC5, EAC1, KAB7, MAA7, and QAJ6.

465.    Countrywide offered and sold the Certificates by means of the Offering Documents, which included the registration statement, prospectus, supplemental prospectus, and oral communication.  As pled with particularity above, the Offering Documents contained untrue statements of material facts.  The Offering Documents also omitted to state material facts required to be stated therein, or omitted to state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.

466.    Countrywide used the mails or interstate commerce in the offer and sale of the Certificates.

467.    Countrywide had a duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained in the Offering Documents not misleading.

468.    Countrywide should have known, in the exercise of reasonable care, of the material misstatements and omissions contained in the Offering Documents.

469.    When Pittsburgh FHLB purchased the Certificates, Pittsburgh FHLB did not know that the Offering Documents' statements were untrue and did not know that the Offering Documents contained material omissions.  In the exercise of reasonable care, Pittsburgh FHLB could not have known that the statements were untrue and/or omitted material facts at the time Pittsburgh FHLB purchased the Certificates.

470.    Pittsburgh FHLB was without knowledge of the facts concerning the wrongful conduct alleged herein and could not reasonably have discovered the facts more than one year before the commencement of this action.  Less than three years have elapsed between the time the securities upon which this count is based were offered to the public and the time the Pittsburgh FHLB filed this complaint, or the time other investors preceding as class representatives, filed complaints regarding the same certificates.

471.    Pittsburgh FHLB purchased the securities from the Defendants, as displayed in the chart in paragraph 64.

472.    All losses sustained by Pittsburgh FHLB associated with the securities at issue resulted from Countrywide's untrue statements and/or omissions of material fact in the Offering Documents, in an amount to be proved at trial.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

81040543. 1

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB against Countrywide, jointly and severally, for all damages sustained as a result of Countrywide's wrongdoing, in an amount to be proven at trial, including interest thereon;

- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

### Count XV – Violation of § 15
### (Defendant CFC)

473.   For this claim against Defendant CFC, Pittsburgh FHLB incorporates by reference all preceding paragraphs as if fully set forth herein except that for the purposes of this count, Pittsburgh FHLB expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this cause of action is based solely on claims of strict liability and/or negligence under the 1933 Act.

474.   Pittsburgh FHLB brings this count pursuant to section 15 of the 1933 Act, 15 U.S.C. § 77o, against CFC regarding AC5, EAC1, KAB7, MAA7, and QAJ6.

475.   CFC, by virtue of its control, ownership, offices, directorship, and specific acts, was at the time of the wrongs alleged herein, a controlling person, within the meaning of Section 15 of the Securities Act, of Countrywide Securities, Countrywide Home Loans, CWALT, and CWMBS.

476.   CFC had the power to influence and exercised that power to control the general affairs and policies of Countrywide Securities, Countrywide Home Loans, CWALT, and CWMBS.

477.   Countrywide Securities, Countrywide Home Loans, CWALT, and CWMBS violated Sections 11 and 12 of the Securities Act.

478.   Pittsburgh FHLB was without knowledge of the facts concerning the wrongful conduct alleged herein and could not reasonably have discovered the facts more than one year before the commencement of this action.  Less than three years have elapsed between the time the securities upon which this count is based were offered to the public and the time the Pittsburgh FHLB filed this complaint, or the time other investors proceeding as class representatives, filed complaints regarding the same certificates.

479.   By virtue of the wrongful conduct alleged herein, CFC is liable to Pittsburgh FHLB.

WHEREFORE, Pittsburgh FHLB prays for relief and judgment as follows:

- Awarding compensatory damages in excess of $25,000 in favor of Pittsburgh FHLB against CFC, for all damages sustained as a result of CFC's wrongdoing, in an amount to be proven at trial, including interest thereon;

- Awarding rescission or a rescissory measure of damages; and

- Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court, plus attorneys' fees and costs of suit.

## JURY DEMAND

Pittsburgh FHLB hereby demands a trial by jury.

81040543. 1

Respectfully submitted,

LYNCH WEIS, LLC

Daniel P. Lynch
PA ID No. 68280
William J. Wyrick
PA ID No. 70656
501 Smith Drive, Suite 3
Cranberry Twp., PA 16066
(724) 776-8000 (Telephone)
(724) 776-8001 (Facsimile)
*Counsel for Plaintiff*

81040543. 1

## **VERIFICATION**

I, Kristina K. Williams, hereby verify that I am authorized to make this verification on behalf of Plaintiff, Federal Home Loan Bank of Pittsburgh, and that the statements contained in the foregoing Complaint are true and correct to the best of my knowledge, information or belief. I understand that false statements herein made are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date: October 13, 2009

Name: Kristina K. Williams
Title: Chief Financial Officer

| Exhibit | Description |
|---------|-------------|
| 1. | Registration Statement No. 333-131630 and Placeholder Prospectus |
| 2. | Amendment No. 1 to Registration Statement No. 333-131630 and Placeholder Prospectus |
| 3. | AC5 Prospectus Supplement |
| 4. | AC5 Asset Purchase |
| 5. | EAC1 Prospectus Supplement |
| 6. | EAC1 Asset Purchase |
| 7. | KAB7 Prospectus Supplement |
| 8. | KAB7 Asset Purchase |
| 9. | MAA7 Prospectus Supplement |
| 10. | MAA7 Asset Purchase |
| 11. | Registration Statement No. 333-140958 and Placeholder Prospectus |
| 12. | Amendment No. 1 to Registration Statement No. 333-140958 and Placeholder Prospectus |
| 13. | QAJ6 Prospectus Supplement |
| 14. | QAJ6 Asset Purchase |

# EXHIBIT 1

```
<DOCUMENT>
<TYPE>S-3
<SEQUENCE>1
<FILENAME>efc6-0448_emailforms3.txt
<TEXT>
```

  As filed with the Securities and Exchange Commission on February 7, 2006

Registration No. 333-

===============================================================================

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549
--------------------------

REGISTRATION STATEMENT
ON
FORM S-3
UNDER THE SECURITIES ACT OF 1933
--------------------------

CWALT, INC.
(Exact Name of Registrant as Specified in its Charter)

| Delaware | 87-0698307 |
|---|---|
| (State or other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification Number) |

4500 Park Granada
Calabasas, California 91302
(818) 225-3000
(Address, including zip code, and telephone number, including
area code, of registrant's principal executive offices)
--------------------------

SANDOR E. SAMUELS, ESQ.
Countrywide Home Loans, Inc.
4500 Park Granada
Calabasas, California 91302
(818) 225-3505
(Name, address, including zip code, and telephone number, including area code,
of agent for service)
--------------------------

With a copy to:
EDWARD J. FINE, ESQ.
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
--------------------------

  Approximate date of commencement of proposed sale to the public: From time to time on or after the effective date of the registration statement, as determined by market conditions.
--------------------------

  If the only securities being registered on this form are being offered pursuant to dividend or interest reinvestment plans, please check the following box. |_|

  If any of the securities being registered on this form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, please check the following box. |X|

  If this form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. |_| _____

  If this form is a post-effective amendment filed pursuant to Rule 462(c)

under the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. |_| _____

    If delivery of this Prospectus is expected to be made pursuant to Rule
434, please check the following box. |_|

    If this Form is a registration statement pursuant to General Instruction
I.D. or a post-effective amendment thereto that shall become effective upon
filing with the Commission pursuant to Rule 462(e) under the Securities Act,
check the following box. |_|

    If this Form is a post-effective amendment to a registration statement
filed pursuant to General Instruction I.D. filed to register additional
securities or additional classes of securities pursuant to Rule 413(b) under
the Securities Act, check the following box. |_|

---------------------------

CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities to Be Registered | Amount to Be Registered (1) | Proposed Maximum Offering Price Per Unit (2) | Proposed Maximum Aggregate Offering Price (2) |
|---|---|---|---|
| Mortgage Backed Securities...... | $1,000,000 | 100% | $1,000,000 |

(1)   This Registration Statement relates to the offering from time to time of
     $1,000,000 aggregate principal amount of Mortgage Backed Securities and
     to any resales of them in market making transactions by Countrywide
     Securities Corporation, an affiliate of the Registrant, to the extent
     required.
(2)   Estimated for the purpose of calculating the registration fee.

