accordance with the Code, Treasury regulations and the partnership agreement (here, the Trust Agreement and related documents). The Trust Agreement will provide, in general, that the certificateholders will be allocated taxable income of the trust fund for each month equal to the sum of (i) the interest that accrues on the certificates in accordance with their terms for that month, including interest accruing at the Pass-Through Rate for the month and interest on amounts previously due on the certificates but not yet distributed; (ii) any trust fund income attributable to discount on the Loans that corresponds to any excess of the principal amount of the certificates over their initial issue price; (iii) prepayment premium payable to the certificateholders for the month; and (iv) any other amounts of income payable to the certificateholders for the month. That allocation will be reduced by any amortization by the trust fund of premium on loans that corresponds to any excess of the issue price of certificates over their principal amount. All remaining taxable income of the trust fund will be allocated to the depositor. Based on the economic arrangement of the parties, this approach for allocating trust fund income should be permissible under applicable Treasury regulations, although we can give no assurance that the IRS would not require a greater amount of income to be allocated to certificateholders. Moreover, even under the foregoing method of allocation, certificateholders may be allocated income equal to the entire Pass-Through Rate plus the other items described above even though the trust fund might not have sufficient cash to make current cash distributions of that amount. Thus, cash basis holders will in effect be required to report income from the certificates on the accrual basis and certificateholders may become liable for taxes on trust fund income even if they have not received cash from the trust fund to pay those taxes. In addition, because tax allocations and tax reporting will be done on a uniform basis for all certificateholders but certificateholders may be purchasing certificates at different times and at different prices, certificateholders may be required to report on their tax returns taxable income that is greater or less than the amount reported to them by the trust fund.

All of the taxable income allocated to a certificateholder that is a pension, profit sharing or employee benefit plan or other tax-exempt entity (including an individual retirement account) will constitute "unrelated business taxable income" generally taxable to that holder under the Code.

An individual taxpayer's share of expenses of the trust fund (including fees to the servicer but not interest expense) would be miscellaneous itemized deductions. Those deductions might be disallowed to the individual in whole or in part and might result in the holder being taxed on an amount of income that exceeds the amount of cash actually distributed to the holder over the life of the trust fund.

The trust fund intends to make all tax calculations relating to income and allocations to certificateholders on an aggregate basis. If the IRS were to require that those calculations be made separately for each loan, the trust fund might be required to incur additional expense but it is believed that there would not be a material adverse effect on certificateholders.

Discount and Premium. It is believed that the loans were not issued with OID, and, therefore, the trust fund should not have OID income. However, the purchase price paid by the trust fund for the loans may be greater or less than the remaining principal balance of the loans at the time of purchase. If so, the loan will have been acquired at a premium or discount, as the case may be. (As indicated above, the trust fund will make this calculation on an aggregate basis, but might be required to recompute it on a loan by loan basis.)

If the trust fund acquires the loans at a market discount or premium,

the trust fund will elect to include that discount in income currently as it accrues over the life of the loans or to offset that premium against interest income on the loans. As indicated above, a portion of the market discount income or premium deduction may be allocated to certificateholders.

97

<PAGE>

Section 708 Termination. Pursuant to Code Section 708, a sale or exchange of 50% or more of the capital and profits in a partnership would cause a deemed contribution of assets of the partnership (the "old partnership") to a new partnership (the "new partnership") in exchange for interests in the new partnership. Those interests would be deemed distributed to the partners of the old partnership in liquidation thereof, which would not constitute a sale or exchange. Accordingly, if the trust fund were characterized as a partnership, then even if a sale of certificates terminated the partnership under Code Section 708, the holder's basis in its certificates would remain the same.

Disposition of Certificates. Generally, capital gain or loss will be recognized on a sale of certificates in an amount equal to the difference between the amount realized and the seller's tax basis in the certificates sold. A certificateholder's tax basis in a certificate will generally equal the holder's cost increased by the holder's share of trust fund income (includible in income) and decreased by any distributions received with respect to that certificate. In addition, both the tax basis in the certificates and the amount realized on a sale of a certificate would include the holder's share of the notes and other liabilities of the trust fund. A holder acquiring certificates at different prices may be required to maintain a single aggregate adjusted tax basis in the certificates, and, upon sale or other disposition of some of the certificates, allocate a portion of that aggregate tax basis to the certificates sold (rather than maintaining a separate tax basis in each certificate for purposes of computing gain or loss on a sale of that certificate).

Any gain on the sale of a certificate attributable to the holder's share of unrecognized accrued market discount on the loans would generally be treated as ordinary income to the holder and would give rise to special tax reporting requirements. The trust fund does not expect to have any other assets that would give rise to those special reporting requirements. Thus, to avoid those special reporting requirements, the trust fund will elect to include market discount in income as it accrues.

If a certificateholder is required to recognize an aggregate amount of income (not including income attributable to disallowed itemized deductions described above) over the life of the certificates that exceeds the aggregate cash distributions with respect thereto, that excess will generally give rise to a capital loss upon the retirement of the certificates.

Allocations Among Transferors and Transferees. In general, the trust fund's taxable income and losses will be determined monthly and the tax items for a particular calendar month will be apportioned among the certificateholders in proportion to the principal amount of certificates owned by them as of the close of the last day of that month. As a result, a holder purchasing certificates may be allocated tax items (which will affect its tax liability and tax basis) attributable to periods before the actual transaction.

The use of a monthly convention may not be permitted by existing regulations. If a monthly convention is not allowed (or only applies to

transfers of less than all of the partner's interest), taxable income or losses of the trust fund might be reallocated among the certificateholders. The trust fund's method of allocation between transferors and transferees may be revised to conform to a method permitted by future regulations.

Section 754 Election. In the event that a certificateholder sells its certificates at a profit (loss), the purchasing certificateholder will have a higher (lower) basis in the certificates than the selling certificateholder had. The tax basis of the trust fund's assets will not be adjusted to reflect that higher (or lower) basis unless the trust fund were to file an election under Section 754 of the Code. In order to avoid the administrative complexities that would be involved in keeping accurate accounting records, as well as potentially onerous information reporting requirements, the trust fund will not make that election. As a result, certificateholders might be allocated a greater or lesser amount of trust fund income than would be appropriate based on their own purchase price for certificates.

Administrative Matters. The owner trustee is required to keep or have kept complete and accurate books of the trust fund. Those books will be maintained for financial reporting and tax purposes on an accrual basis and the fiscal year of the trust fund will be the calendar year. The trustee will file a partnership information return (IRS Form 1065) with the IRS for each taxable year of the trust fund and will report each certificateholder's allocable share of items of trust fund income and expense to holders and the IRS on Schedule K-1. The trust fund will provide the Schedule K-1 information to nominees that fail to provide the trust fund with the information statement described below and those nominees will be required to forward that information to the beneficial owners of the

98

<PAGE>

certificates. Generally, holders must file tax returns that are consistent with the information return filed by the trust fund or be subject to penalties unless the holder notifies the IRS of all those inconsistencies.

Under Section 6031 of the Code, any person that holds certificates as a nominee at any time during a calendar year is required to furnish the trust fund with a statement containing certain information on the nominee, the beneficial owners and the certificates so held. That information includes (i) the name, address and taxpayer identification number of the nominee and (ii) as to each beneficial owner (x) the name, address and identification number of the person, (y) whether the person is a United States person, a tax-exempt entity or a foreign government, an international organization, or any wholly owned agency or instrumentality of either of the foregoing, and (z) certain information on certificates that were held, bought or sold on behalf of the person throughout the year. In addition, brokers and financial institutions that hold certificates through a nominee are required to furnish directly to the trust fund information as to themselves and their ownership of certificates. A clearing agency registered under Section 17A of the Securities Exchange Act of 1934, as amended is not required to furnish that information statement to the trust fund. The information referred to above for any calendar year must be furnished to the trust fund on or before the following January 31. Nominees, brokers and financial institutions that fail to provide the trust fund with the information described above may be subject to penalties.

The depositor will be designated as the tax matters partner in the related Trust Agreement and, as such, will be responsible for representing the certificateholders in any dispute with the IRS. The Code provides for

administrative examination of a partnership as if the partnership were a
separate and distinct taxpayer. Generally, the statute of limitations for
partnership items does not expire before three years after the date on which
the partnership information return is filed. Any adverse determination
following an audit of the return of the trust fund by the appropriate taxing
authorities could result in an adjustment of the returns of the
certificateholders, and, under certain circumstances, a certificateholder may
be precluded from separately litigating a proposed adjustment to the items of
the trust fund. An adjustment could also result in an audit of a
certificateholder's returns and adjustments of items not related to the income
and losses of the trust fund.

Tax Consequences to Foreign Certificateholders. It is not clear whether
the trust fund would be considered to be engaged in a trade or business in the
United States for purposes of federal withholding taxes with respect to
non-U.S. Persons because there is no clear authority dealing with that issue
under facts substantially similar to those described herein. Although it is
not expected that the trust fund would be engaged in a trade or business in
the United States for those purposes, the trust fund will withhold as if it
were so engaged in order to protect the trust fund from possible adverse
consequences of a failure to withhold. The trust fund expects to withhold on
the portion of its taxable income, as calculated for this purpose which may
exceed the distributions to certificateholders, that is allocable to foreign
certificateholders pursuant to Section 1446 of the Code, as if the income were
effectively connected to a U.S. trade or business. Subsequent adoption of
Treasury regulations or the issuance of other administrative pronouncements
may require the trust fund to change its withholding procedures. In
determining a holder's withholding status, the trust fund may rely on IRS Form
W-8BEN, IRS Form W-9 or the holder's certification of nonforeign status signed
under penalties of perjury. A holder who is not an individual or corporation
(or an entity treated as a corporation for federal income tax purposes)
holding the Notes on its own behalf may have substantially increased reporting
requirements. In particular, if the holder is a foreign partnership (or
foreign trust), the partners (or beneficiaries) rather than the partnership
(or trust) will be required to provide the certification discussed above, and
the partnership (or trust) will be required to provide certain additional
information.

Each foreign holder might be required to file a U.S. individual or
corporate income tax return (including, in the case of a corporation, the
branch profits tax) on its share of the trust fund's income. Each foreign
holder must obtain a taxpayer identification number from the IRS and submit
that number in order to assure appropriate crediting of the taxes withheld. A
foreign holder generally would be entitled to file with the IRS a claim for
refund with respect to taxes withheld by the trust fund taking the position
that no taxes were due because the trust fund was not engaged in a U.S. trade
or business. However, interest payments made (or accrued) to a
certificateholder who is a foreign person generally will be considered
guaranteed payments to the extent the payments are determined without regard
to the income of the trust fund. If these interest payments are properly
characterized as guaranteed payments, then the interest will not be considered
"portfolio interest." As a result, certificateholders will be subject to
United States federal income tax and withholding tax at a rate of 30 percent,
unless reduced or eliminated pursuant to an applicable treaty. In that case, a
foreign holder would only be entitled to claim a refund for that portion of
the taxes in excess of the taxes that should be withheld with respect to the
guaranteed payments.

<PAGE>

Backup Withholding. Distributions made on the certificates and proceeds from the sale of the certificates will be subject to a "backup" withholding tax if, in general, the certificateholder fails to comply with certain identification procedures, unless the holder is an exempt recipient under applicable provisions of the Code.

## Other Tax Considerations

In addition to the federal income tax consequences described in "Federal Income Tax Consequences," potential investors should consider the state, local and foreign tax consequences of the acquisition, ownership, and disposition of the securities. State and local tax law may differ substantially from the corresponding federal law, and this discussion does not purport to describe any aspect of the tax laws of any state or locality. Therefore, potential investors are encouraged to consult their own tax advisors with respect to the various state, local and foreign tax consequences of an investment in the securities.

## ERISA Considerations

The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and Section 4975 of the Code impose requirements on employee benefit plans (and on certain other retirement plans and arrangements, including individual retirement accounts and annuities and Keogh plans as well as collective investment funds and separate accounts in which those plans, accounts or arrangements are invested) (collectively, "Plans") subject to ERISA or to Section 4975 of the Code and on persons who bear specified relationships to Plans ("Parties in Interest") or are fiduciaries with respect to those Plans. Generally, ERISA applies to investments made by Plans. Among other things, ERISA requires that the assets of Plans be held in trust and that the trustee, or other duly authorized fiduciary, have exclusive authority and discretion to manage and control the assets of Plans. ERISA also imposes certain duties on persons who are fiduciaries of Plans. Under ERISA, any person who exercises any authority or control respecting the management or disposition of the assets of a Plan is considered to be a fiduciary of the Plan (subject to certain exceptions not here relevant). Certain employee benefit plans, such as governmental plans (as defined in ERISA Section 3(32)) and, if no election has been made under Section 410(d) of the Code, church plans (as defined in ERISA Section 3(33)), are not subject to requirements imposed by ERISA and Section 4975 of the Code. Accordingly, assets of those plans may be invested in securities without regard to the considerations described above and below, subject to the provisions of other applicable law. Any plan which is qualified and exempt from taxation under Code Sections 401(a) and 501(a) is subject to the prohibited transaction rules set forth in Code Section 503.

