supplement.

Repurchase, Substitution and Purchase of Mortgage Loans

The sellers may be required to repurchase, or substitute, a replacement mortgage loan for any mortgage loan as to which there exists deficient documentation or as to which there has been an uncured breach of any representation or warranty relating to the characteristics of the mortgage loans that materially and adversely affects the interests of the noteholders in that mortgage loan.

Additionally, the [master servicer] may purchase from the issuing entity any mortgage loan that is delinquent in payment by [150] days or more.

The purchase price for any mortgage loans repurchased or purchased by a seller or the master servicer will be generally equal to the stated principal balance of the mortgage loan plus interest accrued at the applicable mortgage rate (and in the case of purchases by the master servicer, less the servicing fee rate).

See "The Mortgage Pool -- Assignment of the Mortgage Loans" and "Description of the Notes -- Optional Purchase of Defaulted Loans" in this prospectus supplement and "Loan Program -- Representations by Sellers; Repurchases" in the prospectus.

Optional Termination

The [master servicer] may purchase all of the remaining assets of the issuing entity on any distribution date on or after the first distribution date on which the aggregate stated principal balance of the mortgage loans and any foreclosed real estate owned by the issuing entity declines to or below [ ]% of the sum of the aggregate stated principal balance of the [initial mortgage loans as of the initial cut-off date and the amount, if any, deposited into the pre-funding account on the closing date]. If the master servicer exercises the optional termination right it will result in the early retirement of the notes. [The NIM Insurer may also have the right to purchase all of the remaining assets in the issuing entity.] See "Description of the Notes -- Optional Termination" in this prospectus supplement.

Material Federal Income Tax Consequences

Subject to the qualifications described under "Material Federal Income Tax Consequences" in this prospectus supplement, [Sidley Austin LLP] [Thacher

---

<PAGE>

---

Proffitt & Wood LLP], special tax counsel to the depositor, is of the opinion that, under existing law, a note will be treated as a debt instrument for federal income tax purposes. Furthermore, special tax counsel to the depositor is of the opinion that neither the issuing entity nor any portion of the issuing entity will be treated as a corporation, a publicly traded partnership taxable as a corporation, or a taxable mortgage pool for federal income tax purposes.

See "Material Federal Income Tax Consequences" in this prospectus supplement and in the prospectus.

Legal Investment Considerations

The [Class AF] and [Class AV] Notes and the [Class MF-1], [Class MF-2], [Class MF-3], [Class MV-1], [Class MV-2] and [Class MV-3] Notes will be "mortgage related securities" for purposes of the Secondary Mortgage Market Enhancement Act of 1984. None of the other classes of offered notes will be "mortgage related securities" for purposes of the Secondary Mortgage Market Enhancement Act of 1984.

See "Legal Investment" in the prospectus.

ERISA Considerations

The [offered notes] may be purchased by a pension or other benefit plan subject to the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986, as amended, or by an entity investing the assets of a benefit plan, so long as certain conditions are met.

A fiduciary of an employee benefit or other plan or an individual retirement account must determine that the purchase of an [offered note] is consistent with its fiduciary duties under applicable law and does not result in a non-exempt prohibited transaction under applicable law. Any person who acquires an [offered note] on behalf of or with plan assets of an employee benefit or other plan subject to ERISA or Section 4975 of the Code will be deemed to make certain representations.

See "ERISA Considerations" in this prospectus supplement and in the prospectus.

--------------------------------------------------------------------------------

<PAGE>

--------------------------------------------------------------------------------

<TABLE>
<CAPTION>

SUMMARY OF TRANSACTION PARTIES

```
<S>                        <C>                                                <C>
                            -----------------------------------
                            |       Sponsor and Seller          |
                          / |  [Countrywide Home Loans, Inc.]   |<---|      --------
     Mortgage Loans      /  |                                   |    |      |
                        /   ------------------------------------     |      |
                       /                   |   Mortgage Loans        |      |
                      /                    |                         |      |
                     /                     |                         |      --------
                    /                      |                         |       Corrido
                   /                       |                         |       Payment
                  /                        |     Excess Corridor     |
```



</TABLE>

<PAGE>

RISK FACTORS

The following information, which you should carefully consider, identifies certain significant sources of risk associated with an investment in the notes. You should also carefully consider the information set forth under "Risk Factors" in the prospectus.

<TABLE>
<CAPTION>

<S> <C>

Subordinate Notes and [Class 2-AV-1] Notes have A Greater Risk

of Loss because of Subordination Features; Credit Enhancement May Not Be Sufficient to Protect Senior Notes from Losses.................

When certain classes of notes provide other classes of notes this is sometim "subordination." The subordination fea the likelihood that senior noteholders payments of interest and principal. Fo prospectus supplement, "related subord

o with respect to the [Class AF] N subordinate notes],

o with respect to the [Class AV] N subordinate notes],

o with respect to the [Class 2-AV- of realized losses, the [Class 2

o with respect to each class of No designation, (i) each other clas designation and a higher numeric class, if any, and (ii) the Clas

o with respect to each class of No designation, (i) each other clas designation and a higher numeric class, if any, and (ii) the [Cla

Credit enhancement in the form of subo for the notes, by:

o the right of the holders of the certain distributions prior to t classes;

o the allocation of realized losse a loan group or loan groups to t classes, beginning with the [Cla group [1]) and [Class BV] Notes [2] or loan group [3]); and

o if the note principal balances o subordinate notes] are reduced t allocation of realized losses, t additional realized losses on th to the [Class 2-AV-2] Notes.

This type of credit enhancement is pro

o using collections on the mortgag otherwise payable to the holders classes to pay amounts

<PAGE>

due on the more senior related c

- o allocating realized losses of a loan groups to the related subor with the related subordinate not priority, until the principal ba subordinate class has been reduc

[This means that after the credit enha cashflow and overcollateralization (if

- o collections otherwise payable to classes will comprise the sole s credit enhancement is provided t except for the [Class AF-5B] Not benefit of the [Class AF-5B] Pol

- o realized losses on the mortgage group will be allocated to the m subordinate notes outstanding, u principal balance of that class been reduced to zero.]

[If the aggregate note principal balan subordinate notes] has been reduced to the group [2] mortgage loans will be a 2-AV-2] Notes until the note principal reduced to zero.] If the aggregate not subordinate classes and the [Class 2-A reduced to zero, delinquencies and def in the related loan group or loan grou of funds available for monthly distrib the related senior notes.

Additionally, investors in the [fixed should note that amounts due to the [C premiums and reimbursements for prior thereon, will be paid from interest an rate mortgage loans prior to any payme notes.

You should fully consider the risks of note and the [Class 2-AV-2] Notes, inc may not fully recover your initial inv realized losses. In addition, investor notes [(other than the [Class AF-5B] N benefit of the [Class AF-5B] Policy)] that, [after the credit enhancement pr cashflow and overcollateralization (if the subordination of the related class (and in the case of the [Class 2-AV-1] Notes) may not be sufficient to protec notes from losses.

See "Description of the Notes" in this

[Overcollateralization and Excess Interest May Not Be Sufficient to Protect Notes from Losses on the Mortgage Loans] ........................ [The amount by which the sum of the agg balance of the mortgage loans in a loa the amount on deposit in the pre-fundi the related loan group exceeds the agg balance of the related classes of note

<PAGE>

is called "overcollateralization." The group or loan groups are expected to g is needed to pay interest on the relat weighted average interest rate on the to be higher than the weighted average notes plus the expense fee rate, and i AF-5B] Notes, the [Class AF-5B] policy interest" from the related loan group to make additional principal payments extent described in this prospectus su Overcollateralization is intended to p to noteholders by absorbing the notes' liquidated mortgage loans in the relat groups. However, we cannot assure you will be generated on the mortgage loan required levels of overcollateralizati

The excess interest available on any d affected by the actual amount of inter recovered in respect of the mortgage l month. The amount of interest received will be influenced by changes in the w mortgage rates resulting from prepayme mortgage loans as well as from adjustm on adjustable rate mortgage loans. Bec interest available may vary and becaus adjustable-rate notes may increase, it all or a portion of the available inte requirements. As a result, available e reduced. Furthermore, a disproportiona prepayments of high interest rate mort negative effect on future excess inter

If the protection afforded by overcoll insufficient and in the case of the [C [Class AF-5B] Insurer were to fail to under the [Class AF-5B] Policy, then t could experience a loss on their inves

Difference Between Mortgage Rates and Adjustable Note Pass-Through May Reduce Excess Interest...............

The interest rates on the [adjustable monthly and are generally based on [on mortgage rates on the mortgage loans e semi-annually based on six-month LIBOR mortgage index, but in most cases only three years after origination]. Becaus respond to various economic and market those affecting [one-month LIBOR], the correlation in movement between the in mortgage loans and the interest rates notes]. For example, it is possible th certain of the adjustable rate mortgag the interest rates on the [adjustable rising. In addition, although it is po

mortgage rates and note interest rates
during the same period, mortgage rates
more slowly than the note interest rat
difference between interest rate adjus
rate adjustment periods. An increase i
certain of the adjustable rate mortgag
rates on the [adjustable rate notes] a
result in less amounts

<PAGE>

being available as excess interest.

Net Rate Cap Puts a Limit on the Interest Rate of the Notes................

The absence of a correlation between m
rates and the note interest rates may
on the related interest-bearing notes
of an interest rate cap called the "ne
prepayments of mortgage loans in a loa
relatively higher mortgage rates may r
rate cap and consequently reduce the i
more related classes of offered notes.
by which a noteholder's interest payme
operation of the applicable net rate c
excess cashflow (if any) as described
supplement.] [In addition, prior to th
contract termination date, the [Class
2-AV] Notes, the [Class 3-AV] Notes, a
subordinate notes] will also be entitl
the reduction in interest resulting fr
applicable net rate cap from payments
issuing entity in respect of the appli
corridor contract, as described in thi
However, we cannot assure you that any
available, or sufficient, to make any
these reductions. The [Class AF-5B] Po
these shortfalls allocated to the [Cla

[Payments from the corridor contracts
the performance of the corridor contra
payments of these amounts involve coun
assigned to the [adjustable rate notes
any payments received from the corrido
of net rate carryover.]