---------------------------

     The Registrant hereby amends this Registration Statement on such
date or dates as may be necessary to delay its effective date until the
Registrant shall file a further amendment which specifically states that this
Registration Statement shall thereafter become effective in accordance with
Section 8(a) of the Securities Act of 1933, or until the Registration
Statement shall become effective on such date as the commission, acting
pursuant to said Section 8(a), may determine.

===============================================================================

<PAGE>

The information in this prospectus supplement is not complete and may be
changed. We may not sell these securities until the registration statement
filed with the Securities and Exchange Commission is effective. This
prospectus supplement is not an offer to sell these securities and it is not
soliciting offers to buy these securities in any state where the offer or sale
is not permitted.

SUBJECT TO COMPLETION, DATED FEBRUARY 7, 2006


PROSPECTUS SUPPLEMENT
(To Prospectus dated [            ], 2006)

$
(Approximate)
CWALT, INC.
Depositor
[COUNTRYWIDE HOME LOANS, INC.]
Sponsor and Seller
[Countrywide Home Loans Servicing LP]
Master Servicer
Alternative Loan Trust 200[ ]-[ ]
Issuing Entity
Mortgage Pass-Through Certificates, Series 200[ ]-[ ]


Distributions are payable on the [ ]th day of each month,
beginning in [ ], 200[ ]
----------------


The issuing entity will issue certificates, including the following classes of
certificates being offered pursuant to this prospectus supplement and the
accompanying prospectus:

<TABLE>
<CAPTION>

| Class | Original Note Principal Balance(1) | Price to Public | Underwriting Discount | Proceeds to Depositor(2) | Class | Orig No Prin Bala |
|-------|------------------------------------|-----------------|------------------------|---------------------------|-------|-------------------|
| <S> | <C> | <C> | <C> | <C> | <C> | <C |
| [AF-1A] | $ | % | % | % | [BF] | $ |
| [AF-1B] | $ | % | % | % | [2-AV-1] | $ |
| [AF-2] | $ | % | % | % | [2-AV-2] | $ |
| [AF-3] | $ | % | % | % | [3-AV-1] | $ |
| [AF-4] | $ | % | % | % | [3-AV-2] | $ |
| [AF-5A] | $ | % | % | % | [3-AV-3] | $ |
| [AF-5B] | $ | % | % | % | [3-AV-4] | $ |
| [AF-6] | $ | % | % | % | [MV-1] | $ |
| [MF-1] | $ | % | % | % | [MV-2] | $ |
| [MF-2] | $ | % | % | % | [MV-3] | $ |
| [MF-3] | $ | % | % | % | [MV-4] | $ |
| [MF-4] | $ | % | % | % | [MV-5] | $ |
| [MF-5] | $ | % | % | % | [MV-6] | $ |

```
---------------------------------------------------------    ---------------
[MF-6]         $              %              %            %   [MV-7]       $
---------------------------------------------------------    ---------------
[MF-7]         $              %              %            %   [MV-8]       $
---------------------------------------------------------    ---------------
[MF-8]         $              %              %            %   [BV]         $
---------------------------------------------------------    ---------------
                                                             A-R          $
                                                             ---------------
```

</TABLE>

<TABLE>
<CAPTION>
```
-------------------------------       _____
<S>                                   <C>
```
Consider carefully the             (1)   This amount is subject to a permitted varia
risk factors beginning on                or minus [   ]%.
page S-[ ] in this                 (2)   Before deducting expenses payable by the De
prospectus supplement and                approximately $[              ] in the ag
on page 2 in the                   (3)   The [Class A-R] certificates will not be pu
prospectus.                              and are being transferred to [Countrywide H
                                         consideration for the sale of the mortgage
The certificates represent               Distribution" in this prospectus supplement
obligations of the issuing
entity only and do not             The classes of certificates offered by this pros
represent an interest in           listed, together with their interest rates, in t
or obligation of CWALT,            Description of the Certificates" on page S-[  ]
Inc., [Countrywide Home            supplement. This prospectus supplement and the a
Loans, Inc.] or any of             relate only to the offering of the certificates
their affiliates.                  other classes of certificates that will be issue

This prospectus supplement          The certificates represent interests in a pool o
may be used to offer and           rate] mortgage loans that are secured by [first]
sell the offered                   four-family residential properties, as described
certificates only if               supplement.
accompanied by the
prospectus.                         Credit Enhancement for the certificates may cons
                                           o    [Overcollateralization];
                                           o    [Subordination];
                                           o    [With respect to the adjustable rat
                                                interest rate corridor contracts];
                                           o    [With respect to the [Class AF-5B]
                                                Certificate guaranty insurance poli
                                    The credit enhancement for each class of certifi
                                    enhancement is available for every class. [Amoun
                                    rate corridor contracts are only available to ma
                                    [adjustable rate] certificates.] [The [Class AF-
                                    insurance policy only applies to the [Class

<PAGE>

                                    AF-5B] Certificates.] The credit enhancement for
                                    in more detail in the prospectus supplement.

</TABLE>
```

These securities have not been approved or disapproved by the Securities and
Exchange Commission or any state securities commission nor has the Securities
and Exchange Commission or any state securities commission passed upon the
accuracy or adequacy of this prospectus supplement or the prospectus. Any
representation to the contrary is a criminal offense.

[Underwriter]

                        [Underwriter]

                                                    [Underwriter]

[         ], 200[   ]

<PAGE>

<TABLE>
<CAPTION>

                                        Table of Contents

<S>                                    <C>            <C>
Prospectus Supplement                  Page              Rights Upon Eve
---------------------                  ----              Optional Termin
                                                         Certain Matters

Summary..........................................S-1               Servicer, th
Summary of Transaction Parties...................S-19              [and the NIM
Risk Factors.....................................S-20          The Trustee....
The Mortgage Pool................................S-29          [Co-Trustee]...
        General..................................S-29          Restrictions on
        The Statistical Calculation Pool.........S-32              Certificates
        Assignment of the Mortgage Loans.........S-48          Ownership of th
        [Pre-Funding]............................S-50          Restrictions on
        Underwriting Standards...................S-52              Requirements
Servicing of the Mortgage Loans..................S-57          [Rights of the
        General..................................S-57              Pooling and
        The Master Servicer......................S-58      Yield, Prepayment an
        [Countrywide Home Loans].................S-58          General........
        Loan Servicing...........................S-59          Prepayments and
        Collection Procedures....................S-60              Certificates
        Servicing Compensation and Payment                     Last Scheduled
            of Expenses..........................S-61          Prepayment Mode
        Adjustment to Servicing Fee in                         Decrement Table
            Connection With Certain                            Additional Info
            Prepaid Mortgage Loans...............S-62      Legal Proceedings...
        Advances.................................S-62      Material Federal Inc
The Issuing entity...............................S-63          Taxation of the
Static Pool Data.................................S-63              Components o
Description of the Certificates..................S-63          Taxation of the
        General..................................S-63              Components o
        Denominations............................S-65              Certificates
        Book-Entry Certificates..................S-65          Dispositions of
        Glossary of Terms........................S-66          Tax Treatment F
        Deposits to the Certificate Account......S-79          Integration....
        Withdrawals from the Certificate Account.S-80          The Carryover R
        Deposits to the Distribution Account.....S-81          Residual Certif
        Withdrawals from the Distribution Account.S-81     Other Taxes........
        Investments of Amounts Held in Accounts..S-82      ERISA Considerations
        Fees and Expenses........................S-84      Method of Distributi
        Distributions............................S-87      Use of Proceeds.....
        [Overcollateralization Provisions].......S-94      Legal Matters.......
        [The Corridor Contracts].................S-96      [Experts]..........
        [Calculation of One-Month LIBOR].........S-102     Ratings.............
        [Carryover Reserve Fund].................S-103     Index of Defined Ter
        [Credit Comeback Excess Account].........S-103
        [Applied Realized Loss Amounts]..........S-103
        [[Class AF-5B] Certificate Guaranty                ANNEX I.............
            Insurance Policy.....................S-104