On November 13, 1986, the United States Department of Labor (the "DOL") issued final regulations concerning the definition of what constitutes the assets of a Plan. (Labor Reg. Section 2510.3-101 (the "Plan Assets Regulation")). Under this regulation, the underlying assets and properties of corporations, partnerships and certain other entities in which a Plan makes an "equity" investment could be deemed for purposes of ERISA to be assets of the investing Plan in certain circumstances. Under the Plan Assets Regulation, the term "equity interest" is defined as any interest in an entity other than an instrument that is treated as indebtedness under applicable local law and has no "substantial equity features." If securities are not treated as equity interests in the issuer for purposes of the Plan Assets Regulation, a Plan's investment in the securities would not cause the assets of the issuer to be deemed plan assets. If the securities are deemed to be equity interests in the

issuer, the issuer could be considered to hold plan assets because of a Plan's investment in those securities. In that event, the master servicer and other persons exercising management or discretionary control over the assets of the issuer or providing services with respect to those assets could be deemed to be fiduciaries or other parties in interest with respect to investing Plans and thus subject to the prohibited transaction provisions of Section 406 of ERISA and Section 4975 of the Code and, in the case of fiduciaries, to the fiduciary responsibility provisions of Title I of ERISA, with respect to transactions involving the issuer's assets. Trust certificates are "equity interests" for purposes of the Plan Asset Regulation.

In addition to the imposition of general fiduciary standards of investment prudence and diversification, ERISA and Section 4975 of the Code prohibit a broad range of transactions involving assets of a Plan and persons ("Parties in Interest") having certain specified relationships to a Plan and impose additional prohibitions where Parties in Interest are fiduciaries with respect to that Plan. Because the loans may be deemed assets of each Plan that purchases equity securities, an investment in equity securities by a Plan might be a prohibited transaction under ERISA Sections 406 and 407 and subject to an excise tax under Code Section 4975 unless a statutory, regulatory or administrative exemption applies.

<PAGE>

Without regard to whether securities are considered to be equity interest in the issuer, certain affiliates of the issuer might be considered or might become Parties in Interest with respect to a Plan. In this case, the acquisition or holding of the securities by or on behalf of the Plan could constitute or give rise to a prohibited transaction, within the meaning of ERISA and Section 4975 of the Code, unless they were subject to one or more exemptions. Depending on the relevant facts and circumstances, certain prohibited transaction exemptions may apply to the purchase or holding of the securities -- for example, Prohibited Transaction Class Exemption ("PTCE") 96-23, which exempts certain transactions effected on behalf of a Plan by an "in-house asset manager"; PTCE 95-60, which exempts certain transactions by insurance company general accounts; PTCE 91-38, which exempts certain transactions by bank collective investment funds; PTCE 90-1, which exempts certain transactions by insurance company pooled separate accounts; or PTCE 84-14, which exempts certain transactions effected on behalf of a Plan by a "qualified professional asset manager". We can give no assurance that any of these exemptions will apply with respect to any Plan's investment in securities, or that such an exemption, if it did apply, would apply to all prohibited transactions that may occur in connection with the investment. Furthermore, these exemptions would not apply to transactions involved in operation of the trust if, as described above, the assets of the trust were considered to include plan assets.

The DOL has granted to certain underwriters individual administrative exemptions (the "Underwriter Exemptions") from certain of the prohibited transaction rules of ERISA and the related excise tax provisions of Section 4975 of the Code with respect to the initial purchase, the holding and the subsequent resale by Plans of securities, including certificates, underwritten or privately placed by that underwriter or its affiliate or by a syndicate managed by that underwriter or its affiliate and issued by entities that hold investment pools consisting of certain secured receivables, loans and other obligations and the servicing, operation and management of the investment pools, provided the conditions and requirements of the Underwriter Exemptions are met. The Exemption also permits the entity to hold an interest-rate swap or yield supplement agreement if it meets requirements set forth in the

Exemption.

   While each Underwriter Exemption is an individual exemption separately granted to a specific underwriter, the terms and conditions which generally apply to the Underwriter Exemptions are substantially identical, and include the following:

        (1) the acquisition of the securities by a Plan is on terms (including the price for the securities) that are at least as favorable to the Plan as they would be in an arm's-length transaction with an unrelated party;

        (2) the securities acquired by the Plan have received a rating at the time of the acquisition that is one of the four highest generic rating categories from Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. ("S&P"), Moody's Investors Service, Inc. ("Moody's"), or Fitch Ratings, Inc. ("Fitch") (each, a "Rating Agency");

        (3) the trustee is not an affiliate of any other member of the Restricted Group, as defined below (other than an underwriter);

        (4) the sum of all payments made to and retained by the underwriters in connection with the distribution of the securities represents not more than reasonable compensation for underwriting the securities; the sum of all payments made to and retained by the seller pursuant to the assignment of the loans to the issuer represents not more than the fair market value of the loans; the sum of all payments made to and retained by the servicer and any sub-servicer represents not more than reasonable compensation for the person's services under the agreement pursuant to which the loans are pooled and reimbursements of the person's reasonable expenses in connection therewith; and

        (5) the Plan investing in the certificates is an "accredited investor" as defined in Rule 501(a)(1) of Regulation D of the SEC under the Securities Act.

                                    101

<PAGE>

   The issuer must also meet the following requirements:

        (i) the corpus of the issuer must consist solely of assets of the type that have been included in other investment pools;

        (ii) securities in those other investment pools must have been rated in one of the four highest rating categories of S&P, Moody's, or Fitch for at least one year prior to the Plan's acquisition of securities; and

        (iii) securities evidencing interests in those other investment pools must have been purchased by investors other than Plans for at least one year prior to any Plan's acquisition of securities.

   Moreover, the Underwriter Exemptions generally provide relief from certain self-dealing/conflict of interest prohibited transactions that may occur when a Plan fiduciary causes a Plan to acquire securities of an issuer holding receivables as to which the fiduciary (or its affiliate) is an obligor, provided that, among other requirements:

o        in the case of an acquisition in connection with the initial issuance of

certificates, at least fifty percent (50%) of each class of certificates in which Plans have invested, and at least fifty percent (50%) of aggregate interests in the issuer are acquired by persons independent of the Restricted Group;

o     the fiduciary (or its affiliate) is an obligor with respect to not more than five percent (5%) of the fair market value of the obligations contained in the investment pool;

o     the Plan's investment in securities of any class does not exceed twenty-five percent (25%) of all of the securities of that class outstanding at the time of the acquisition;

o     immediately after the acquisition, no more than twenty-five percent (25%) of the assets of any Plan with respect to which the person is a fiduciary is invested in securities representing an interest in one or more issuers containing assets sold or serviced by the same entity; and

o     the Plan is not  sponsored  by a member of the  Restricted  Group,  as defined below.

The Underwriter Exemptions provide only limited relief to Plans sponsored by the seller, an underwriter, the trustee, the master servicer, any provider of credit support to the trust, any counterparty to a swap contained in the trust, any obligor with respect to loans included in the investment pool constituting more than five percent (5%) of the aggregate unamortized principal balance of the assets in the trust fund, or any affiliate of those parties (the "Restricted Group").

The Underwriter Exemptions provide exemptive relief to certain mortgage-backed and asset-backed securities transactions using pre-funding accounts. Mortgage loans or other secured receivables (the "obligations") supporting payments to securityholders, and having a value equal to no more than twenty-five percent (25%) of the total principal amount of the securities being offered by the issuer, may be transferred to the issuer within a 90-day or three-month period following the closing date, instead of being required to be either identified or transferred on or before the closing date. The relief is available when the prefunding account satisfies certain conditions.

The rating of a security may change. If a class of securities no longer has a required rating from at least one Rating Agency, the security will no longer be eligible for relief under the Underwriter Exemption (although a Plan that had purchased the security when it had a permitted rating would not be required by the Underwriter Exemption to dispose of it.) A certificate that satisfies the requirements of the Underwriter Exemptions other than the rating requirement may be eligible for purchase by an insurance company investing assets of its general account that include plan assets when the requirements of Sections I and III of Prohibited Transaction Class Exemption 95-60 are met.

102

<PAGE>

The prospectus supplement for each series of securities will indicate the classes of securities, if any, offered thereby as to which it is expected that an Underwriter Exemption will apply.

Any Plan fiduciary which proposes to cause a Plan to purchase securities are encouraged to consult with its counsel concerning the impact of ERISA and the Code, the applicability of the Underwriter Exemptions, the effect of the Plan Assets Regulation, and the potential consequences in their specific

circumstances, prior to making that investment. Moreover, each Plan fiduciary should determine whether under the general fiduciary standards of investment prudence and diversification an investment in the securities is appropriate for the Plan, taking into account the overall investment policy of the Plan and the composition of the Plan's investment portfolio.

The sale of certificates to a Plan is in no respect a representation by the issuer or any underwriter of the Certificates that this investment meets all relevant legal requirements with respect to investments by Plans generally or any particular Plan, or that this investment is appropriate for Plans generally or any particular Plan.

Legal Investment

The prospectus supplement for each series of securities will specify which, if any, of the classes of securities offered thereby constitute "mortgage related securities" for purposes of the Secondary Mortgage Market Enhancement Act of 1984 ("SMMEA"). Classes of securities that qualify as "mortgage related securities" will be legal investments for persons, trusts, corporations, partnerships, associations, business trusts, and business entities (including depository institutions, life insurance companies and pension funds) created pursuant to or existing under the laws of the United States or of any state (including the District of Columbia and Puerto Rico) whose authorized investments are subject to state regulations to the same extent as, under applicable law, obligations issued by or guaranteed as to principal and interest by the United States or those entities. Under SMMEA, if a state enacts legislation prior to October 4, 1991 specifically limiting the legal investment authority of those entities with respect to "mortgage related securities", securities will constitute legal investments for entities subject to the legislation only to the extent provided therein. Approximately twenty-one states adopted the legislation prior to the October 4, 1991 deadline. SMMEA provides, however, that in no event will the enactment of that legislation affect the validity of any contractual commitment to purchase, hold or invest in securities, or require the sale or other disposition of securities, so long as the contractual commitment was made or the securities were acquired prior to the enactment of the legislation.

SMMEA also amended the legal investment authority of federally-chartered depository institutions as follows: federal savings and loan associations and federal savings banks may invest in, sell or otherwise deal in securities without limitations as to the percentage of their assets represented thereby, federal credit unions may invest in mortgage related securities, and national banks may purchase securities for their own account without regard to the limitations generally applicable to investment securities set forth in 12 U.S.C. 24 (Seventh), subject in each case to that regulations that the applicable federal authority may prescribe. In this connection, federal credit unions should review the National Credit Union Administration ("NCUA") Letter to Credit Unions No. 96, as modified by Letter to Credit Unions No. 108, which includes guidelines to assist federal credit unions in making investment decisions for mortgage related securities and the NCUA's regulation "Investment and Deposit Activities" (12 C.F.R. Part 703), which sets forth certain restrictions on investment by federal credit unions in mortgage related securities (in each case whether or not the class of securities under consideration for purchase constituted a "mortgage related security"). The NCUA issued final regulations effective December 2, 1991 that restrict and in some instances prohibit the investment by Federal Credit Unions in certain types of mortgage related securities.

All depository institutions considering an investment in the securities (whether or not the class of securities under consideration for purchase

constitutes a "mortgage related security") should review the Federal Financial Institutions Examination Council's Supervisory Policy Statement on the Securities Activities (to the extent adopted by their respective regulators) (the "Policy Statement") setting forth, in relevant part, certain securities trading and sales practices deemed unsuitable for an institution's investment portfolio, and guidelines for (and restrictions on) investing in mortgage derivative products, including "mortgage related securities", which are "high-risk mortgage securities" as defined in the Policy Statement. According to the Policy Statement, those "high-risk mortgage securities" include securities not entitled to distributions allocated to principal or interest, or Subordinate Securities. Under the Policy Statement, it is the responsibility of each depository institution to determine, prior to purchase (and

<div align="center">103</div>

<PAGE>

at stated intervals thereafter), whether a particular mortgage derivative product is a "high-risk mortgage security", and whether the purchase (or retention) of that product would be consistent with the Policy Statement.

The foregoing does not take into consideration the applicability of statutes, rules, regulations, orders guidelines or agreements generally governing investments made by a particular investor, including, but not limited to "prudent investor" provisions, percentage-of-assets limits and provisions which may restrict or prohibit investment in securities which are not "interest bearing" or "income paying," or in securities which are issued in book-entry form.

There may be other restrictions on the ability of certain investors, including depository institutions, either to purchase securities or to purchase securities representing more than a specified percentage of the investor's assets. Investors are encouraged to consult their own legal advisors in determining whether and to what extent the securities constitute legal investments for those investors.

<div align="center">Method of Distribution</div>

Securities are being offered hereby in series from time to time (each series evidencing or relating to a separate trust fund) through any of the following methods:

o    by negotiated firm commitment or best efforts underwriting and public reoffering by underwriters, including in a resecuritization of any securities of any series by the depositor or any of its affiliates;

o    by agency placements through one or more placement agents primarily with institutional investors and dealers; and

o    by placement directly by the depositor with institutional investors.