[Limitations on the [Class AF-5B] Policy Will Limit the Amount Paid to [Class AF-5B] Notes].............

[On each distribution date, investors
interest at the interest rate, without
resulting from prepayments or the Reli
local laws. However, the [Class AF-5B]
current interest on the [Class AF-5B]
shortfalls. In addition, no distributi
of the [Class AF-5B] Notes is due unde
until the maturity date for the [Class
[Class AF-5B] Notes are undercollatera

Investors in the [Class AF] Notes (oth
Notes) and the [adjustable rate subord

that amounts due the [Class AF-5B] Ins
reimbursements for prior draws on the
(including interest thereon) will be p
principal on the mortgage loans even t
not benefit from the [Class AF-5B] Pol

Prepayments on the Mortgage Loans Are Unpredictable and Could Adversely Affect Your Yield and Reinvestment ............................

No one can accurately predict the leve
mortgage loans will experience. The pr
mortgage loans may be affected by many

<PAGE>

o general economic conditions,

o the level of prevailing interest

o the availability of alternative

o the applicability of prepayment

o homeowner mobility.

Any mortgage loan may be prepaid in fu
however, approximately [ ]%, [ ]% and
in the statistical calculation pool in
loan group [2] and loan group [3], res
principal balance of the mortgage loan
calculation pool in respect of the rel
and any subsequent mortgage loans may
the borrower of a prepayment charge on
the period of time specified in the re
addition, substantially all of the mor
due-on-sale provisions, and the master
enforce those provisions unless doing
applicable law or the master servicer,
with reasonable commercial practice, p
mortgaged property in question to assu
loan.

See "The Mortgage Pool" and "Yield, Pr
Considerations" in this prospectus sup
Aspects of the Loans -- Due-on-Sale Cl
for a description of certain provision
that may affect their prepayment exper

The weighted average lives of the offe
to the rate and timing of principal pa
prepayments) on the mortgage loans in
loan groups, which may fluctuate signi
and will be affected by any prepayment
distribution of amounts (if any) on de
account after the end of the funding p

You should note that:

o generally, if you purchase your

principal is repaid on the mortg loan group or loan groups slower your yield may be lower than you

o for the [adjustable rate notes], sensitive to:

(1) the level of one-month LIBOR

(2) the timing of adjustment of note as it relates to the in mortgage loans and, in the c mortgage loans, the level of of adjustment of the interes loans, and periodic and life adjustments, and

(3) other limitations on the int described

<PAGE>

further in this prospectus suppl

o you bear the reinvestment risks slower rate of principal payment

See "Yield, Prepayment and Maturity Co prospectus supplement.

Your Yield Will Be Affected by the Interest-Only Feature of Some of the Mortgage Loans................

Approximately [ ]%, [ ]% and [ ]% of t statistical calculation pool in respec group [2] and loan group [3], respecti principal balance of the mortgage loan calculation pool in respect of the rel and any subsequent mortgage loans may of only accrued interest for the first origination. During the interest only required to pay any principal on the b therefore, less principal will be avai noteholders than would be the case if amortized as of their first payment da that borrowers of interest only mortga required monthly payments, at the end period, interest only mortgage loans w principal balances than mortgage loans rate and original principal balance th first payment date. Accordingly, inter have a higher risk of default after th to the increased monthly payment neces mortgage loan over its remaining term

Investors should consider the fact tha period, the monthly payment on an inte same mortgage rate and monthly payment fully amortizing as of its first payme higher principal balance than that of

mortgage loan. Accordingly, during the interest only mortgage loans may be le the perceived benefits from refinancin mortgage loans were fully amortizing. approaches its end, however, these mor likely to be refinanced in order to av necessary to amortize fully the mortga

Interest only mortgage loans also may risk because if the related mortgagor principal balance will be higher than loan.

Geographic Concentration of Mortgaged Properties in Certain States Increases the Impact that Events in Those States Could Have On The Notes........................ The tables in Annex A related to the s mortgaged properties for the various g the statistical calculation pool set f concentration of the mortgaged propert percentage by principal balance of the statistical calculation pool in each l by mortgaged properties that are locat concentrations above 10%]. [Property i susceptible than homes located

<PAGE>

in other parts of the country to certa hazards, such as earthquakes, floods, disasters, and property in Florida and of the United States is also more susc in other parts of the country to certa hazards, such as hurricanes, floods an In addition:

- o economic conditions in states wi concentrations (which may or may values) may affect the ability o loans,
- o declines in the residential real with significant concentrations properties located in those stat an increase in the loan-to-value
- o any increase in the market value states with significant concentr loan-to-value ratios and could, sources of financing available t interest rates, which could resu prepayment of the mortgage loans

Inability to Replace Servicer Could Affect Collections and Recoveries on the Mortgage Loans.......... The structure of the servicing fee mig find a replacement master servicer. Al

trustee is required to replace the mas
servicer is terminated or resigns, if
unwilling (including for example becau
insufficient) or unable (including for
indenture trustee does not have the sy
loans), it may be necessary to appoint
servicer. Because the servicing fee is
of the stated principal balance of eac
difficult to replace the servicer at a
the mortgage loans has been significan
may be insufficient to cover the costs
the mortgage loans and related REO pro
pool. The performance of the mortgage
impacted, beyond the expected transiti
servicing transfer, if a replacement m
retained within a reasonable amount of

Your Rights May Be Affected by the Issuance of [Three] Groups of Notes From a Single Issuing Entity.....

The ability to declare an event of mas
or to amend the sale and servicing agr
rests with the holders of specified pe
addition, under certain circumstances,
will have these rights as they relate
Notes.] As a result, you may have less
actions of the issuing entity than you
single class of notes had been issued

You May Receive A Prepayment Because Subsequent Mortgage Loans Are Not Acquired........................

If the depositor elects to deposit the
pre-funding account on the closing dat
issuing entity to acquire subsequent m
on the ability of [Countrywide Home Lo
acquire mortgage loans during the

<PAGE>

funding period that meet the eligibili
mortgage loans as described in this pr
ability of [Countrywide Home Loans, In
loans for subsequent transfer will be
factors including prevailing interest
the rate of inflation and economic con

If the full amount of any deposit to t
cannot be used by the end of the fundi
subsequent mortgage loans, the amount
pre-funding account will be distribute
related senior notes as a prepayment o
distribution date immediately followin
period. We cannot assure you of the ma
deposit in the pre-funding account at
period.

[Rights of the NIM Insurer Limit Your Control and NIM Insurer Actions May Negatively Effect You].......

[If there is a NIM Insurer, pursuant t
agreement and the indenture, unless th

a required payment under the policy in margin securities and the failure is c Insurer is the subject of a bankruptcy a "NIM Insurer Default", the NIM Insur exercise, among others, the following of holders of the offered notes, and t notes may exercise these rights only w consent of the NIM Insurer:

o the right to provide notices of and the right to direct the inde the rights and obligations of th sale and servicing agreement upo servicer,

o the right to remove the indentur pursuant to the indenture, and

o the right to direct the indentur investigations and take actions

In addition, unless a NIM Insurer Defa Insurer's consent will be required bef

o any removal of the master servic or the indenture trustee,

o any otherwise permissible waiver extensions of due dates for paym servicer with respect to more th loans, or

o any amendment to the sale and se indenture.

<PAGE>

Investors in the offered notes should

o the rights granted to the NIM In

o the interests of the NIM Insurer and adverse to, the interests of notes, and the NIM Insurer has n consider the interests of the of with the exercise or nonexercise rights,

o the NIM Insurer's exercise of it negatively affect the offered no the NIM Insurer's rights, whethe adversely affect the liquidity o relative to other securities bac loans and with comparable paymen and

o any insurance policy issued by t cover, and will not benefit in a offered notes.

See "Rights of the NIM Insurer under t
Agreement and the Indenture" in this p

</TABLE>

Some statements contained in or incorporated by reference in this prospectus supplement and the accompanying prospectus consist of forward-looking statements relating to future economic performance or projections and other financial items. These statements can be identified by the use of forward-looking words such as "may," "will," "should," "expects," "believes," "anticipates," "estimates," or other comparable words. Forward-looking statements are subject to a variety of risks and uncertainties that could cause actual results to differ from the projected result. Those risks and uncertainties include, among others, general economic and business conditions, regulatory initiatives and compliance with governmental regulations, customer preferences and various other matters, many of which are beyond our control. Because we cannot predict the future, what actually happens may be very different from what we predict in our forward-looking statements.

<PAGE>

THE MORTGAGE POOL

General

Set forth below and in Annex A hereto is certain statistical information based on scheduled principal balances as of [ ] 200[ ], [which is the "Statistical Calculation Date," concerning a pool of mortgage loans that CWALT, Inc. (the "Depositor") believes is representative of the mortgage loans to be included in the issuing entity. This pool of mortgage loans is referred to as the "Statistical Calculation Pool," and the mortgage loans are referred to as the "Statistical Calculation Pool Mortgage Loans."]

[A detailed description (the "Detailed Description") of the pool of mortgage loans (the "Initial Mortgage Loans") to be included in the issuing entity on the Closing Date (the "Initial Mortgage Pool") will be filed on Form 8-K with the SEC after the Closing Date.] Additionally, in accordance with applicable securities laws, if there are material changes in material characteristics of the Initial Mortgage Pool, the Depositor will file on Form 8-K with the SEC additional information related to those material changes. [The Detailed Description will specify the aggregate of the Stated Principal Balances of the Initial Mortgage Loans included in the Initial Mortgage Pool as of the later of (x) [ ] 200[ ] and (y) the date of origination of each such Initial Mortgage Loan (the "Initial Cut-off Date").] The aggregate of the Stated Principal Balances of these Initial Mortgage Loans is referred to as the "Initial Cut-off Date Pool Principal Balance" and the Stated Principal Balance of any Initial Mortgage Loan as of the Initial Cut-off Date is referred to as the "Initial Cut-off Date Principal Balance." [The Detailed Description will include for the Initial Mortgage Loans, the information in the same categories that are presented in Annex A with respect to the Statistical Calculation Pool.]