```
       The [Class AF-5B] Insurer].................S-108
       Reports to Certificateholders.............S-108
       Amendment.................................S-110
       Voting Rights.............................S-110
       Optional Purchase of Defaulted Loans......S-110
       Events of Default.........................S-111
                                                              i
```

</TABLE>

<PAGE>

```
                                                    Page
                                                    ----
Prospectus
----------

Important Notice About Information in This
       Prospectus and Each Accompanying
       Prospectus Supplement.......................4

Risk Factors.....................................5

The Trust Fund..................................16

Use of Proceeds.................................22

The Depositor...................................22

Loan Program....................................22

Description of the Securities...................25

Credit Enhancement..............................41

Yield and Prepayment Considerations.............46

The Agreements..................................49

Certain Legal Aspects of the Loans..............63

Material Federal Income Tax Consequences........77

Other Tax Considerations........................98

ERISA Considerations............................99

Legal Investment...............................102

Method of Distribution.........................103

Legal Matters..................................104

Financial Information..........................104

Rating.........................................104

Index to Defined Terms.........................106
```

ii

<PAGE>

## SUMMARY

This summary highlights selected information from this document and does not contain all of the information that you need to consider when making your investment decision. To understand all of the terms of an offering of the certificates, read this entire document and the accompanying prospectus carefully.

While this summary contains an overview of certain calculations, cash flow priorities and other information to aid your understanding, you should read carefully the full description of these calculations, cash flow priorities and other information in this prospectus supplement and the accompanying prospectus before making any investment decision.

Issuing Entity

Alternative Loan Trust 200[ ]-[ ], a [common law] trust formed under the laws of the State of [New York].

Depositor

CWALT, Inc., a Delaware corporation and a limited purpose finance subsidiary of Countrywide Financial Corporation, a Delaware corporation.

See "The Depositor" in the prospectus.

Sponsor and Sellers

[Countrywide Home Loans, Inc.] will be the sponsor of the transaction [and a seller of the mortgage loans]. [Other sellers may include one or more special purpose entities established by Countrywide Financial Corporation or one of its subsidiaries, which acquired the mortgage loans they are selling directly from Countrywide Home Loans, Inc.]

See "Servicing of the Mortgage Loans -- Countrywide Home Loans" in this prospectus supplement.

Master Servicer

[Countrywide Home Loans Servicing LP.]

See "Servicing of the Mortgage Loans -- The Master Servicer" in this prospectus supplement.

Trustee

[Name of Trustee]

See "Description of the Certificates -- The Trustee" in this prospectus supplement.

[Co-Trustee

[Name of Co-Trustee]

See "Description of the Certificates -- The Co-Trustee" in this prospectus supplement.]

[The [Class AF-5B] Insurer

[Name of Insurer] will unconditionally and irrevocably guarantee certain payments on the [Class AF-5B] Certificates on each distribution date pursuant to the terms of a certificate guaranty insurance policy.

See "Description of the Certificates -- The [Class AF-5B] Certificate Guaranty Insurance Policy" and -- The [Class AF-5B] Insurer" in this prospectus supplement.]

[The NIM Insurer

After the closing date, a separate trust or trusts (or other form of entity) may be established to issue net interest margin securities secured by all or a portion of the [Class PF, Class PV, Class CF and Class CV] Certificates. Those net interest margin securities may have the benefit of one or more financial guaranty insurance policies that guaranty payments on those securities. The insurer or insurers issuing these financial guaranty insurance policies are referred to in this prospectus supplement as the "NIM Insurer." The references to the NIM Insurer in this prospectus supplement apply only if the net interest margin securities are so insured.

Any NIM Insurer will have a number of rights under the pooling and servicing agreement that will limit and otherwise affect the rights of the holders of the offered certificates. Any insurance policy issued by a NIM Insurer will not cover, and will not benefit in any manner whatsoever, the offered certificates.

See "Risk Factors--Rights of the NIM Insurer" in this prospectus supplement.]

Pooling and Servicing Agreement

The pooling and servicing agreement among the sellers, the master servicer, the depositor, the trustee [and the co-trustee], under which the issuing entity will be formed.

--------------------------------------------------------------------------------

S-1

<PAGE>

--------------------------------------------------------------------------------

Cut-off Date

Initial Mortgage Loans:

The later of [ ], 200[ ] and the origination date of that mortgage loan (referred to as the initial cut-off date).

Subsequent Mortgage Loans:

The later of the first day of the month of the related subsequent transfer date and the origination date of that subsequent mortgage loan (referred to as the subsequent cut-off date).

Closing Date

On or about [                         ], 200[  ].

[Pre-Funding

On the closing date, the depositor may elect to deposit an amount of up to 25% of the initial certificate principal balance of the offered certificates in a pre-funding account (referred to as the pre-funded amount).

Pre-Funded Amount:

Any pre-funded amount shall not exceed 25% of the initial certificate principal balance of the offered certificates, which will be allocated among the loan groups so that the amount allocated to any loan group will not exceed 25% of the certificate principal balance of the classes of certificates related to that loan group.

Funding Period:

If the depositor elects to deposit a pre-funded amount on the closing date, the funding period will begin on the closing date and end on the earlier of (x) the date the amount in the pre-funding account is less than $[ ] and (y) [ ], 200[ ].

Use of Pre-Funded Amount:

If the depositor elects to deposit a pre-funded amount on the closing date, the pre-funded amount is expected to be used to purchase subsequent mortgage loans. Any pre-funded amount not used during the funding period to purchase subsequent mortgage loans will be distributed to holders of the related senior certificates as a prepayment of principal on the distribution date immediately following the end of the funding period.

Restrictions on Subsequent Mortgage Loan Purchases:

Purchases of subsequent mortgage loans are subject to the same criteria as the initial mortgage loans and additional restrictions related to the composition of the related loan group following the acquisition of the subsequent mortgage loans, as described in this prospectus supplement.

Interest Shortfall Payments:

To the extent needed to make required interest payments on the offered certificates and to pay the [Class AF-5B] Insurer the [Class AF-5B] policy premium on or prior to the [ ] 200[ ] distribution date, [Countrywide Home Loans, Inc.] will make interest shortfall payments to the issuing entity to offset shortfalls in interest collections attributable to the pre-funding mechanism or because newly originated loans do not have a payment due date in the due period related to the subject distribution date.

See "The Mortgage Pool -- Pre-Funding" in this prospectus supplement.]

The Mortgage Loans

The mortgage pool will consist of [fixed and adjustable rate] mortgage loans

that are secured by [first] liens on one- to four-family properties. The
mortgage loans will be divided into [three] separate groups. Each group of
mortgage loans is referred to as a "loan group." Loan group [1] will consist
of [first lien] [fixed] rate mortgage loans. Loan group [2] and loan group [3]
will consist of [first lien] [adjustable] rate mortgage loans.

See "The Mortgage Pool" in this prospectus supplement.

[Statistical Calculation Information]

The statistical information presented in this prospectus supplement relates to
a statistical calculation pool that does not reflect all of the mortgage loans
that will be included in the issuing entity. Additional mortgage loans will be
included in the mortgage pool on the closing date and may be included during
the funding period. In addition, certain mortgage loans in the statistical
calculation pool may not be included in the mortgage pool on the closing date
because they have prepaid in full or were determined not to meet the
eligibility requirements for the mortgage pool.


--------------------------------------------------------------------------------

                                    S-2


<PAGE>

--------------------------------------------------------------------------------

The information with respect to the statistical calculation pool is, unless
otherwise specified, based on the scheduled principal balances as of [ ], 200[
], which is the statistical calculation date. The aggregate stated principal
balance of the statistical calculation pool as of the statistical calculation
date is referred to as the statistical calculation date pool principal
balance. As of the statistical calculation date, the statistical calculation
date pool principal balance was approximately $[ ], approximately $[ ] of
which consisted of group [1] mortgage loans, approximately $[ ] of which
consisted of group [2] mortgage loans and approximately $[ ] of which
consisted of group [3] mortgage loans.

Unless otherwise noted, all statistical percentages are measured by the
statistical calculation date pool principal balance.

As of the statistical calculation date, the group [1] mortgage loans in the
statistical calculation pool had the following characteristics:

| | | |
|---|---|---|
| Aggregate Current Principal Balance | $[ | ] |
| Weighted Average Mortgage Rate | [ | ]% |
| Range of Mortgage Rates | [ | ]% to |
| | [ | ]% |
| Average Current Principal Balance | $[ | ] |
| Range of Outstanding Principal Balances | $[ | ] to |
| | $[ | ] |
| Weighted Average Original LTV | [ | ]% |
| Weighted Average Original Term to Maturity | [ | ] months |
| Weighted Average Credit Risk Score | [ | ] |