A prospectus supplement will be prepared for each series which will describe the method of offering being used for that series and will set forth the identity of any underwriters thereof and either the price at which the series is being offered, the nature and amount of any underwriting discounts or additional compensation to those underwriters and the proceeds of the offering to the depositor, or the method by which the price at which the underwriters will sell the securities will be determined. Each prospectus supplement for an underwritten offering will also contain information

regarding the nature of the underwriters' obligations, any material
relationship between the depositor and any underwriter and, where appropriate,
information regarding any discounts or concessions to be allowed or reallowed
to dealers or others and any arrangements to stabilize the market for the
securities so offered. In firm commitment underwritten offerings, the
underwriters will be obligated to purchase all of the securities of the series
if any of those securities are purchased. Securities may be acquired by the
underwriters for their own accounts and may be resold from time to time in one
or more transactions, including negotiated transactions, at a fixed public
offering price or at varying prices determined at the time of sale.

Underwriters and agents may be entitled under agreements entered into
with the depositor to indemnification by the depositor against certain civil
liabilities, including liabilities under the Securities Act, or to
contribution with respect to payments which the underwriters or agents may be
required to make in respect thereof.

In relation to each Member State of the European Economic Area which has
implemented the Prospectus Directive (each, a "Relevant Member State"), each
underwriter will be required to represent and agree with the depositor that
with effect from and including the date on which the Prospectus Directive is
implemented in that Relevant Member State (the "Relevant Implementation Date")
and with respect to any class of securities with a minimum denomination of
less than $100,000, it has not made and will not make an offer of securities
to the public in that Relevant Member State prior to the publication of a
prospectus in relation to the securities which has been approved by the
competent authority in that Relevant Member State or, where appropriate,
approved in another Relevant Member State and notified to the competent
authority in that Relevant Member State, all in accordance with the Prospectus
Directive, except that it may, with effect from and including the Relevant
Implementation Date, make an offer of securities to the public in that
Relevant Member State at any time:

                                   104
<PAGE>

      (a) to legal entities which are authorised or regulated to operate in
the financial markets or, if not so authorised or regulated, whose corporate
purpose is solely to invest in securities;

      (b) to any legal entity which has two or more of (1) an average of at
least 250 employees during the last financial year; (2) a total balance sheet
of more than (euro)43,000,000 and (3) an annual net turnover of more than
(euro)50,000,000, as shown in its last annual or consolidated accounts; or

      (c) in any other circumstances which do not require the publication by
the depositor of a prospectus pursuant to Article 3 of the Prospectus
Directive.

      For the purposes of this provision, the expression an "offer of
securities to the public" in relation to any class of securities of a series,
which class has a minimum denomination of less than $100,000, in any Relevant
Member State means the communication in any form and by any means of
sufficient information on the terms of the offer and the securities to be
offered so as to enable an investor to decide to purchase or subscribe the
securities, as the same may be varied in that Member State by any measure
implementing the Prospectus Directive in that Member State, and the expression
"Prospectus Directive" means Directive 2003/71/EC and includes any relevant
implementing measure in each Relevant Member State.

If a series is offered other than through underwriters, the prospectus supplement relating thereto will contain information regarding the nature of the offering and any agreements to be entered into between the depositor and purchasers of securities of the series.

## Legal Matters

The validity of the securities of each series, including certain federal income tax consequences with respect thereto, will be passed upon for the depositor by Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, or by Thacher Proffitt & Wood LLP, Two World Financial Center, New York, New York 10281, as specified in the prospectus supplement.

## Financial Information

A new trust fund will be formed with respect to each series of securities and no trust fund will engage in any business activities or have any assets or obligations prior to the issuance of the related series of securities. Accordingly, no financial statements with respect to any trust fund will be included in this prospectus or in the related prospectus supplement.

## Rating

It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement.

The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement. The rating will not constitute an assessment of the likelihood that principal prepayments on the related loans will be made, the degree to which the rate of the prepayments might differ from that originally anticipated or the likelihood of early optional termination of the series of securities. The rating should not be deemed a recommendation to purchase, hold or sell securities, inasmuch as it does not address market price or suitability for a particular investor. Each security rating should be evaluated independently of any other security rating. The rating will not address the possibility that prepayment at higher or lower rates than anticipated by an investor may cause the investor to experience a lower than anticipated yield or that an investor purchasing a security at a significant premium might fail to recoup its initial investment under certain prepayment scenarios.

105

<PAGE>

We can give no assurance that any the rating will remain in effect for any given period of time or that it may not be lowered or withdrawn entirely by the Rating Agency in the future if in its judgment circumstances in the future so warrant. In addition to being lowered or withdrawn due to any erosion in the adequacy of the value of the Trust Fund Assets or any credit enhancement with respect to a series, the rating might also be lowered or withdrawn among other reasons, because of an adverse change in the financial or other condition of a credit enhancement provider or a change in the rating of the credit enhancement provider's long term debt.

The amount, type and nature of credit enhancement, if any, established with respect to a series of securities will be determined on the basis of criteria established by each Rating Agency rating classes of the series. The criteria are sometimes based upon an actuarial analysis of the behavior of mortgage loans in a larger group. The analysis is often the basis upon which each Rating Agency determines the amount of credit enhancement required with respect to each the class. We can give no assurance that the historical data supporting the actuarial analysis will accurately reflect future experience nor assurance that the data derived from a large pool of mortgage loans accurately predicts the delinquency, foreclosure or loss experience of any particular pool of loans. We can give no assurance that values of any Properties have remained or will remain at their levels on the respective dates of origination of the related loans. If the residential real estate markets should experience an overall decline in property values such that the outstanding principal balances of the loans in a particular trust fund and any secondary financing on the related Properties become equal to or greater than the value of the Properties, the rates of delinquencies, foreclosures and losses could be higher than those now generally experienced in the mortgage lending industry. In addition, adverse economic conditions (which may or may not affect real property values) may affect the timely payment by mortgagors of scheduled payments of principal and interest on the loans and, accordingly, the rates of delinquencies, foreclosures and losses with respect to any trust fund. To the extent that those losses are not covered by credit enhancement, the losses will be borne, at least in part, by the holders of one or more classes of the securities of the related series.

<PAGE>

Index to Defined Terms

Accretion Directed................33
Accrual..........................35
Adjustable Rate..................35
Agency Securities................12
Agreement........................13
AMT..............................89
Asset Conservation Act...........74
Available Funds..................30
beneficial owner.................39
Book-Entry Securities............39
Callable.........................36
Capitalized Interest Account.....56
Cash Flow Bond Method............91
CERCLA...........................73
CI...............................41
Class Security Balance...........30
Clearstream, Luxembourg..........41
Code.............................79
COFI securities..................38
Collateral Value.................16
Companion Class..................33
Component Securities.............34
Contingent Regulations...........81
Cooperative......................41

cooperative loans.................13
cooperatives......................13
Cut-off Date Principal Balance....28
DBC...............................41
Debt securities...................80
Definitive Security...............39
depositor.........................24
Detailed Description..............13
Disqualified Organization.........87
DOL..............................100
DTC...............................39
Eleventh District.................37
ERISA............................100
Euroclear.........................39
Euroclear Operator................41
Euroclear Participants............41
European Depositaries.............39
excess servicing..................91
Exchange Act......................23
FHA...............................13
FHLBSF............................37
Final Bond Premium Regulations....83
Financial Intermediary............39
Fitch............................101
Fixed Rate........................35
Floating Rate.....................35
foreign person....................95
Funding Period....................56
Garn-St Germain Act...............76
Improper Knowledge................88
Indenture.........................28
Indirect Participants.............40
Insurance Proceeds................54
Insured Expenses..................54
Interest Only.....................35
Interest Weighted Securities......82
Inverse Floating Rate.............35
IRS...............................81
L/C Bank..........................45
L/C Percentage....................45
Liquidation Expenses..............54
Liquidation Proceeds..............54
Loan Rate.........................14
Loan-to-Value Ratio...............16
Master Servicing Agreement........12
Master Servicing Fee..............63
Moody's..........................101
Mortgage..........................52
mortgage related security........103
NAS...............................34
National Cost of Funds Index......38
NCUA.............................103
New CI............................41
new partnership...................97
Non-Accelerated Senior............34
Non-Agency Mortgage-Backed
Securities .......................12
Noneconomic Residual Interest.....88
Nonresidents......................93
Notional Amount Securities........34

```
obligations......................102
Offshore Location.................88
OID...............................80
OID Regulations...................80
old partnership...................97
OTS...............................38
PACs..............................34
Partial Accrual...................35
Participants......................39
Parties in Interest..............100
Pass-Through Securities...........90
Pay-Through Security..............81
Permitted Investments.............57
Plan Assets Regulation...........100
Planned Principal Class...........34
Plans............................100
Policy Statement.................103
Pool Insurance Policy.............47
Pool Insurer......................47
Pooling and Servicing Agreement...12
Pre-Funded Amount.................56
Pre-Funding Account...............56
Prepayment Assumption.............81
```

                                        107

<PAGE>

```
Primary Mortgage Insurance Policy.14
Prime Rate........................39
Principal Only....................35
Principal Prepayments.............31
Properties........................14
PTCE.............................100
Purchase Price....................26
Rating Agency...............101, 105
Ratio Strip Securities............91
RCRA..............................74
Record Date.......................29
Reference Bank Rate...............36
Refinance Loan....................16
Regular Interest Securities.......79
Relevant Depositary...............39
Relevant Implementation Date.....104
Relevant Member State............104
Relief Act......................7, 77
REMIC.........................29, 79
Residual Interest.................86
Restricted Group.................102
Retained Interest.................28
Rules.............................40
S&P..............................101
Sale and Servicing Agreement......12
Scheduled Principal Class.........34
SEC...............................13
secured creditor exemption........73
Securities Act....................23
Security Account..................53
Security Owners...................39
Security Register.................29
Sellers...........................12
```

```
Senior Securities.................44
Sequential Pay....................34
Servicing Fee.....................90
Short-Term Note...................94
Single Family Properties..........15
SMMEA............................103
Strip.............................34
Stripped Securities...............90
Subordinate Securities............44
Subsequent Loans..................56
Super Senior......................35
Support Class.....................35
TACs..............................35
Targeted Principal Class..........35
Tax Counsel.......................79
Terms and Conditions..............42
Title V...........................77
Trust Agreement...................13
Trust Fund Assets.................12
UCC...............................73
Underwriter Exemptions...........101
VA................................13
VA Guaranty.......................63
Variable Rate.....................35
Voting Rights.....................66
W-8BEN............................95
Withholding Agent.................95
```

108

<PAGE>

PART II

INFORMATION NOT REQUIRED IN PROSPECTUS

Item 14.  Other Expenses of Issuance and Distribution*

          The following table sets forth the estimated expenses in connection with the issuance and distribution of the Securities being registered under this Registration Statement, other than underwriting discounts and commissions:

| | |
|---|---:|
| SEC registration fee........................... | $    107.00** |
| Printing and engraving expenses............... | 25,000.00 |
| Legal fees and expenses....................... | 95,000.00 |
| Trustee fees and expenses..................... | 20,000.00 |
| Accounting fees and expenses................. | 30,000.00 |
| Blue Sky fees and expenses................... | 5,000.00 |
| Rating agency fees............................ | 200,000.00 |
| Miscellaneous................................ | 5,000.00 |
| | ------------ |
| Total.............................. | $ 380,107.00 |
| | ============ |

_____
*    All amounts except the SEC Registration Fee are estimates of expenses incurred in connection with the issuance and distribution of a Series of Securities in an aggregate principal amount assumed for these purposes

to be equal to $200,000,000 of Securities registered hereby.

**   This amount relates to the $1,000,000 of Mortgage Backed Securities
     registered hereby.

Item 15.  Indemnification of Directors and Officers.

        The Registrant's Certificate of Incorporation provides for
indemnification of directors and officers of the Registrant to the full extent
permitted by Delaware law.

        Section 145 of the Delaware General Corporation Law provides, in
substance, that Delaware corporations shall have the power, under specified
circumstances, to identify their directors, officers, employees and agents in
connection with actions, suits or proceedings brought against them by a third
party or in the right of the corporation, by reason of the fact that they were
or are such directors, officers, employees or agents, against expenses
incurred in any such action, suit or proceeding. The Delaware General
Corporation Law also provides that the Registrant may purchase insurance on
behalf of any such director, officer, employee or agent.


                                   II-1

<PAGE>



Item 16.  Exhibits.

1.1    --   Form of Underwriting Agreement.
1.2    --   Form of Indemnification and Contribution Agreement.
3.1*   --   Certificate of Incorporation of the Registrant.
3.2*   --   By-laws of the Registrant.
4.1    --   Form of Pooling and Servicing Agreement.
4.2    --   Form of Trust Agreement.
4.3    --   Form of Indenture.
4.4    --   Form of Sale and Servicing Agreement.
5.1    --   Opinion of Sidley Austin LLP as to legality of the Securities.
5.2    --   Opinion of Thacher Proffitt & Wood LLP as to legality of the
            Securities.
8.1    --   Opinion of Sidley Austin LLP as to certain tax matters (included
            in Exhibit 5.1).
8.2    --   Opinion of Thacher Proffitt & Wood LLP as to certain tax matters
            (included in Exhibit 5.2).
10.1   --   Form of Mortgage Loan Purchase Agreement.
10.2   --   Form of ISDA Master Agreement (Multicurrency - Cross Border).
23.1   --   Consent of Sidley Austin LLP (included in Exhibit 5.1).
23.2   --   Consent of Thacher Proffitt & Wood LLP (included in Exhibit 5.2).
24.1   --   Power of Attorney (included on Page II-5).
25.1   --   Statement of Eligibility of Trustee.
-----------
*     Incorporated by reference from the Registrant's Registration Statement
      (No. 333-110343).