The Statistical Calculation Pool consists of approximately [ ] Mortgage Loans and is comprised of Mortgage Loans that bear interest at fixed rates, referred to as "Fixed Rate Mortgage Loans," and adjustable rates, referred to as "Adjustable Rate Mortgage Loans." The aggregate Stated Principal

Balance of the Mortgage Loans included in the Statistical Calculation Pool as of the Statistical Calculation Date is approximately $[ ] (the "Statistical Calculation Date Pool Principal Balance"), of which approximately $[ ] consist of Loan Group [1] Mortgage Loans, approximately $[ ] consist of Loan Group [2] Mortgage Loans and approximately $[ ] consist of Loan Group [3] Mortgage Loans. The Depositor believes that the information set forth in this prospectus supplement with respect to the Statistical Calculation Pool as presently constituted is representative of the characteristics of the Initial Mortgage Pool as will be constituted on the Closing Date, although some characteristics of the Initial Mortgage Loans in the Initial Mortgage Pool will vary. See "-- The Statistical Calculation Pool" below. Unless otherwise indicated, information presented below expressed as a percentage (other than rates of interest) are approximate percentages based on the Statistical Calculation Date Pool Principal Balance.

        All of the Mortgage Loans to be included in the issuing entity will be evidenced by promissory notes (the "Mortgage Notes"). The Mortgage Notes will be secured by [first lien] deeds of trust, security deeds or mortgages on one- to four-family residential properties (the "Mortgaged Properties"). The Mortgaged Properties in the Statistical Calculation Pool are located in 50 states and the District of Columbia. Each Mortgage Loan in the issuing entity will be assigned to one of three mortgage loan groups ("Loan Group [1]," "Loan Group [2]," and "Loan Group [3]" and each a "Loan Group"). Loan Group [1] will consist of [first lien fixed rate mortgage loans]. Loan Group [2] and Loan Group [3] will consist of [first lien adjustable rate mortgage loans].

        Except for balloon loans, the Mortgage Loans to be included in the issuing entity will provide for the full amortization of the amount financed over a series of monthly payments, and a [substantial majority] of the Mortgage Loans are expected to provide for payments due as of the first day of each month. The Mortgage Loans to be included in the issuing entity will have been originated or purchased by [Countrywide Home Loans, Inc.] ("[Countrywide Home Loans]" or a "Seller") and will have been originated substantially in accordance with [Countrywide Home Loans'] underwriting criteria for mortgage loans described in this prospectus supplement under "-- Underwriting Standards."

        Scheduled monthly payments made by the mortgagors on the Mortgage Loans ("Scheduled Payments") either earlier or later than the scheduled due dates thereof will not affect the amortization schedule or the relative application of the payments to principal and interest. [All of the Mortgage Notes will provide for a fifteen (15) day grace period for monthly payments.] A Scheduled Payment with respect to a Mortgage Loan is generally considered

<PAGE>

"delinquent" if the mortgagor fails to make the Scheduled Payment prior to the due date occurring immediately after the due date on which the Scheduled Payment was originally due. [None] of the Mortgage Loans will be more than one payment delinquent on a contractual basis as of the related Cut-off Date.

        Any Mortgage Loan may be prepaid in full or in part at any time; however, approximately [ ]%, [ ]% and [ ]% of the Mortgage Loans in the Statistical Calculation Pool in respect of Loan Group [1], Loan Group [2] and Loan Group [3], respectively, in each case by principal balance of the Mortgage Loans in the Statistical Calculation Pool in respect of the related Loan Group, provide for the payment by the borrower of a prepayment charge on certain prepayments made with respect to the Mortgage Loans. Generally, a prepayment charge will apply, in the case of a Fixed Rate Mortgage Loan, to prepayments

made within [five years] from the date of execution of the related Mortgage Note and, in the case of an Adjustable Rate Mortgage Loan, to prepayments made prior to [the first Adjustment Date for that Mortgage Loan]. In general, the related Mortgage Note will provide that a prepayment charge will apply if, during the applicable period, the borrower prepays the Mortgage Loan in full. The amount of the prepayment charge will generally be equal to [six months' advance interest calculated on the basis of the Mortgage Rate in effect at the time of the prepayment on the amount prepaid in excess of 20% of the original balance of the Mortgage Loan]. The "Mortgage Rate" with respect to a Mortgage Loan is the annual rate of interest borne by the Mortgage Loan pursuant to the terms of the related Mortgage Note[, except as provided below with respect to Fixed Rate Credit Comeback Loans].

    The Mortgage Loans will be selected from among the outstanding one- to four-family mortgage loans in the applicable Seller's portfolio which meet the criteria described in this prospectus supplement. No selection will be made in a manner that would adversely affect the interests of noteholders.

    [Countrywide Home Loans] will make all of the representations specified in the prospectus under "Loan Program -- Representations by Sellers; Repurchases" with respect to all of the Mortgage Loans. [Each other Seller will be a special purpose entity established by Countywide Financial Corporation or one of its subsidiaries and will sell mortgage loans that were previously acquired from Countrywide Home Loans. Consequently, each Seller other than Countrywide Home Loans will only represent that immediately prior to the assignment of the Mortgage Loans to be sold by it to the Depositor, the Seller had good title to, and was the sole owner of, those Mortgage Loans free and clear of any pledge, lien, encumbrance or security interest and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign the Mortgage Loans pursuant to the Mortgage Loan Purchase and Assignment Agreement.] In addition, the Depositor will represent that following the transfer of the Mortgage Loans to it by the Sellers, the Depositor had good title to the Mortgage Loans and that each of the Mortgage Notes was subject to no offsets, claims, defenses or counterclaims.

    Additional Information Regarding the Adjustable Rate Mortgage Loans. Each of the Adjustable Rate Mortgage Loans will have a Mortgage Rate which is subject to adjustment on the [first] day of the months specified in the related Mortgage Note, referred to as an "Adjustment Date"), to equal the sum, rounded to the nearest [0.125%,] of:

            (1) [the average of the London interbank offered rates for six-month U.S. dollar deposits in the London market, as set forth in The Wall Street Journal, or, if the rate ceases to be published in The Wall Street Journal or becomes unavailable for any reason, then based upon a new index selected by the Master Servicer based on comparable information, in each case as most recently announced as of a date generally 45 days prior to the Adjustment Date (the "Mortgage Index")], and

            (2) a fixed percentage amount specified in the related Mortgage Note (the "Gross Margin");

[provided, however, that the Mortgage Rate for any Adjustable Rate Mortgage Loan will not increase or decrease on its initial Adjustment Date by more than a certain specified percentage (the "Initial Periodic Rate Cap"), or on any subsequent Adjustment Date by more than a certain specified percentage (the "Subsequent Periodic Rate Cap").] [The Initial Periodic Rate Cap and Subsequent Periodic Rate Cap for any Adjustable Rate Mortgage Loan will be specified in the related Mortgage Note.] [Substantially all of the Adjustable Rate Mortgage Loans will have been originated with Mortgage Rates less than the sum of the

then-current Mortgage Index and the related Gross Margin.]

<PAGE>

["Two-Year Hybrid Mortgage Loans", "Three-Year Hybrid Mortgage Loans" and "Five-Year Hybrid Mortgage Loans" (collectively, "Hybrid Mortgage Loans") have fixed Mortgage Rates for approximately [24, 36 and 60] months, respectively, after their origination before the fixed Mortgage Rates become subject to adjustment based on the Mortgage Index described in the immediately preceding paragraph. Substantially all of the Adjustable Rate Mortgage Loans in the Statistical Calculation Pool are Hybrid Mortgage Loans.]

It is expected that substantially all of the Adjustable Rate Mortgage Loans will provide that, over the life of each Adjustable Rate Mortgage Loan, the Mortgage Rate will in no event be more than the initial Mortgage Rate plus a maximum added margin, generally between [ ]% and [ ]%, as provided in the Mortgage Note. The initial Mortgage Rate plus the maximum added margin is referred to as the "Maximum Mortgage Rate." The weighted average of these margins (weighted on the basis of the Stated Principal Balances thereof as of the Initial Cut-off Date) with respect to the Adjustable Rate Mortgage Loans in the Statistical Calculation Pool is approximately [ ]%.

[In addition, certain of the Two-Year Hybrid Mortgage Loans in the Statistical Calculation Pool only require payments of interest during either the first [24 or 60] months following origination and certain of the Three-Year Hybrid Mortgage Loans in the Statistical Calculation Pool only require payments of interest during either the first [36 or 60] months following origination, in each case, after which amortization of the principal balance is required over the remaining term of the Mortgage Loan.]

Additional Information Regarding the Fixed Rate Mortgage Loans. [The Fixed Rate Mortgage Loans will include "credit comeback loans" that provide borrowers the potential of four Mortgage Rate reductions for good payment history during any one or more of the first four consecutive twelve-month periods following the origination date of the loan ("Fixed Rate Credit Comeback Loans"). The Fixed Rate Credit Comeback Loan payment history is evaluated in the [twelfth month of each twelve-month period]. If the Fixed Rate Credit Comeback Loan borrower makes Scheduled Payments in full during a twelve-month period with a maximum of one late payment (which, however, cannot be in the twelfth month of the period) the Fixed Rate Credit Comeback Loan is eligible for a [0.375]% per annum reduction on the current mortgage rate.]