```
Weighted Average Remaining Term to
   Stated Maturity                      [          ] months
Geographic Concentrations in excess
   of 10%:
   [      ]                                    [         ]%
   [      ]                                    [         ]%
```

As of the statistical calculation date, the group [2] mortgage loans in the
statistical calculation pool had the following characteristics:

```
Aggregate Current Principal Balance   $[          ]
Weighted Average Gross Margin          [          ]%
Range of Gross Margins                 [          ]% to
                                       [          ]%
Average Current Principal Balance     $[          ]
Range of Outstanding Principal
   Balances                           $[          ] to
                                      $[          ]
Weighted Average Original LTV          [          ]%
Weighted Average Original Term to
   Maturity                            [          ] months
Weighted Average Credit Risk Score
                                       [          ]
Weighted Average Remaining Term to
   Stated Maturity                     [          ] months
Geographic Concentrations in excess
   of 10%:
   [      ]                                    [         ]%
   [      ]                                    [         ]%
```

As of the statistical calculation date, the group [3] mortgage loans in the
statistical calculation pool had the following characteristics:

```
Aggregate Current Principal Balance   $[          ]
Weighted Average Gross Margin          [          ]%
Range of Gross Margins                 [          ]% to
                                       [          ]%
Average Current Principal Balance     $[          ]
Range of Outstanding Principal
   Balances                           $[          ] to
                                      $[          ]
Weighted Average Original LTV          [          ]%
Weighted Average Original Term to
   Maturity                            [          ] months
Weighted Average Credit Risk Score
                                       [          ]
Weighted Average Remaining Term to
   Stated Maturity                     [          ] months
Geographic Concentrations in excess
   of 10%:
   [      ]                                    [         ]%
   [      ]                                    [         ]%
```

--------------------------------------------------------------------------------

<PAGE>

--------------------------------------------------------------------------------

Description of the Certificates

The issuing entity will issue [ ] classes of certificates, [ ] of which are
offered by this prospectus supplement and the accompanying prospectus:

<TABLE>
<CAPTION>

| Class | Initial Certificate Principal Balance (1) | Type | Final Schedul Distribution (2) |
|-------|----------------|-------|-------------|
| Offered Notes | | | |
| <S> | <C> | <C> | <C> |
| [AF-1A].................. | $ | [Senior/Adjustable Rate] | [          ] 2 |
| [AF-1B].................. | $ | [Senior/Fixed Rate] | [          ] 2 |
| [AF-2]................... | $ | [Senior/Fixed Rate] | [          ] 2 |
| [AF-3]................... | $ | [Senior/Fixed Rate] | [          ] 2 |
| [AF-4]................... | $ | [Senior/Fixed Rate] | [          ] 2 |
| [AF-5A].................. | $ | [Senior/Fixed Rate] | [          ] 2 |
| [AF-5B].................. | $ | [Senior/Fixed Rate] | [          ] 2 |
| [AF-6]................... | $ | [Senior/Fixed Rate/Non-Accelerated Senior] | [          ] 2 |
| [MF-1]................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [MF-2]................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [MF-3]................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [MF-4]................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [MF-5]................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [MF-6]................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [MF-7]................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [MF-8]................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [BF]..................... | $ | [Subordinate/Fixed Rate] | [          ] 2 |
| [2-AV-1]................. | $ | [Senior/Adjustable Rate] | [          ] 2 |
| [2-AV-2]................. | $ | [Senior Support/Adjustable Rate] | [          ] 2 |
| [3-AV-1]................. | $ | [Senior/Adjustable Rate] | [          ] 2 |
| [3-AV-2]................. | $ | [Senior/Adjustable Rate] | [          ] 2 |
| [3-AV-3]................. | $ | [Senior/Adjustable Rate] | [          ] 2 |
| [3-AV-4]................. | $ | [Senior/Adjustable Rate] | [          ] 2 |
| [MV-1]................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [MV-2]................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [MV-3]................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [MV-4]................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [MV-5]................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [MV-6]................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [MV-7]................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [MV-8]................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [BV]..................... | $ | [Subordinate/Adjustable Rate] | [          ] 2 |
| [A-R].................... | $ | [Senior/REMIC Residual] | [          ] 2 |
| Non-Offered Certificates(5) | | | |
| [Class PF].............. | N/A | [Prepayment Charges] | N/A |
| [Class PV].............. | N/A | [Prepayment Charges] | N/A |
| [Class CF].............. | N/A | [Residual] | N/A |