Item 17.  Undertakings.

        The undersigned registrant hereby undertakes:

(1) To file, during any period in which offers or sales are being made, a post-effective amendment to this Registration Statement:

        (i) To include any prospectus required by Section 10(a)(3) of the Securities Act of 1933;

        (ii) To reflect in the prospectus any facts or events arising after the effective date of the registration statement (or the most recent post-effective amendment thereof) which, individually or in the aggregate, represent a fundamental change in the information set forth in the registration statement. Notwithstanding the foregoing, any increase or decrease in volume of securities offered (if the total dollar value of securities offered would not exceed that which was registered) and any deviation from the low or high end of the estimated maximum offering range may be reflected in the form of prospectus filed with the Commission pursuant to Rule 424(b) if, in the aggregate, the changes in volume and price represent no more than 20 percent change in the maximum aggregate offering price set forth in the "Calculation of Registration Fee" table in the effective registration statement;

        (iii) To include any material information with respect to the plan of distribution not previously disclosed in the registration statement or any material change to such information in the registration statement;

        provided, however, that the undertakings set forth in clauses (i), (ii) and (iii) above do not apply if the information required to be included in a post-effective amendment by those clauses is contained in periodic reports filed by the registrant pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934 that are incorporated by reference in this Registration Statement,

II-2

<PAGE>

or is contained in a form of prospectus filed pursuant to Rule 424(b) that is part of this Registration Statement; provided, further, however, that clauses (i) and (ii) above will not apply if the information required to be included in a post-effective amendment is provided pursuant to Item 1100(c) of Regulation AB (ss.229.1100(c));

(2) That, for the purpose of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof;

(3) To remove from registration by means of a post-effective amendment any of the securities being registered that remain unsold at the termination of the offering;

(4) That, for the purpose of determining liability under the Securities Act to any purchaser,

If the registrant is relying on Rule 430B:

(i) Each prospectus filed by the registrant pursuant to Rule 424(b)(3) shall be deemed to be part of this Registration Statement as of the date the filed prospectus was deemed part of and included in this Registration Statement; and

(ii) Each prospectus required to be filed pursuant to Rule 424(b)(2), (b)(5) or (b)(7) as part of a registration statement in reliance on Rule 430B relating to an offering made pursuant to Rule 415(a)(1)(i), (vii) or (x) for the purpose of providing the information required by Section 10(a) of the Securities Act shall be deemed to be part of and included in this registration statement as of the earlier of the date such form of prospectus is first used after effectiveness or the date of the first contract of sale of securities in the offering described in the prospectus. As provided in Rule 430B, for liability purposes of the issuer and any person that is at that date an underwriter, such date shall be deemed to be a new effective date of the registration statement relating to the securities in the registration statement to which that prospectus relates, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof. Provided, however, that no statement made in a registration statement or prospectus that is part of the registration statement or made in a document incorporated or deemed incorporated by reference into the registration statement or prospectus that is part of the registration statement will, as to a purchaser with a time of contract of sale prior to such effective date, supersede or modify any statement that was made in the registration statement or prospectus that was part of the registration statement or made in any such document immediately prior to such effective date;

(5) That, for the purpose of determining liability of the registrant under the Securities Act of 1933 to any purchaser in the initial distribution of the securities:

The undersigned registrant undertakes that in a primary offering of securities of the undersigned registrant pursuant to this Registration Statement, regardless of the underwriting method used to sell the securities to the purchaser, if the securities are offered or sold to such purchaser by means of any of the following communications, the undersigned registrant will be a seller to the purchaser and will be considered to offer or sell such securities to such purchaser:

(i) Any preliminary prospectus or prospectus of the undersigned registrant relating to the offering required to be filed pursuant to Rule 424;

          (ii) Any free writing prospectus relating to the offering prepared by or on behalf of the undersigned registrant or used or referred to by the undersigned registrant;

          (iii) The portion of any other free writing prospectus relating to the offering containing material information about the undersigned registrant or its securities provided by or on behalf of the undersigned registrant; and

                  II-3

<PAGE>

          (iv) Any other communication that is an offer in the offering made by the undersigned registrant to the purchaser;

          (6) For purposes of determining any liability under the Securities Act of 1933, each filing of the registrant's annual report pursuant to Section 13(a) or Section 15(d) of the Securities Exchange Act of 1934 (and, where applicable, each filing of an employee benefit plan's annual report pursuant to Section 15(d) of the Securities Exchange Act of 1934) that is incorporated by reference in this Registration Statement shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof;

          (7) To provide to the underwriter at the closing specified in the underwriting agreements, certificates in such denominations and registered in such names as required by the underwriter to permit prompt delivery to each purchaser;

          (8) Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted to directors, officers and controlling persons of the registrant pursuant to the foregoing provisions, or otherwise, the registrant has been advised that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Act and is, therefore, unenforceable. In the event that a claim for indemnification against such liabilities (other than the payment by the registrant of expenses incurred or paid by a director, officer or controlling person of the registrant in the successful defense of any action, suit or proceeding) is asserted by such director, officer or controlling person in connection with the securities being registered, the registrant will, unless in the opinion of its counsel the matter has been settled by controlling precedent, submit to a court of appropriate jurisdiction the question of whether such indemnification by it is against public policy as expressed in the Act and will be governed by the final adjudication of such issue;

          (9) For purposes of determining any liability under the Securities Act of 1933, each post-effective amendment that contains a form of prospectus shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof;

(10) That, for purposes of determining any liability under the Securities Act of 1933, each filing of the annual report pursuant to section 13(a) or section 15(d) of the Securities Exchange Act of 1934 of a third party that is incorporated by reference in the registration statement in accordance with Item 1100(c)(1) (17 CFR 229.1100(c)(1)) of Regulation AB shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof;

(11) That, except as otherwise provided by Item 1105 of Regulation AB (17 CFR 229.1105), information provided in response to that Item pursuant to Rule 312 of Regulation S-T (17 CFR 232.312) through the specified Internet address in the prospectus is deemed to be a part of the prospectus included in the registration statement; and

(12) To provide to any person without charge, upon request, a copy of the information provided in response to Item 1105 of Regulation AB pursuant to Rule 312 of Regulation S-T through the specified Internet address as of the date of the prospectus included in the registration statement if a subsequent update or change is made to the information.

II-4

<PAGE>

SIGNATURES

Pursuant to the requirements of the Securities Act of 1933, as amended, the Registrant certifies that it has reasonable grounds to believe that it meets all of the requirements for filing on Form S-3 and has duly caused this Registration Statement to be signed on its behalf by the undersigned, thereunto duly authorized, in the city of Calabasas, State of California on the 7th day of February 2006.

CWALT, INC.

By /s/ Stanford L. Kurland
   -------------------------
   Stanford L. Kurland
Chairman of the Board, President and Director
    (Chief Executive Officer)

POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints each of Stanford L. Kurland, Eric P. Sieracki and David A. Spector, or any of them, his true and lawful attorneys-in-fact and agents, with full power of substitution and resubstitution, for him and his name, place and stead, in any and all capacities, to sign any and all amendments (including post-effective

amendments) to this Registration Statement, and to file the same, with all
exhibits thereto, and other documents in connection therewith, with the
Securities and Exchange Commission, granting unto said attorneys-in-fact and
agents, and each of them, full power and authority to do and perform each and
every act and thing requisite and necessary to be done in and about the
premises, as fully to all intents and purposes as he might or could do in
person, hereby ratifying and confirming all that said attorneys-in-fact and
agents, or any of them, or their or his substitutes, may lawfully do or cause
to be done by virtue hereof.

          Pursuant to the requirements of the Securities Act of 1933, as
amended, this Registration Statement has been signed by the following persons
in the capacities and on the dates indicated.

```
      Signature                Title                      Date
/s/ Stanford L. Kurland   Chairman of the Board, President   February 7, 2006
------------------------  and Director (Chief
  Stanford L. Kurland     Executive Officer)

/s/ Eric P. Sieracki      Executive Vice President           February 7, 2006
------------------------  and Director (Chief Financial
   Eric P. Sieracki       Officer and Treasurer)

/s/ David A. Spector      Vice President and Director         February 7, 2006
------------------------
   David A. Spector
```

II-5

<PAGE>

EXHIBIT INDEX

```
1.1    --    Form of Underwriting Agreement.
1.2    --    Form of Indemnification and Contribution Agreement.
3.1*   --    Certificate of Incorporation of the Registrant.
3.2*   --    By-laws of the Registrant.
4.1    --    Form of Pooling and Servicing Agreement.
4.2    --    Form of Trust Agreement.
4.3    --    Form of Indenture.
4.4    --    Form of Sale and Servicing Agreement.
5.1    --    Opinion of Sidley Austin LLP as to legality of the Securities.
5.2    --    Opinion of Thacher Proffitt & Wood LLP as to legality of the
             Securities.
8.1    --    Opinion of Sidley Austin LLP as to certain tax matters (included
             in Exhibit 5.1).
8.2    --    Opinion of Thacher Proffitt & Wood LLP as to certain tax matters
             (included in Exhibit 5.2).
10.1   --    Form of Mortgage Loan Purchase Agreement.
10.2   --    Form of ISDA Master Agreement (Multicurrency - Cross Border).
23.1   --    Consent of Sidley Austin LLP (included in Exhibit 5.1).
23.2   --    Consent of Thacher Proffitt & Wood LLP (included in Exhibit 5.2).
24.1   --    Power of Attorney (included on Page II-5).
25.1   --    Statement of Eligibility of Trustee.
-----------
```

\*      Incorporated by reference from the Registrant's Registration Statement
        (No. 333-110343).

                                    II-6

</TEXT>
</DOCUMENT>

# EXHIBIT 2

```
<DOCUMENT>
<TYPE>S-3/A
<SEQUENCE>1
<FILENAME>efc6-0564_5834438forms3a.txt
<TEXT>
```

As filed with the Securities and Exchange Commission on March 6, 2006

Registration No. 333-131630
================================================================================
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549
-------------------------
PRE-EFFECTIVE AMENDMENT NO. 1
TO
REGISTRATION STATEMENT
ON
FORM S-3
UNDER THE SECURITIES ACT OF 1933


-------------------------
CWALT, INC.
(Exact Name of Registrant as Specified in its Charter)


Delaware                                    87-0698307
(State or other Jurisdiction of      (I.R.S. Employer Identification Number)
Incorporation or Organization)


4500 Park Granada
Calabasas, California 91302
(818) 225-3000
(Address, including zip code, and telephone number, including area code,
of registrant's principal executive offices)


-------------------------
SANDOR E. SAMUELS, ESQ.
Countrywide Home Loans, Inc.
4500 Park Granada
Calabasas, California 91302
(818) 225-3505
(Name, address, including zip code, and telephone number, including area code,
of agent for service)
-------------------------


With a copy to:
EDWARD J. FINE, ESQ.
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
-------------------------


Approximate date of commencement of proposed sale to the public: From
time to time on or after the effective date of the registration statement, as
determined by market conditions.

-------------------------


If the only securities being registered on this form are being offered

pursuant to dividend or interest reinvestment plans, please check the
following box. / /

        If any of the securities being registered on this form are to be offered
on a delayed or continuous basis pursuant to Rule 415 under the Securities Act
of 1933, please check the following box. /X/

        If this form is filed to register additional securities for an offering
pursuant to Rule 462(b) under the Securities Act, please check the following
box and list the Securities Act registration statement number of the earlier
effective registration statement for the same offering. / /_____

        If this form is a post-effective amendment filed pursuant to Rule 462(c)
under the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. / /_____

        If delivery of this Prospectus is expected to be made pursuant to Rule
434, please check the following box.  / /

        If this Form is a registration statement pursuant to General Instruction
I.D. or a post-effective amendment thereto that shall become effective upon
filing with the Commission pursuant to Rule 462(e) under the Securities Act,
check the following box.  / /

        If this Form is a post-effective amendment to a registration statement
filed pursuant to General Instruction I.D. filed to register additional
securities or additional classes of securities pursuant to Rule 413(b) under
the Securities Act, check the following box. / /


                        ------------------------


<TABLE>
<CAPTION>


                                                CALCULATION OF REGISTRATION FEE
================================================================================
                                                  Proposed Maximum       P
            Title of Each Class of           Amount to Be     Offering Price   Agg
            Securities to Be Registered      Registered (1)   Per Unit (2)
--------------------------------------------------------------------------------
<S>                                          <C>              <C>              <
Mortgage Backed Securities.............      $100,271,785,327     100%         $
================================================================================
</TABLE>

(1)   This Registration Statement relates to the offering from time to time of
      $100,271,785,327 aggregate principal amount of Mortgage Backed
      Securities.

(2)   Estimated for the purpose of calculating the registration fee.

(3)   A registration fee of $107.00 was previously paid with the filing of
      this Registration Statement on February 7, 2006. In addition, as set
      forth below, $29,081.03 was paid in connection with the Registration
      Statement on Form S-3 (Registration No. 333-125902, initially filed on
      June 17, 2005, as amended by Pre-Effective Amendment No. 1, filed on
      July 25, 2005, and Post-Effective Amendment No. 1, filed on December 13,
      2005) which is deemed to be withdrawn. The remaining $10,699,893.00 is
      being paid in connection with the filing of this Amendment No. 1.
                        ------------------------

        Pursuant to Rule 457 of the Securities and Exchange Commission's Rules
and Regulations under the Securities Act of 1933, as amended, the net fee
available is offset against the filing fee currently due in connection with
this registration statement.