[However, for purposes of all payments made on the Notes, including the calculation of each applicable Net Rate Cap as well as other Mortgage Rate calculations, the Mortgage Rate on each Fixed Rate Credit Comeback Loan will be deemed to be reduced by [0.375]% on the Due Date following the end of each of the first four annual periods after the origination date, irrespective of whether the borrower qualifies for the reduction by having a good payment history. Any interest received in excess of the interest received as a result of this deemed reduction, referred to as the "Credit Comeback Excess Amount," will be deposited in the Credit Comeback Excess Account and used to pay noteholders as described below under "-- Credit Comeback Excess Account" below. It is expected that no more than approximately [ ]% of the Mortgage Loans in Loan Group [1] will be Fixed Rate Credit Comeback Loans.]

[In addition, certain of the Fixed Rate Mortgage Loans in the Statistical Calculation Pool are Fixed 30-Year Interest-Only Loans. A "Fixed 30-Year Interest-Only Loan" has only interest due for approximately [60] months after its origination before amortization of the principal balance is required.]

Loan-to-Value Ratio. The "Loan-to-Value Ratio" of a Mortgage Loan at any given time is a fraction, expressed as a percentage, the numerator of which is the principal balance of the related Mortgage Loan at the date of determination and the denominator of which is

- o in the case of a purchase, the lesser of the selling price of the mortgaged property or its appraised value at the time of sale or

- o in the case of a refinance, the appraised value of the mortgaged property at the time of the refinance, except in the case of a mortgage loan underwritten pursuant to Countrywide Home Loans' Streamlined Documentation Program as described under "--Underwriting Process".

With respect to Mortgage Loans originated pursuant to the Streamlined Documentation Program,

<PAGE>

- o if the loan-to-value ratio at the time of the origination of the Mortgage Loan being refinanced was 80% or less and the loan amount of the new loan being originated is $650,000 or less, then the "Loan-to-Value Ratio" will be the ratio of the principal amount of the new Mortgage Loan being originated divided by the appraised value of the related mortgaged property at the time of the origination of the Mortgage Loan being refinanced, as reconfirmed by Countrywide Home Loans using an automated property valuation system; or

- o if the loan-to-value ratio at the time of the origination of the Mortgage Loan being refinanced was greater than 80% or the loan amount of the new loan being originated is greater than $650,000, then the "Loan-to-Value Ratio" will be the ratio of the principal amount of the new Mortgage Loan being originated divided by the appraised value of the related mortgaged property as determined by an appraisal obtained by Countrywide Home Loans at the time of the origination of the new mortgage loan. See"--Underwriting Process" in this prospectus supplement.

No assurance can be given that the value of any mortgaged property has remained or will remain at the level that existed on the appraisal or sales date. If residential real estate values generally or in a particular geographic area decline, the Loan-to-Value Ratios might not be a reliable indicator of the rates of delinquencies, foreclosures and losses that could occur with respect to the Mortgage Loans.

Stated Principal Balance. "Stated Principal Balance" means, for any Mortgage Loan and (1) the Initial Cut-off Date or the Subsequent Cut-off Date, as applicable (the "Cut-off Date"), the unpaid principal balance of the Mortgage Loan as of the Cut-Off Date, as specified in its amortization schedule at the time (before any adjustment to the amortization schedule for any moratorium or similar waiver or grace period), after giving effect to any partial prepayments and Liquidation Proceeds received prior to the Cut-Off Date and to the payment of principal due on the Cut-Off Date and irrespective of any delinquency in payment by the related mortgagor or (2) any Distribution Date, the Stated Principal Balance of the Mortgage Loan as of its Cut-off Date, minus the sum of (i) the principal portion of any Scheduled Payments due with respect

to the Mortgage Loan on or prior to the end of the most recent Due Period that were received by the Master Servicer on or prior to the most recent Determination Date or were advanced by the Master Servicer on or prior to the most recent Master Servicer Advance Date, (ii) principal prepayments with respect to the Mortgage Loan received on or prior to the end of the most recent prepayment period (the period from the [16th] day of the month prior to a Distribution Date (or, in the case of the first Distribution Date, from the Cut-off Date) to and including the [15th] day of the month in which the Distribution Date occurs (each a "Prepayment Period")) and (iii) Liquidation Proceeds received by the Master Servicer prior to the end of the most recent Due Period to the extent applied as recoveries of principal with respect to the Mortgage Loan. The Stated Principal Balance of any Mortgage Loan as to which the related Mortgaged Property has been liquidated and as to which a Final Recovery Determination has been made will be zero on each date following the Due Period in which the Final Recovery Determination is made. When used with respect to the Mortgage Pool, Stated Principal Balance means the aggregate Stated Principal Balance of all Mortgage Loans in the Mortgage Pool. When used with respect to a Loan Group, Stated Principal Balance means the aggregate Stated Principal Balance of all Mortgage Loans in the Loan Group. A "Determination Date" means with respect to any Distribution Date, the [15th] day of the month of the Distribution Date or, if the [15th] day is not a Business Day, the immediately preceding Business Day.

[The Statistical Calculation Pool

The statistical information presented in this prospectus supplement is based on the Statistical Calculation Pool. The Statistical Calculation Pool reflects Mortgage Loans as of [ ] 200[ ]. The statistical information presented in this prospectus supplement is based on the number and the Stated Principal Balances of the Mortgage Loans as of the Statistical Calculation Date. The Statistical Calculation Pool is smaller than the Initial Mortgage Pool. It is expected that additional Mortgage Loans will be included in the Initial Mortgage Pool on the Closing Date and that certain of the Statistical Calculation Pool Mortgage Loans may prepay in part or in full prior to the Closing Date, or may be determined not to meet the eligibility criteria requirements for the Initial Mortgage Pool and therefore may not be included in the Initial Mortgage Pool. As a result of the foregoing, the statistical distribution of characteristics for the Initial Mortgage Pool will vary from the statistical distribution of the characteristics of the Statistical Calculation Pool as presented in this prospectus supplement, although the variance will not be material.

<PAGE>

The following information sets forth certain characteristics of the Mortgage Loans as of the Statistical Calculation Date. Other than with respect to rates of interest, percentages (approximate) are stated by the aggregate Stated Principal Balance of the Mortgage Loans as of the Statistical Calculation Date. The sum in any column of the following tables may not equal the indicated value due to rounding. The sum in any column of the following tables may not equal the indicated value due to rounding. In addition, each weighted average FICO credit score set forth below has been calculated without regard to any Mortgage Loan for which the FICO credit score is not available.

<PAGE>

<PAGE>

MORTGAGE LOANS

Loan Program

<TABLE>
<CAPTION>

| Loan Program | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

<CAPTION>

| Loan Program | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

</TABLE>

<TABLE>
<CAPTION>

Current Mortgage Loan Principal Balances(1)

| Range of Current Mortgage Loan Principal Balances ($) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |

| | | | |
|---|---|---|---|
| Total........................ | ------------- | ----------------- | ------------- |
| | ============= | ================= | ============= |

<CAPTION>

| Range of Current Mortgage Loan Principal Balances ($) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

--------------
(1) As of the Statistical Calculation Date, the average current mortgage loan prin approximately $[ ].
</TABLE>

<PAGE>

Original Principal Balances

<TABLE>
<CAPTION>

| Range of Original Principal Balance ($) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |

| | | | |
|---|---|---|---|
| Total......................... | ------------- ============= | ----------------- ================= | ------------- ============= |

<CAPTION>

| Range of Original Principal Balance ($) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

</TABLE>

<PAGE>

<TABLE>
<CAPTION>

State Distribution of Mortgaged Properties(1)

| Number of Mortgage | Aggregate Principal Balance | % of Mortgage |
|---|---|---|

| State | Loans | Outstanding | Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

<CAPTION>

| State | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |

Total.........................

---------
(1) As of the Statistical Calculation Date, no more than approximately [ mortgaged properties located in any one postal zip code area.

</TABLE>

<PAGE>

Original Loan-to-Value Ratios(1)(2)

<TABLE>
<CAPTION>

| Range of Original Loan-to-Value Ratios (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

<CAPTION>

| Range of Original Loan-to-Value Ratios (%) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|

<S> <C> <C> <C>

Total........................

-----------

(1) As of the Statistical Calculation Date, the weighted average original Loan-to- approximately [ ]%.

(2) Does not take into account any secondary financing on the Mortgage Loans that origination. Based on information provided by the borrowers, as of their respe approximately [ ]% of the Mortgage Loans, by principal balance of the Mortgage mortgaged properties that also secured one or more junior mortgage loans.

</TABLE>

<PAGE>

Current Mortgage Rates(1)

<TABLE>
<CAPTION>

| Range of Current Mortgage Rates (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

<CAPTION>

| Range of Current Mortgage Rates (%) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

---------

(1) The current mortgage rates listed in the preceding table include lender paid m As of the Statistical Calculation Date, the weighted average current mortgage was approximately [ ]% per annum. As of the Statistical Calculation Date, the mortgage rate of the Mortgage Loans net of the premium charged by the lender i mortgage insurance was approximately [ ]% per annum.

</TABLE>

<PAGE>

Types of Mortgaged Properties

<TABLE>
<CAPTION>

| Property Type | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Single Family Residence......... | | | |
| Planned Unit Development........ | | | |
| Low-rise Condominium............ | | | |
| 2-4 Family Residence............ | | | |
| High-rise Condominium........... | | | |
| [Others] | ------------- | ----------------- | ------------- |
| Total........................ | | | |
| | ============= | ================= | ============= |

<CAPTION>

Weighted Weighted Weighted

| Property Type | Average Remaining Term to Maturity (Months) | Average FICO Credit Score | Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Single Family Residence......... | | | |
| Planned Unit Development........ | | | |
| Low-rise Condominium............ | | | |
| 2-4 Family Residence............ | | | |
| High-rise Condominium........... | | | |
| [Others] | | | |
| Total........................ | | | |

</TABLE>

<PAGE>

Purpose of Mortgage Loans

<TABLE>
<CAPTION>

| Loan Purpose | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Refinance (cash-out)............ | | | |
| Purchase........................ | | | |
| Refinance (rate/term)............ | ------------- | ----------------- | ------------- |
| Total........................ | | | |
| | ============= | ================= | ============= |

<CAPTION>

| Loan Purpose | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Refinance (cash-out)............ | | | |
| Purchase........................ | | | |
| Refinance (rate/term)............ | | | |
| Total........................ | | | |

</TABLE>

Occupancy Types(1)

<TABLE>
<CAPTION>

| Occupancy Type | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Primary Residence............... | | | |
| Investment Property............. | | | |
| Secondary Residence............. | | | |
| Total......................... | | | |

<CAPTION>

| Occupancy Type | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Valu Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Primary Residence............... | | | |
| Investment Property............. | | | |
| Secondary Residence............. | | | |
| Total......................... | | | |

-----------
(1) Based upon representations of the related borrowers at the time of origination.