```
     [Class CV]..............      N/A              [Residual]              N/A
</TABLE>
--------------
```

(1)   This amount is subject to a permitted variance in the aggregate of plus
      or minus [10]% depending on the amount of mortgage loans actually
      delivered on the closing date.

(2)   Each date was determined as described under "Yield, Prepayment and
      Maturity Considerations" in this prospectus supplement.

(3)   The offered certificates will not be offered unless they are assigned the
      indicated ratings by [Moody's Investors Service, Inc. ("Moody's")] and
      [Standard & Poor's Ratings Services, a division of The McGraw-Hill
      Companies, Inc. ("S&P")]. "N/R" indicates that the agency was not asked
      to rate the certificates. A rating is

--------------------------------------------------------------------------------

                                      S-4

<PAGE>

--------------------------------------------------------------------------------

      not a recommendation to buy, sell or hold securities. These ratings may
      be lowered or withdrawn at any time by either of the rating agencies.
      See "Ratings" in this prospectus supplement.

(4)   [The ratings assigned to the [Class AF-5B] Certificates will be issued
      without regard to the [Class AF-5B] policy.]

(5)   The [Class PF, Class PV, Class CF and Class CV] Certificates are not
      offered by this prospectus supplement. Any information contained in this
      prospectus supplement with respect to the [Class PF, Class PV, Class CF
      and Class CV] Certificates is provided only to permit a better
      understanding of the offered certificates.

The certificates will also have the following characteristics:

<TABLE>
<CAPTION>

| Class | [Related Loan Group (1)] | Interest Rate Before Optional Termination Date (2) | Interest Rate After Optional Termination Date (2) | Del |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Offered Certificates | | | | |
| [AF-1A]......... | [1] | [LIBOR] + [ ]% (3) | [LIBOR] + [ ]% (3) | [0] da |
```

```
[AF-1B].........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[AF-2]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[AF-3]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[AF-4]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[AF-5A].........  [1]          [ ]% (9)          [ ]% (9)          [24] da
[AF-5B].........  [1]          [ ]% (9)          [ ]% (9)          [24] da
[AF-6]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[MF-1]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[MF-2]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[MF-3]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[MF-4]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[MF-5]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[MF-6]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[MF-7]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[MF-8]..........  [1]          [ ]% (6)          [ ]% (6)          [24] da
[BF]............  [1]          [ ]% (6)          [ ]% (6)          [24] da
[2-AV-1]........  [2]          [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[2-AV-2]........  [2]          [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[3-AV-1]........  [3]          [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[3-AV-2]........  [3]          [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[3-AV-3]........  [3]          [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[3-AV-4]........  [3]          [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[MV-1]..........  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[MV-2]..........  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[MV-3]..........  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[MV-4]..........  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[MV-5]..........  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[MV-6]..........  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[MV-7]..........  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[MV-8]..........  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[BV]............  [2 and 3]    [LIBOR] + [ ]% (10)  [LIBOR] + [ ]% (10)  [0] da
[A-R]...........  [1,2 and 3]       (11)              (11)

Non-Offered
Certificates
[Class PF]....    [1]          N/A               N/A
[Class PV]....  [2 and 3]      N/A               N/A
[Class CF]....    [1]          N/A               N/A
[Class CV]....  [2 and 3]      N/A               N/A
-------------
</TABLE>
```

(1)   Generally, distributions of principal and interest on the certificates
      will be based on amounts available for distribution in respect of the
      mortgage loans in the related loan group or groups, however, in some
      circumstances amounts from an unrelated loan group or groups may be
      allocated to make payments on a class of certificates. For a more
      detailed description of how the offered certificates will be backed by
      these

--------------------------------------------------------------------------------

S-5

<PAGE>

--------------------------------------------------------------------------------

cashflows, see "Description of the Certificates -- Distributions" and
"-- Overcollateralization Provisions" in this prospectus supplement.

(2)  If on any distribution date, the pass-through rate for a class of offered
certificates (other than the [Class A-R] Certificates) is based on the
applicable interest rate cap, each holder of the applicable certificates
will be entitled to receive the resulting shortfall from remaining excess
cashflow (if any) to the extent described in this prospectus supplement
under "Description of the Certificates -- Overcollateralization
Provisions", [and in the case of the [adjustable rate certificates] only,
from payments allocated to the issuing entity (if any) in respect of the
related interest rate corridor contract as described in this prospectus
supplement under "Description of the Certificates -- Distributions --
Distributions of Funds from the Corridor Contracts."]

(3)  The pass-through rate for the [Class AF-1A] Certificates may adjust
monthly and will be subject to an interest rate cap, as described in this
prospectus supplement under "Description of the Certificates --
Distributions -- Distributions of Interest." LIBOR refers to [One-Month]
LIBOR for the related interest accrual period calculated as described in
this prospectus supplement under "Description of the Certificates --
Calculation of One-Month LIBOR."

(4)  [The interest accrual period for any distribution date will be the
one-month period from and including the preceding distribution date (or
from and including the closing date, in the case of the first
distribution date) to and including the day prior to the current
distribution date.]

(5)  [Interest accrues at the rate specified in this table based on a 360-day
year and the actual number of days elapsed during the related accrual
period.]

(6)  [The pass-through rates for the [Class AF-1B], [Class AF-2], [Class
AF-3], [Class AF-4] and [Class AF-6] Certificates and the [fixed rate
subordinate certificates] will be subject to an interest rate cap, as
described in this prospectus supplement under "Description of the
Certificates -- Distributions -- Distributions of Interest."]

(7)  [The interest accrual period for any distribution date will be the
calendar month preceding that distribution date.]

(8)  [Interest accrues at the rate specified in this table based on a 360-day
year that consists of twelve 30-day months.]

(9)  [The pass-through rates for the [Class AF-5A] and [Class AF-5B]
Certificates will be subject to increase after the optional termination
date as shown in this table and will be subject to an interest rate cap,
as described in this prospectus supplement under "Description of the
Certificates -- Distributions -- Distributions of Interest."]

(10) [The pass-through rates for the [Class 2-AV-1], [Class 2-AV-2], [Class
3-AV-1], [Class 3-AV-2], [Class 3-AV-3] and [Class 3-AV-4] Certificates
and the [adjustable rate subordinate certificates] may adjust monthly,
will be subject to increase after the optional termination date as shown
in this table and will be subject to an interest rate cap, in each case
as described in this prospectus supplement under "Description of the
Certificates -- Distributions -- Distributions of Interest." LIBOR refers
to One-Month LIBOR for the related interest accrual period calculated as

described in this prospectus supplement under "Description of the
Certificates -- Calculation of One-Month LIBOR."]

(11) [The Class A-R Certificates will not accrue any interest.]

See "Description of the Certificates" in this prospectus supplement.