(1)    The filing fee paid in respect of Registration No. 333-125902 (including
       any available offset) was $5,524,977.26.
(2)    From July 25, 2005, the date Regisration No. 333-125902 became effctive,
       until the date of this filing, the Registrant issued $46,694,105,582 of
       Mortgage Backed Securities (at the fee rate of $117.70 per million),
       thereby reducing the Registrant's available fee by $5,495,896.23.
(3)    The net fee available for recovery under Rule 457(p) (i.e., the amount
       set forth in Paragraph 1, less the amount set forth in Paragraph 2) is
       therefore $29,081.03.
(4)    At a fee rate of $107.00 per million, this paid and unused filing fee is
       sufficient to register $271,785,327 of Morgage Backed Securities.


       =======================================================================
                                       2
<PAGE>


The information in this prospectus supplement is not complete and may be
changed. We may not sell these securities until the registration statement
filed with the Securities and Exchange Commission is effective. This
prospectus supplement is not an offer to sell these securities and it is not
soliciting offers to buy these securities in any state where the offer or sale
is not permitted.


          SUBJECT TO COMPLETION, DATED [ ]


PROSPECTUS SUPPLEMENT
(To Prospectus dated [            ], 2006)

                                $
                           (Approximate)
                           CWALT, INC.
                            Depositor
                   [COUNTRYWIDE HOME LOANS, INC.]
                        Sponsor and Seller
                 [Countrywide Home Loans Servicing LP]
                        Master Servicer
                  Alternative Loan Trust 200[ ]-[ ]
                         Issuing Entity
           Mortgage Pass-Through Certificates, Series 200[ ]-[ ]


        Distributions are payable on the [ ]th day of each month,
                      beginning in [ ], 200[ ]
                      ----------------


The issuing entity will issue certificates, including the following classes of
certificates being offered pursuant to this prospectus supplement and the
accompanying prospectus:

<TABLE>
<CAPTION>
--------------------------------------------------------------    --------------

| Class | Original Note Principal Balance(1) | Price to Public | Underwriting Discount | Proceeds to Depositor(2) | Class | Ori N Pri Bal |
|-------|-----------|------|------|------|-------|------|
| <S> | <C> | <C> | <C> | <C> | <C> | < |
| [AF-1A] | $ | % | % | % | [BF] | $ |
| [AF-1B] | $ | % | % | % | [2-AV-1] | $ |
| [AF-2] | $ | % | % | % | [2-AV-2] | $ |
| [AF-3] | $ | % | % | % | [3-AV-1] | $ |
| [AF-4] | $ | % | % | % | [3-AV-2] | $ |
| [AF-5A] | $ | % | % | % | [3-AV-3] | $ |
| [AF-5B] | $ | % | % | % | [3-AV-4] | $ |
| [AF-6] | $ | % | % | % | [MV-1] | $ |
| [MF-1] | $ | % | % | % | [MV-2] | $ |
| [MF-2] | $ | % | % | % | [MV-3] | $ |
| [MF-3] | $ | % | % | % | [MV-4] | $ |
| [MF-4] | $ | % | % | % | [MV-5] | $ |
| [MF-5] | $ | % | % | % | [MV-6] | $ |
| [MF-6] | $ | % | % | % | [MV-7] | $ |
| [MF-7] | $ | % | % | % | [MV-8] | $ |
| [MF-8] | $ | % | % | % | [BV] | $ |
|  |  |  |  |  | A-R | $ |

</TABLE>

<TABLE>
<CAPTION>
--------------------------------          _____
<S>                                       <C>
Consider carefully the                    (1)  This amount is subject to a permitted vari
risk factors beginning on                      or minus [   ]%.
page S-[ ] in this                        (2)  Before deducting expenses payable by the D
prospectus supplement and                      approximately $[          ] in the a
on page 2 in the                          (3)  The [Class A-R] certificates will not be p
prospectus.                                    and are being transferred to [Countrywide
                                               consideration for the sale of the mortgage
                                               Distribution" in this prospectus supplemen
The certificates represent
obligations of the issuing                The classes of certificates offered by this pro
entity only and do not                    listed, together with their interest rates, in
represent an interest in                  Description of the Certificates" on page S-[  ]
or obligation of CWALT,                   supplement. This prospectus supplement and the
Inc., [Countrywide Home                   relate only to the offering of the certificates
Loans, Inc.] or any of                    other classes of certificates that will be issu
their affiliates.

This prospectus supplement may be used to offer and sell the offered certificates only if accompanied by the prospectus.

The certificates represent interests in a pool rate] mortgage loans that are secured by [first four-family residential properties, as describe supplement.

Credit Enhancement for the certificates may con
- o    [Overcollateralization];
- o    [Subordination];
- o    [With respect to the adjustable ra interest rate corridor contracts];
- o    [With respect to the [Class AF-5B] Certificate guaranty insurance pol
The credit enhancement for each class of certif enhancement is available for every class. [Amou rate corridor contracts are only available to m [adjustable rate] certificates.] [The [Class AF insurance policy only applies to the [Class

<PAGE>

AF-5B] Certificates.] The credit enhancement fo in more detail in the prospectus supplement.

</TABLE>

These securities have not been approved or disapproved by the Securities and Exchange Commission or any state securities commission nor has the Securities and Exchange Commission or any state securities commission passed upon the accuracy or adequacy of this prospectus supplement or the prospectus. Any representation to the contrary is a criminal offense.

[Underwriter]
                            [Underwriter]
                                                        [Underwriter]
[          ], 200[    ]

<PAGE>

<TABLE>
<CAPTION>

                                        Table of Contents

<S>                                     <C>            <C>
Prospectus Supplement                   Page                Rights Upon Ev
---------------------                   ----                Optional Termi
                                                            Certain Matter
Summary...................................S-1                  Servicer, t
Summary of Transaction Parties...................S-19        [and the NI
Risk Factors....................................S-20         The Trustee...
The Mortgage Pool...............................S-29         [Co-Trustee]..
    General.....................................S-29         Restrictions o
    The Statistical Calculation Pool............S-32            Certificate
    Assignment of the Mortgage Loans............S-48         Ownership of t
    [Pre-Funding]...............................S-50         Restrictions o
    Underwriting Standards......................S-52            Requirement
Servicing of the Mortgage Loans.................S-57         [Rights of the
    General.....................................S-57            Pooling and
    The Master Servicer.........................S-58        Yield, Prepayment a
    [Countrywide Home Loans]....................S-58            General.......
    Loan Servicing..............................S-59            Prepayments an
    Collection Procedures.......................S-60            Certificate
    Servicing Compensation and Payment                         Last Scheduled

        of Expenses...............................S-61
    Adjustment to Servicing Fee in
        Connection With Certain
        Prepaid Mortgage Loans...................S-62
    Advances......................................S-62
The Issuing entity................................S-63
Static Pool Data..................................S-63
Description of the Certificates...................S-63
    General.......................................S-63
    Denominations.................................S-65
    Book-Entry Certificates.......................S-65
    Glossary of Terms.............................S-66
    Deposits to the Certificate Account.........S-79
    Withdrawals from the Certificate Account....S-80
    Deposits to the Distribution Account........S-81
    Withdrawals from the Distribution Account...S-81
    Investments of Amounts Held in Accounts.....S-82
    Fees and Expenses.............................S-84
    Distributions.................................S-87
    [Overcollateralization Provisions]..........S-94
    [The Corridor Contracts]....................S-96
    [Calculation of One-Month LIBOR]...........S-102
    [Carryover Reserve Fund]...................S-103
    [Credit Comeback Excess Account]...........S-103
    [Applied Realized Loss Amounts]............S-103
    [[Class AF-5B] Certificate Guaranty
        Insurance Policy.........................S-104
    The [Class AF-5B] Insurer]................S-108
    Reports to Certificateholders..............S-108
    Amendment....................................S-110
    Voting Rights................................S-110
    Optional Purchase of Defaulted Loans.......S-110
    Events of Default...........................S-111

&lt;/TABLE&gt;


&lt;PAGE&gt;

                                          Page
                                          ----
Prospectus
----------

Important Notice About Information in This
    Prospectus and Each Accompanying
    Prospectus Supplement........................4

Risk Factors......................................5

The Trust Fund...................................16

Use of Proceeds..................................22

The Depositor....................................22

Loan Program.....................................22

Description of the Securities....................25

                                   Prepayment Mod
                                   Decrement Tabl
                                   Additional Inf
                             Legal Proceedings..
                             Material Federal In
                                   Taxation of th
                                       Components
                                   Taxation of th
                                       Components
                                       Certificate
                                   Dispositions o
                                   Tax Treatment
                                   Integration...
                                   The Carryover
                                   Residual Certi
                             Other Taxes........
                             ERISA Consideration
                             Method of Distribut
                             Use of Proceeds....
                             Legal Matters......
                             [Experts]..........
                             Ratings............
                             Index of Defined Te


                             ANNEX I............

                                   i

Credit Enhancement................................41

Yield and Prepayment Considerations..............46

The Agreements...................................49

Certain Legal Aspects of the Loans...............63

Material Federal Income Tax Consequences........77

Other Tax Considerations.........................98

ERISA Considerations.............................99

Legal Investment................................102

Method of Distribution..........................103

Legal Matters...................................104

Financial Information...........................104

Rating..........................................104

Index to Defined Terms..........................106

ii

<PAGE>


SUMMARY

This summary highlights selected information from this document and does not
contain all of the information that you need to consider when making your
investment decision. To understand all of the terms of an offering of the
certificates, read this entire document and the accompanying prospectus
carefully.

While this summary contains an overview of certain calculations, cash flow
priorities and other information to aid your understanding, you should read
carefully the full description of these calculations, cash flow priorities and
other information in this prospectus supplement and the accompanying
prospectus before making any investment decision.

Issuing Entity

Alternative Loan Trust 200[ ]-[ ], a [common law] trust formed under the laws
of the State of [New York].

Depositor

CWALT, Inc., a Delaware corporation and a limited purpose finance subsidiary
of Countrywide Financial Corporation, a Delaware corporation.

See "The Depositor" in the prospectus.

Sponsor and Sellers

[Countrywide Home Loans, Inc.] will be the sponsor of the transaction [and a
seller of the mortgage loans]. [Other sellers may include one or more special

purpose entities established by Countrywide Financial Corporation or one of
its subsidiaries, which acquired the mortgage loans they are selling directly
from Countrywide Home Loans, Inc.]

See "Servicing of the Mortgage Loans -- Countrywide Home Loans" in this
prospectus supplement.

Master Servicer

[Countrywide Home Loans Servicing LP.]

See "Servicing of the Mortgage Loans -- The Master Servicer" in this
prospectus supplement.

Trustee

[Name of Trustee]

See "Description of the Certificates -- The Trustee" in this prospectus
supplement.

[Co-Trustee

[Name of Co-Trustee]

See "Description of the Certificates -- The Co-Trustee" in this prospectus
supplement.]

[The [Class AF-5B] Insurer

[Name of Insurer] will unconditionally and irrevocably guarantee certain
payments on the [Class AF-5B] Certificates on each distribution date pursuant
to the terms of a certificate guaranty insurance policy.

See "Description of the Certificates -- The [Class AF-5B] Certificate Guaranty
Insurance Policy" and -- The [Class AF-5B] Insurer" in this prospectus
supplement.]

[The NIM Insurer

After the closing date, a separate trust or trusts (or other form of entity)
may be established to issue net interest margin securities secured by all or a
portion of the [Class PF, Class PV, Class CF and Class CV] Certificates. Those
net interest margin securities may have the benefit of one or more financial
guaranty insurance policies that guaranty payments on those securities. The
insurer or insurers issuing these financial guaranty insurance policies are
referred to in this prospectus supplement as the "NIM Insurer." The references
to the NIM Insurer in this prospectus supplement apply only if the net
interest margin securities are so insured.

Any NIM Insurer will have a number of rights under the pooling and servicing
agreement that will limit and otherwise affect the rights of the holders of
the offered certificates. Any insurance policy issued by a NIM Insurer will
not cover, and will not benefit in any manner whatsoever, the offered
certificates.

See "Risk Factors--Rights of the NIM Insurer" in this prospectus supplement.]

Pooling and Servicing Agreement

The pooling and servicing agreement among the sellers, the master servicer,
the depositor, the trustee [and the co-trustee], under which the issuing

entity will be formed.

--------------------------------------------------------------------------------
                                     S-1

<PAGE>

--------------------------------------------------------------------------------
Cut-off Date

Initial Mortgage Loans:

The later of [ ], 200[ ] and the origination date of that mortgage loan
(referred to as the initial cut-off date).

Subsequent Mortgage Loans:

The later of the first day of the month of the related subsequent transfer
date and the origination date of that subsequent mortgage loan (referred to as
the subsequent cut-off date).

Closing Date

On or about [                        ], 200[  ].