</TABLE>

<PAGE>

Remaining Terms to Maturity(1)

<TABLE>
<CAPTION>

| Remaining Term to Maturity (Months) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |

| | | | |
|---|---|---|---|
| Total........................ | | | |

<CAPTION>

| Remaining Term to Maturity (Months) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

------------

(1) As of the Statistical Calculation Date, the weighted average remaining term to approximately 358 months.

</TABLE>

Documentation Programs

<TABLE>
<CAPTION>

| Documentation Program | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Reduced......................... | | | |
| Full/Alternative................ | | | |
| Stated Income/Stated Asset....... | | | |
| [Others] | | | |
| Total........................ | | | |

<CAPTION>

| | Weighted Average | Weighted Average | Weighted Average |
|---|---|---|---|

| Documentation Program | Remaining Term to Maturity (Months) | FICO Credit Score | Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Reduced.......................... | | | |
| Full/Alternative................. | | | |
| Stated Income/Stated Asset....... | | | |
| [Others] | | | |
| Total......................... | | | |

</TABLE>

<PAGE>

FICO Credit Scores(1)

<TABLE>
<CAPTION>

| Range of FICO Credit Scores | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Unknown........................ | ------------- | ----------------- | ------------- |
| Total......................... | | | |
| | ============= | ================= | ============= |

<CAPTION>

| Range of FICO Credit Scores | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Val Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |

Unknown........................
Total..........................

----------------

(1) As of the Statistical Calculation Date, the weighted average FICO Credit Score Mortgage Loans was approximately [ ].

</TABLE>

<PAGE>

[Original Interest Adjustment Dates]

<TABLE>
<CAPTION>

| Original Interest Adjustment Date | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total.......................... | | | |

<CAPTION>

| Original Interest Adjustment Date | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |

Total........................

</TABLE>

<TABLE>
<CAPTION>

[Months to Next Adjustment Date]

| Months to Next Adjustment Date | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

<CAPTION>

| Months to Next Adjustment Date | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

</TABLE>

<PAGE>

[Gross Margins(1)]

<TABLE>
<CAPTION>

| Range of Gross Margins (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

<CAPTION>

| Range of Gross Margins (%) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

------------

(1) As of the Statistical Calculation Date, the weighted average gross margin of t [ ]%.

</TABLE>

[Maximum Mortgage Rates(1)]

<TABLE>
<CAPTION>

| Range of Maximum Mortgage Rates (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |

Total.........................
============= ================= =============

<CAPTION>

| Range of Maximum Mortgage Rates (%) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

------------

(1) The weighted average Maximum Mortgage Rate for the Mortgage Loans as of the [S approximately [ ]%.

</TABLE>

<PAGE>

[Minimum Mortgage Rates]

<TABLE>
<CAPTION>

| Range of Minimum Mortgage Rates (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| | ------------- | ----------------- | ------------- |
| Total......................... | | | |
| | ============= | ================= | ============= |

<CAPTION>

| Range of Minimum | Weighted Average Remaining Term to Maturity | Weighted Average FICO Credit | Weighted Average Original Loan-to-Value |
|---|---|---|---|

| Mortgage Rates (%) | (Months) | Score | Ratio (%) |
| --- | --- | --- | --- |
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

</TABLE>

[Maximum Negative Amortization(1)]

<TABLE>
<CAPTION>

| Maximum Negative Amortization(%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loan |
| --- | --- | --- | --- |
| <S> | <C> | <C> | <C> |
| | ------------- | ----------------- | ------------- |
| Total........................ | | | |
| | ============= | ================= | ============= |

<CAPTION>

| Maximum Negative Amortization(%) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
| --- | --- | --- | --- |
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

-----------
(1) Reflects maximum allowable percentage of original unpaid principal balance.

</TABLE>

<PAGE>

[Initial Periodic Rate Cap(1)]

<TABLE>
<CAPTION>

| Initial Periodic Rate Cap (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loan |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

<CAPTION>

| Initial Periodic Rate Cap (%) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

-----------

(1) The weighted average Initial Periodic Rate Cap for the Mortgage Loans as of th approximately [ ]%.

</TABLE>

[Subsequent Periodic Rate Cap (1)]

<TABLE>
<CAPTION>

| Subsequent Periodic Rate Cap (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loan |
|---|---|---|---|

| <S> | <C> | <C> | <C> |
|---|---|---|---|
| Total......................... | | | |

<CAPTION>

| Subsequent Periodic Rate Cap (%) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total......................... | | | |

-----------
(1) The weighted average Subsequent Periodic Rate Cap for the Mortgage Loans as of approximately [ ]%.

</TABLE>

<PAGE>

[Interest-Only Periods at Origination]

<TABLE>
<CAPTION>

| Interest Only Period (months) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|

<S> <C> <C> <C>

| | | | |
|---|---|---|---|
| Total........................ | | | |

<CAPTION>

| Interest Only Period (months) | Weighted Average Remaining Term to Maturity (Months) | Weighted Average FICO Credit Score | Weighted Average Original Loan-to-Value Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

</TABLE>

[Prepayment Charge Periods at Origination]

<TABLE>
<CAPTION>

| Prepayment Charge Period (months) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

<CAPTION>

| Prepayment Charge | Weighted Average Remaining Term to Maturity | Weighted Average FICO Credit | Weighted Average Original Loan-to-Val |
|---|---|---|---|

| Period (months) | (Months) | Score | Ratio (%) |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| Total........................ | | | |

</TABLE>

<PAGE>

Assignment of the Mortgage Loans

Pursuant to the mortgage loan purchase and assignment agreement dated as of [ ], 20[ ] (the "Mortgage Loan Purchase and Assignment Agreement "), among the Depositor and the Sellers, the Sellers on the Closing Date will sell, transfer, assign, set over and otherwise convey without recourse to the Depositor all right, title and interest of the Sellers in and to each Initial Mortgage Loan, including all principal and interest received on or with respect to the Initial Mortgage Loans after the Initial Cut-off Date (exclusive of any scheduled principal due on or prior to the Initial Cut-off Date and any interest accruing prior to the Initial Cut-off Date). Pursuant to the sale and servicing agreement dated as of [ ], 20[ ] (the "Sale and Servicing Agreement"), among the issuing entity, [ ], as Trust Administrator (the "Trust Administrator") the Depositor, the Master Servicer, the Sellers and [ ], as Indenture Trustee (the "Indenture Trustee"), the Depositor on the Closing Date will sell, transfer, assign, set over and otherwise convey without recourse to the issuing entity all right, title and interest of the Depositor in and to each Initial Mortgage Loan and all right, title and interest in and to all other assets to be held by the issuing entity, including all principal and interest received on or with respect to the Initial Mortgage Loans after the Initial Cut-off Date (exclusive of any scheduled principal due on or prior to the Initial Cut-off Date and any interest accruing prior to the Initial Cut-off Date) and the Pre-Funded Amount, if any, deposited in the Pre-Funding Account on the Closing Date. The Depositor will assign its rights under the Mortgage Loan Purchase and Assignment Agreement to the issuing entity pursuant to the Sale and Servicing Agreement. The issuing entity will in turn pledge all of its right, title and interest the Initial Mortgage Loans and its other assets, including its rights in the Sellers' representations and warranties to the Indenture Trustee for the benefit of the holders of the Notes.

In connection with the transfer and assignment of the Mortgage Loans, the Depositor will deliver or cause the Sellers to deliver the following documents to the Indenture Trustee (collectively constituting the "Mortgage

File") with respect to each Initial Mortgage Loan and each Subsequent Mortgage Loan, if any (collectively, the "Mortgage Loans"):

(1) the original Mortgage Note, endorsed by the applicable Seller or the originator of the Mortgage Loan, without recourse in the following form: "Pay to the order of _______________ without recourse" with all intervening endorsements that show a complete chain of endorsement from the originator to the applicable Seller, except that the Depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original Mortgage Note that has been lost,

(2) the original recorded Mortgage or a copy of such instrument,

(3) a duly executed assignment of the Mortgage to "Mortgage Backed Notes, Series 200[ ]-[ ], CWALT, Inc., by [ ], as Indenture Trustee under the Indenture dated as of [ ], 20[ ], without recourse," in recordable form, as described in the Sale and Servicing Agreement,

(4) the original recorded assignment or assignments of the Mortgage together with all interim recorded assignments of the Mortgage or copies thereof, except for any documents not returned from the public recording office, which will be delivered to the Indenture Trustee as soon as the same is available to the Depositor,

(5) the original or copies of each assumption, modification, written assurance or substitution agreement, if any, and

(6) the original or duplicate original lender's title policy and all riders thereto or, in the event the original title policy has not been received from the insurer, the original or duplicate original lender's title policy and all riders thereto will be delivered within one year of the Closing Date.

Notwithstanding the foregoing, in lieu of providing the documents set forth in clauses (3) and (4) above, the Depositor may at its discretion provide evidence that the related Mortgage is held through the MERS(R) System. In addition, the Mortgages for some or all of the Mortgage Loans in the issuing entity that are not already held through the MERS(R) System may, at the discretion of the Master Servicer, in the future be held through the MERS(R) System. For any Mortgage held through

<PAGE>

the MERS(R) System, the Mortgage is recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS(R), as nominee for the owner of the Mortgage Loan, and subsequent assignments of the Mortgage were, or in the future may be, at the discretion of the Master Servicer, registered electronically through the MERS(R) System. For each of these Mortgage Loans, MERS(R) serves as mortgagee of record on the Mortgage solely as a nominee in an administrative capacity on behalf of the Indenture Trustee, and does not have any interest in the Mortgage Loan.