--------------------------------------------------------------------------------

S-6

<PAGE>

--------------------------------------------------------------------------------

Designations

| Designation | Class of Certificates |
| ----------- | --------------------- |
| [Class AF Certificates:] | [Class AF-1A, Class AF-1B, Class AF-2, Class AF-3, Class AF-4, Class AF-5A, Class AF-5B and Class AF-6 Certificates.] |
| [Class AV Certificates:] | [Class 2-AV-1, Class 2-AV-2, Class 3-AV-1, Class 3-AV-2, Class 3-AV-3 and Class 3-AV-4 Certificates.] |
| [Senior Certificates:] | [Class AF, Class AV and Class A-R Certificates.] |
| [Subordinate Certificates:] | [Class MF-1, Class MF-2, Class MF-3, Class MF-4, Class MF-5, Class MF-6,Class MF-7, Class MF-8, Class BF, Class MV-1, Class MV-2, Class MV-3, Class MV-4, Class MV-5, Class MV-6, Class MV-7, Class MV-8 and Class BV Certificates.] |
| [Adjustable Rate Subordinate Certificates:] | [Class MV-1, Class MV-2, Class MV-3, Class MV-4, Class MV-5, Class MV-6, Class MV-7, Class MV-8 and Class BV Certificates.] |
| [Fixed Rate Certificates:] | [Class AF-1B, Class AF-2, Class AF-3, Class AF-4, Class AF-5A, Class AF-5B and Class AF-6 Certificates and the Fixed Rate Subordinate Certificates.] |
| [Adjustable Rate Certificates:] | [Class AF-1A and Class AV Certificates and the Adjustable Rate Subordinate Certificates.] |
| [Fixed Rate Subordinate Certificates:] | [Class MF-1, Class MF-2, Class MF-3, Class MF-4, Class MF-5, Class MF-6, Class MF-7, Class MF-8 and Class BF Certificates.] [Offered [Senior Certificates and the Subordinate Certificates.] |

Record Date

[Adjustable Rate Certificates:]

[The business day immediately preceding a distribution date, or if the adjustable rate certificates are no longer book-entry certificates, the last business day of the month preceding the month of a distribution date. ]

[Class A-R Certificate and Fixed Rate Certificates:]

[The last business day of the month preceding the month of a distribution date.]

Denominations

$[20,000] and multiples of $[1,000] in excess thereof, except that the [Class A-R] Certificates will be issued as two certificates in the denominations specified in the pooling and servicing agreement.

Registration of Certificates

[Offered Certificates other than the Class A-R Certificates:]

Book-entry form. Persons acquiring beneficial ownership interests in the offered certificates (other than the [Class A-R] Certificates) may elect to hold their beneficial interests through The Depository Trust Company, in the United States, or Clearstream, Luxembourg or the Euroclear System, in Europe.

[Class A-R Certificates:]

Fully registered certificated form. The [Class A-R] Certificates will be subject to certain restrictions on transfer described in this prospectus supplement and as more fully provided for in the pooling and servicing agreement.

See "Description of the Certificates -- Book-Entry Certificates" and "-- Restrictions on Transfer of the Class A-R Certificates" in this prospectus supplement.

Distribution Dates

Beginning on [ ], 200[ ], and thereafter on the [ ]th day of each calendar month, or if the [ ]th is not a business day, the next business day.

Interest Payments

On each distribution date, holders of each class of interest-bearing certificates will be entitled to receive:

o    the interest that has accrued during the related accrual period at the related pass-through rate on the certificate principal balance immediately prior to the applicable distribution date, and

o    [any interest due on a prior distribution date that was not paid].

The related accrual period, interest calculation convention and pass-through rate for each class of interest-bearing certificates is shown in the table on page S-[ ].

--------------------------------------------------------------------------------

<PAGE>

--------------------------------------------------------------------------------

For each class of subordinate certificates, any interest carry forward amount (which is interest due on a prior distribution date that was not paid on a prior distribution date) will be payable from excess cashflow as and to the extent described in this prospectus supplement, [and in the case of the [adjustable rate subordinate certificates] only, from payments allocated to the issuing entity (if any) in respect of the related interest rate corridor contract in the manner described in this prospectus supplement].

There are certain circumstances that could reduce the amount of interest paid to you.

See "Description of the Certificates -- Distributions -- Distributions of Interest" in this prospectus supplement.

Principal Payments

On each distribution date, certificateholders will only receive a distribution of principal on their certificates if there is cash available on that date for the payment of principal. The manner of distributing principal among the classes of certificates will depend on the priority of payments, which will differ, as described in this prospectus supplement, depending upon [whether a distribution date occurs before the stepdown date, or on or after that date, and will depend on the loss and delinquency performance of the mortgage loans].

See "Description of the Certificates -- Distributions -- Distributions of Principal Distributable Amount for Loan Group [1]" and "--Distributions of Principal Distributable Amount for Loan Group [2] and Loan Group [3]" in this prospectus supplement.

Amounts Available for Distributions on the Certificates

Amounts Available with respect to [Interest] Distributions

The amount available for [interest] distributions on the certificates on any distribution date will be calculated on a loan group by loan group basis and will generally consist of the following amounts (subject to the amounts to be netted as described below):

o    scheduled payments of interest on the mortgage loans collected during the applicable period less the related servicing fees;

o    interest on prepayments to the extent not allocable to the master servicer as additional servicing compensation;

o    interest amounts advanced by the master servicer and any required compensating interest paid by the master servicer related to certain prepayments on certain mortgage loans;

o    liquidation proceeds on the mortgage loans during the applicable period (to the extent allocable to interest); and

o    the amount (if any) of the seller interest shortfall payment paid by [Countrywide Home Loans, Inc.] on any distribution date on or prior to the [ ] 200[ ] distribution date.

Amounts Available with respect to [Principal] Distributions
-----------------------------------------------------------

The amount available for [principal] distributions on the certificates on any
distribution date will be calculated on a loan group by loan group basis and
will generally consist of the following amounts (subject to the amounts to be
netted as described below):

o    scheduled payments of principal of the mortgage loans collected during
     the applicable period or advanced by the master servicer;

o    [prepayments collected in the applicable period];

o    the stated principal balance of any mortgage loans repurchased or
     purchased by a seller or the master servicer, as applicable;

o    the difference, if any, between the stated principal balance of a
     substitute mortgage loan and the related deleted mortgage loan;

o    liquidation proceeds on the mortgage loans during the applicable period
     (to the extent allocable to principal);

o    [excess interest (to the extent available) to maintain the targeted
     overcollateralization level for the related class of certificates as
     described under "Description of the Certificates --
     Overcollateralization Provisions" in this prospectus supplement; and]

o    the amount (if any) remaining on deposit in the pre-funding account on
     the distribution date following the end of the funding period.

Fees and Expenses
-----------------

The amounts available for distributions on the certificates on any
distribution date generally will be

--------------------------------------------------------------------------------
                                      S-8

<PAGE>

--------------------------------------------------------------------------------

net of the following amounts calculated on a loan group by loan group basis:

o    the servicing fee and additional servicing compensation (as described in
     this prospectus supplement under "Description of the Certificates --
     Withdrawals from the Collection Account" and "--Withdrawals from the
     Distribution Account") due to the master servicer;

o    the trustee fee due to the trustee;

o    amounts reimbursed to the master servicer and the trustee in respect of

advances previously made by them and other amounts for which the master servicer and servicer are entitled to be reimbursed;

o    [all prepayment charges (which are distributable only to the [Class PV and Class PF] Certificates); and]

o    all other amounts for which the depositor, a seller, the master servicer [or any NIM Insurer] is entitled to be reimbursed.

Any amounts net from the amount available for distribution to the certificateholders will reduce the amount distributed to the certificateholders.

Servicing Compensation

Servicing Fee:

The master servicer will be paid a monthly fee (referred to as the servicing fee) with respect to each mortgage loan equal to one-twelfth of the stated principal balance of that mortgage loan multiplied by [ ]% per annum (referred to as the servicing fee rate).