[Pre-Funding

On the closing date, the depositor may elect to deposit an amount of up to 25%
of the initial certificate principal balance of the offered certificates in a
pre-funding account (referred to as the pre-funded amount).

Pre-Funded Amount:

Any pre-funded amount shall not exceed 25% of the initial certificate
principal balance of the offered certificates, which will be allocated among
the loan groups so that the amount allocated to any loan group will not exceed
25% of the certificate principal balance of the classes of certificates
related to that loan group.

Funding Period:

If the depositor elects to deposit a pre-funded amount on the closing date,
the funding period will begin on the closing date and end on the earlier of
(x) the date the amount in the pre-funding account is less than $[ ] and (y) [
], 200[ ].

Use of Pre-Funded Amount:

If the depositor elects to deposit a pre-funded amount on the closing date,
the pre-funded amount is expected to be used to purchase subsequent mortgage
loans. Any pre-funded amount not used during the funding period to purchase
subsequent mortgage loans will be distributed to holders of the related senior
certificates as a prepayment of principal on the distribution date immediately
following the end of the funding period.

Restrictions on Subsequent Mortgage Loan Purchases:

Purchases of subsequent mortgage loans are subject to the same criteria as the

initial mortgage loans and additional restrictions related to the composition
of the related loan group following the acquisition of the subsequent mortgage
loans, as described in this prospectus supplement.

Interest Shortfall Payments:

To the extent needed to make required interest payments on the offered
certificates and to pay the [Class AF-5B] Insurer the [Class AF-5B] policy
premium on or prior to the [ ] 200[ ] distribution date, [Countrywide Home
Loans, Inc.] will make interest shortfall payments to the issuing entity to
offset shortfalls in interest collections attributable to the pre-funding
mechanism or because newly originated loans do not have a payment due date in
the due period related to the subject distribution date.

See "The Mortgage Pool -- Pre-Funding" in this prospectus supplement.]

The Mortgage Loans

The mortgage pool will consist of [fixed and adjustable rate] mortgage loans
that are secured by [first] liens on one- to four-family properties. The
mortgage loans will be divided into [three] separate groups. Each group of
mortgage loans is referred to as a "loan group." Loan group [1] will consist
of [first lien] [fixed] rate mortgage loans. Loan group [2] and loan group [3]
will consist of [first lien] [adjustable] rate mortgage loans.

See "The Mortgage Pool" in this prospectus supplement.

[Statistical Calculation Information]

The statistical information presented in this prospectus supplement relates to
a statistical calculation pool that does not reflect all of the mortgage loans
that will be included in the issuing entity. Additional mortgage loans will be
included in the mortgage pool on the closing date and may be included during
the funding period. In addition, certain mortgage loans in the statistical
calculation pool may not be included in the mortgage pool on the closing date
because they have prepaid in full or were determined not to meet the
eligibility requirements for the mortgage pool.

--------------------------------------------------------------------------------

S-2

<PAGE>

--------------------------------------------------------------------------------

The information with respect to the statistical calculation pool is, unless
otherwise specified, based on the scheduled principal balances as of [ ], 200[
], which is the statistical calculation date. The aggregate stated principal
balance of the statistical calculation pool as of the statistical calculation
date is referred to as the statistical calculation date pool principal
balance. As of the statistical calculation date, the statistical calculation
date pool principal balance was approximately $[ ], approximately $[ ] of
which consisted of group [1] mortgage loans, approximately $[ ] of which
consisted of group [2] mortgage loans and approximately $[ ] of which
consisted of group [3] mortgage loans.

Unless otherwise noted, all statistical percentages are measured by the
statistical calculation date pool principal balance.

As of the statistical calculation date, the group [1] mortgage loans in the statistical calculation pool had the following characteristics:

```
Aggregate Current Principal Balance     $[          ]
Weighted Average Mortgage Rate           [          ]%
Range of Mortgage Rates                  [          ]% to
                                         [          ]%
Average Current Principal Balance       $[          ]
Range of Outstanding Principal
   Balances                             $[          ] to
                                        $[          ]
Weighted Average Original LTV            [          ]%
Weighted Average Original Term to
   Maturity                              [          ] months
Weighted Average Credit Risk Score
                                         [          ]
Weighted Average Remaining Term to
   Stated Maturity                       [          ] months
Geographic Concentrations in excess
   of 10%:
   [      ]                              [          ]%
   [      ]                              [          ]%
```

As of the statistical calculation date, the group [2] mortgage loans in the statistical calculation pool had the following characteristics:

```
Aggregate Current Principal Balance     $[          ]
Weighted Average Gross Margin            [          ]%
Range of Gross Margins                   [          ]% to
                                         [          ]%
Average Current Principal Balance       $[          ]
Range of Outstanding Principal
   Balances                             $[          ] to
                                        $[          ]
Weighted Average Original LTV            [          ]%
Weighted Average Original Term to
   Maturity                              [          ] months
Weighted Average Credit Risk Score
                                         [          ]
Weighted Average Remaining Term to
   Stated Maturity                       [          ] months
Geographic Concentrations in excess
   of 10%:
   [      ]                              [          ]%
   [      ]                              [          ]%
```

As of the statistical calculation date, the group [3] mortgage loans in the statistical calculation pool had the following characteristics:

```
Aggregate Current Principal Balance     $[          ]
Weighted Average Gross Margin            [          ]%
Range of Gross Margins                   [          ]% to
                                         [          ]%
Average Current Principal Balance       $[          ]
Range of Outstanding Principal
   Balances                             $[          ] to
                                        $[          ]
Weighted Average Original LTV            [          ]%
Weighted Average Original Term to
   Maturity                              [          ] months
Weighted Average Credit Risk Score
```

```
                                           [        ]
Weighted Average Remaining Term to
   Stated Maturity                         [        ] months
Geographic Concentrations in excess
   of 10%:
   [      ]                                [        ]%
   [      ]                                [        ]%
```

--------------------------------------------------------------------------------

                                    S-3

<PAGE>

--------------------------------------------------------------------------------

Description of the Certificates

The issuing entity will issue [ ] classes of certificates, [ ] of which are
offered by this prospectus supplement and the accompanying prospectus:

<TABLE>
<CAPTION>

| Class | Initial Certificate Principal Balance (1) | Type | Final Schedu Distribution (2) |
|---|---|---|---|
| Offered Notes | | | |
| <S> | <C> | <C> | <C> |
| [AF-1A]................. | $ | [Senior/Adjustable Rate] | [       ] |
| [AF-1B]................. | $ | [Senior/Fixed Rate] | [       ] |
| [AF-2].................. | $ | [Senior/Fixed Rate] | [       ] |
| [AF-3].................. | $ | [Senior/Fixed Rate] | [       ] |
| [AF-4].................. | $ | [Senior/Fixed Rate] | [       ] |
| [AF-5A]................. | $ | [Senior/Fixed Rate] | [       ] |
| [AF-5B]................. | $ | [Senior/Fixed Rate] | [       ] |
| [AF-6].................. | $ | [Senior/Fixed Rate/Non-Accelerated Senior] | [       ] |
| [MF-1].................. | $ | [Subordinate/Fixed Rate] | [       ] |
| [MF-2].................. | $ | [Subordinate/Fixed Rate] | [       ] |
| [MF-3].................. | $ | [Subordinate/Fixed Rate] | [       ] |
| [MF-4].................. | $ | [Subordinate/Fixed Rate] | [       ] |
| [MF-5].................. | $ | [Subordinate/Fixed Rate] | [       ] |
| [MF-6].................. | $ | [Subordinate/Fixed Rate] | [       ] |
| [MF-7].................. | $ | [Subordinate/Fixed Rate] | [       ] |
| [MF-8].................. | $ | [Subordinate/Fixed Rate] | [       ] |
| [BF]................... | $ | [Subordinate/Fixed Rate] | [       ] |
| [2-AV-1]................ | $ | [Senior/Adjustable Rate] | [       ] |
| [2-AV-2]................ | $ | [Senior Support/Adjustable Rate] | [       ] |
| [3-AV-1]................ | $ | [Senior/Adjustable Rate] | [       ] |
| [3-AV-2]................ | $ | [Senior/Adjustable Rate] | [       ] |
| [3-AV-3]................ | $ | [Senior/Adjustable Rate] | [       ] |
| [3-AV-4]................ | $ | [Senior/Adjustable Rate] | [       ] |
| [MV-1].................. | $ | [Subordinate/Adjustable Rate] | [       ] |
| [MV-2].................. | $ | [Subordinate/Adjustable Rate] | [       ] |

```
[MV-3]...................    $          [Subordinate/Adjustable Rate]   [        ]
[MV-4]...................    $          [Subordinate/Adjustable Rate]   [        ]
[MV-5]...................    $          [Subordinate/Adjustable Rate]   [        ]
[MV-6]...................    $          [Subordinate/Adjustable Rate]   [        ]
[MV-7]...................    $          [Subordinate/Adjustable Rate]   [        ]
[MV-8]...................    $          [Subordinate/Adjustable Rate]   [        ]
[BV]....................     $          [Subordinate/Adjustable Rate]   [        ]
[A-R]...................     $              [Senior/REMIC Residual]     [        ]
Non-Offered
Certificates(5)
[Class PF]..............    N/A            [Prepayment Charges]        N/A
[Class PV]..............    N/A            [Prepayment Charges]        N/A
[Class CF]..............    N/A                 [Residual]             N/A
[Class CV]..............    N/A                 [Residual]             N/A
</TABLE>
```
--------------

(1)  This amount is subject to a permitted variance in the aggregate of plus
     or minus [10]% depending on the amount of mortgage loans actually
     delivered on the closing date.

(2)  Each date was determined as described under "Yield, Prepayment and
     Maturity Considerations" in this prospectus supplement.

(3)  The offered certificates will not be offered unless they are assigned the
     indicated ratings by [Moody's Investors Service, Inc. ("Moody's")] and
     [Standard & Poor's Ratings Services, a division of The McGraw-Hill
     Companies, Inc. ("S&P")]. "N/R" indicates that the agency was not asked
     to rate the certificates. A rating is

--------------------------------------------------------------------------------

                                      S-4

<PAGE>

--------------------------------------------------------------------------------

     not a recommendation to buy, sell or hold securities. These ratings may
     be lowered or withdrawn at any time by either of the rating agencies.
     See "Ratings" in this prospectus supplement.

(4)  [The ratings assigned to the [Class AF-5B] Certificates will be issued
     without regard to the [Class AF-5B] policy.]

(5)  The [Class PF, Class PV, Class CF and Class CV] Certificates are not
     offered by this prospectus supplement. Any information contained in this
     prospectus supplement with respect to the [Class PF, Class PV, Class CF
     and Class CV] Certificates is provided only to permit a better
     understanding of the offered certificates.

The certificates will also have the following characteristics:

```
<TABLE>
<CAPTION>
                        [Related      Interest Rate        Interest Rate
                          Loan         Before                After
                          Group       Optional              Optional
          Class           (1)]     Termination Date (2)  Termination Date (2)     De
-----------------       --------   --------------------  --------------------   -------
       <S>                 <C>            <C>                   <C>                <C>
Offered
Certificates
[AF-1A].........         [1]       [LIBOR] + [ ]% (3)    [LIBOR] + [ ]% (3)     [0] d
[AF-1B].........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[AF-2]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[AF-3]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[AF-4]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[AF-5A].........         [1]              [ ]% (9)              [ ]% (9)         [24] d
[AF-5B].........         [1]              [ ]% (9)              [ ]% (9)         [24] d
[AF-6]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[MF-1]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[MF-2]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[MF-3]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[MF-4]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[MF-5]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[MF-6]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[MF-7]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[MF-8]..........         [1]              [ ]% (6)              [ ]% (6)         [24] d
[BF]............         [1]              [ ]% (6)              [ ]% (6)         [24] d
[2-AV-1]........         [2]       [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[2-AV-2]........         [2]       [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[3-AV-1]........         [3]       [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[3-AV-2]........         [3]       [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[3-AV-3]........         [3]       [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[3-AV-4]........         [3]       [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[MV-1]..........    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[MV-2]..........    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[MV-3]..........    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[MV-4]..........    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[MV-5]..........    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[MV-6]..........    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[MV-7]..........    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[MV-8]..........    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[BV]............    [2 and 3]      [LIBOR] + [ ]% (10)   [LIBOR] + [ ]% (10)    [0] d
[A-R]...........   [1,2 and 3]           (11)                  (11)

Non-Offered
Certificates
[Class PF]....       [1]                 N/A                   N/A
[Class PV]....   [2 and 3]               N/A                   N/A
[Class CF]....       [1]                 N/A                   N/A
[Class CV]....   [2 and 3]               N/A                   N/A
--------------
</TABLE>
```

(1)  Generally, distributions of principal and interest on the certificates
     will be based on amounts available for distribution in respect of the
     mortgage loans in the related loan group or groups, however, in some
     circumstances amounts from an unrelated loan group or groups may be
     allocated to make payments on a class of certificates. For a more
     detailed description of how the offered certificates will be backed by
     these

--------------------------------------------------------------------------------

                                      S-5

<PAGE>

--------------------------------------------------------------------------------

        cashflows, see "Description of the Certificates -- Distributions" and
        "-- Overcollateralization Provisions" in this prospectus supplement.