Pursuant to the Sale and Servicing Agreement, the Depositor will be required to deliver (or cause delivery of) the Mortgage Files to the Indenture Trustee:

(A) not later than the Closing Date, with respect to at least 50% of the Initial Mortgage Loans, and not later than the relevant Subsequent Transfer Date, with respect to at least 10% of the Subsequent Mortgage Loans conveyed on any related Subsequent Transfer Date,

(B) not later than twenty days after the Closing Date, with respect to at least an additional 40% of the Initial Mortgage Loans, and not later than twenty days after the relevant Subsequent Transfer Date with respect to the remaining Subsequent Mortgage Loans conveyed on any related Subsequent Transfer Date, and

(C) not later than thirty days after the Closing Date, with respect to the remaining Initial Mortgage Loans.

Assignments of the Mortgage Loans to the Indenture Trustee (or its nominee) will be recorded in the appropriate public office for real property records, except in states (such as California) as to which an opinion of counsel is delivered to the effect that the recording is not required to protect the Indenture Trustee's interests in the Mortgage Loan against the claim of any subsequent transferee or any successor to or creditor of the Depositor or the applicable Seller. As to any Mortgage Loan, the recording requirement exception described in the preceding sentence is applicable only so long as the related Mortgage File is maintained in the possession of the Indenture Trustee in one of the states to which the exception applies. In the event an assignment is delivered to the Indenture Trustee in blank and the related Mortgage File is released by the Indenture Trustee pursuant to applicable provisions of the Sale and Servicing Agreement, the Indenture Trustee will complete the assignment as provided in subparagraph (3) above prior to the release. In the event recording the assignment of the Mortgage Loan is required to protect the interest of the Indenture Trustee in the Mortgage Loans, the Master Servicer is required to cause each previously unrecorded assignment to be submitted for recording.

The Indenture Trustee will review the Initial Mortgage Loan documents on or prior to the Closing Date (or promptly after the Indenture Trustee's receipt of any document permitted to be delivered after the Closing Date), and the Subsequent Mortgage Loan documents promptly after the Indenture Trustee's receipt thereof on or after the related Subsequent Transfer Date as described above, and the Indenture Trustee will hold the Mortgage Loan documents in trust for the benefit of the holders of the Notes in accordance with its customary procedures, including storing the documents in fire-resistant facilities. After review of the Mortgage Loan documents, if any document is found to be missing or defective in any material respect, the Indenture Trustee is required to notify the Depositor, the Master Servicer, the [Class AF-5B] Insurer and [Countrywide Home Loans] in writing. If [Countrywide Home Loans] cannot or does not cure the omission or defect within 90 days of its receipt of notice from the Indenture Trustee, [Countrywide Home Loans] is required to repurchase the related Mortgage Loan from the issuing entity at a price (the "Purchase Price") equal to the sum of:

(i)   100% of the unpaid principal balance (or, if the purchase or repurchase, as the case may be, is effected by the Master Servicer, the Stated Principal Balance) of the Mortgage Loan as of the date of the purchase,

(ii)  accrued interest thereon at the applicable Mortgage Rate (or, if the purchase or repurchase, as the case may be, is effected by the Master Servicer, at the Net Mortgage Rate) from (a) the date through which interest was last paid by the mortgagor (or, if the purchase or repurchase, as the case may be, is effected

by the Master Servicer, the date through which interest was last advanced by, and not

<PAGE>

reimbursed to, the Master Servicer) to (b) the Due Date in the month in which the Purchase Price is to be distributed to noteholders, and

(iii) any costs, expenses and damages incurred by the issuing entity resulting from any violation of any predatory or abusive lending law in connection with the Mortgage Loan.

Rather than repurchase the Mortgage Loan as provided above, [Countrywide Home Loans] may remove the Mortgage Loan (a "Deleted Mortgage Loan") from the issuing entity and substitute in its place another Mortgage Loan of like kind (a "Replacement Mortgage Loan"); however, a substitution is only permitted within two years after the Closing Date. Any Replacement Mortgage Loan generally will, on the date of substitution, among other characteristics set forth in the Sale and Servicing Agreement:

(1) have a Stated Principal Balance, after deduction of the principal portion of the Scheduled Payment due in the month of substitution, not in excess of, and not less than 90% of, the Stated Principal Balance of the Deleted Mortgage Loan (the amount of any shortfall to be forwarded by [Countrywide Home Loans] to the Master Servicer and deposited by the Master Servicer in the Collection Account not later than the succeeding Determination Date and held for distribution to the holders of the Notes on the related Distribution Date),

(2) if the Deleted Mortgage Loan that is being replaced is an Adjustable Rate Mortgage Loan, have a Maximum Mortgage Rate not more than 1% per annum higher or lower than the Maximum Mortgage Rate of the Deleted Mortgage Loan,

(3) if the Deleted Mortgage Loan that is being replaced is an Adjustable Rate Mortgage Loan, have a minimum Mortgage Rate specified in its related Mortgage Note (the "Minimum Mortgage Rate") not more than 1% per annum higher or lower than the Minimum Mortgage Rate of the Deleted Mortgage Loan,

(4) if the Deleted Mortgage Loan that is being replaced is an Adjustable Rate Mortgage Loan, have the same Mortgage Index, reset period, payment cap and recast provisions, as applicable, as and a Gross Margin not more than 1% per annum higher or lower than that of the Deleted Mortgage Loan,

(5) have a Mortgage Rate no lower than and not more than 1% higher than that of the Deleted Mortgage Loan,

(6) have a Loan-to-Value Ratio no higher than that of the Deleted Mortgage Loan,

(7) have a remaining term to maturity not greater than (and not more than one year less than) that of the Deleted Mortgage Loan, and

(8) comply with all of the representations and warranties set forth in the Sale and Servicing Agreement as of the date of substitution.

This cure, repurchase or substitution obligation constitutes the sole remedy available to the noteholders, the Indenture Trustee, the issuing entity or the Depositor for omission of, or a material defect in, a Mortgage Loan document.

[Pre-Funding]

On the Closing Date, the Depositor may elect to deposit an amount of up to 25% of the initial Note Principal Balance of the Offered Notes (the "Pre-Funded Amount") in a pre-funding account (the "Pre-Funding Account") established and maintained by the Indenture Trustee on behalf of the noteholders. The Pre-Funded Amount will be allocated between the Loan Groups so that the amount allocated to any Loan Group will not exceed 25% of the initial Note Principal Balance of the Notes related to the Loan Group. Any investment income earned from amounts in the Pre-Funding Account, if any, will be paid to the Countrywide Home Loans, and will not be

<PAGE>

available for payments on the Notes. If the Depositor elects to deposit the Pre-Funded Amount in the Pre-Funding Account, during the period from the Closing Date until the earlier of (x) the date the amount in the Pre-Funding Account is less than $[ ] and (y) [ ] 200[ (the "Funding Period"), the Depositor will be expected to purchase additional mortgage loans originated or purchased by a Seller (the "Subsequent Mortgage Loans") from a Seller and sell the Subsequent Mortgage Loans to the issuing entity as described below. The purchase price for each Subsequent Mortgage Loan will equal the Stated Principal Balance of the Subsequent Mortgage Loan as of the later of (x) the first day of the month of the related Subsequent Transfer Date and (y) the origination date of that Subsequent Mortgage Loan (the related "Subsequent Cut-off Date") and will be paid from the Pre-Funding Account. Accordingly, the purchase of Subsequent Mortgage Loans will decrease the amount on deposit in the Pre-Funding Account and increase the Stated Principal Balance of the Mortgage Pool.

Pursuant to the Sale and Servicing Agreement [and a Subsequent Transfer Agreement to be executed by the applicable Seller, the Depositor, the issuing entity and the Indenture Trustee], the conveyance of Subsequent Mortgage Loans may be made on any Business Day during the Funding Period (a "Subsequent Transfer Date"), subject to the fulfillment of certain conditions in the Sale and Servicing Agreement, including that:

o the Subsequent Mortgage Loans conveyed on the Subsequent Transfer Date satisfy the same representations and warranties in the Sale and Servicing Agreement applicable to all Mortgage Loans,

o the Subsequent Mortgage Loans conveyed on the Subsequent Transfer Date were selected in a manner reasonably believed not to be adverse to the interests of the noteholders,

o the Indenture Trustee receives an opinion of counsel with respect to the validity of the conveyance of the Subsequent Mortgage Loans conveyed on the Subsequent Transfer Date,

o the Indenture Trustee receives opinions of counsel to the effect

that the conveyance of the Subsequent Mortgage Loans conveyed on the Subsequent Transfer Date from the applicable Seller to the Depositor and the simultaneous conveyance of the Subsequent Mortgage Loans from the Depositor to the issuing entity will be characterized as true sales and not loans secured by the Subsequent Mortgage Loans,

- the conveyance of the Subsequent Mortgage Loans on the Subsequent Transfer Date will not result in a reduction or withdrawal of any ratings assigned to the Notes,

- no Subsequent Mortgage Loan conveyed on the Subsequent Transfer Date was 30 or more days delinquent, and

- following the conveyance of the Subsequent Mortgage Loans on the Subsequent Transfer Date to the issuing entity, the characteristics of the Mortgage Loans in each Loan Group will not vary by more than the permitted variance specified below; provided that for the purpose of making the calculations, the characteristics for any Initial Mortgage Loan will be taken as of the Initial Cut-off Date and the characteristics for any Subsequent Mortgage Loan will be taken as of the Subsequent Cut-off Date:

<TABLE>
<CAPTION>

| Loan Group [1] | |
|---|---|
| Characteristic | |
| <S> | < |
| Average Stated Principal Balance................................ | $ |
| Weighted Average Mortgage Rate.................................. | [ |
| Weighted Average Original Loan-to-Value Ratio................... | [ |
| Weighted Average Remaining Term to Maturity..................... | [ |
| Weighted Average Credit Bureau Risk Score....................... | [ |
| Loan Group [2] | |
| Characteristic | |
| Average Stated Principal Balance................................ | $ |

<PAGE>

| | |
|---|---|
| Weighted Average Mortgage Rate.................................. | [ |
| Weighted Average Original Loan-to-Value Ratio................... | [ |
| Weighted Average Remaining Term to Maturity..................... | [ |
| Weighted Average Credit Bureau Risk Score....................... | [ |
| Loan Group [3] | |
| Characteristic | |
| Average Stated Principal Balance................................ | $ |
| Weighted Average Mortgage Rate.................................. | [ |
| Weighted Average Original Loan-to-Value Ratio................... | [ |
| Weighted Average Remaining Term to Maturity..................... | [ |
| Weighted Average Credit Bureau Risk Score....................... | [ |

</TABLE>

Within thirty days after each Subsequent Transfer Date, the Depositor is required to deliver to the Indenture Trustee a letter of a nationally recognized firm of independent public accountants stating whether or not the Subsequent Mortgage Loans conveyed on the related Subsequent Transfer Date conform to the characteristics described in the last two bullet points set forth above. Other than the delivery of that letter, no other party will independently verify satisfaction of the conditions set forth above with respect to a transfer of Subsequent Mortgage Loans.

Underwriting Standards

General

[Below is an example of the disclosure to be provided if Countrywide Home Loans, Inc. is the originator of the mortgage loans. Similar disclosure will be provided with respect to any other originator of more than 20% of the mortgage loans]

[All] of the Mortgage Loans have been originated or acquired by [Countrywide Home Loans, Inc. ("Countrywide Home Loans")] in accordance with its credit, appraisal and underwriting standards. [Countrywide Home Loans] has been originating mortgage loans since 1969. [Countrywide Home Loans'] underwriting standards are applied in accordance with applicable federal and state laws and regulations. Except as otherwise provided in this prospectus supplement, the underwriting procedures are consistent with those identified under "Mortgage Loan Program -- Underwriting Process" in the prospectus.

As part of its evaluation of potential borrowers, Countrywide Home Loans generally requires a description of income. If required by its underwriting guidelines, Countrywide Home Loans obtains employment verification providing current and historical income information and/or a telephonic employment confirmation. Such employment verification may be obtained, either through analysis of the prospective borrower's recent pay stub and/or W-2 forms for the most recent two years, relevant portions of the most recent two years' tax returns, or from the prospective borrower's employer, wherein the employer reports the length of employment and current salary with that organization. Self-employed prospective borrowers generally are required to submit relevant portions of their federal tax returns for the past two years.

In assessing a prospective borrower's creditworthiness, Countrywide Home Loans may use FICO Credit Scores. "FICO Credit Scores" are statistical credit scores designed to assess a borrower's creditworthiness and likelihood to default on a consumer obligation over a two-year period based on a borrower's credit history. FICO Credit Scores were not developed to predict the likelihood of default on mortgage loans and, accordingly, may not be indicative of the ability of a borrower to repay its Mortgage Loan. FICO Credit Scores range from approximately 250 to approximately 900, with higher scores indicating an individual with a more favorable credit history compared to an individual with a lower score. Under Countrywide Home Loans' underwriting guidelines, borrowers possessing higher FICO Credit Scores, which indicate a more favorable credit history and who give Countrywide

<PAGE>

Home Loans the right to obtain the tax returns they filed for the preceding two years, may be eligible for Countrywide Home Loans' processing program (the "Preferred Processing Program"). As of the cut-off date, [none] of the Mortgage Loans have been underwritten pursuant to Countrywide Home Loans' Preferred Processing Program. Countrywide Home Loans may waive some

documentation requirements for Mortgage Loans originated under the Preferred Processing Program.

Periodically the data used by Countrywide Home Loans to complete the underwriting analysis may be obtained by a third party, particularly for mortgage loans originated through a loan correspondent or mortgage broker. In those instances, the initial determination as to whether a mortgage loan complies with Countrywide Home Loans' underwriting guidelines may be made by an independent company hired to perform underwriting services on behalf of Countrywide Home Loans, the loan correspondent or mortgage broker. In addition, Countrywide Home Loans may acquire mortgage loans from approved correspondent lenders under a program pursuant to which Countrywide Home Loans delegates to the correspondent the obligation to underwrite the mortgage loans to Countrywide Home Loans' standards. Under these circumstances, the underwriting of a mortgage loan may not have been reviewed by Countrywide Home Loans before acquisition of the mortgage loan and the correspondent represents that Countrywide Home Loans' underwriting standards have been met. After purchasing mortgage loans under those circumstances, Countrywide Home Loans conducts a quality control review of a sample of the mortgage loans. The number of loans reviewed in the quality control process varies based on a variety of factors, including Countrywide Home Loans' prior experience with the correspondent lender and the results of the quality control review process itself.

Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral. Under those standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. If the prospective borrower has applied for an interest-only Six-Month LIBOR Loan, the interest component of the monthly mortgage expense is calculated based upon the initial interest rate plus 2%. If the prospective borrower has applied for a 3/1 Mortgage Loan or 3/27 Mortgage Loan and the Loan-to-Value Ratio is less than or equal to 75%, the interest component of the monthly mortgage expense is calculated based on the initial loan interest rate; if the Loan-to-Value Ratio exceeds 75%, the interest component of the monthly mortgage expense calculation is based on the initial loan interest rate plus 2%. If the prospective borrower has applied for a 5/1 Mortgage Loan, a 5/25 Mortgage Loan, a 7/1 Mortgage Loan, a 7/23 Mortgage Loan, a 10/1 Mortgage Loan or a 10/20 Mortgage Loan, the interest component of the monthly mortgage expense is calculated based on the initial loan interest rate. If the prospective borrower has applied for a Negative Amortization Loan, the interest component of the monthly housing expense calculation is based upon the greater of 4.25% and the fully indexed mortgage note rate at the time of loan application. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs. Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower. Additionally, Countrywide Home Loans does permit its adjustable rate mortgage loans, hybrid adjustable rate mortgage loans and negative amortization mortgage loans to be assumed by a purchaser of the related mortgaged property, so long as the mortgage loan is in its adjustable rate period (except for a 3/1 Mortgage Loan, which may be assumed during the fixed rate period) and the related purchaser meets Countrywide Home Loans' underwriting standards that are then in effect.

Countrywide Home Loans may provide secondary financing to a borrower contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%. Countrywide Home Loans' underwriting guidelines do not prohibit or otherwise restrict a borrower from obtaining secondary financing from lenders other than Countrywide Home Loans, whether at origination of the mortgage loan or thereafter.

The nature of the information that a borrower is required to disclose and whether the information is verified depends, in part, on the documentation program used in the origination process. In general under the Full

<PAGE>

Documentation Loan Program (the "Full Documentation Program"), each prospective borrower is required to complete an application which includes information with respect to the applicant's assets, liabilities, income, credit history, employment history and other personal information. Self-employed individuals are generally required to submit their two most recent federal income tax returns. Under the Full Documentation Program, the underwriter verifies the information contained in the application relating to employment, income, assets and mortgages.

A prospective borrower may be eligible for a loan approval process that limits or eliminates Countrywide Home Loans' standard disclosure or verification requirements or both. Countrywide Home Loans offers the following documentation programs as alternatives to its Full Documentation Program: an Alternative Documentation Loan Program (the "Alternative Documentation Program"), a Reduced Documentation Loan Program (the "Reduced Documentation Program"), a CLUES Plus Documentation Loan Program (the "CLUES Plus Documentation Program"), a No Income/No Asset Documentation Loan Program (the "No Income/No Asset Documentation Program"), a Stated Income/Stated Asset Documentation Loan Program (the "Stated Income/Stated Asset Documentation Program") and a Streamlined Documentation Loan Program (the "Streamlined Documentation Program").

For all mortgage loans originated or acquired by Countrywide Home Loans, Countrywide Home Loans obtains a credit report relating to the applicant from a credit reporting company. The credit report typically contains information relating to such matters as credit history with local and national merchants and lenders, installment debt payments and any record of defaults, bankruptcy, dispossession, suits or judgments. All adverse information in the credit report is required to be explained by the prospective borrower to the satisfaction of the lending officer.

Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect.

[Countrywide Home Loans requires title insurance on all of its mortgage loans secured by first liens on real property. Countrywide Home Loans

also requires that fire and extended coverage casualty insurance be maintained on the mortgaged property in an amount at least equal to the principal balance of the related single-family mortgage loan or the replacement cost of the mortgaged property, whichever is less.]

In addition to Countrywide Home Loans' standard underwriting guidelines (the "Standard Underwriting Guidelines"), which are consistent in many respects with the guidelines applied to mortgage loans purchased by Fannie Mae and Freddie Mac, Countrywide Home Loans uses underwriting guidelines featuring expanded criteria (the "Expanded Underwriting Guidelines"). The Standard Underwriting Guidelines and the Expanded Underwriting Guidelines are described further under the next two headings.

Standard Underwriting Guidelines

Countrywide Home Loans' Standard Underwriting Guidelines for mortgage loans with non-conforming original principal balances generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 75% for mortgage loans with original principal balances of up to $1,000,000, up to 65% for mortgage loans with original principal balances of up to $1,500,000, and up to 60% for mortgage loans with original principal balances of up to $2,000,000.