Additional Servicing Compensation:

The master servicer is also entitled to receive additional servicing compensation from amounts in respect of interest paid on certain principal prepayments, late payment fees, assumption fees and other similar charges [(excluding prepayment charges)] and investment income earned on amounts on deposit in the certain of the issuing entity's accounts.

Source and Priority of Payments:

These amounts will be paid to the master servicer from collections on the mortgage loans prior to any distributions on the certificates.

See "Servicing of the Mortgage Loans -- Servicing Compensation and Payment of Expenses," "Description of the Certificates -- Withdrawals from the Certificate Account" and "-- Withdrawals from the Distribution Account" in this prospectus supplement.

Priority of Payments; Distributions of Interest

[Loan Group [1]]
----------------

In general, on any distribution date, loan group [1] [interest] funds will be distributed in the following order:

o    concurrently to [(a) the [Class AF-5B] Insurer, the monthly premium for the Class [AF-5B] policy, and (b)] each class of [Class AF] Certificates, current interest and interest carry forward amounts, pro rata based on their respective entitlements;

o    [to the [Class AF-5B] Insurer, any [Class AF-5B] reimbursement amounts;]

o    sequentially, in order of their seniority, to each class of [fixed rate] subordinate certificates, current interest for each class; and

o    as part of the fixed rate loan group excess cashflow.

[Loan Group [2] and Loan Group [3]]
-----------------------------------

In general, on any distribution date, loan group [2] and loan group [3]
[interest] funds will be distributed in the following order:

o    from loan group [2] [interest] funds, concurrently to each class of
     [Class 2-AV] Certificates, current interest and interest carry forward
     amounts, pro rata based on their respective entitlements;

o    from loan group [3] [interest] funds, concurrently, to each class of
     [Class 3-AV] Certificates, current interest and interest carry forward
     amounts, pro rata based on their respective entitlements;

o    from remaining loan group [2] and loan group [3] [interest] funds, to
     each class of [Class AV] Certificates, any remaining unpaid current
     interest and any interest carry forward amount, allocated pro rata based
     on the certificate principal balance of each class of [Class AV]
     Certificates, with any remaining amounts allocated based on any remaining
     unpaid current

--------------------------------------------------------------------------------

                                     S-9


<PAGE>

--------------------------------------------------------------------------------

     interest and interest carry forward amount for each class of [Class AV]
     Certificates;

o    from any remaining loan group [2] and loan group [3] [interest] funds,
     sequentially, in order of their seniority, to each class of [adjustable
     rate subordinate certificates], current interest for each class; and

o    from any remaining loan group [2] and loan group [3] [interest] funds, as
     part of the adjustable rate loan group excess cashflow.

Priority of Payments; Distributions of Principal

General
-------

The manner of distributing principal among the classes of certificates will
differ, as described in this prospectus supplement, depending upon whether a
distribution date occurs [before the stepdown date, or on or after that date,
and depending on whether a trigger event is in effect].

[Effect of the Stepdown Date if a Trigger Event is not in Effect
----------------------------------------------------------------

The "stepdown date" refers to the date on or after which the principal payment
priorities change so that on any distribution date on or after the related
stepdown date (and so long as no trigger event is in effect), instead of
allocating all amounts distributable as principal on the certificates to the
related senior classes of certificates for the loan group or loan groups until
those senior classes are paid in full, a portion of those amounts
distributable as principal will be allocated to the related subordinate

certificates.

The amount allocated to each class of certificates on or after the stepdown date and so long as no trigger event is in effect will be based on the targeted level of overcollateralization and subordination for each class of certificates. These amounts are described in more detail under "Description of the Certificates -- Distributions -- Distributions of Principal Distribution Amount for Loan Group [1]" and "-- Distributions of Principal Distribution Amount for Loan Group [2] and Loan Group [3]" in this prospectus supplement.

Trigger Events:

A "trigger event" refers to certain triggers related to the loss and delinquency performance of the mortgage loans. After the stepdown date, if certain trigger events are in effect, the priority of principal payments will revert to the payment priority prior to the stepdown date.

Generally, prior to the stepdown date or if a trigger event is in effect, all amounts distributable as principal on a distribution date will be allocated first to the related senior classes of certificates for the loan group or loan groups, until the senior classes of certificates are paid in full, before any distributions of principal are made on the related subordinate certificates.

The Stepdown Date:

The stepdown date for each class of certificates will be:

o    the later of the [ ] 200[ ] distribution date; and

o    the date on which the targeted overcollateralization level related to
     loan group [1] (in the case of the [Class AF] Certificates and the [fixed
     rate subordinate certificates]) and the targeted overcollateralization
     level related to loan group [2] and loan group [3] (in the case of the
     [Class AV] Certificates and the [adjustable rate subordinate
     certificates]) is reached.]

Certificate or Loan Group Specific Events that Effect Allocations of Principal
-----------------------------------------------------------------------------

[Class AF] Certificates:

[As described below, the payment priority the [Class AF] Certificates will
change, if on any distribution date the aggregate certificate principal
balance of the [Class AF] Certificates exceed the stated principal balance of
the group [1] mortgage loans and any remaining loan group [1] pre-funded
amount. See "--Loan Group [1] - [Class AF Certificates and [Class AF]-5B]
Insurer" below.]

[Class 2 AV] Certificates:

[As described below, the payment priority of the [Class 2 AV] Certificates
will change, if on any distribution date a group [2] sequential trigger event
is in effect. See "--Loan Group [2] and Loan Group [3] - [Class 2-AV]
Certificates" below.]

[Class 3-AV] Certificates:

[As described below, the payment priority the [Class 3-AV] Certificates will
change, if on any distribution date the aggregate certificate principal
balance of the [Class AV] Certificates exceeds the aggregate the stated

principal balance of the group [2] and group

--------------------------------------------------------------------------------

                                    S-10

<PAGE>

--------------------------------------------------------------------------------

[3] mortgage loans and any remaining loan group [2] and loan group [3]
pre-funded amount, and the aggregate certificate principal balance of the
[Class 3-AV] Certificates exceeds the stated principal balance of the group
[3] mortgage loans and any remaining loan group [3] pre-funded amount.]

See "--Loan Group [2] and Loan Group [3] - [Class 3-AV] Certificates" below.

Loan Group [1]

In general, [on any distribution date prior to the fixed rate stepdown date or
on which a fixed rate trigger event is in effect], the loan group [1]
principal distribution amount will be distributed in the following order:

o    [to the [Class AF] Certificates and to the [Class AF-5B] Insurer in the
     priority described below;]

o    [sequentially, in order of their seniority, to each class of [fixed rate
     subordinate certificates], until the certificate principal balance of
     each class is reduced to zero; and]

o    [as part of the fixed rate loan group excess cashflow.]

In general, on any distribution date [on or after the fixed rate stepdown date
and so long as no fixed rate trigger event is in effect], the loan group [1]
principal distribution amount will be distributed in the following order:

o    [to the [Class AF] Certificates, up to the [Class AF] principal
     distribution amount, until the certificate principal balance of each
     class is reduced to zero, in the priority described below;]

o    [to the [Class AF-5B] Insurer, any remaining premium payable with respect
     to the [Class AF-5B] policy and any remaining reimbursement amount that
     has not been paid from loan group [1] interest funds for that
     distribution date;]

o    sequentially, in order of their seniority, to each class of [fixed rate
     subordinate certificates], the fixed rate subordinate class principal
     distribution amount for that class, until the certificate principal
     balance thereof is reduced to zero; and

o    [as part of the fixed rate loan group excess cashflow.]