 (2)   If on any distribution date, the pass-through rate for a class of offered
       certificates (other than the [Class A-R] Certificates) is based on the
       applicable interest rate cap, each holder of the applicable certificates
       will be entitled to receive the resulting shortfall from remaining excess
       cashflow (if any) to the extent described in this prospectus supplement
       under "Description of the Certificates -- Overcollateralization
       Provisions", [and in the case of the [adjustable rate certificates] only,
       from payments allocated to the issuing entity (if any) in respect of the
       related interest rate corridor contract as described in this prospectus
       supplement under "Description of the Certificates -- Distributions --
       Distributions of Funds from the Corridor Contracts."]

 (3)   The pass-through rate for the [Class AF-1A] Certificates may adjust
       monthly and will be subject to an interest rate cap, as described in this
       prospectus supplement under "Description of the Certificates --
       Distributions -- Distributions of Interest." LIBOR refers to [One-Month]
       LIBOR for the related interest accrual period calculated as described in
       this prospectus supplement under "Description of the Certificates --
       Calculation of One-Month LIBOR."

 (4)   [The interest accrual period for any distribution date will be the
       one-month period from and including the preceding distribution date (or
       from and including the closing date, in the case of the first
       distribution date) to and including the day prior to the current
       distribution date.]

 (5)   [Interest accrues at the rate specified in this table based on a 360-day
       year and the actual number of days elapsed during the related accrual
       period.]

 (6)   [The pass-through rates for the [Class AF-1B], [Class AF-2], [Class
       AF-3], [Class AF-4] and [Class AF-6] Certificates and the [fixed rate
       subordinate certificates] will be subject to an interest rate cap, as
       described in this prospectus supplement under "Description of the
       Certificates -- Distributions -- Distributions of Interest."]

 (7)   [The interest accrual period for any distribution date will be the
       calendar month preceding that distribution date.]

 (8)   [Interest accrues at the rate specified in this table based on a 360-day
       year that consists of twelve 30-day months.]

 (9)   [The pass-through rates for the [Class AF-5A] and [Class AF-5B]
       Certificates will be subject to increase after the optional termination
       date as shown in this table and will be subject to an interest rate cap,
       as described in this prospectus supplement under "Description of the
       Certificates -- Distributions -- Distributions of Interest."]

(10)   [The pass-through rates for the [Class 2-AV-1], [Class 2-AV-2], [Class

3-AV-1], [Class 3-AV-2], [Class 3-AV-3] and [Class 3-AV-4] Certificates
and the [adjustable rate subordinate certificates] may adjust monthly,
will be subject to increase after the optional termination date as shown
in this table and will be subject to an interest rate cap, in each case
as described in this prospectus supplement under "Description of the
Certificates -- Distributions -- Distributions of Interest." LIBOR refers
to One-Month LIBOR for the related interest accrual period calculated as
described in this prospectus supplement under "Description of the
Certificates -- Calculation of One-Month LIBOR."]

(11) [The Class A-R Certificates will not accrue any interest.]

See "Description of the Certificates" in this prospectus supplement.

--------------------------------------------------------------------------------

S-6

<PAGE>

--------------------------------------------------------------------------------

Designations

| Designation | Class of Certificates |
| ----------- | --------------------- |
| [Class AF Certificates:] | [Class AF-1A, Class AF-1B, Class AF-2, Class AF-3, Class AF-4, Class AF-5A, Class AF-5B and Class AF-6 Certificates.] |
| [Class AV Certificates:] | [Class 2-AV-1, Class 2-AV-2, Class 3-AV-1, Class 3-AV-2, Class 3-AV-3 and Class 3-AV-4 Certificates.] |
| [Senior Certificates:] | [Class AF, Class AV and Class A-R Certificates.] |
| [Subordinate Certificates:] | [Class MF-1, Class MF-2, Class MF-3, Class MF-4, Class MF-5, Class MF-6,Class MF-7, Class MF-8, Class BF, Class MV-1, Class MV-2, Class MV-3, Class MV-4, Class MV-5, Class MV-6, Class MV-7, Class MV-8 and Class BV Certificates.] |
| [Adjustable Rate Subordinate Certificates:] | [Class MV-1, Class MV-2, Class MV-3, Class MV-4, Class MV-5, Class MV-6, Class MV-7, Class MV-8 and Class BV Certificates.] |
| [Fixed Rate Certificates:] | [Class AF-1B, Class AF-2, Class AF-3, Class AF-4, Class AF-5A, Class AF-5B and Class AF-6 Certificates and the Fixed Rate Subordinate Certificates.] |
| [Adjustable Rate Certificates:] | [Class AF-1A and Class AV Certificates and the Adjustable Rate Subordinate Certificates.] |
| [Fixed Rate Subordinate Certificates:] | [Class MF-1, Class MF-2, Class MF-3, Class MF-4, Class MF-5, Class MF-6, Class MF-7, Class MF-8 and Class BF Certificates.] [Offered [Senior Certificates and the Subordinate Certificates.] |

Record Date

[Adjustable Rate Certificates:]

[The business day immediately preceding a distribution date, or if the adjustable rate certificates are no longer book-entry certificates, the last business day of the month preceding the month of a distribution date. ]

[Class A-R Certificate and Fixed Rate Certificates:]

[The last business day of the month preceding the month of a distribution date.]

Denominations

$[20,000] and multiples of $[1,000] in excess thereof, except that the [Class A-R] Certificates will be issued as two certificates in the denominations specified in the pooling and servicing agreement.

Registration of Certificates

[Offered Certificates other than the Class A-R Certificates:]

Book-entry form. Persons acquiring beneficial ownership interests in the offered certificates (other than the [Class A-R] Certificates) may elect to hold their beneficial interests through The Depository Trust Company, in the United States, or Clearstream, Luxembourg or the Euroclear System, in Europe.

[Class A-R Certificates:]

Fully registered certificated form. The [Class A-R] Certificates will be subject to certain restrictions on transfer described in this prospectus supplement and as more fully provided for in the pooling and servicing agreement.

See "Description of the Certificates -- Book-Entry Certificates" and "-- Restrictions on Transfer of the Class A-R Certificates" in this prospectus supplement.

Distribution Dates

Beginning on [ ], 200[ ], and thereafter on the [ ]th day of each calendar month, or if the [ ]th is not a business day, the next business day.

Interest Payments

On each distribution date, holders of each class of interest-bearing certificates will be entitled to receive:

o    the interest that has accrued during the related accrual period at the related pass-through rate on the certificate principal balance immediately prior to the applicable distribution date, and

o    [any interest due on a prior distribution date that was not paid].

The related accrual period, interest calculation convention and pass-through rate for each class of interest-bearing certificates is shown in the table on page S-[ ].

--------------------------------------------------------------------------------

S-7

<PAGE>

--------------------------------------------------------------------------------

For each class of subordinate certificates, any interest carry forward amount (which is interest due on a prior distribution date that was not paid on a prior distribution date) will be payable from excess cashflow as and to the extent described in this prospectus supplement, [and in the case of the [adjustable rate subordinate certificates] only, from payments allocated to the issuing entity (if any) in respect of the related interest rate corridor contract in the manner described in this prospectus supplement].

There are certain circumstances that could reduce the amount of interest paid to you.

See "Description of the Certificates -- Distributions -- Distributions of Interest" in this prospectus supplement.

Principal Payments

On each distribution date, certificateholders will only receive a distribution of principal on their certificates if there is cash available on that date for the payment of principal. The manner of distributing principal among the classes of certificates will depend on the priority of payments, which will differ, as described in this prospectus supplement, depending upon [whether a distribution date occurs before the stepdown date, or on or after that date, and will depend on the loss and delinquency performance of the mortgage loans].

See "Description of the Certificates -- Distributions -- Distributions of Principal Distributable Amount for Loan Group [1]" and "--Distributions of Principal Distributable Amount for Loan Group [2] and Loan Group [3]" in this prospectus supplement.

Amounts Available for Distributions on the Certificates

Amounts Available with respect to [Interest] Distributions

The amount available for [interest] distributions on the certificates on any distribution date will be calculated on a loan group by loan group basis and will generally consist of the following amounts (subject to the amounts to be netted as described below):

o    scheduled payments of interest on the mortgage loans collected during
     the applicable period less the related servicing fees;

o    interest on prepayments to the extent not allocable to the master
     servicer as additional servicing compensation;

o    interest amounts advanced by the master servicer and any required
     compensating interest paid by the master servicer related to certain
     prepayments on certain mortgage loans;

o    liquidation proceeds on the mortgage loans during the applicable period
     (to the extent allocable to interest); and

o    the amount (if any) of the seller interest shortfall payment paid by
     [Countrywide Home Loans, Inc.] on any distribution date on or prior to

the [ ] 200[ ] distribution date.

Amounts Available with respect to [Principal] Distributions
----------------------------------------------------------

The amount available for [principal] distributions on the certificates on any
distribution date will be calculated on a loan group by loan group basis and
will generally consist of the following amounts (subject to the amounts to be
netted as described below):

o    scheduled payments of principal of the mortgage loans collected during
     the applicable period or advanced by the master servicer;

o    [prepayments collected in the applicable period];

o    the stated principal balance of any mortgage loans repurchased or
     purchased by a seller or the master servicer, as applicable;

o    the difference, if any, between the stated principal balance of a
     substitute mortgage loan and the related deleted mortgage loan;

o    liquidation proceeds on the mortgage loans during the applicable period
     (to the extent allocable to principal);

o    [excess interest (to the extent available) to maintain the targeted
     overcollateralization level for the related class of certificates as
     described under "Description of the Certificates --
     Overcollateralization Provisions" in this prospectus supplement; and]

o    the amount (if any) remaining on deposit in the pre-funding account on
     the distribution date following the end of the funding period.

Fees and Expenses
-----------------

The amounts available for distributions on the certificates on any
distribution date generally will be

--------------------------------------------------------------------------------
                                      S-8

<PAGE>

--------------------------------------------------------------------------------

net of the following amounts calculated on a loan group by loan group basis:

o    the servicing fee and additional servicing compensation (as described in
     this prospectus supplement under "Description of the Certificates --
     Withdrawals from the Collection Account" and "--Withdrawals from the
     Distribution Account") due to the master servicer;

o    the trustee fee due to the trustee;

o    amounts reimbursed to the master servicer and the trustee in respect of
     advances previously made by them and other amounts for which the master

servicer and servicer are entitled to be reimbursed;

o    [all prepayment charges (which are distributable only to the [Class PV
     and Class PF] Certificates); and]

o    all other amounts for which the depositor, a seller, the master servicer
     [or any NIM Insurer] is entitled to be reimbursed.

Any amounts net from the amount available for distribution to the
certificateholders will reduce the amount distributed to the
certificateholders.

Servicing Compensation

Servicing Fee:

The master servicer will be paid a monthly fee (referred to as the servicing
fee) with respect to each mortgage loan equal to one-twelfth of the stated
principal balance of that mortgage loan multiplied by [ ]% per annum (referred
to as the servicing fee rate).

Additional Servicing Compensation:

The master servicer is also entitled to receive additional servicing
compensation from amounts in respect of interest paid on certain principal
prepayments, late payment fees, assumption fees and other similar charges
[(excluding prepayment charges)] and investment income earned on amounts on
deposit in the certain of the issuing entity's accounts.

Source and Priority of Payments:

These amounts will be paid to the master servicer from collections on the
mortgage loans prior to any distributions on the certificates.

See "Servicing of the Mortgage Loans -- Servicing Compensation and Payment of
Expenses," "Description of the Certificates -- Withdrawals from the
Certificate Account" and "-- Withdrawals from the Distribution Account" in
this prospectus supplement.

Priority of Payments; Distributions of Interest

[Loan Group [1]]
----------------

In general, on any distribution date, loan group [1] [interest] funds will be
distributed in the following order:

o    concurrently to [(a) the [Class AF-5B] Insurer, the monthly premium for
     the Class [AF-5B] policy, and (b)] each class of [Class AF] Certificates,
     current interest and interest carry forward amounts, pro rata based on
     their respective entitlements;

o    [to the [Class AF-5B] Insurer, any [Class AF-5B] reimbursement amounts;]

o    sequentially, in order of their seniority, to each class of [fixed rate]
     subordinate certificates, current interest for each class; and

o    as part of the fixed rate loan group excess cashflow.

[Loan Group [2] and Loan Group [3]]
-----------------------------------

In general, on any distribution date, loan group [2] and loan group [3]
[interest] funds will be distributed in the following order:

o      from loan group [2] [interest] funds, concurrently to each class of
       [Class 2-AV] Certificates, current interest and interest carry forward
       amounts, pro rata based on their respective entitlements;

o      from loan group [3] [interest] funds, concurrently, to each class of
       [Class 3-AV] Certificates, current interest and interest carry forward
       amounts, pro rata based on their respective entitlements;

o      from remaining loan group [2] and loan group [3] [interest] funds, to
       each class of [Class AV] Certificates, any remaining unpaid current
       interest and any interest carry forward amount, allocated pro rata based
       on the certificate principal balance of each class of [Class AV]
       Certificates, with any remaining amounts allocated based on any remaining
       unpaid current

--------------------------------------------------------------------------------

                                     S-9


<PAGE>

--------------------------------------------------------------------------------

       interest and interest carry forward amount for each class of [Class AV]
       Certificates;

o      from any remaining loan group [2] and loan group [3] [interest] funds,
       sequentially, in order of their seniority, to each class of [adjustable
       rate subordinate certificates], current interest for each class; and

o      from any remaining loan group [2] and loan group [3] [interest] funds, as
       part of the adjustable rate loan group excess cashflow.