For cash-out refinance mortgage loans, Countrywide Home Loans' Standard Underwriting Guidelines for mortgage loans with non-conforming original principal balances generally allow Loan-to-Value Ratios at origination of up to 75% and original principal balances ranging up to $650,000. The maximum "cash-out" amount permitted is $200,000 and is based in part on the original Loan-to-Value Ratio of the related mortgage loan. As used in this prospectus supplement, a refinance mortgage loan is classified as a cash-out refinance mortgage loan by Countrywide Home Loans if the borrower retains an amount greater than the lesser of 2% of the entire amount of the proceeds from the refinancing of the existing loan or $2,000.

<PAGE>

Countrywide Home Loans' Standard Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination on owner occupied properties of up to 95% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii) and 2 unit properties with principal balances up to $533,850 ($800,775 in Alaska and Hawaii) and up to 80% on 3 unit properties with principal balances of up to $645,300 ($967,950 in Alaska and Hawaii) and 4 unit properties with principal balances of up to $801,950 ($1,202,925 in Alaska and Hawaii). On second homes, Countrywide Home Loans' Standard Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination of up to 95% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii). Countrywide Home Loans' Standard Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination on investment properties of up to 90% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii) and 2 unit properties with principal balances up to $533,850 ($800,775 in Alaska and Hawaii) and up to 75% on 3 unit properties with principal balances of up to $645,300 ($967,950 in Alaska and Hawaii) and 4 unit properties with principal balances of up to $801,950 ($1,202,925 in Alaska and Hawaii).

Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 33% and a debt-to-income ratio based on the borrower's total monthly debt of up to 38%.

In connection with the Standard Underwriting Guidelines, Countrywide Home Loans originates or acquires mortgage loans under the Full Documentation Program, the Alternative Documentation Program, the Reduced Documentation Program, the CLUES Plus Documentation Program or the Streamlined Documentation Program.

The Alternative Documentation Program permits a borrower to provide W-2 forms instead of tax returns covering the most recent two years, permits bank statements in lieu of verification of deposits and permits alternative methods of employment verification.

Under the Reduced Documentation Program, some underwriting documentation concerning income, employment and asset verification is waived. Countrywide Home Loans obtains from a prospective borrower either a verification of deposit or bank statements for the two-month period immediately before the date of the mortgage loan application or verbal verification of employment. Since information relating to a prospective borrower's income and employment is not verified, the borrower's debt-to-income ratios are calculated based on the information provided by the borrower in the mortgage loan application. The maximum Loan-to-Value Ratio, including secondary financing, ranges up to 75%.

The CLUES Plus Documentation Program permits the verification of employment by alternative means, if necessary, including verbal verification of employment or reviewing paycheck stubs covering the pay period immediately prior to the date of the mortgage loan application. To verify the borrower's assets and the sufficiency of the borrower's funds for closing, Countrywide Home Loans obtains deposit or bank account statements from each prospective borrower for the month immediately prior to the date of the mortgage loan application. Under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio is 75% and property values may be based on appraisals comprising only interior and exterior inspections. Cash-out refinances and investor properties are not permitted under the CLUES Plus Documentation Program.

The Streamlined Documentation Program is available for borrowers who are refinancing an existing mortgage loan that was originated or acquired by Countrywide Home Loans provided that, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve-month period. Under the Streamlined Documentation Program, appraisals are obtained only if the loan amount of the loan being refinanced had a Loan-to-Value Ratio at the time of origination in excess of 80% or if the loan amount of the new loan being originated is greater than $650,000. In addition, under the Streamlined Documentation Program, a credit report is obtained but only a limited credit review is conducted, no income or asset verification is required, and telephonic verification of employment is permitted. The maximum Loan-to-Value Ratio under the Streamlined Documentation Program ranges up to 95%.

As of the cut-off date, [all] of the Mortgage Loans have been underwritten pursuant to Countrywide Home Loans' Standard Underwriting Guidelines.

<PAGE>

Expanded Underwriting Guidelines

        Mortgage loans which are underwritten pursuant to the Expanded
Underwriting Guidelines may have higher Loan-to-Value Ratios, higher loan
amounts and different documentation requirements than those associated with the
Standard Underwriting Guidelines. The Expanded Underwriting Guidelines also
permit higher debt-to-income ratios than mortgage loans underwritten pursuant
to the Standard Underwriting Guidelines.

        Countrywide Home Loans' Expanded Underwriting Guidelines for
mortgage loans with non-conforming original principal balances generally allow
Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and
term refinance mortgage loans with original principal balances of up to
$400,000, up to 90% for mortgage loans with original principal balances of up
to $650,000, up to 80% for mortgage loans with original principal balances of
up to $1,000,000, up to 75% for mortgage loans with original principal balances
of up to $1,500,000 and up to 70% for mortgage loans with original principal
balances of up to $3,000,000. Under certain circumstances, however, Countrywide
Home Loans' Expanded Underwriting Guidelines allow for Loan-to-Value Ratios of
up to 100% for purchase money mortgage loans with original principal balances
of up to $375,000.

        For cash-out refinance mortgage loans, Countrywide Home Loans'
Expanded Underwriting Guidelines for mortgage loans with non-conforming
original principal balances generally allow Loan-to-Value Ratios at origination
of up to 90% and original principal balances ranging up to $1,500,000. The
maximum "cash-out" amount permitted is $400,000 and is based in part on the
original Loan-to-Value Ratio of the related mortgage loan.

        Countrywide Home Loans' Expanded Underwriting Guidelines for
conforming balance mortgage loans generally allow Loan-to-Value Ratios at
origination on owner occupied properties of up to 100% on 1 unit properties
with principal balances up to $417,000 ($625,500 in Alaska and Hawaii) and 2
unit properties with principal balances up to $533,850 ($800,775 in Alaska and
Hawaii) and up to 85% on 3 unit properties with principal balances of up to
$645,300 ($967,950 in Alaska and Hawaii) and 4 unit properties with principal
balances of up to $801,950 ($1,202,925 in Alaska and Hawaii). On second homes,
Countrywide Home Loans' Expanded Underwriting Guidelines for conforming balance
mortgage loans generally allow Loan-to-Value Ratios at origination of up to 95%
on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska
and Hawaii). Countrywide Home Loans' Expanded Underwriting Guidelines for
conforming balance mortgage loans generally allow Loan-to-Value Ratios at
origination on investment properties of up to 90% on 1 unit properties with
principal balances up to $417,000 ($625,500 in Alaska and Hawaii) and 2 unit
properties with principal balances up to $533,850 ($800,775 in Alaska and
Hawaii) and up to 85% on 3 unit properties with principal balances of up to
$645,300 ($967,950 in Alaska and Hawaii) and 4 unit properties with principal
balances of up to $801,950 ($1,202,925 in Alaska and Hawaii).

        Under its Expanded Underwriting Guidelines, Countrywide Home Loans
generally permits a debt-to-income ratio based on the borrower's monthly
housing expenses of up to 36% and a debt-to-income ratio based on the
borrower's total monthly debt of up to 40%; provided, however, that if the
Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios
are 33% and 38%, respectively.

        In connection with the Expanded Underwriting Guidelines, Countrywide
Home Loans originates or acquires mortgage loans under the Full Documentation
Program, the Alternative Documentation Program, the Reduced Documentation Loan
Program, the No Income/No Asset Documentation Program and the Stated
Income/Stated Asset Documentation Program. Neither the No Income/No Asset
Documentation Program nor the Stated Income/Stated Asset Documentation Program

is available under the Standard Underwriting Guidelines.

The same documentation and verification requirements apply to mortgage loans documented under the Alternative Documentation Program regardless of whether the loan has been underwritten under the Expanded Underwriting Guidelines or the Standard Underwriting Guidelines. However, under the Alternative Documentation Program, mortgage loans that have been underwritten pursuant to the Expanded Underwriting Guidelines may have higher loan balances and Loan-to-Value Ratios than those permitted under the Standard Underwriting Guidelines.

Similarly, the same documentation and verification requirements apply to mortgage loans documented under the Reduced Documentation Program regardless of whether the loan has been underwritten under the Expanded Underwriting Guidelines or the Standard Underwriting Guidelines. However, under the Reduced

<PAGE>

Documentation Program, higher loan balances and Loan-to-Value Ratios are permitted for mortgage loans underwritten pursuant to the Expanded Underwriting Guidelines than those permitted under the Standard Underwriting Guidelines. The maximum Loan-to-Value Ratio, including secondary financing, ranges up to 90%. The borrower is not required to disclose any income information for some mortgage loans originated under the Reduced Documentation Program, and accordingly debt-to-income ratios are not calculated or included in the underwriting analysis. The maximum Loan-to-Value Ratio, including secondary financing, for those mortgage loans ranges up to 85%.

Under the No Income/No Asset Documentation Program, no documentation relating to a prospective borrower's income, employment or assets is required and therefore debt-to-income ratios are not calculated or included in the underwriting analysis, or if the documentation or calculations are included in a mortgage loan file, they are not taken into account for purposes of the underwriting analysis. This program is limited to borrowers with excellent credit histories. Under the No Income/No Asset Documentation Program, the maximum Loan-to-Value Ratio, including secondary financing, ranges up to 95%. Mortgage loans originated under the No Income/No Asset Documentation Program are generally eligible for sale to Fannie Mae or Freddie Mac.

As of the cut-off date, [none] of the Mortgage Loans have been originated by Countrywide Home Loans under the No Income/No Asset Documentation Program.

Under the Stated Income/Stated Asset Documentation Program, the mortgage loan application is reviewed to determine that the stated income is reasonable for the borrower's employment and that the stated assets are consistent with the borrower's income. The Stated Income/Stated Asset Documentation Program permits maximum Loan-to-Value Ratios up to 90%. Mortgage loans originated under the Stated Income/Stated Asset Documentation Program are generally eligible for sale to Fannie Mae or Freddie Mac.

As of the cut-off date, approximately [ ]% of the Mortgage Loans, by aggregate stated principal balance of the Mortgage Loans as of the cut-off date, have been originated by Countrywide Home Loans under the Stated Income/Stated Asset Program.

SERVICING OF THE MORTGAGE LOANS

General