[Class AF Certificates and [Class AF-5B] Insurer:

Generally, for each distribution date prior to the fixed rate stepdown date or
on which a fixed rate trigger event is in effect, amounts to be distributed to

the [Class AF] Certificates and the [Class AF-5B] Insurer will be distributed in the following order:

[(i) to the [Class AF]-6 Certificates, the NAS principal distribution amount, until the certificate principal balance thereof is reduced to zero;]

(ii) concurrently, to the [Class AF-1A] and [Class AF-1B] Certificates, pro rata based on their respective certificate principal balances, until the certificate principal balances thereof are reduced to zero;

(iii) sequentially, to the [Class AF-2], [Class AF-3] and [Class AF-4] Certificates, in each case until the certificate principal balance thereof is reduced to zero;

(iv) concurrently, to (x) the [Class AF-5A] Certificates and (y) the [Class AF-5B] Certificates and the [Class AF-5B] Insurer, pro rata (based on, with respect to clause (x), the certificate principal balance of the [Class AF-5A] Certificates, and with respect to clause (y), the certificate principal balance of the [Class AF-5B] Certificates):

    (a) to the [Class AF-5A] Certificates, until the certificate principal balance thereof is reduced to zero, and

    (b) sequentially:

        [(I) to the [Class AF-5B] Insurer, any remaining premium payable with respect to the [Class AF-5B] policy that has not been paid from loan group [1] interest funds for that distribution date, and]

        (II) to the [Class AF-5B] Certificates, until the certificate principal balance thereof is reduced to zero;

(v) [to the [Class AF-6] Certificates without regard to the NAS principal distribution amount, until the certificate principal balance thereof is reduced to zero; and]

(vi) [to the [Class AF-5B] Insurer, any remaining [Class AF-5B] reimbursement amount that has not been paid from loan group [1] interest funds for that distribution date.]

--------------------------------------------------------------------------------

S-11

<PAGE>

--------------------------------------------------------------------------------

[However, if on any distribution date, the aggregate certificate principal balance of the [Class AF] Certificates exceed the stated principal balance of the group [1] mortgage loans and any remaining loan group [1] pre-funded amount, the [Class AF] Certificates will receive payments pro rata based on the certificate principal balances thereof, and prior to any payments to the [Class AF-5B] Insurer.]

[Generally, the allocations among the [Class AF] Certificates are the same

following the fixed rate stepdown date or if a fixed rate trigger event is in effect as before the stepdown date or a trigger event (except that following the fixed rate stepdown date, provided no fixed rate trigger event is in effect, the [Class AF-5B] Insurer will receive distributions after the [Class AF] Certificates).]]

[Class AF-6 Certificates; NAS Principal Distribution Amount:

The [Class AF-6] Certificates are entitled to receive the NAS principal distribution amount prior to payments of principal of the other [Class AF] Certificates. However, until the distribution date in [ ] 200[ ], the NAS principal distribution amount is equal to zero and it is expected that the AF-6 Certificates will not receive any distributions of principal until the distribution date in [ ] 200[ ]. The NAS principal distribution amount is a specified percentage (that may exceed 100%) of the [Class AF-6] pro rata share of the principal distributable to the [Class AF] Certificates. The specified percentage increases on the distribution date in [ ] 200[ ], [ ] 200[ ] and [ ] 200[ ], when it ultimately reaches [ ]%. Until the [ ] 200[ ] distribution date, it is expected that the [Class AF-6] Certificates will receive a portion of principal payments that is smaller than its pro rata share of principal payments and on or after [ ] 200[ ] distribution date, the [Class AF]-6 Certificates will receive an amount greater than its pro rata share of principal payments.]

Loan Group [2] and Loan Group [3]

In general, on any distribution date [prior to the adjustable rate stepdown date or on which an adjustable rate trigger event is in effect], the loan group [2] and loan group [3] principal distribution amounts will be distributed in the following order:

o    from the loan group [2] principal distribution amount, sequentially,

        (a) to each class of [Class 2-AV] Certificates in the priority
        described below, until the certificate principal balances thereof are
        reduced to zero, and

        (b) to each class of [Class 3-AV] Certificates (after the payments
        described in clause (a) of the next bullet point) in the priority
        described below, until the certificate principal balances thereof are
        reduced to zero,

o    from the loan group [3] principal distribution amount, sequentially,

        (a) to each class of [Class 3-AV] Certificates in the priority
        described below, until the certificate principal balances thereof are
        reduced to zero, and

        (b) to each class of [Class 2-AV] Certificates (after the payments
        described in clause (a) of the preceding bullet point) in the
        priority described below, until the certificate principal balances
        thereof are reduced to zero;

o    from any remaining loan group [2] and loan group [3] principal
     distribution amounts, sequentially, in order of their seniority, to each
     class of [adjustable rate subordinate certificates], until the
     certificate principal balance of each class is reduced to zero; and

o    from any remaining loan group [2] and loan group [3] principal
     distribution amounts, as part of the adjustable rate loan group excess

cashflow.

In general, on any distribution date on or after the adjustable rate stepdown date and so long as no adjustable rate trigger event is in effect, the loan group [2] and loan group [3] principal distribution amounts will be distributed in the following order:

o    [up to the [Class AV] principal distribution target amount, pro rata based on the related [Class AV] principal distribution allocation amount for the [Class 2-AV] Certificates and the [Class 3-AV] Certificates, respectively, concurrently, to (a) each class of [Class 2-AV] Certificates, in an amount up to the [Class 2-AV] principal distribution amount in the order and priorities set forth below, until the certificate principal balances thereof are reduced to zero, and (b) each class of [Class 3-AV] Certificates, in an amount up to the [Class 3-AV] principal distribution amount in the order and priorities set forth below, until the certificate principal

--------------------------------------------------------------------------------

S-12

<PAGE>

--------------------------------------------------------------------------------

     balances thereof are reduced to zero; and after the aggregate certificate principal balance of the [Class 2-AV] or [Class 3-AV] Certificates has been reduced to zero, any remaining unpaid [Class AV] principal distribution target amount will be distributed to the remaining [Class AV] Certificates in the order and priorities set forth below for those certificates;]

o    sequentially, in order of their seniority, to each class of [adjustable rate subordinate certificates], the adjustable subordinate class principal distribution amount for that class until the certificate principal balance thereof is reduced to zero; and

o    as part of the adjustable rate loan group excess cashflow.

[Class 2-AV Certificates:

Generally, for each distribution date, amounts to be distributed to the [Class 2-AV] Certificates will be distributed concurrently, to the [Class 2-AV-1] and [Class 2-AV-2] Certificates, pro rata, based on the certificate principal balances thereof, in each case until the certificate principal balances thereof are reduced to zero; but, if a group [2] sequential trigger event is in effect, principal will be distributed to the [Class 2-AV-1] and [Class 2-AV-2] Certificates, sequentially, in that order, in each case until the certificate principal balance thereof is reduced to zero.

A group [2] sequential trigger event is, prior to the distribution date [ ] 200[ ], a separate trigger based on the loss experience of the group [2] mortgage loans, and on or after the distribution date in [ ] 200[ ], an adjustable rate trigger event. The group [2] sequential trigger event is described in more detail under "Description of the Certificates -- Distributions -- Distributions of Principal Distribution Amounts for Loan