Priority of Payments; Distributions of Principal

General
-------

The manner of distributing principal among the classes of certificates will
differ, as described in this prospectus supplement, depending upon whether a
distribution date occurs [before the stepdown date, or on or after that date,
and depending on whether a trigger event is in effect].

[Effect of the Stepdown Date if a Trigger Event is not in Effect
----------------------------------------------------------------

The "stepdown date" refers to the date on or after which the principal payment
priorities change so that on any distribution date on or after the related
stepdown date (and so long as no trigger event is in effect), instead of
allocating all amounts distributable as principal on the certificates to the
related senior classes of certificates for the loan group or loan groups until
those senior classes are paid in full, a portion of those amounts
distributable as principal will be allocated to the related subordinate
certificates.

The amount allocated to each class of certificates on or after the stepdown
date and so long as no trigger event is in effect will be based on the
targeted level of overcollateralization and subordination for each class of

certificates. These amounts are described in more detail under "Description of
the Certificates -- Distributions -- Distributions of Principal Distribution
Amount for Loan Group [1]" and "-- Distributions of Principal Distribution
Amount for Loan Group [2] and Loan Group [3]" in this prospectus supplement.

Trigger Events:

A "trigger event" refers to certain triggers related to the loss and
delinquency performance of the mortgage loans. After the stepdown date, if
certain trigger events are in effect, the priority of principal payments will
revert to the payment priority prior to the stepdown date.

Generally, prior to the stepdown date or if a trigger event is in effect, all
amounts distributable as principal on a distribution date will be allocated
first to the related senior classes of certificates for the loan group or loan
groups, until the senior classes of certificates are paid in full, before any
distributions of principal are made on the related subordinate certificates.

The Stepdown Date:

The stepdown date for each class of certificates will be:

o    the later of the [ ] 200[ ] distribution date; and

o    the date on which the targeted overcollateralization level related to
     loan group [1] (in the case of the [Class AF] Certificates and the [fixed
     rate subordinate certificates]) and the targeted overcollateralization
     level related to loan group [2] and loan group [3] (in the case of the
     [Class AV] Certificates and the [adjustable rate subordinate
     certificates]) is reached.)

Certificate or Loan Group Specific Events that Effect Allocations of Principal
-----------------------------------------------------------------------------

[Class AF] Certificates:

[As described below, the payment priority the [Class AF] Certificates will
change, if on any distribution date the aggregate certificate principal
balance of the [Class AF] Certificates exceed the stated principal balance of
the group [1] mortgage loans and any remaining loan group [1] pre-funded
amount. See "--Loan Group [1] - [Class AF Certificates and [Class AF]-5B]
Insurer" below.]

[Class 2 AV] Certificates:

[As described below, the payment priority of the [Class 2 AV] Certificates
will change, if on any distribution date a group [2] sequential trigger event
is in effect. See "--Loan Group [2] and Loan Group [3] - [Class 2-AV]
Certificates" below.]

[Class 3-AV] Certificates:

[As described below, the payment priority the [Class 3-AV] Certificates will
change, if on any distribution date the aggregate certificate principal
balance of the [Class AV] Certificates exceeds the aggregate the stated
principal balance of the group [2] and group

-----------------------------------------------------------------------------

S-10

<PAGE>

--------------------------------------------------------------------------------

[3] mortgage loans and any remaining loan group [2] and loan group [3]
pre-funded amount, and the aggregate certificate principal balance of the
[Class 3-AV] Certificates exceeds the stated principal balance of the group
[3] mortgage loans and any remaining loan group [3] pre-funded amount.]

See "--Loan Group [2] and Loan Group [3] - [Class 3-AV] Certificates" below.

Loan Group [1]

In general, [on any distribution date prior to the fixed rate stepdown date or
on which a fixed rate trigger event is in effect], the loan group [1]
principal distribution amount will be distributed in the following order:

o    [to the [Class AF] Certificates and to the [Class AF-5B] Insurer in the
     priority described below;]

o    [sequentially, in order of their seniority, to each class of [fixed rate
     subordinate certificates], until the certificate principal balance of
     each class is reduced to zero; and]

o    [as part of the fixed rate loan group excess cashflow.]

In general, on any distribution date [on or after the fixed rate stepdown date
and so long as no fixed rate trigger event is in effect], the loan group [1]
principal distribution amount will be distributed in the following order:

o    [to the [Class AF] Certificates, up to the [Class AF] principal
     distribution amount, until the certificate principal balance of each
     class is reduced to zero, in the priority described below;]

o    [to the [Class AF-5B] Insurer, any remaining premium payable with respect
     to the [Class AF-5B] policy and any remaining reimbursement amount that
     has not been paid from loan group [1] interest funds for that
     distribution date;]

o    sequentially, in order of their seniority, to each class of [fixed rate
     subordinate certificates], the fixed rate subordinate class principal
     distribution amount for that class, until the certificate principal
     balance thereof is reduced to zero; and

o    [as part of the fixed rate loan group excess cashflow.]

[Class AF Certificates and [Class AF-5B] Insurer:

Generally, for each distribution date prior to the fixed rate stepdown date or
on which a fixed rate trigger event is in effect, amounts to be distributed to
the [Class AF] Certificates and the [Class AF-5B] Insurer will be distributed
in the following order:

        [(i) to the [Class AF]-6 Certificates, the NAS principal distribution
amount, until the certificate principal balance thereof is reduced to zero;]

        (ii) concurrently, to the [Class AF-1A] and [Class AF-1B]
Certificates, pro rata based on their respective certificate principal
balances, until the certificate principal balances thereof are reduced to

zero;

       (iii) sequentially, to the [Class AF-2], [Class AF-3] and [Class AF-4] Certificates, in each case until the certificate principal balance thereof is reduced to zero;

       (iv) concurrently, to (x) the [Class AF-5A] Certificates and (y) the [Class AF-5B] Certificates and the [Class AF-5B] Insurer, pro rata (based on, with respect to clause (x), the certificate principal balance of the [Class AF-5A] Certificates, and with respect to clause (y), the certificate principal balance of the [Class AF-5B] Certificates):

          (a) to the [Class AF-5A] Certificates, until the certificate
          principal balance thereof is reduced to zero, and

          (b) sequentially:

              [(I) to the [Class AF-5B] Insurer, any remaining premium
              payable with respect to the [Class AF-5B] policy that has
              not been paid from loan group [1] interest funds for that
              distribution date, and]

              (II) to the [Class AF-5B] Certificates, until the
              certificate principal balance thereof is reduced to zero;

       (v) [to the [Class AF-6] Certificates without regard to the NAS principal distribution amount, until the certificate principal balance thereof is reduced to zero; and]

       (vi) [to the [Class AF-5B] Insurer, any remaining [Class AF-5B] reimbursement amount that has not been paid from loan group [1] interest funds for that distribution date.]

--------------------------------------------------------------------------------

<PAGE>

--------------------------------------------------------------------------------


[However, if on any distribution date, the aggregate certificate principal balance of the [Class AF] Certificates exceed the stated principal balance of the group [1] mortgage loans and any remaining loan group [1] pre-funded amount, the [Class AF] Certificates will receive payments pro rata based on the certificate principal balances thereof, and prior to any payments to the [Class AF-5B] Insurer.]

[Generally, the allocations among the [Class AF] Certificates are the same following the fixed rate stepdown date or if a fixed rate trigger event is in effect as before the stepdown date or a trigger event (except that following the fixed rate stepdown date, provided no fixed rate trigger event is in effect, the [Class AF-5B] Insurer will receive distributions after the [Class AF] Certificates).]]

[Class AF-6 Certificates; NAS Principal Distribution Amount:

The [Class AF-6] Certificates are entitled to receive the NAS principal distribution amount prior to payments of principal of the other [Class AF] Certificates. However, until the distribution date in [ ] 200[ ], the NAS

principal distribution amount is equal to zero and it is expected that the
AF-6 Certificates will not receive any distributions of principal until the
distribution date in [ ] 200[ ]. The NAS principal distribution amount is a
specified percentage (that may exceed 100%) of the [Class AF-6] pro rata share
of the principal distributable to the [Class AF] Certificates. The specified
percentage increases on the distribution date in [ ] 200[ ], [ ] 200[ ] and [
] 200[ ], when it ultimately reaches [ ]%. Until the [ ] 200[ ] distribution
date, it is expected that the [Class AF-6] Certificates will receive a portion
of principal payments that is smaller than its pro rata share of principal
payments and on or after [ ] 200[ ] distribution date, the [Class AF]-6
Certificates will receive an amount greater than its pro rata share of
principal payments.]

Loan Group [2] and Loan Group [3]

In general, on any distribution date [prior to the adjustable rate stepdown
date or on which an adjustable rate trigger event is in effect], the loan
group [2] and loan group [3] principal distribution amounts will be
distributed in the following order:

o    from the loan group [2] principal distribution amount, sequentially,

          (a) to each class of [Class 2-AV] Certificates in the priority
          described below, until the certificate principal balances thereof are
          reduced to zero, and

          (b) to each class of [Class 3-AV] Certificates (after the payments
          described in clause (a) of the next bullet point) in the priority
          described below, until the certificate principal balances thereof are
          reduced to zero,

o    from the loan group [3] principal distribution amount, sequentially,

          (a) to each class of [Class 3-AV] Certificates in the priority
          described below, until the certificate principal balances thereof are
          reduced to zero, and

          (b) to each class of [Class 2-AV] Certificates (after the payments
          described in clause (a) of the preceding bullet point) in the
          priority described below, until the certificate principal balances
          thereof are reduced to zero;

o    from any remaining loan group [2] and loan group [3] principal
     distribution amounts, sequentially, in order of their seniority, to each
     class of [adjustable rate subordinate certificates], until the
     certificate principal balance of each class is reduced to zero; and

o    from any remaining loan group [2] and loan group [3] principal
     distribution amounts, as part of the adjustable rate loan group excess
     cashflow.

In general, on any distribution date on or after the adjustable rate stepdown
date and so long as no adjustable rate trigger event is in effect, the loan
group [2] and loan group [3] principal distribution amounts will be
distributed in the following order:

o    [up to the [Class AV] principal distribution target amount, pro rata
     based on the related [Class AV] principal distribution allocation amount
     for the [Class 2-AV] Certificates and the [Class 3-AV] Certificates,
     respectively, concurrently, to (a) each class of [Class 2-AV]
     Certificates, in an amount up to the [Class 2-AV] principal distribution
     amount in the order and priorities set forth below, until the

certificate principal balances thereof are reduced to zero, and (b) each
class of [Class 3-AV] Certificates, in an amount up to the [Class 3-AV]
principal distribution amount in the order and priorities set forth
below, until the certificate principal

--------------------------------------------------------------------------------

S-12

<PAGE>

--------------------------------------------------------------------------------

balances thereof are reduced to zero; and after the aggregate
certificate principal balance of the [Class 2-AV] or [Class 3-AV]
Certificates has been reduced to zero, any remaining unpaid [Class AV]
principal distribution target amount will be distributed to the
remaining [Class AV] Certificates in the order and priorities set forth
below for those certificates;]

o      sequentially, in order of their seniority, to each class of [adjustable
       rate subordinate certificates], the adjustable subordinate class
       principal distribution amount for that class until the certificate
       principal balance thereof is reduced to zero; and

o      as part of the adjustable rate loan group excess cashflow.

[Class 2-AV Certificates:

Generally, for each distribution date, amounts to be distributed to the [Class
2-AV] Certificates will be distributed concurrently, to the [Class 2-AV-1] and
[Class 2-AV-2] Certificates, pro rata, based on the certificate principal
balances thereof, in each case until the certificate principal balances
thereof are reduced to zero; but, if a group [2] sequential trigger event is
in effect, principal will be distributed to the [Class 2-AV-1] and [Class
2-AV-2] Certificates, sequentially, in that order, in each case until the
certificate principal balance thereof is reduced to zero.

A group [2] sequential trigger event is, prior to the distribution date [ ]
200[ ], a separate trigger based on the loss experience of the group [2]
mortgage loans, and on or after the distribution date in [ ] 200[ ], an
adjustable rate trigger event. The group [2] sequential trigger event is
described in more detail under "Description of the Certificates --
Distributions -- Distributions of Principal Distribution Amounts for Loan
Group [2] and Loan Group [3]" in this prospectus.]

[Class 3-AV Certificates:

Generally, for each distribution date, amounts to be distributed to the [Class
3-AV] Certificates will be distributed sequentially, to the [Class 3-AV-1],
[Class 3-AV-2], [Class 3-AV-3] and [Class 3-AV-4] Certificates, in that order,
in each case until the certificate principal balance thereof is reduced to
zero. However, if on any distribution date, the aggregate certificate
principal balance of the [Class AV] Certificates exceeds the aggregate the
stated principal balance of the group [2] and group [3] mortgage loans and any
remaining loan group [2] and loan group [3] pre-funded amount, and the
aggregate certificate principal balance of the [Class 3-AV] Certificates
exceeds the stated principal balance of the group [3] mortgage loans and any
remaining loan group [3] pre-funded amount, the [Class 3-AV] Certificates will