Unpaid Realized Loss Amount.........................................S-82


                                    S-142
<PAGE>

                                                              ANNEX A


                                    A-1


<PAGE>
                                                              ANNEX I
                        Global Clearance, Settlement and Tax
                            Documentation Procedures

        Except in certain limited circumstances, the globally offered CWALT,
Inc. Mortgage Backed Notes, Series 200[ ]-[ ], (the "Global Securities") will
be available only in book-entry form. Investors in the Global Securities may
hold the Global Securities through any of DTC, Clearstream, Luxembourg or
Euroclear. The Global Securities will be tradable as home market instruments
in both the European and U.S. domestic markets. Initial settlement and all
secondary trades will settle in same-day funds.

        Secondary market trading between investors holding Global Securities
through Clearstream, Luxembourg and Euroclear will be conducted in the
ordinary way in accordance with their normal rules and operating procedures
and in accordance with conventional Eurobond practice (i.e., seven calendar
day settlement).

        Secondary market trading between investors holding Global Securities
through DTC will be conducted according to the rules and procedures applicable
to U.S. corporate debt obligations and prior mortgage pass-through note
issues.

        Secondary cross-market trading between Clearstream, Luxembourg or
Euroclear and DTC Participants holding Notes will be effected on a
delivery-against-payment basis through the respective Depositaries of
Clearstream, Luxembourg and Euroclear (in such capacity) and as DTC
Participants.

        Non-U.S. holders (as described below) of Global Securities will be
subject to U.S. withholding taxes unless the holders meet certain requirements
and deliver appropriate U.S. tax documents to the securities clearing
organizations or their participants.

Initial Settlement

        All Global Securities will be held in book-entry form by DTC in the name
of Cede & Co. as nominee of DTC. Investors' interests in the Global Securities
will be represented through financial institutions acting on their behalf as
direct and indirect Participants in DTC. As a result, Clearstream, Luxembourg
and Euroclear will hold positions on behalf of their participants through
their respective Depositaries, which in turn will hold the positions in
accounts as DTC Participants.

        Investors electing to hold their Global Securities through DTC will
follow the settlement practices applicable to prior mortgage pass-through note
issues. Investor securities custody accounts will be credited with their
holdings against payment in same-day funds on the settlement date.

Investors electing to hold their Global Securities through Clearstream, Luxembourg or Euroclear accounts will follow the settlement procedures applicable to conventional Eurobonds, except that there will be no temporary global security and no "lock-up" or restricted period. Global Securities will be credited to the securities custody accounts on the settlement date against payment in same-day funds.

Secondary Market Trading

Since the purchaser determines the place of delivery, it is important to establish at the time of the trade where both the purchaser's and seller's accounts are located to ensure that settlement can be made on the desired value date.

Trading between DTC Participants. Secondary market trading between DTC Participants will be settled using the procedures applicable to prior mortgage pass-through note issues in same-day funds.

I-1

<PAGE>

Trading between Clearstream, Luxembourg and/or Euroclear Participants. Secondary market trading between Clearstream, Luxembourg Participants or Euroclear Participants will be settled using the procedures applicable to conventional Eurobonds in same-day funds.

Trading between DTC Seller and Clearstream, Luxembourg or Euroclear Purchaser. When Global Securities are to be transferred from the account of a DTC Participant to the account of a Clearstream, Luxembourg Participant or a Euroclear Participant, the purchaser will send instructions to Clearstream, Luxembourg or Euroclear through a Clearstream, Luxembourg Participant or Euroclear Participant at least one Business Day prior to settlement. Clearstream, Luxembourg or Euroclear will instruct the respective Depositary, as the case may be, to receive the Global Securities against payment. Payment will include interest accrued on the Global Securities from and including the last coupon payment date to and excluding the settlement date, on the basis of a 360-day year and either the actual number of days in the related accrual period or a year consisting of twelve 30-day months, as applicable. For transactions settling on the 31st of the month, payment will include interest accrued to and excluding the first day of the following month. Payment will then be made by the respective Depositary of the DTC Participant's account against delivery of the Global Securities. After settlement has been completed, the Global Securities will be credited to the respective clearing system and by the clearing system, in accordance with its usual procedures, to the Clearstream, Luxembourg Participant's or Euroclear Participant's account. The securities credit will appear the next day (European time) and the cash debt will be back-valued to, and the interest on the Global Securities will accrue from, the value date (which would be the preceding day when settlement occurred in New York). If settlement is not completed on the intended value date (i.e., the trade fails), the Clearstream, Luxembourg or Euroclear cash debt will be valued instead as of the actual settlement date.

Clearstream, Luxembourg Participants and Euroclear Participants will need to make available to the respective clearing systems the funds necessary to process same-day funds settlement. The most direct means of doing so is to preposition funds for settlement, either from cash on hand or existing lines of credit, as they would for any settlement occurring within Clearstream,

Luxembourg or Euroclear. Under this approach, they may take on credit exposure to Clearstream, Luxembourg or Euroclear until the Global Securities are credited to their accounts one day later.

As an alternative, if Clearstream, Luxembourg or Euroclear has extended a line of credit to them, Clearstream, Luxembourg Participants or Euroclear Participants can elect not to preposition funds and allow that credit line to be drawn upon the finance settlement. Under this procedure, Clearstream, Luxembourg Participants or Euroclear Participants purchasing Global Securities would incur overdraft charges for one day, assuming they cleared the overdraft when the Global Securities were credited to their accounts. However, interest on the Global Securities would accrue from the value date. Therefore, in many cases the investment income on the Global Securities earned during that one-day period may substantially reduce or offset the amount of the overdraft charges, although this result will depend on each Clearstream, Luxembourg Participant's or Euroclear Participant's particular cost of funds.

Since the settlement is taking place during New York business hours, DTC Participants can employ their usual procedures for sending Global Securities to the respective European Depositary for the benefit of Clearstream, Luxembourg Participants or Euroclear Participants. The sale proceeds will be available to the DTC seller on the settlement date. Thus, to the DTC Participants a cross-market transaction will settle no differently than a trade between two DTC Participants.

Trading between Clearstream, Luxembourg or Euroclear Seller and DTC Purchaser. Due to time zone differences in their favor, Clearstream, Luxembourg Participants and Euroclear Participants may employ their customary procedures for transactions in which Global Securities are to be transferred by the respective clearing system, through the respective Depositary, to a DTC Participant. The seller will send instructions to Clearstream, Luxembourg or Euroclear through a Clearstream, Luxembourg Participant or Euroclear Participant at least one Business Day prior to settlement. In these cases Clearstream, Luxembourg or Euroclear will instruct the respective Depositary, as appropriate, to deliver the Global Securities to the DTC Participant's account against payment. Payment will include interest accrued on the Global Securities from and including the last coupon payment to and excluding the settlement date on the basis of a 360-day year and either the actual number of days in the related accrual period or a year consisting of twelve 30-day months, as applicable. For transactions settling on the 31st of the month, payment will include interest accrued to and excluding the first day of the following month. The payment

I-2

<PAGE>

will then be reflected in the account of the Clearstream, Luxembourg Participant or Euroclear Participant the following day, and receipt of the cash proceeds in the Clearstream, Luxembourg Participant's or Euroclear Participant's account would be back-valued to the value date (which would be the preceding day, when settlement occurred in New York). Should the Clearstream, Luxembourg Participant or Euroclear Participant have a line of credit with its respective clearing system and elect to be in debt in anticipation of receipt of the sale proceeds in its account, the back-valuation will extinguish any overdraft incurred over that one-day period. If settlement is not completed on the intended value date (i.e., the trade fails), receipt of the cash proceeds in the Clearstream, Luxembourg Participant's or Euroclear Participant's account would instead be valued as of

the actual settlement date.

Finally, day traders that use Clearstream, Luxembourg or Euroclear and that purchase Global Securities from DTC Participants for delivery to Clearstream, Luxembourg Participants or Euroclear Participants should note that these trades would automatically fail on the sale side unless affirmative action were taken. At least three techniques should be readily available to eliminate this potential problem:

(a) borrowing through Clearstream, Luxembourg or Euroclear for one day (until the purchase side of the day trade is reflected in their Clearstream, Luxembourg or Euroclear accounts) in accordance with the clearing system's customary procedures;

(b) borrowing the Global Securities in the U.S. from a DTC Participant no later than one day prior to settlement, which would give the Global Securities sufficient time to be reflected in their Clearstream, Luxembourg or Euroclear account in order to settle the sale side of the trade; or

(c) staggering the value dates for the buy and sell sides of the trade so that the value date for the purchase from the DTC Participant is at least one day prior to the value date for the sale to the Clearstream, Luxembourg Participant or Euroclear Participant.

Certain U.S. Federal Income Tax Documentation Requirements

A beneficial owner of Global Securities holding securities through Clearstream, Luxembourg or Euroclear (or through DTC if the holder has an address outside the U.S.) will be subject to the 30% U.S. withholding tax that generally applies to payments of interest (including original issue discount) on registered debt issued by U.S. Persons, unless (i) each clearing system, bank or other financial institution that holds customers' securities in the ordinary course of its trade or business in the chain of intermediaries between the beneficial owner and the U.S. entity required to withhold tax complies with applicable certification requirements and (ii) the beneficial owner takes one of the following steps to obtain an exemption or reduced tax rate:

Exemption for non-U.S. Persons or Reduced Rate for non-U.S. Persons Resident in Treaty Countries (Form W-8BEN). In general, beneficial owners of Global Securities that are non-U.S. Persons can obtain a complete exemption from the withholding tax by filing a signed Form W-8BEN Note of Foreign Status of Beneficial Owners for United States Tax Withholding. Non-U.S. Persons that are Note Owners residing in a country that has a tax treaty with the United States also can obtain an exemption or reduced tax rate (depending on the treaty terms) by filing Form W-8BEN (Note of Foreign Status of Beneficial Owners for United States Tax Withholding). If the information shown on Form W-8BEN changes, a new Form W-8BEN must be filed within 30 days of the change. More complex rules apply if Global Securities are held through a non-U.S. intermediary (which includes an agent, nominee, custodian, or other person who holds a Global Security for the account of another) or a non-U.S. flow-through entity (which includes a partnership, trust, and certain fiscally transparent entities).

Exemption for non-U.S. Persons with Effectively Connected Income (Form W-8ECI). In general, a non-U.S. Person, including a non-U.S. corporation or bank with a U.S. branch, for which the interest income is effectively connected with its conduct of a trade or business in the United States, can obtain an exemption from the withholding tax by filing Form W-8ECI (Note of Foreign Person's Claim for Exemption from Withholding On Income Effectively Connected with the Conduct of a Trade or Business in the United States). More

complex rules apply where Global Securities are held through a Non-U.S. intermediary or Non-U.S. flow through entity.

I-3

<PAGE>

Exemption for U.S. Persons (Form W-9). U.S. Persons can obtain a complete exemption from the withholding tax by filing Form W-9 (Payer's Request for Taxpayer Identification Number and Certification).

U.S. Federal Income Tax Reporting Procedure. The Note Owner of a Global Security, files by submitting the appropriate form to the person through whom it holds (the clearing agency, in the case of persons holding directly on the books of the clearing agency). Generally, a Form W-8BEN and a Form W-8ECI will remain in effect for a period starting on the date the form is signed and ending on the last day of the third succeeding calendar year unless a change in circumstances makes any information of the form incorrect. In addition, a Form W-8BEN furnished with a U.S. taxpayer identification number will remain in effect until a change in circumstances makes any information of the form incorrect, provided that the withholding agent reports on Form 1042-S at least one payment annually to the beneficial owner who provided the form.

The term "U.S. Person" means:

(1) a citizen or resident of the United States,

(2) a corporation or partnership (including an entity treated as a corporation or partnership for U.S. federal income tax purposes) organized in or under the laws of the United States, any State thereof or the District of Columbia,

(3) an estate the income of which is includible in gross income for United States tax purposes, regardless of its source,

(4) a trust if a court within the United States is able to exercise primary supervision of the administration of the trust and one or more United States persons have the authority to control all substantial decisions of the trust. This summary does not deal with all aspects of U.S. Federal income tax withholding that may be relevant to foreign holders of the Global Securities. Investors are advised to consult their tax advisors for specific tax advice concerning their holding and disposing of the Global Securities, or

(5) certain eligible trusts that elect to be taxed as U.S. persons.

I-4

<PAGE>

$[          ]
(Approximate)

Mortgage Backed Notes, Series 200[ ]-[ ]

Alternative Loan Trust 200[ ]-[ ]
Issuing Entity


CWALT, INC.
Depositor


[Countrywide Home Loans, Inc. Logo]
Sponsor and Seller


[Countrywide Home Loans Servicing LP]
Master Servicer


----------------

PROSPECTUS SUPPLEMENT

----------------


[Underwriter]

[Underwriter]

[Underwriter]


You should rely only on the information contained or incorporated by reference in this prospectus supplement and the accompanying prospectus. We have not authorized anyone to provide you with different information.

We are not offering the Series 200[ ]-[ ] Mortgage Backed Notes in any state where the offer is not permitted.

Dealers will deliver a prospectus supplement and prospectus when acting as underwriters of the Series 200[ ]-[ ] Mortgage Backed Notes and with respect to their unsold allotments or subscriptions. In addition, all dealers selling the Series 200[ ]-[ ] Mortgage Backed Notes will be required to deliver a prospectus supplement and prospectus for 90 days after the date of the prospectus supplement.


[          ], 200[ ]


<PAGE>


The information in this prospectus is not complete and may be changed. We may not sell these securities until the registration statement filed with the Securities and Exchange Commission is effective. This prospectus is not an offer to sell these securities and it is not soliciting offers to buy these securities in any state where the offer or sale is not permitted.

SUBJECT TO COMPLETION DATED MARCH 6, 2006

CWALT, INC.
Depositor

Mortgage Backed Securities
(Issuable in Series)

--------------------

| | |
|---|---|
| Please carefully consider our discussion of some of the risks of investing in the securities under "Risk Factors" beginning on page 2 | **The Trusts** |
| | Each trust will be established to hold assets in its trust fund transferred to it by CWALT, Inc. The assets in each trust fund will be specified in the prospectus supplement for the particular trust and will generally consist of: |
| The securities will represent obligations of the related trust fund only and will not represent an interest in or obligation of CWALT, Inc., any seller, servicer, or any of their affiliates. | o  first lien mortgage loans secured by one- to four-family residential properties; |
| | o  mortgage loans secured by first liens on small multifamily residential properties, such as rental apartment buildings or projects containing five to fifty residential units; |
| | o  collections arising from one or more types of the loans described above which are not used to make payments on securities issued by a trust fund, including excess servicing fees and prepayment charges; |
| | o  mortgage pass-through securities issued or guaranteed by Ginnie Mae, Fannie Mae, or Freddie Mac; or |
| | o  mortgage-backed securities evidencing an interest in, or secured by, loans of the type that would otherwise be eligible to be loans included in a trust fund and issued by entities other than Ginnie Mae, Fannie Mae or Freddie Mac. |

--------------------

The Securities

CWALT, Inc. will sell either certificates or notes pursuant to a prospectus supplement. The securities will be grouped into one or more series, each having its own distinct designation. Each series will be issued in one or more classes and each class will evidence beneficial ownership of (in the case of certificates) or a right to receive payments supported by (in the case of notes) a specified portion of future payments on the assets in the trust fund that the series relates to. A prospectus supplement for a series will specify all of the terms of the series and of each of the classes in the series.

Credit Enhancement

If the securities have any type of credit enhancement, the prospectus supplement for the related series will describe the credit enhancement. The types of credit enhancement are generally described in this prospectus.

Offers of Securities

The securities may be offered through several different methods, including offerings through underwriters.

---------------

These securities have not been approved or disapproved by the Securities and
Exchange Commission or any state securities commission nor has the Securities
and Exchange Commission or any state securities commission passed upon the
accuracy or adequacy of this prospectus. Any representation to the contrary is
a criminal offense.
[                    ], 2006


<PAGE>

Table of Contents

Important Notice About Information in This
    Prospectus and Each Accompanying
    Prospectus Supplement.........................1
Risk Factors.....................................2
    Limited Source Of Payments -- No
        Recourse To Sellers, Depositor Or
        Servicer.................................2
    Credit Enhancement May Not Be
        Sufficient To Protect You From
        Losses...................................3
    Nature Of Mortgages..........................3
    Your Risk Of Loss May Be Higher Than
        You Expect If Your Securities Are
        Backed By Multifamily Loans..............7
    Impact Of World Events.......................7
    You Could Be Adversely Affected By
        Violations Of Environmental Laws.........8
    Ratings Of The Securities Do Not
        Assure Their Payment.....................9
    Book-Entry Registration.....................10
    Secondary Market For The Securities
        May Not Exist...........................10
    Bankruptcy Or Insolvency May Affect
        The Timing And Amount Of
        Distributions On The Securities.........10
    The Principal Amount Of Securities
        May Exceed The Market Value Of
        The Trust Fund Assets...................11
The Trust Fund..................................12
    General.....................................12
    The Loans...................................13
    Agency Securities...........................16
    Non-Agency Mortgage-Backed
        Securities..............................21
    Substitution of Trust Fund Assets...........22
    Available Information.......................23
    Incorporation of Certain Documents by
        Reference; Reports Filed
        with the SEC............................23
    Reports to Securityholders..................24
Use of Proceeds.................................24
The Depositor...................................24
Loan Program....................................25
    Underwriting Standards......................25
    Qualifications of Sellers...................26
    Representations by Sellers; Repurchases.....26
Static Pool Data................................27

Description of the Securities....................28
    General....................................28
    Distributions on Securities................30
    Advances...................................31
    Reports to Securityholders.................32
    Categories of Classes of Securities........33
    Indices Applicable to Floating Rate
      and Inverse Floating Rate Classes.......36
    Book-Entry Registration of Securities......39
Credit Enhancement..............................43
    General....................................43
    Subordination..............................44
    Letter of Credit...........................45
    Insurance Policies, Surety Bonds
      and Guaranties..........................45
    Overcollateralization and Excess
      Cash Flow...............................45
    Reserve Accounts...........................46
    Special Hazard Insurance Policies..........46
    Bankruptcy Bonds...........................47
    Pool Insurance Policies....................47
    Financial Instruments......................49
    Cross Support..............................49
Yield, Maturity and Prepayment
    Considerations.............................49
    Prepayments on Loans.......................49
    Prepayment Effect on Interest..............50
    Delays in Realization on Property;
      Expenses of Realization.................50
    Optional Purchase..........................51
    Prepayment Standards or Models.............51
    Yield......................................52
The Agreements..................................52
    Assignment of the Trust Fund
      Assets..................................52
    Payments On Loans; Deposits to
      Security Account........................54
    Pre-Funding Account........................56
    Investments in Amounts Held in Accounts.....57
    Sub-Servicing by Sellers...................58
    Collection Procedures......................59
    Hazard Insurance...........................59
    Application of Liquidation Proceeds.........61
    Realization Upon Defaulted Loans............62
    Servicing and Other Compensation and
      Payment of Expenses.....................64
    Evidence as to Compliance..................64
    Certain Matters Regarding the Master
      Servicer and the Depositor..............65
    Events of Default; Rights Upon
      Event of Default........................66
    Amendment..................................68
    Termination; Optional Termination..........70
    The Trustee................................70
Certain Legal Aspects of the Loans.............71
    General....................................71
    Foreclosure................................72
    Environmental Risks........................74
    Rights of Redemption.......................75

i

<PAGE>

    Anti-Deficiency Legislation and Other
       Limitations On Lenders....................75
    Due-On-Sale Clauses..........................76
    Enforceability of Prepayment and
       Late Payment Fees.........................77
    Applicability of Usury Laws..................77
    Servicemembers Civil Relief Act.............77
    Other Loan Provisions and Lender
       Requirements..............................77
    Consumer Protection Laws....................78
Material Federal Income Tax
       Consequences..............................79
    General.....................................79
    Taxation of Debt Securities.................80
    Taxation of the REMIC and Its
       Holders...................................84
    REMIC Expenses; Single Class REMICs.........84
    Taxation of the REMIC.......................85
    Taxation of Holders of Residual
       Interests.................................86
    Administrative Matters......................90
    Tax Status as a Grantor Trust...............90
    Sale or Exchange............................92
    Miscellaneous Tax Aspects...................93
    Proposed Reporting Regulations..............93
    Tax Treatment of Foreign Investors..........93
    Tax Characterization of the Trust Fund
       as a Partnership..........................94
    Tax Consequences to Holders of the
       Notes.....................................94
    Tax Consequences to Holders of the
       Certificates..............................96
Other Tax Considerations........................100
ERISA Considerations............................100
Legal Investment................................103
Method of Distribution..........................104
Legal Matters...................................105
Financial Information...........................105
Rating..........................................105
Index to Defined Terms..........................107

                                              ii

<PAGE>


          Important Notice About Information in This Prospectus and Each
                      Accompanying Prospectus Supplement

        Information about each series of securities is contained in two separate
documents:

        o       this prospectus, which provides general information, some of which
                may not apply to a particular series; and

        o       the accompanying prospectus supplement for a particular series,
                which describes the specific terms of the securities of that
                series.

The prospectus supplement will contain information about a particular series that supplements the information contained in this prospectus, and you should rely on that supplementary information in the prospectus supplement.

You should rely only on the information in this prospectus and the accompanying prospectus supplement. We have not authorized anyone to provide you with information that is different from that contained in this prospectus and the accompanying prospectus supplement.

---------------

If you require additional information, the mailing address of our principal executive offices is CWALT, Inc., 4500 Park Granada, Calabasas, California 91302 and the telephone number is (818) 225-3000. For other means of acquiring additional information about us or a series of securities, see "The Trust Fund -- Available Information" and "-- Incorporation of Certain Documents by Reference; Reports Filed with the SEC" beginning on page 23.

1

<PAGE>

                              Risk Factors

You should carefully consider the following information since it identifies significant risks associated with an investment in the securities.

| | |
|---|---|
| Limited Source Of Payments -- No Recourse To Sellers, Depositor Or Servicer | The applicable prospectus supplement may provide that securities will be payable from other trust funds in addition to their associated trust fund, but if it does not, they will be payable solely from their associated trust fund. If the trust fund does not have sufficient assets to distribute the full amount due to you as a securityholder, your yield will be impaired, and perhaps even the return of your principal may be impaired, without your having recourse to anyone else. Furthermore, at the times specified in the applicable prospectus supplement, certain assets of the trust fund may be released and paid out to other people, such as the depositor, a servicer, a credit enhancement provider, or any other person entitled to payments from the trust fund. Those assets will no longer be available to make payments to you. Those payments are generally made after other specified payments that may be set forth in the applicable prospectus supplement have been made. |
| | You will not have any recourse against the depositor or any servicer if you do not receive a required distribution on the securities. Nor will you have recourse against the assets of the trust fund of any other series of securities. |
| | The securities will not represent an interest in the depositor, any servicer, any seller to the depositor, or anyone else except the trust fund. The only obligation of the depositor to a trust |

fund comes from certain representations and
warranties made by it about assets transferred
to the trust fund. If these representations and
warranties turn out to be untrue, the depositor
may be required to repurchase some of the
transferred assets. CWALT, Inc., which is the
depositor, does not have significant assets and
is unlikely to have significant assets in the
future. So if the depositor were required to
repurchase a loan because of a breach of a
representation, its only sources of funds for
the repurchase would be:

o    funds obtained from enforcing a
     corresponding obligation of a seller or
     originator of the loan, or

o    funds from a reserve fund or similar credit
     enhancement established to pay for loan
     repurchases.

The only obligations of the master servicer to a
trust fund (other than its master servicing
obligations) comes from certain representations
and warranties made by it in connection with its
loan servicing activities. If these
representations and warranties turn out to be
untrue, the master servicer may be required to
repurchase or substitute for some of the loans.
However, the master servicer may not have the
financial ability to make the required
repurchase or substitution.

The only obligations to a trust fund of a seller
of loans to the depositor comes from certain
representations and warranties made by it in
connection with its sale of the loans and
certain document delivery requirements. If these
representations and warranties turn out to be
untrue, or the seller fails to deliver required
documents, it may be

2

<PAGE>

required to repurchase or substitute for some of
the loans. However, the seller may not have the
financial ability to make the required
repurchase or substitution.

Credit Enhancement May Not      Credit enhancement is intended to reduce the
Be Sufficient To Protect You    effect of loan losses.  But credit enhancements
From Losses                     may benefit only some classes of a series of
                                securities and the amount of any credit
                                enhancement will be limited as described in the
                                related prospectus supplement.  Furthermore, the
                                amount of a credit enhancement may decline over
                                time pursuant to a schedule or formula or
                                otherwise, and could be depleted from payments or
                                for other reasons before the securities covered
                                by the credit enhancement are paid in full.  In
                                addition, a credit enhancement may not cover all

potential sources of loss.  For example, a credit enhancement may or may not cover fraud or negligence by a loan originator or other parties.  Also, all or a portion of the credit enhancement may be reduced, substituted for, or even eliminated so long as the rating agencies rating the securities indicate that the change in credit enhancement would not cause them to change adversely their rating of the securities. Consequently, securityholders may suffer losses even though a credit enhancement exists and its provider does not default.

**Nature Of Mortgages Cooperative Loans May Experience Relatively Higher Losses**

Cooperative loans are evidenced by promissory notes secured by security interests in shares issued by private corporations that are entitled to be treated as housing cooperatives under the Internal Revenue Code and in the related proprietary leases or occupancy agreements granting exclusive rights to occupy specific dwelling units in the corporations' buildings.

If there is a blanket mortgage (or mortgages) on the cooperative apartment building and/or underlying land, as is generally the case, the cooperative, as property borrower, is responsible for meeting these mortgage or rental obligations. If the cooperative is unable to meet the payment obligations arising under a blanket mortgage, the mortgagee holding a blanket mortgage could foreclose on that mortgage and terminate all subordinate proprietary leases and occupancy agreements.  A foreclosure by the holder of a blanket mortgage could eliminate or significantly diminish the value of any collateral held by the lender who financed an individual tenant-stockholder of cooperative shares or, in the case of the mortgage loans, the collateral securing the cooperative loans.

If there is an underlying lease of the land, as is the case in some instances, the cooperative is responsible for meeting the related rental obligations. If the cooperative is unable to meet its obligations arising under its land lease, the holder of the land lease could terminate the land lease and all subordinate proprietary leases and occupancy agreements. The termination of the land lease by its holder could eliminate or significantly diminish the value of any collateral held by the lender who financed an individual tenant-stockholder of the cooperative shares or, in the case of the mortgage loans, the collateral securing the cooperative loans. A land lease also has an expiration date and the inability of the cooperative to extend its term or, in the alternative, to purchase the land could lead to termination of the cooperative's interest in the property and termination of all proprietary leases and occupancy agreements which could eliminate or significantly diminish the value of the related collateral.

In addition, if the corporation issuing the
shares related to the cooperative

3

<PAGE>

loans fails to qualify as a cooperative housing
corporation under the Internal Revenue Code, the
value of the collateral securing the cooperative
loan could be significantly impaired because the
tenant-stockholders would not be permitted to
deduct its proportionate share of certain
interest expenses and real estate taxes of the
corporation.

The cooperative shares and proprietary lease or
occupancy agreement pledged to the lender are, in
almost all cases, subject to restrictions on
transfer, including obtaining the consent of the
cooperative housing corporation prior to the
transfer, which may impair the value of the
collateral after a default by the borrower due to
an inability to find a transferee acceptable to
the related housing corporation.

| | |
|---|---|
| Declines in Property Values May Adversely Affect You | The value of the properties underlying the loans held in the trust fund may decline over time. Among the factors that could adversely affect the value of the properties are: |

o    an overall decline in the residential real
     estate market in the areas in which they
     are located,

o    a decline in their general condition from
     the failure of borrowers to maintain their
     property adequately, and

o    natural disasters that are not covered by
     insurance, such as earthquakes and floods.

If property values decline, the actual rates of
delinquencies, foreclosures, and losses on all
underlying loans could be higher than those
currently experienced in the mortgage lending
industry in general.  These losses, to the extent
not otherwise covered by a credit enhancement,
will be borne by the holder of one or more
classes of securities.

| | |
|---|---|
| Delays in Liquidation May Adversely Affect You | Even if the properties underlying the loans held in the trust fund provide adequate security for the loans, substantial delays could occur before defaulted loans are liquidated and their proceeds are forwarded to investors.  Property foreclosure actions are regulated by state statutes and rules and are subject to many of the delays and expenses of other lawsuits if defenses or counterclaims are made, sometimes requiring |

several years to complete.  Furthermore, an
action to obtain a deficiency judgment is
regulated by statutes and rules, and the amount
or availability of a deficiency judgment may be
limited by law. In the event of a default by a
borrower, these restrictions may impede the
ability of the servicer to foreclose on or to
sell the mortgaged property or to obtain a
deficiency judgment, to obtain sufficient
proceeds to repay the loan in full.

In addition, the servicer will be entitled to
deduct from liquidation proceeds all expenses
reasonably incurred in attempting to recover on
the defaulted loan, including legal and appraisal
fees and costs, real estate taxes, and property
maintenance and preservation expenses.

In the event that:

o        the mortgaged properties fail to provide
         adequate security

                        4

<PAGE>

         for the related loans,

o        if applicable to a series as specified in
         the related prospectus supplement, excess
         cashflow (if any) and
         overcollateralization (if any) is
         insufficient to cover these shortfalls,

o        if applicable to a series as specified in
         the related prospectus supplement, the
         subordination of certain classes are
         insufficient to cover these shortfalls,
         and

o        with respect to the securities with
         the benefit of an insurance policy as
         specified in the related prospectus
         supplement, the credit enhancement
         provider fails to make the required
         payments under the related insurance
         policies,

you could lose all or a portion of the money you
paid for the securities and could also have a
lower yield than anticipated at the time you
purchased the securities.

Disproportionate Effect        Liquidation expenses of defaulted loans generally
   of Liquidation Expenses     do not vary directly with the outstanding
May Adversely Affect You       principal balance of the loan at the time of
                               default.  Therefore, if a servicer takes the same
                               steps for a defaulted loan having a small
                               remaining principal balance as it does for a
                               defaulted loan having a large remaining principal

balance, the amount realized after expenses is smaller as a percentage of the outstanding principal balance of the small loan than it is for the defaulted loan having a large remaining principal balance.

| Consumer Protection Laws May Adversely Affect You | Federal, state and local laws extensively regulate various aspects of brokering, originating, servicing and collecting loans secured by consumers" dwellings.  Among other things, these laws may regulate interest rates and other charges, require disclosures, impose financial privacy requirements, mandate specific business practices, and prohibit unfair and deceptive trade practices.  In addition, licensing requirements may be imposed on persons that broker, originate, service or collect loans secured by consumers' dwellings. |
|---|---|

Additional requirements may be imposed under federal, state or local laws on so-called "high cost mortgage loans," which typically are defined as loans secured by a consumer's dwelling that have interest rates or origination costs in excess of prescribed levels.  These laws may limit certain loan terms, such as prepayment charges, or the ability of a creditor to refinance a loan unless it is in the borrower's interest.  In addition, certain of these laws may allow claims against loan brokers or originators, including claims based on fraud or misrepresentations, to be asserted against persons acquiring the loans, such as the trust fund.

The federal laws that may apply to loans held in the trust fund include the following:

o       the Truth in Lending Act and its regulations, which (among other things) require disclosures to borrowers regarding the terms of loans and provide consumers who pledged their principal dwelling as collateral in a non-purchase money

5

<PAGE>

transaction with a right of rescission that generally extends for three days after proper disclosures are given;

o       the Home Ownership and Equity Protection Act and its regulations, which (among other things) imposes additional disclosure requirements and limitations on loan terms with respect to non-purchase money, installment loans secured by the consumer's principal dwelling that have interest rates or origination costs in excess of prescribed levels;

> o the Real Estate Settlement Procedures Act
> and its regulations, which (among other
> things) prohibit the payment of referral
> fees for real estate settlement services
> (including mortgage lending and brokerage
> services) and regulate escrow accounts for
> taxes and insurance and billing inquiries
> made by borrowers;
>
> o the Equal Credit Opportunity Act and its
> regulations, which (among other things)
> generally prohibit discrimination in any
> aspect of a credit transaction on certain
> enumerated basis, such as age, race, color,
> sex, religion, marital status, national
> origin or receipt of public assistance; and
>
> o the Fair Credit Reporting Act, which (among
> other things) regulates the use of consumer
> reports obtained from consumer reporting
> agencies and the reporting of payment
> histories to consumer reporting agencies.

The penalties for violating these federal, state,
or local laws vary depending on the applicable
law and the particular facts of the situation.
However, private plaintiffs typically may assert
claims for actual damages and, in some cases,
also may recover civil money penalties or
exercise a right to rescind the loan. Violations
of certain laws may limit the ability to collect
all or part of the principal or interest on a
loan and, in some cases, borrowers even may be
entitled to a refund of amounts previously paid.
Federal, state and local administrative or law
enforcement agencies also may be entitled to
bring legal actions, including actions for civil
money penalties or restitution, for violations of
certain of these laws.

Depending on the particular alleged misconduct,
it is possible that claims may be asserted
against various participants in secondary market
transactions, including assignees that hold the
loans, such as the trust fund. Losses on loans
from the application of these federal, state and
local laws that are not otherwise covered by one
or more forms of credit enhancement will be borne
by the holders of one or more classes of
securities. Additionally, the trust may
experience losses arising from lawsuits related
to alleged violations of these laws, which, if
not covered by one or more forms of credit
enhancement or the related seller, will be borne
by the holders of one or more classes of
securities.

**Losses on Balloon Payment Mortgages Are Borne by You**    Some of the mortgage loans held in the trust fund
may not be fully amortizing over their terms to
maturity and, thus, will require substantial
principal payments (that is, balloon payments) at

their stated maturity.  Loans with balloon
payments involve a greater degree of risk than
fully amortizing loans because typically the
borrower must be able to refinance

6

<PAGE>

the loan or sell the property to make the
balloon payment at maturity. The ability of a
borrower to do this will depend on factors such
as mortgage rates at the time of sale or
refinancing, the borrower's equity in the
property, the relative strength of the local
housing market, the financial condition of the
borrower, and tax laws. Losses on these loans
that are not otherwise covered by a credit
enhancement will be borne by the holders of one
or more classes of securities.

Your Risk Of Loss May Be          Multifamily lending may expose the lender to a
Higher Than You Expect If         greater risk of loss than single family
Your Securities Are Backed        residential lending.  Owners of multifamily
By Multifamily Loans              residential properties rely on monthly lease
                                  payments from tenants to

o       pay for maintenance and other operating
        expenses of those properties,

o       fund capital improvements, and

o       service any mortgage loan and any other
        debt that may be secured by those
        properties.

Various factors, many of which are beyond the
control of the owner or operator of a multifamily
property, may affect the economic viability of
that property.

Changes in payment patterns by tenants may result
from a variety of social, legal and economic
factors.  Economic factors include the rate of
inflation, unemployment levels and relative rates
offered for various types of housing.  Shifts in
economic factors may trigger changes in payment
patterns including increased risks of defaults by
tenants and higher vacancy rates.  Adverse
economic conditions, either local or national,
may limit the amount of rent that can be charged
and may result in a reduction in timely lease
payments or a reduction in occupancy levels.
Occupancy and rent levels may also be affected by
construction of additional housing units,
competition and local politics, including rent
stabilization or rent control laws and policies.
In addition, the level of mortgage interest rates
may encourage tenants to purchase single family
housing.  We are unable to determine and have no

basis to predict whether, or to what extent,
economic, legal or social factors will affect
future rental or payment patterns.

The location and construction quality of a
particular building may affect the occupancy
level as well as the rents that may be charged
for individual units.  The characteristics of a
neighborhood may change over time or in relation
to newer developments.  The effects of poor
construction quality will increase over time in
the form of increased maintenance and capital
improvements.  Even good construction will
deteriorate over time if adequate maintenance is
not performed in a timely fashion.

Impact Of World Events      The economic impact of the United States'
military operations in Iraq and other parts of
the world, as well as the possibility of any
terrorist attacks domestically or abroad, is
uncertain, but could have a material effect on
general economic conditions, consumer confidence,
and market liquidity. We can give no assurance as
to the effect of these events on consumer
confidence and the performance of the loans held
by trust fund.  Any

7

<PAGE>

adverse impact resulting from these events
would be borne by the holders of one or more
classes of the securities.

United States military operations also increase
the likelihood of shortfalls under the
Servicemembers Civil Relief Act or similar state
laws (referred to as the "Relief Act" ).  The
Relief Act provides relief to borrowers who enter
active military service and to borrowers in
reserve status who are called to active duty
after the origination of their loan.  The Relief
Act provides generally that these borrowers may
not be charged interest on a loan in excess of 6%
per annum during the period of the borrower"s
active duty.  These shortfalls are not required
to be paid by the borrower at any future time and
will not be advanced by the servicer, unless
otherwise specified in the related prospectus
supplement.  To the extent these shortfalls
reduce the amount of interest paid to the holders
of securities with the benefit of an insurance
policy, unless otherwise specified in the related
prospectus supplement, they will not be covered
by the related insurance policy.  In addition,
the Relief Act imposes limitations that would
impair the ability of the servicer to foreclose
on an affected loan during the borrower's period
of active duty status, and, under some
circumstances, during an additional period
thereafter.

| | |
|---|---|
| You Could Be Adversely Affected By Violations Of Environmental Laws | Federal, state, and local laws and regulations impose a wide range of requirements on activities that may affect the environment, health, and safety. In certain circumstances, these laws and regulations impose obligations on "owners" or "operators" of residential properties such as those that secure the loans held in the trust fund. Failure to comply with these laws and regulations can result in fines and penalties that could be assessed against the trust if it were to be considered an "owner" or "operator" of the related property. A property "owner" or "operator" can also be held liable for the cost of investigating and remediating contamination, regardless of fault, and for personal injury or property damage arising from exposure to contaminants. |
| | In some states, a lien on the property due to contamination has priority over the lien of an existing mortgage. Also, a mortgage lender may be held liable as an "owner" or "operator" for costs associated with the release of hazardous substances from a site, or petroleum from an underground storage tank under certain circumstances. If the trust were to be considered the "owner" or "operator" of a property, it will suffer losses as a result of any liability imposed for environmental hazards on the property. |

8

<PAGE>

| | |
|---|---|
| Ratings Of The Securities Do Not Assure Their Payment | Any class of securities issued under this prospectus and the accompanying prospectus supplement will be rated in one of the rating categories which signifies investment grade by at least one nationally recognized rating agency. A rating is based on the adequacy of the value of the trust assets and any credit enhancement for that class, and reflects the rating agency's assessment of how likely it is that holders of the class of securities will receive the payments to which they are entitled. A rating does not constitute an assessment of how likely it is that principal prepayments on the underlying loans will be made, the degree to which the rate of prepayments might differ from that originally anticipated, or the likelihood that the securities will be redeemed early. A rating is not a recommendation to purchase, hold, or sell securities because it does not address the market price of the securities or the suitability of the securities for any particular investor. |
| | A rating may not remain in effect for any given period of time and the rating agency could lower or withdraw the rating entirely in the future. |

For example, the rating agency could lower or withdraw its rating due to:

o     a decrease in the adequacy of the value of the trust assets or any related credit enhancement,

o     an adverse change in the financial or other condition of a credit enhancement provider, or

o     a change in the rating of the credit enhancement provider's long-term debt.

The amount, type, and nature of credit enhancement established for a class of securities will be determined on the basis of criteria established by each rating agency rating classes of the securities.  These criteria are sometimes based upon an actuarial analysis of the behavior of similar loans in a larger group.  That analysis is often the basis upon which each rating agency determines the amount of credit enhancement required for a class.  The historical data supporting any actuarial analysis may not accurately reflect future experience, and the data derived from a large pool of similar loans may not accurately predict the delinquency, foreclosure, or loss experience of any particular pool of mortgage loans.  Mortgaged properties may not retain their values.  If residential real estate markets experience an overall decline in property values such that the outstanding principal balances of the loans held in a particular trust fund and any secondary financing on the related mortgaged properties become equal to or greater than the value of the mortgaged properties, the rates of delinquencies, foreclosures, and losses could be higher than those now generally experienced in the mortgage lending industry.  In addition, adverse economic conditions may affect timely payment by mortgagors on their loans whether or not the conditions affect real property values and, accordingly, the rates of delinquencies, foreclosures, and losses in any trust fund. Losses from this that are not covered by a credit enhancement will be borne, at least in part, by the holders of one or more classes of securities.

9

<PAGE>

Book-Entry Registration
  Limit on Liquidity

Securities issued in book-entry form may have only limited liquidity in the resale market, since investors may be unwilling to purchase securities for which they cannot obtain physical instruments.

  Limit on Ability to
  Transfer or Pledge

Transactions in book-entry securities can be effected only through The Depository Trust

| | |
|---|---|
| | Company, its participating organizations, its indirect participants, and certain banks. Therefore, your ability to transfer or pledge securities issued in book-entry form may be limited. |
| Delays in Distributions | You may experience some delay in the receipt of distributions on book-entry securities since the distributions will be forwarded by the trustee to The Depository Trust Company for it to credit the accounts of its participants. In turn, these participants will then credit the distributions to your account either directly or indirectly through indirect participants. |
| Secondary Market For The Securities May Not Exist | The related prospectus supplement for each series will specify the classes in which the underwriter intends to make a secondary market, but no underwriter will have any obligation to do so. We can give no assurance that a secondary market for the securities will develop or, if it develops, that it will continue. Consequently, you may not be able to sell your securities readily or at prices that will enable you to realize your desired yield. The market values of the securities are likely to fluctuate. Fluctuations may be significant and could result in significant losses to you. |
| | The secondary markets for mortgage backed securities have experienced periods of illiquidity and can be expected to do so in the future. Illiquidity can have a severely adverse effect on the prices of securities that are especially sensitive to prepayment, credit or interest rate risk, or that have been structured to meet the investment requirements of limited categories of investors. |
| Bankruptcy Or Insolvency May Affect The Timing And Amount Of Distributions On The Securities | Each seller and the depositor will take steps to structure the transfer of the loans held in the trust fund by the seller to the depositor as a sale. The depositor and the trust fund will take steps to structure the transfer of the loans from the depositor to the trust fund as a sale. If these characterizations are correct, then if the seller were to become bankrupt, the loans would not be part of the seller's bankruptcy estate and would not be available to the seller's creditors. On the other hand, if the seller becomes bankrupt, its bankruptcy trustee or one of its creditors may attempt to recharacterize the sale of the loans as a borrowing by the seller, secured by a pledge of the loans. Presenting this position to a bankruptcy court could prevent timely payments on the securities and even reduce the payments on the securities. Additionally, if that argument is successful, the bankruptcy trustee could elect to sell the loans and pay down the securities early. Thus, you could lose the right to future payments of interest, and might suffer reinvestment losses in |

a lower interest rate environment.

Similarly, if the characterizations of the transfers as sales are correct, then if the depositor were to become bankrupt, the loans would not be part of the depositor's bankruptcy estate and would not be available to the depositor's creditors.  On the other hand, if the depositor becomes bankrupt, its bankruptcy trustee or one of its creditors may attempt to recharacterize the sale of the loans as a borrowing by the depositor, secured by a pledge of the loans.  Presenting this position to a bankruptcy

10

<PAGE>

court could prevent timely payments on the securities and even reduce the payments on the securities.

If the master servicer becomes bankrupt, the bankruptcy trustee may have the power to prevent the appointment of a successor master servicer. Any related delays in servicing could result in increased delinquencies or losses on the loans. The period during which cash collections may be commingled with the master servicer's own funds before each distribution date for securities will be specified in the applicable prospectus supplement. If the master servicer becomes bankrupt and cash collections have been commingled with the master servicer's own funds, the trust fund will likely not have a perfected interest in those collections. In this case the trust might be an unsecured creditor of the master servicer as to the commingled funds and could recover only its share as a general creditor, which might be nothing. Collections that are not commingled but still in an account of the master servicer might also be included in the bankruptcy estate of the master servicer even though the trust may have a perfected security interest in them. Their inclusion in the bankruptcy estate of the master servicer may result in delays in payment and failure to pay amounts due on the securities.

Federal and state statutory provisions affording protection or relief to distressed borrowers may affect the ability of the secured mortgage lender to realize upon its security in other situations as well. For example, in a proceeding under the federal Bankruptcy Code, a lender may not foreclose on a mortgaged property without the permission of the bankruptcy court. And in certain instances a bankruptcy court may allow a borrower to reduce the monthly payments, change the rate of interest, and alter the mortgage loan repayment schedule for under-collateralized

mortgage loans. The effect of these types of proceedings can be to cause delays in receiving payments on the loans underlying securities and even to reduce the aggregate amount of payments on the loans underlying securities.

| | |
|---|---|
| The Principal Amount Of Securities May Exceed The Market Value Of The Trust Fund Assets | The market value of the assets relating to a series of securities at any time may be less than the principal amount of the securities of that series then outstanding, plus accrued interest. In the case of a series of notes, after an event of default and a sale of the assets relating to a series of securities, the trustee, the master servicer, the credit enhancer, if any, and any other service provider specified in the related prospectus supplement generally will be entitled to receive the proceeds of that sale to the extent of unpaid fees and other amounts owing to them under the related transaction document prior to distributions to securityholders. Upon any sale of the assets in connection with an event of default, the proceeds may be insufficient to pay in full the principal of and interest on the securities of the related series. |

Certain capitalized terms are used in this prospectus to assist you in understanding the terms of the securities. The capitalized terms used in this prospectus are defined on the pages indicated under the caption "Index to Defined Terms" beginning on page 105.

11

<PAGE>

## The Trust Fund

### General

The securities of each series will represent interests in the assets of the related trust fund, and the notes of each series will be secured by the pledge of the assets of the related trust fund. The trust fund for each series will be held by the trustee for the benefit of the related securityholders. Each trust fund will consist of the trust fund assets (the "Trust Fund Assets") consisting of:

o    a pool comprised of loans as specified in the related prospectus supplement, together with payments relating to those loans as specified in the related prospectus supplement;

o    a pool comprised of collections arising from one or more types of loans that would otherwise be eligible to be loans included in a trust fund;

o    mortgage pass-through securities (the "Agency Securities") issued or guaranteed by Ginnie Mae, Fannie Mae or Freddie Mac or

o    other mortgage pass-through certificates or collateralized mortgage obligations (the "Non-Agency Mortgage-Backed Securities") evidencing an

interest in, or secured by, loans of the type that would otherwise be eligible to be loans included in a trust fund.

The pool will be created on the first day of the month of the issuance of the related series of securities or on another date specified in the related prospectus supplement. The securities will be entitled to payment from the assets of the related trust fund or funds or other assets pledged for the benefit of the securityholders, as specified in the related prospectus supplement and will not be entitled to payments in respect of the assets of any other trust fund established by the depositor.*

The Trust Fund Assets will be acquired by the depositor, either directly or through affiliates, from originators or sellers which may be affiliates of the depositor (the "Sellers"), and conveyed without recourse by the depositor to the related trust fund. Loans acquired by the depositor will have been originated in accordance with the underwriting criteria specified below under "Loan Program -- Underwriting Standards" or as otherwise described in the related prospectus supplement. See "Loan Program -- Underwriting Standards."

The depositor will cause the Trust Fund Assets to be assigned to the trustee named in the related prospectus supplement for the benefit of the holders of the securities of the related series. The master servicer named in the related prospectus supplement will service the Trust Fund Assets, either directly or through other servicing institutions called sub-servicers, pursuant to a Pooling and Servicing Agreement (each, a "Pooling and Servicing Agreement" among the depositor, the master servicer and the trustee with respect to a series consisting of certificates, or a sale and servicing agreement (each, a "Sale and Servicing Agreement") between the trustee and the master servicer with respect to a series consisting of certificates and notes, and will receive a fee for these services. The Pooling and Servicing Agreements and Sale and Servicing Agreements are also referred to as "Master Servicing Agreements") in this prospectus. See "Loan Program" and "The Agreements." With respect to loans serviced by the master servicer through a sub-servicer, the master servicer will remain liable for its servicing obligations under the related Agreement as if the master servicer alone were servicing those loans.

--------------------------

*   Whenever the terms pool, certificates, notes and securities are used in this prospectus, those terms will be considered to apply, unless the context indicates otherwise, to one specific pool and the securities of one series including the certificates representing undivided interests in, and/or notes secured by the assets of, a single trust fund consisting primarily of the loans in that pool. Similarly, the term "Pass- Through Rate" will refer to the pass-through rate borne by the certificates and the term interest rate will refer to the interest rate borne by the notes of one specific series, as applicable, and the term trust fund will refer to one specific trust fund.

12

<PAGE>

If so specified in the related prospectus supplement, a trust fund relating to a series of securities may be a business trust or common law trust formed under the laws of the state specified in the related prospectus supplement pursuant to a trust agreement (each, a "Trust Agreement") between the depositor and the trustee of the trust fund.

As used herein, "Agreement" means, with respect to a series consisting of certificates, the Pooling and Servicing Agreement, and with respect to a

series consisting of certificates and notes, the Trust Agreement, the Indenture and the Sale and Servicing Agreement, as the context requires.

With respect to each trust fund, prior to the initial offering of the related series of securities, the trust fund will have no assets or liabilities. No trust fund is expected to engage in any activities other than acquiring, managing and holding of the related Trust Fund Assets and other assets contemplated herein specified and in the related prospectus supplement and the proceeds thereof, issuing securities and making payments and distributions thereon and certain related activities. No trust fund is expected to have any source of capital other than its assets and any related credit enhancement.

The applicable prospectus supplement may provide for additional obligations of the depositor, but if it does not, the only obligations of the depositor with respect to a series of securities will be to obtain certain representations and warranties from the sellers and to assign to the trustee for that series of securities the depositor's rights with respect to the representations and warranties. See "The Agreements -- Assignment of the Trust Fund Assets." The obligations of the master servicer with respect to the loans will consist principally of its contractual servicing obligations under the related Agreement (including its obligation to enforce the obligations of the sub-servicers or sellers, or both, as more fully described herein under "Loan Program -- Representations by Sellers; Repurchases" and "The Agreements -- Sub-Servicing By Sellers" and "-- Assignment of the Trust Fund Assets") and its obligation, if any, to make certain cash advances in the event of delinquencies in payments on or with respect to the loans in the amounts described herein under "Description of the Securities -- Advances." The obligations of the master servicer to make advances may be subject to limitations, to the extent provided herein and in the related prospectus supplement.

The following is a brief description of the assets expected to be included in the trust funds. If specific information respecting the Trust Fund Assets is not known at the time the related series of securities initially is offered, more general information of the nature described below will be provided in the related prospectus supplement, and specific information will be set forth in a report on Form 8-K to be filed with the Securities and Exchange Commission (the "SEC") after the initial issuance of the related securities (the "Detailed Description"). A copy of the Agreement with respect to each series of securities will be filed on Form 8-K after the initial issuance of the related securities and will be available for inspection at the corporate trust office of the trustee specified in the related prospectus supplement. A schedule of the loans relating to the series will be attached to the Agreement delivered to the trustee upon delivery of the securities.

The Loans

General. Loans will consist of single family loans or multifamily loans. If so specified, the loans may include cooperative apartment loans ("cooperative loans") secured by security interests in shares issued by private, non-profit, cooperative housing corporations ("cooperatives") and in the related proprietary leases or occupancy agreements granting exclusive rights to occupy specific dwelling units in the cooperatives' buildings. As more fully described in the related prospectus supplement, the loans may be "conventional" loans or loans that are insured or guaranteed by a governmental agency such as the Federal Housing Administration (the "FHA") or the Department of Veterans' Affairs (the "VA").

The applicable prospectus supplement may specify the day on which monthly payments on the loans in a pool will be due, but if it does not, all of the mortgage loans in a pool will have monthly payments due on the first

day of each month. The payment terms of the loans to be included in a trust
fund will be described in the related prospectus supplement and may include
any of the following features or combination thereof or other features
described in the related prospectus supplement:

13

<PAGE>


o       Interest may be payable at a fixed rate, a rate adjustable from time
        to time in relation to an index (which will be specified in the
        related prospectus supplement), a rate that is fixed for a period of
        time or under certain circumstances and is followed by an adjustable
        rate, a rate that otherwise varies from time to time, or a rate that
        is convertible from an adjustable rate to a fixed rate.  Changes to
        an adjustable rate may be subject to periodic limitations, maximum
        rates, minimum rates or a combination of the limitations.  Accrued
        interest may be deferred and added to the principal of a loan for
        the periods and under the circumstances as may be specified in the
        related prospectus supplement.  Loans may provide for the payment of
        interest at a rate lower than the specified interest rate borne by
        the loan (the "Loan Rate") for a period of time or for the life of
        the loan, and the amount of any difference may be contributed from
        funds supplied by the seller of the Property or another source.

o       Principal may be payable on a level debt service basis to fully
        amortize the loan over its term, may be calculated on the basis of
        an assumed amortization schedule that is significantly longer than
        the original term to maturity or on an interest rate that is
        different from the Loan Rate or may not be amortized during all or a
        portion of the original term.  Payment of all or a substantial
        portion of the principal may be due on maturity, called balloon
        payments.  Principal may include interest that has been deferred and
        added to the principal balance of the loan.

o       Monthly payments of principal and interest may be fixed for the life of
        the loan, may increase over a specified period of time or may change
        from period to period. The terms of a loan may include limits on
        periodic increases or decreases in the amount of monthly payments and
        may include maximum or minimum amounts of monthly payments.

o       The loans generally may be prepaid at any time.  Prepayments of
        principal may be subject to a prepayment fee, which may be fixed for
        the life of the loan or may decline over time, and may be prohibited
        for the life of the loan or for certain periods, which are called
        lockout periods.  Certain loans may permit prepayments after
        expiration of the applicable lockout period and may require the
        payment of a prepayment fee in connection with any subsequent
        prepayment.  Other loans may permit prepayments without payment of a
        fee unless the prepayment occurs during specified time periods.  The
        loans may include "due-on-sale" clauses that permit the mortgagee to
        demand payment of the entire loan in connection with the sale or
        certain transfers of the related mortgaged property.  Other loans
        may be assumable by persons meeting the then applicable underwriting
        standards of the seller.

        A trust fund may contain buydown loans that include provisions whereby a
third party partially subsidizes the monthly payments of the obligors on the
loans during the early years of the loans, the difference to be made up from a
buydown fund contributed by the third party at the time of origination of the
loan. A buydown fund will be in an amount equal either to the discounted value

or full aggregate amount of future payment subsidies. Thereafter, buydown funds are applied to the applicable loan upon receipt by the master servicer of the mortgagor's portion of the monthly payment on the loan. The master servicer administers the buydown fund to ensure that the monthly allocation from the buydown fund combined with the monthly payment received from the mortgagor equals the scheduled monthly payment on the applicable loan. The underlying assumption of buydown plans is that the income of the mortgagor will increase during the buydown period as a result of normal increases in compensation and inflation, so that the mortgagor will be able to meet the full mortgage payments at the end of the buydown period. To the extent that this assumption as to increased income is not fulfilled, the possibility of defaults on buydown loans is increased. The related prospectus supplement will contain information with respect to any Buydown Loan concerning limitations on the interest rate paid by the mortgagor initially, on annual increases in the interest rate and on the length of the buydown period.

The real property which secures repayment of the loans is referred to as the mortgaged properties and is collectively referred to herein as the "Properties." The loans will be secured by mortgages or deeds of trust or other similar security instruments creating a lien on the Properties. The Properties may be located in any one of the fifty states, the District of Columbia, Guam, Puerto Rico or any other territory of the United States.

14

<PAGE>

Loans with certain Loan-to-Value Ratios and/or certain principal balances may be covered wholly or partially by primary mortgage guaranty insurance policies (each, a "Primary Mortgage Insurance Policy"). The existence, extent and duration of any coverage will be described in the applicable prospectus supplement.

The aggregate principal balance of loans secured by Properties that are owner-occupied will be disclosed in the related prospectus supplement. The applicable prospectus supplement may provide for the basis for representations relating to Single Family Properties, but if it does not, the sole basis for a representation that a given percentage of the loans is secured by Single Family Properties that are owner-occupied will be either (i) the making of a representation by the borrower at origination of the loan either that the underlying Property will be used by the borrower for a period of at least six months every year or that the borrower intends to use the Property as a primary residence or (ii) a finding that the address of the underlying Property is the borrower's mailing address.

Single Family Loans. The mortgaged properties relating to single family loans will consist of detached or semi-detached one- to four-family dwelling units, townhouses, rowhouses, individual condominium units, individual units in planned unit developments, manufactured housing that is permanently affixed and treated as real property under local law, and certain other dwelling units ("Single Family Properties"). Single Family Properties may include vacation and second homes, investment properties and leasehold interests. In the case of leasehold interests, the applicable prospectus supplement may provide for the leasehold term, but if it does not, the term of the leasehold will exceed the scheduled maturity of the loan by at least five years.

Multifamily Loans. Mortgaged properties which secure multifamily loans may include small multifamily residential properties such as rental apartment buildings or projects containing five to fifty residential units, including mid-rise and garden apartments. Certain of the multifamily loans may be secured by apartment buildings owned by cooperatives. In those cases, the

cooperative owns all the apartment units in the building and all common areas. The cooperative is owned by tenant-stockholders who, through ownership of stock, shares or membership certificates in the corporation, receive proprietary leases or occupancy agreements which confer exclusive rights to occupy specific apartments or units. Generally, a tenant-stockholder of a cooperative must make a monthly payment to the cooperative representing the tenant-stockholder's pro rata share of the cooperative's payments for its mortgage loan, real property taxes, maintenance expenses and other capital or ordinary expenses. Those payments are in addition to any payments of principal and interest the tenant-stockholder must make on any loans to the tenant-stockholder secured by its shares in the cooperative. The cooperative will be directly responsible for building management and, in most cases, payment of real estate taxes and hazard and liability insurance. A cooperative's ability to meet debt service obligations on a multifamily loan, as well as all other operating expenses, will be dependent in large part on the receipt of maintenance payments from the tenant-stockholders, as well as any rental income from units the cooperative might control. Unanticipated expenditures may in some cases have to be paid by special assessments on the tenant-stockholders. No more than 5% of the aggregate Trust Fund Assets for any series, as constituted at the time of the applicable cut-off date (measured by principal balance), will be comprised of multifamily loans.

Additional Information. Each prospectus supplement will contain information, as of the date of the prospectus supplement and to the extent then specifically known to the depositor, with respect to the loans contained in the related pool, including

o       the aggregate outstanding principal balance and the average outstanding principal balance of the loans as of the first day of the month of issuance of the related series of certificates or another date specified in the related prospectus supplement called a cut-off date,

o       the type of property securing the loans (e.g., single-family residences, individual units in condominium apartment buildings or in buildings owned by cooperatives, small multifamily properties or other real property),

o       the original terms to maturity of the loans,

o       the ranges of the principal balances of the loans,

15

<PAGE>

o       the earliest origination date and latest maturity date of any of the loans,

o       the ranges of the Loan-to-Value Ratios of the loans at origination,

o       the Loan Rates or range of Loan Rates borne by the loans, and

o       the geographical distribution of the loans.

If specific information respecting the loans is not known to the depositor at the time the related securities are initially offered, more general information of the nature described above will be provided in the detailed description of Trust Fund Assets.

The "Loan-to-Value Ratio" of a loan at any given time is the fraction, expressed as a percentage, the numerator of which is the original principal

balance of the related loan and the denominator of which is the collateral value of the related Property. The "Collateral Value" of the Property, other than with respect to certain loans the proceeds of which were used to refinance an existing mortgage loan (each, a "Refinance Loan"), will be calculated as described in the prospectus supplement, but if there is no description in the prospectus supplement, it is the lesser of (a) the appraised value determined in an appraisal obtained by the originator at origination of the loan and (b) the sales price for the Property. In the case of Refinance Loans, the "Collateral Value" of the related Property will be calculated as described in the prospectus supplement, but if there is no description in the prospectus supplement, it is generally the appraised value thereof determined in an appraisal obtained at the time of refinancing.

We can give no assurance that values of the Properties have remained or will remain at their levels on the dates of origination of the related loans. If the residential real estate market should experience an overall decline in property values such that the outstanding principal balances of the loans, and any secondary financing on the Properties, in a particular pool become equal to or greater than the value of the Properties, the actual rates of delinquencies, foreclosures and losses could be higher than those now generally experienced in the mortgage lending industry. In addition, adverse economic conditions and other factors (which may or may not affect real property values) may affect the timely payment by borrowers of scheduled payments of principal and interest on the loans and, accordingly, the actual rates of delinquencies, foreclosures and losses with respect to any pool. To the extent that the losses are not covered by subordination provisions or alternative arrangements, the losses will be borne, at least in part, by the holders of the securities of the related series.

Agency Securities

Government National Mortgage Association. Ginnie Mae is a wholly-owned corporate instrumentality of the United States with the United States Department of Housing and Urban Development. Section 306(g) of Title II of the National Housing Act of 1934, as amended, authorizes Ginnie Mae to guarantee the timely payment of the principal of and interest on certificates that represent an interest in a pool of mortgage loans insured by the FHA under the National Housing Act of 1934 or Title V of the Housing Act of 1949, or partially guaranteed by the VA under the Servicemen's Readjustment Act of 1944, as amended, or Chapter 37 of Title 38, United States Code.

Section 306(g) of the National Housing Act of 1934 provides that "the full faith and credit of the United States is pledged to the payment of all amounts which may be required to be paid under any guaranty under this subsection." In order to meet its obligations under that guaranty, Ginnie Mae may, under Section 306(d) of the National Housing Act of 1934, borrow from the United States Treasury in an unlimited amount which is at any time sufficient to enable Ginnie Mae to perform its obligations under its guarantee.

Ginnie Mae Certificates. Each Ginnie Mae certificate held in a trust fund will be a "fully modified pass-through" mortgage backed certificate issued and serviced by a Ginnie Mae issuer approved by Ginnie Mae or by Fannie Mae as a seller-servicer of FHA loans or VA loans. The Ginnie Mae certificates may be issued under either the Ginnie Mae I program or the Ginnie Mae II program. The mortgage loans underlying the Ginnie Mae certificates will consist of FHA loans or VA loans. Each mortgage loan is secured by a one-to four-family or multifamily residential property. Ginnie Mae will approve the issuance of each Ginnie Mae certificate in

16

<PAGE>

accordance with a guaranty agreement between Ginnie Mae and the Ginnie Mae issuer. Pursuant to its guaranty agreement, a Ginnie Mae issuer will be required to advance its own funds in order to make timely payments of all amounts due on each Ginnie Mae certificate if the payments received by the Ginnie Mae issuer on the FHA loans or VA loans underlying each Ginnie Mae certificate are less than the amounts due on each Ginnie Mae certificate.

The full and timely payment of principal of and interest on each Ginnie Mae certificate will be guaranteed by Ginnie Mae, which obligation is backed by the full faith and credit of the United States. Each Ginnie Mae certificate will have an original maturity of not more than 30 years (but may have original maturities of substantially less than 30 years). Each Ginnie Mae certificate will be based on and backed by a pool of FHA loans or VA loans secured by one to four-family residential properties and will provide for the payment by or on behalf of the Ginnie Mae issuer to the registered holder of the Ginnie Mae certificate of scheduled monthly payments of principal and interest equal to the registered holder's proportionate interest in the aggregate amount of the monthly principal and interest payment on each FHA loan or VA loan underlying the Ginnie Mae certificate, less the applicable servicing and guaranty fee, which together equal the difference between the interest on the FHA loan or VA loan and the pass-through rate on the Ginnie Mae certificate. In addition, each payment will include proportionate pass-through payments of any prepayments of principal on the FHA loans or VA loans underlying the Ginnie Mae certificate and liquidation proceeds upon a foreclosure or other disposition of the FHA loans or VA loans.

If a Ginnie Mae issuer is unable to make the payments on a Ginnie Mae certificate as it becomes due, it must promptly notify Ginnie Mae and request Ginnie Mae to make the payment. Upon notification and request, Ginnie Mae will make the payments directly to the registered holder of the Ginnie Mae certificate. If no payment is made by a Ginnie Mae issuer and the Ginnie Mae issuer fails to notify and request Ginnie Mae to make the payment, the holder of the Ginnie Mae certificate will have recourse only against Ginnie Mae to obtain the payment. The trustee or its nominee, as registered holder of the Ginnie Mae certificates held in a trust fund, will have the right to proceed directly against Ginnie Mae under the terms of the guaranty agreements relating to the Ginnie Mae certificates for any amounts that are not paid when due.

All mortgage loans underlying a particular Ginnie Mae I certificate must have the same interest rate over the term of the loan, except in pools of mortgage loans secured by manufactured homes. The interest rate on the Ginnie Mae I certificate will equal the interest rate on the mortgage loans included in the pool of mortgage loans underlying the Ginnie Mae I certificate, less one-half percentage point per annum of the unpaid principal balance of the mortgage loans.

Mortgage loans underlying a particular Ginnie Mae II certificate may have per annum interest rates that vary from each other by up to one percentage point. The interest rate on each Ginnie Mae II certificate will be between one half percentage point and one and one-half percentage points lower than the highest interest rate on the mortgage loans included in the pool of mortgage loans underlying the Ginnie Mae II certificate, except for pools of mortgage loans secured by manufactured homes.

Regular monthly installment payments on each Ginnie Mae certificate held in a trust fund will be comprised of interest due as specified on the Ginnie Mae certificate plus the scheduled principal payments on the FHA loans or VA loans underlying the Ginnie Mae certificate due on the first day of the month in which the scheduled monthly installments on the Ginnie Mae certificate are due. The regular monthly installments on each Ginnie Mae certificate are

required to be paid to the trustee as registered holder by the 15th day of each month in the case of a Ginnie Mae I certificate and are required to be mailed to the trustee by the 20th day of each month in the case of a Ginnie Mae II certificate. Any principal prepayments on any FHA loans or VA loans underlying a Ginnie Mae certificate held in a trust fund or any other early recovery of principal on the loans will be passed through to the trustee as the registered holder of the Ginnie Mae certificate.

Ginnie Mae certificates may be backed by graduated payment mortgage loans or by buydown loans for which funds will have been provided (and deposited into escrow accounts) for application to the payment of a portion of the borrowers' monthly payments during the early years of the mortgage loan. Payments due the registered holders of Ginnie Mae certificates backed by pools containing buydown loans will be computed in the same manner as payments derived from other Ginnie Mae certificates and will include amounts to be collected from both the borrower and the related escrow account. The graduated payment mortgage loans will provide for graduated interest payments that, during the early years of the mortgage loans, will be less than the amount of stated

17

<PAGE>

interest on the mortgage loans. The interest not so paid will be added to the principal of the graduated payment mortgage loans and, together with interest on them, will be paid in subsequent years. The obligations of Ginnie Mae and of a Ginnie Mae issuer will be the same irrespective of whether the Ginnie Mae certificates are backed by graduated payment mortgage loans or buydown loans. No statistics comparable to the FHA's prepayment experience on level payment, non-buydown mortgage loans are available for graduated payment or buydown loans. Ginnie Mae certificates related to a series of certificates may be held in book-entry form.

The Ginnie Mae certificates included in a trust fund, and the related underlying mortgage loans, may have characteristics and terms different from those described above. Any different characteristics and terms will be described in the related prospectus supplement.

Federal Home Loan Mortgage Corporation. Freddie Mac is a corporate instrumentality of the United States created pursuant to Title III of the Emergency Home Finance Act of 1970, as amended. The common stock of Freddie Mac is owned by the Federal Home Loan Banks and its preferred stock is owned by stockholders of the Federal Home Loan Banks. Freddie Mac was established primarily to increase the availability of mortgage credit to finance urgently needed housing. It seeks to provide an enhanced degree of liquidity for residential mortgage investments primarily by assisting in the development of secondary markets for conventional mortgages. The principal activity of Freddie Mac currently consists of the purchase of first lien conventional mortgage loans or participation interests in mortgage loans and the sale of the mortgage loans or participations so purchased in the form of mortgage securities, primarily mortgage participation certificates issued and either guaranteed as to timely payment of interest or guaranteed as to timely payment of interest and ultimate payment of principal by Freddie Mac. Freddie Mac is confined to purchasing, so far as practicable, mortgage loans that it deems to be of such quality, type and class as to meet generally the purchase standards imposed by private institutional mortgage investors.

Freddie Mac Certificates. Each Freddie Mac certificate represents an undivided interest in a pool of mortgage loans that may consist of first lien conventional loans, FHA loans or VA loans. Freddie Mac certificates are sold under the terms of a Mortgage Participation Certificate Agreement. A Freddie

Mac certificate may be issued under either Freddie Mac's Cash Program or Guarantor Program.

Mortgage loans underlying the Freddie Mac certificates held by a trust fund will consist of mortgage loans with original terms to maturity of between 10 and 40 years. Each mortgage loan must meet the applicable standards set forth in the Emergency Home Finance Act of 1970. A Freddie Mac certificate group may include whole loans, participation interests in whole loans and undivided interests in whole loans and participations comprising another Freddie Mac certificate group. Under the Guarantor Program, a Freddie Mac certificate group may include only whole loans or participation interests in whole loans.

Freddie Mac guarantees to each registered holder of a Freddie Mac certificate the timely payment of interest on the underlying mortgage loans to the extent of the applicable certificate interest rate on the registered holder's pro rata share of the unpaid principal balance outstanding on the underlying mortgage loans in the Freddie Mac certificate group represented by the Freddie Mac certificate, whether or not received. Freddie Mac also guarantees to each registered holder of a Freddie Mac certificate collection by the holder of all principal on the underlying mortgage loans, without any offset or deduction, to the extent of the holder's pro rata share of it, but does not, except if and to the extent specified in the related prospectus supplement for a series of certificates, guarantee the timely payment of scheduled principal. Under Freddie Mac's Gold PC Program, Freddie Mac guarantees the timely payment of principal based on the difference between the pool factor published in the month preceding the month of distribution and the pool factor published in the month of distribution. Pursuant to its guaranties, Freddie Mac indemnifies holders of Freddie Mac certificates against any diminution in principal from charges for property repairs, maintenance and foreclosure. Freddie Mac may remit the amount due on account of its guaranty of collection of principal at any time after default on an underlying mortgage loan, but not later than 30 days following foreclosure sale, 30 days following payment of the claim by any mortgage insurer or 30 days following the expiration of any right of redemption, whichever occurs later, but in any event no later than one year after demand has been made upon the mortgagor for accelerated payment of principal. In taking actions regarding the collection of principal after default on the mortgage loans underlying Freddie Mac certificates, including the timing of demand for acceleration, Freddie Mac reserves the right to exercise its judgment with respect to the mortgage loans in the same manner as for mortgage loans that it has purchased but not sold. The length of time necessary for Freddie Mac

18

<PAGE>

to determine that a mortgage loan should be accelerated varies with the particular circumstances of each mortgagor, and Freddie Mac has not adopted standards which require that the demand be made within any specified period.

Freddie Mac certificates are not guaranteed by the United States or by any Federal Home Loan Bank and do not constitute debts or obligations of the United States or any Federal Home Loan Bank. The obligations of Freddie Mac under its guaranty are obligations solely of Freddie Mac and are not backed by, or entitled to, the full faith and credit of the United States. If Freddie Mac were unable to satisfy its obligations, distributions to holders of Freddie Mac certificates would consist solely of payments and other recoveries on the underlying mortgage loans and, accordingly, monthly distributions to holders of Freddie Mac certificates would be affected by delinquent payments and defaults on the mortgage loans.

Registered holders of Freddie Mac certificates are entitled to receive their monthly pro rata share of all principal payments on the underlying mortgage loans received by Freddie Mac, including any scheduled principal payments, full and partial prepayments of principal and principal received by Freddie Mac by virtue of condemnation, insurance, liquidation or foreclosure, and repurchases of the mortgage loans by Freddie Mac or their seller. Freddie Mac is required to remit each registered Freddie Mac certificateholder's pro rata share of principal payments on the underlying mortgage loans, interest at the Freddie Mac pass-through rate and any other sums such as prepayment fees, within 60 days of the date on which the payments are deemed to have been received by Freddie Mac.

Under Freddie Mac's Cash Program, there is no limitation on the amount by which interest rates on the mortgage loans underlying a Freddie Mac certificate may exceed the pass-through rate on the Freddie Mac certificate. Under that program, Freddie Mac purchases groups of whole mortgage loans from sellers at specified percentages of their unpaid principal balances, adjusted for accrued or prepaid interest, which when applied to the interest rate of the mortgage loans and participations purchased results in the yield required by Freddie Mac. The required yield, which includes a minimum servicing fee retained by the servicer, is calculated using the outstanding principal balance. The range of interest rates on the mortgage loans and participations in a Freddie Mac certificate group under the Cash Program will vary since mortgage loans and participations are purchased and assigned to a Freddie Mac certificate group based upon their yield to Freddie Mac rather than on the interest rate on the underlying mortgage loans. Under Freddie Mac's Guarantor Program, the pass-through rate on a Freddie Mac certificate is established based upon the lowest interest rate on the underlying mortgage loans, minus a minimum servicing fee and the amount of Freddie Mac's management and guaranty income as agreed upon between the seller and Freddie Mac.

Freddie Mac certificates duly presented for registration of ownership on or before the last business day of a month are registered effective as of the first day of the month. The first remittance to a registered holder of a Freddie Mac certificate will be distributed so as to be received normally by the 15th day of the second month following the month in which the purchaser became a registered holder of the Freddie Mac certificate. Thereafter, the remittance will be distributed monthly to the registered holder so as to be received normally by the 15th day of each month. The Federal Reserve Bank of New York maintains book-entry accounts for Freddie Mac certificates sold by Freddie Mac on or after January 2, 1985, and makes payments of principal and interest each month to their registered holders in accordance with the holders' instructions.

Federal National Mortgage Association. Fannie Mae is a federally chartered and privately owned corporation organized and existing under the Federal National Mortgage Association Charter Act, as amended. Fannie Mae was originally established in 1938 as a United States government agency to provide supplemental liquidity to the mortgage market and was transformed into a stockholder owned and privately-managed corporation by legislation enacted in 1968.

Fannie Mae provides funds to the mortgage market primarily by purchasing mortgage loans from lenders, thereby replenishing their funds for additional lending. Fannie Mae acquires funds to purchase mortgage loans from many capital market investors that may not ordinarily invest in mortgages, thereby expanding the total amount of funds available for housing. Operating nationwide, Fannie Mae helps to redistribute mortgage funds from capital-surplus to capital-short areas.

<PAGE>

Fannie Mae Certificates. These are guaranteed mortgage pass-through certificates issued and guaranteed as to timely payment of principal and interest by Fannie Mae representing fractional undivided interests in a pool of mortgage loans formed by Fannie Mae. Each mortgage loan must meet the applicable standards of the Fannie Mae purchase program. Mortgage loans comprising a pool are either provided by Fannie Mae from its own portfolio or purchased pursuant to the criteria of the Fannie Mae purchase program.

Mortgage loans underlying Fannie Mae certificates held by a trust fund will consist of conventional mortgage loans, FHA loans or VA loans. Original maturities of substantially all of the conventional, level payment mortgage loans underlying a Fannie Mae certificate are expected to be between either 8 to 15 years or 20 to 40 years. The original maturities of substantially all of the fixed rate, level payment FHA loans or VA loans are expected to be 30 years. Mortgage loans underlying a Fannie Mae certificate may have annual interest rates that vary by as much as two percentage points from each other. The rate of interest payable on a Fannie Mae certificate is equal to the lowest interest rate of any mortgage loan in the related pool, less a specified minimum annual percentage representing servicing compensation and Fannie Mae's guaranty fee. Under a regular servicing option, the annual interest rates on the mortgage loans underlying a Fannie Mae certificate will be between 50 basis points and 250 basis points greater than is its annual pass through rate. Under this option the mortgagee or each other servicer assumes the entire risk of foreclosure losses. Under a special servicing option, the annual interest rates on the mortgage loans underlying a Fannie Mae certificate will generally be between 55 basis points and 255 basis points greater than the annual Fannie Mae certificate pass-through rate. Under this option Fannie Mae assumes the entire risk for foreclosure losses. If specified in the related prospectus supplement, Fannie Mae certificates may be backed by adjustable rate mortgages.

Fannie Mae guarantees to each registered holder of a Fannie Mae certificate that it will distribute amounts representing the holder's proportionate share of scheduled principal and interest payments at the applicable pass through rate provided for by the Fannie Mae certificate on the underlying mortgage loans, whether or not received, and the holder's proportionate share of the full principal amount of any foreclosed or other finally liquidated mortgage loan, whether or not the principal amount is actually recovered. The obligations of Fannie Mae under its guaranties are obligations solely of Fannie Mae and are not backed by, or entitled to, the full faith and credit of the United States. Although the Secretary of the Treasury of the United States has discretionary authority to lend Fannie Mae up to $2.25 billion outstanding at any time, neither the United States nor any of its agencies is obligated to finance Fannie Mae's operations or to assist Fannie Mae in any other manner. If Fannie Mae were unable to satisfy its obligations, distributions to holders of Fannie Mae certificates would consist solely of payments and other recoveries on the underlying mortgage loans and, accordingly, monthly distributions to holders of Fannie Mae certificates would be affected by delinquent payments and defaults on the mortgage loans.

Except for Fannie Mae certificates backed by pools containing graduated payment mortgage loans or mortgage loans secured by multifamily projects, Fannie Mae certificates evidencing interests in pools of mortgage loans formed on or after May 1, 1985 are available in book-entry form only. Distributions of principal and interest on each Fannie Mae certificate will be made by Fannie Mae on the 25th day of each month to the persons in whose name the Fannie Mae certificate is entered in the books of the Federal Reserve Banks or registered on the Fannie Mae certificate register as of the close of business

on the last day of the preceding month. Distributions on Fannie Mae certificates issued in book-entry form will be made by wire. Distributions on fully registered Fannie Mae certificates will be made by check.

The Fannie Mae certificates included in a trust fund, and the related underlying mortgage loans, may have characteristics and terms different from those described above. Any different characteristics and terms will be described in the related prospectus supplement.

Stripped Mortgage-Backed Securities. Agency Securities may consist of one or more stripped mortgage-backed securities, each as described in this prospectus and in the related prospectus supplement. Each Agency Security will represent an undivided interest in all or part of either the principal distributions (but not the interest distributions) or the interest distributions (but not the principal distributions), or in some specified portion of the principal and interest distributions (but not all the distributions) on certain Freddie Mac, Fannie Mae or Ginnie Mae certificates. The underlying securities will be held under a trust agreement by Freddie Mac, Fannie Mae or Ginnie Mae, each as trustee, or by another trustee named in the related prospectus supplement. The applicable prospectus supplement may specify that Freddie Mac, Fannie Mae or Ginnie Mae will not guarantee each stripped Agency

20

<PAGE>

Security to the same extent it guarantees the underlying securities backing the stripped Agency Security, but if it does not, then Freddie Mac, Fannie Mae or Ginnie Mae will guarantee each stripped Agency Security to the same extent it guarantees the underlying securities backing the stripped Agency Security.

Other Agency Securities. If specified in the related prospectus supplement, a trust fund may include other mortgage pass-through certificates issued or guaranteed by Ginnie Mae, Fannie Mae or Freddie Mac. The characteristics of those mortgage pass-through certificates will be described in the prospectus supplement. If so specified, a combination of different types of Agency Securities may be held in a trust fund.

Non-Agency Mortgage-Backed Securities

Non-Agency Mortgage-Backed Securities may consist of mortgage pass-through certificates or participation certificates evidencing an undivided interest in a pool of mortgage loans or collateralized mortgage obligations secured by mortgage loans. Non-Agency Mortgage-Backed Securities may include stripped mortgage-backed securities representing an undivided interest in all or a part of either the principal distributions (but not the interest distributions) or the interest distributions (but not the principal distributions) or in some specified portion of the principal and interest distributions (but not all the distributions) on certain mortgage loans. Non-Agency Mortgage-Backed Securities will have been issued pursuant to a pooling and servicing agreement, an indenture or similar agreement. The applicable prospectus supplement may provide that the seller/servicer of the underlying mortgage loans will not have entered into a pooling and servicing agreement with a private trustee, but if it does not, the seller/servicer of the underlying mortgage loans will have entered into the pooling and servicing agreement with a private trustee. The private trustee or its agent, or a custodian, will possess the mortgage loans underlying the Non-Agency Mortgage-Backed Security. Mortgage loans underlying a Non-Agency Mortgage-Backed Security will be serviced by a private servicer directly or by one or more subservicers who may be subject to the supervision of the private

servicer.

The issuer of the Non-Agency Mortgage-Backed Securities will be a financial institution or other entity engaged generally in the business of mortgage lending, a public agency or instrumentality of a state, local or federal government, or a limited purpose corporation organized for the purpose of, among other things, establishing trusts and acquiring and selling housing loans to the trusts and selling beneficial interests in the trusts. If so specified in the related prospectus supplement, the issuer of Non-Agency Mortgage-Backed Securities may be an affiliate of the depositor. The obligations of the issuer of Non-Agency Mortgage-Backed Securities will generally be limited to certain representations and warranties with respect to the assets conveyed by it to the related trust fund. The issuer of Non-Agency Mortgage-Backed Securities will not have guaranteed any of the assets conveyed to the related trust fund or any of the Non-Agency Mortgage-Backed Securities issued under the pooling and servicing agreement. Additionally, although the mortgage loans underlying the Non-Agency Mortgage-Backed Securities may be guaranteed by an agency or instrumentality of the United States, the Non-Agency Mortgage-Backed Securities themselves will not be so guaranteed.

Distributions of principal and interest will be made on the Non-Agency Mortgage-Backed Securities on the dates specified in the related prospectus supplement. The Non-Agency Mortgage-Backed Securities may be entitled to receive nominal or no principal distributions or nominal or no interest distributions. Principal and interest distributions will be made on the Non-Agency Mortgage-Backed Securities by the private trustee or the private servicer. The issuer of Non-Agency Mortgage-Backed Securities or the private servicer may have the right to repurchase assets underlying the Non-Agency Mortgage-Backed Securities after a certain date or under other circumstances specified in the related prospectus supplement.

The mortgage loans underlying the Non-Agency Mortgage-Backed Securities may consist of fixed rate, level payment, fully amortizing loans or graduated payment mortgage loans, buydown loans, adjustable rate mortgage loans or loans having balloon or other special payment features. The mortgage loans may be secured by first liens on single family residences, multifamily residential properties, such as rental apartment buildings or projects containing five to fifty residential units, or an assignment of the proprietary lease or occupancy agreement relating to a specific dwelling within a cooperative and the related shares issued by the cooperative.

The prospectus supplement for a series for which the trust fund includes Non-Agency Mortgage-Backed Securities will specify

21

<PAGE>

o    the aggregate approximate principal amount and type of the
     Non-Agency Mortgage-Backed Securities to be included in the trust
     fund;

o    certain characteristics of the mortgage loans that comprise the
     underlying assets for the Non-Agency Mortgage-Backed Securities
     including

     o   the payment features of the mortgage loans,

     o   the approximate aggregate principal balance, if known, of
         underlying mortgage loans insured or guaranteed by a governmental
         entity,

o   the servicing fee or range of servicing fees with respect to the
    mortgage loans and

o   the minimum and maximum stated maturities of the underlying
    mortgage loans at origination;

o   the maximum original term-to-stated maturity of the Non-Agency
    Mortgage-Backed Securities;

o   the weighted average term-to stated maturity of the Non-Agency
    Mortgage-Backed Securities;

o   the pass-through or certificate rate of the Non-Agency
    Mortgage-Backed Securities;

o   the weighted average pass-through or certificate rate of the
    Non-Agency Mortgage-Backed Securities;

o   the issuer of Non-Agency Mortgage-Backed Securities, the private
    servicer (if other than the issuer of Non-Agency Mortgage-Backed
    Securities) and the private trustee for the Non-Agency Mortgage-Backed
    Securities;

o   certain characteristics of credit support, if any, such as reserve
    funds, insurance policies, surety bonds, letters of credit or guaranties
    relating to the mortgage loans underlying the Non-Agency Mortgage-Backed
    Securities or to the Non-Agency Mortgage-Backed Securities themselves;

o   the terms on which the underlying mortgage loans for the Non-Agency
    Mortgage-Backed Securities may, or are required to, be purchased before
    their stated maturity or the stated maturity of the Non-Agency
    Mortgage-Backed Securities;

o   the terms on which mortgage loans may be substituted for those
    originally underlying the Non-Agency Mortgage-Backed Securities; and

o   as appropriate, shall indicate whether the information required to be
    presented with respect to the Non-Agency Mortgage-Backed Securities as a
    "significant obligor" is either incorporated by reference, provided
    directly by the issuer or provided by reference to the Exchange Act
    filings of another entity.

    Non-Agency Mortgage-Backed Securities included in the trust fund for a
series of certificates that were issued by an issuer of Non-Agency
Mortgage-Backed Securities that is not affiliated with the depositor must be
acquired in bona fide secondary market transactions or either have been
previously registered under the Securities Act of 1933 or have been held for
at least the holding period required to be eligible for sale under Rule 144(k)
under the Securities Act of 1933.

    Substitution of Trust Fund Assets

    Substitution of Trust Fund Assets will be permitted in the event of
breaches of representations and warranties with respect to any original Trust
Fund Asset or in the event the documentation with respect to any Trust

22

<PAGE>

Fund Asset is determined by the trustee to be incomplete. The period during

which the substitution will be permitted generally will be indicated in the related prospectus supplement. The related prospectus supplement will describe any other conditions upon which Trust Fund Assets may be substituted for Trust Fund Assets initially included in the Trust Fund.

Available Information

The depositor has filed with the SEC a Registration Statement under the Securities Act of 1933, as amended (the "Securities Act"), covering the securities. This prospectus, which forms a part of the Registration Statement, and the prospectus supplement relating to each series of securities contain summaries of the material terms of the documents referred to in this prospectus and in the prospectus supplement, but do not contain all of the information in the Registration Statement pursuant to the rules and regulations of the SEC. For further information, reference is made to the Registration Statement and its exhibits. The Registration Statement and exhibits can be inspected and copied at prescribed rates at the public reference facilities maintained by the SEC at its Public Reference Room at 100 F Street, N.E., Washington, D.C. 20549. You may obtain information on the operation of the Public Reference Room by calling the SEC at 1-800-SEC-0330. The SEC maintains an Internet Web site that contains reports, information statements and other information regarding the registrants that file electronically with the SEC, including the depositor. The address of that Internet Web site is http://www.sec.gov. The depositor's SEC Securities Act file number is 333-131630.

This prospectus and any applicable prospectus supplement do not constitute an offer to sell or a solicitation of an offer to buy any securities other than the securities offered by this prospectus and the prospectus supplement nor an offer of the securities to any person in any state or other jurisdiction in which the offer would be unlawful.

Incorporation of Certain Documents by Reference; Reports Filed with the SEC

All documents filed for the trust fund referred to in the accompanying prospectus supplement after the date of this prospectus and before the end of the related offering with the SEC pursuant to Section 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), are incorporated by reference in this prospectus and are a part of this prospectus from the date of their filing. Any statement contained in a document incorporated by reference in this prospectus is modified or superseded for all purposes of this prospectus to the extent that a statement contained in this prospectus (or in the accompanying prospectus supplement) or in any other subsequently filed document that also is incorporated by reference differs from that statement. Any statement so modified or superseded shall not, except as so modified or superseded, constitute a part of this prospectus.

The depositor or master servicer on behalf of the trust fund of the related series will file the reports required under the Securities Act and under Section 13(a), 13(c), 14 or 15(d) of the Exchange Act. These reports include (but are not limited to):

o       Reports on Form 8-K (Current Report), following the issuance of the series of securities of the related trust fund, including as Exhibits to the Form 8-K (1) the agreements or other documents specified in the related prospectus supplement, if applicable, (2) the Detailed Description, if applicable, regarding the related Trust Fund Assets and (3) the opinions related to the tax consequences and the legality of the series being issued required to be filed under applicable securities laws;

o    Reports on Form 8-K (Current Report), following the occurrence of events
     specified in Form 8-K requiring disclosure, which are required to be
     filed within the time-frame specified in Form 8-K related to the type of
     event;

o    Reports on Form 10-D (Asset-Backed Issuer Distribution Report),
     containing the distribution and pool performance information required on
     Form 10-D, which are required to be filed 15 days following the
     distribution date specified in the related prospectus supplement; and

23

<PAGE>

o    Report on Form 10-K (Annual Report), containing the items specified in
     Form 10-K with respect to a fiscal year and filing or furnishing, as
     appropriate, the required exhibits.

     Neither the depositor nor the master servicer intends to file with the
SEC any reports required under Section 13(a), 13(c), 14 or 15(d) of the
Exchange Act with respect to a trust fund following completion of the
reporting period required by Rule 15d-1 or Regulation 15D under the Securities
Exchange Act of 1934. Unless specifically stated in the report, the reports
and any information included in the report will neither be examined nor
reported on by an independent public accountant. Each trust fund formed by the
depositor will have a separate file number assigned by the SEC, which unless
otherwise specified in the related prospectus supplement is not available
until filing of the final prospectus supplement related to the series. Reports
filed with respect to a trust fund with the SEC after the final prospectus
supplement is filed will be available under trust fund's specific number,
which will be a series number assigned to the file number of the depositor
shown above.

     The trustee on behalf of any trust fund will provide without charge to
each person to whom this prospectus is delivered, on the person's written
request, a copy of any or all of the documents referred to above that have
been or may be incorporated by reference in this prospectus (not including
exhibits to the information that is incorporated by reference unless the
exhibits are specifically incorporated by reference into the information that
this prospectus incorporates) and any reports filed with the SEC. Requests
should be directed to the corporate trust office of the trustee specified in
the accompanying prospectus supplement.

     Reports to Securityholders

     The distribution and pool performance reports filed on Form 10-D will be
forwarded to each securityholder as specified in the related prospectus
supplement. See "Description of the Securities -- Reports to Securityholders."
All other reports filed with the SEC concerning the trust fund will be
forwarded to securityholders free of charge upon written request to the
trustee on behalf of any trust fund, but will not be made available through a
Web site of the depositor, the master servicer or any other party as these
reports and exhibits can be inspected and copied at prescribed rates at the
public reference facilities maintained by the SEC and can also be viewed
electronically at the Internet Web site of the SEC shown above under "--
Available Information."

     Use of Proceeds

The net proceeds to be received from the sale of the securities will be applied by the depositor to the purchase of Trust Fund Assets or will be used by the depositor for general corporate purposes. The depositor expects to sell securities in series from time to time, but the timing and amount of offerings of securities will depend on a number of factors, including the volume of Trust Fund Assets acquired by the depositor, prevailing interest rates, availability of funds and general market conditions.

## The Depositor

CWALT, Inc., a Delaware corporation (the "depositor"), was incorporated in May 2003 for the limited purpose of acquiring, owning and transferring Trust Fund Assets and selling interests in them or bonds secured by them. The depositor is a limited purpose finance subsidiary of Countrywide Financial Corporation, a Delaware corporation. The depositor maintains its principal office at 4500 Park Granada, Calabasas, California 91302. Its telephone number is (818) 225-3000.

The depositor's obligations after issuance of the securities include delivery of the Trust Fund Assets and certain related documents and instruments, repurchasing Trust Fund Assets in the event of certain breaches of representations or warranties made by the depositor, providing tax-related information to the Trustee and maintaining the trustee's first priority perfected security interest in the Trust Fund Assets.

Neither the depositor nor any of the depositor's affiliates will insure or guarantee distributions on the securities of any series.

24

<PAGE>

## Loan Program

The loans will have been purchased by the depositor, either directly or through affiliates, from sellers. The applicable prospectus supplement may provide for the underwriting criteria used in originating the loans, but if it does not, the loans so acquired by the depositor will have been originated in accordance with the underwriting criteria specified below under "Underwriting Standards."

## Underwriting Standards

Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the related Property as collateral. In general, a prospective borrower applying for a loan is required to fill out a detailed application designed to provide to the underwriting officer pertinent credit information. As part of the description of the borrower's financial condition, the borrower generally is required to provide a current list of assets and liabilities and a statement of income and expenses, as well as an authorization to apply for a credit report which summarizes the borrower's credit history with local merchants and lenders and any record of bankruptcy. In most cases, an employment verification is obtained from an independent source (typically the borrower's employer) which verification reports, among other things, the length of employment with that organization and the borrower's current salary. If a prospective borrower is self-employed, the borrower may be required to submit copies of signed tax returns. The borrower may also be required to authorize verification of deposits at financial institutions where the borrower has demand or savings accounts.

In determining the adequacy of the property to be used as collateral, an

appraisal may be made of each property considered for financing. Except as described in the prospectus supplement, an appraiser is generally required to inspect the property, issue a report on its condition and, if applicable, verify construction, if new, has been completed. The appraisal is generally based on the market value of comparable homes, the estimated rental income (if considered applicable by the appraiser) and the cost of replacing the home.

Each seller's underwriting standards will generally permit loans with loan-to-value ratios at origination of up to 100% depending on the loan program, type and use of the property, creditworthiness of the borrower and debt-to-income ratio. If so specified in the related prospectus supplement, a seller's underwriting criteria may permit loans with loan-to-value ratios at origination in excess of 100%.

Once all applicable employment, credit and property information is received, a determination generally is made as to whether the prospective borrower has sufficient monthly income available to meet monthly housing expenses and other financial obligations and monthly living expenses and to meet the borrower's monthly obligations on the proposed mortgage loan (generally determined on the basis of the monthly payments due in the year of origination) and other expenses related to the mortgaged property such as property taxes and hazard insurance). The underwriting standards applied by sellers, particularly with respect to the level of loan documentation and the mortgagor's income and credit history, may be varied in appropriate cases where factors as low Loan-to-Value Ratios or other favorable credit factors exist.

In the case of a loan secured by a leasehold interest in real property, the title to which is held by a third party lessor, the applicable prospectus supplement may provide for the related representations and warranties of the seller, but if it does not, the related seller will represent and warrant, among other things, that the remaining term of the lease and any sublease is at least as long as the remaining term on the loan.

Certain of the types of loans that may be included in a trust fund are recently developed and may involve additional uncertainties not present in traditional types of loans. For example, certain of those loans may provide for escalating or variable payments by the borrower. These types of loans are underwritten on the basis of a judgment that the borrowers have the ability to make the monthly payments required initially. In some instances, a borrower's income may not be sufficient to permit continued loan payments as the payments increase. These types of loans may also be underwritten primarily upon the basis of Loan-to-Value Ratios or other favorable credit factors.

25

<PAGE>

Qualifications of Sellers

Each seller must be an institution experienced in originating and servicing loans of the type contained in the related pool and must maintain satisfactory facilities to originate and service (either directly or through qualified subservicers) those loans. If a seller does not meet the foregoing qualifications, the related originator must satisfy those qualifications.

Representations by Sellers; Repurchases

One or more of each seller or, in some cases originator, will have made representations and warranties in respect of the loans sold by the seller or originator and evidenced by all, or a part, of a series of securities. The representations and warranties may include, among other things:

o      that a lender's policy of title insurance (or other similar form of
       policy of insurance or an attorney's certificate of title) or a
       commitment to issue the policy was effective on the date of origination
       of each loan, other than cooperative loans, and that each policy (or
       certificate of title as applicable) remained in effect on the applicable
       cut-off date;

o      that the seller had good title to each loan and each loan was subject to
       no valid offsets, defenses or counterclaims except to the extent that
       any buydown agreement may forgive certain indebtedness of a borrower;

o      that each loan is secured by a valid lien on, or a perfected security
       interest with respect to, the Property (subject only to permissible
       liens disclosed, if applicable, title insurance exceptions, if
       applicable, and certain other exceptions described in the Agreement) and
       that, to the seller's knowledge, the Property was free of material
       damage;

o      that there were no delinquent tax or assessment liens against the
       Property;

o      that no payment of a principal and interest on a loan was delinquent
       more than the number of days specified in the related prospectus
       supplement; and

o      that each loan at the time it was originated and on the date of transfer
       by the seller to the depositor complied in all material respects with
       all applicable local, state and federal laws.

If so specified in the related prospectus supplement, the representations and
warranties of a seller or originator in respect of a loan will be made not as
of the cut-off date but as of the date on which the seller or originator sold
the loan to the depositor or one of its affiliates. Under those circumstances,
a substantial period of time may have elapsed between the sale date and the
date of initial issuance of the series of securities evidencing an interest in
the loan. Since the representations and warranties of a seller or originator
do not address events that may occur following the sale of a loan by the
seller or originator, its repurchase obligation described below will not arise
if the relevant event that would otherwise have given rise to the repurchase
obligation with respect to a loan occurs after the date of sale of the loan by
the seller or originator to the depositor or its affiliates. In addition,
certain representations, including the condition of the related mortgaged
property will be limited to the extent the seller or originator has knowledge
and the seller or originator will be under no obligation to investigate the
substance of the representation. However, the depositor will not include any
loan in the trust fund for any series of securities if anything has come to
the depositor's attention that would cause it to believe that the
representations and warranties of a seller or originator will not be accurate
and complete in all material respects in respect of the loan as of the date of
initial issuance of the related series of securities. If the master servicer
is also a seller or originator of loans with respect to a particular series of
securities, those representations will be in addition to the representations
and warranties made by the master servicer in its capacity as a master
servicer.

       The master servicer or the trustee, if the master servicer is the seller
or originator, will promptly notify the relevant seller or originator of any
breach of any representation or warranty made by it in respect of a loan which

<PAGE>

materially and adversely affects the interests of the securityholders in the loan. If the seller or originator cannot cure the breach within 90 days following notice from the master servicer or the trustee, as the case may be, the applicable prospectus supplement may provide for the seller's or originator's obligations under those circumstances, but if it does not, then the seller or originator will be obligated either

o      to repurchase the loan from the trust fund at a price (the "Purchase Price") equal to 100% of the unpaid principal balance of the loan as of the date of the repurchase plus accrued interest on the loan to the first day of the month following the month of repurchase at the Loan Rate (less any Advances or amount payable as related servicing compensation if the seller or originator is the master servicer) or

o      substitute for the loan a replacement loan that satisfies the criteria specified in the related prospectus supplement.

If a REMIC election is to be made with respect to a trust fund, the applicable prospectus supplement may provide for the obligations of the master servicer or residual certificateholder, but if it does not, the master servicer or a holder of the related residual certificate generally will be obligated to pay any prohibited transaction tax which may arise in connection with any repurchase or substitution and the trustee must have received a satisfactory opinion of counsel that the repurchase or substitution will not cause the trust fund to lose its status as a REMIC or otherwise subject the trust fund to a prohibited transaction tax. The master servicer may be entitled to reimbursement for that payment from the assets of the related trust fund or from any holder of the related residual certificate. See "Description of the Securities -- General." Except in those cases in which the master servicer is the seller or originator, the master servicer will be required under the applicable Agreement to enforce this obligation for the benefit of the trustee and the holders of the securities, following the practices it would employ in its good faith business judgment were it the owner of the loan. This repurchase or substitution obligation will constitute the sole remedy available to holders of securities or the trustee for a breach of representation by a seller or originator.

     Neither the depositor nor the master servicer (unless the master servicer is the seller) will be obligated to purchase or substitute a loan if a seller defaults on its obligation to do so, and we can give no assurance that sellers will carry out their respective repurchase or substitution obligations with respect to loans. However, to the extent that a breach of a representation and warranty of a seller may also constitute a breach of a representation made by the master servicer, the master servicer may have a repurchase or substitution obligation as described below under "The Agreements -- Assignment of Trust Fund Assets."

                              Static Pool Data

     If specified in the related prospectus supplement, static pool data with respect to the delinquency, cumulative loss and prepayment data for Countrywide Home Loans, Inc. ("Countrywide Home Loans") or any other person specified in the related prospectus supplement will be made available through a Web site. The prospectus supplement related to each series for which the static pool data is provided through a Web site will contain the Web site address to obtain this information. Except as stated below, the static pool data provided through any Web site will be deemed part of this prospectus and the registration statement of which this prospectus is a part from the date of the related prospectus supplement.

Notwithstanding the foregoing, the following information shall not be deemed part of the prospectus or the registration statement of which this prospectus is a part:

o    with respect to information regarding prior securitized pools of Countrywide Home Loans (or the applicable person specified in the related prospectus supplement) that do not include the currently offered pool, information regarding prior securitized pools that were established before January 1, 2006; and

o    with respect to information regarding the pool described in the related prospectus supplement, information about the pool for periods before January 1, 2006.

27

<PAGE>

Static pool data may also be provided in the related prospectus supplement or may be provided in the form of a CD-ROM accompanying the related prospectus supplement. The related prospectus supplement will specify how the static pool data will be presented.

Description of the Securities

Each series of certificates will be issued pursuant to separate Pooling and Servicing Agreements. A form of Pooling and Servicing Agreement has been filed as an exhibit to the Registration Statement of which this prospectus forms a part. Each Pooling and Servicing Agreement will be dated as of the related cut-off date, will be among the depositor, the master servicer and the trustee for the benefit of the holders of the securities of the related series. Each series of notes will be issued pursuant to an indenture (the "Indenture") between the related trust fund and the entity named in the related prospectus supplement as trustee with respect to the related series, and the related loans will be serviced by the master servicer pursuant to a Sale and Servicing Agreement. Each Indenture will be dated as of the cut-off date and the Trust Fund Assets will be pledged to the related trustee for the benefit of the holders of the securities of the related series.

A form of Indenture and Sale and Servicing Agreement has been filed as an exhibit to the Registration Statement of which this prospectus forms a part. A series of securities may consist of both notes and certificates. The provisions of each Agreement will vary depending upon the nature of the securities to be issued thereunder and the nature of the related trust fund. The following are descriptions of the material provisions which may appear in each Agreement. The descriptions are subject to, and are qualified in their entirety by reference to, all of the provisions of the Agreement for each series of securities and the applicable prospectus supplement. The depositor will provide a copy of the Agreement (without exhibits) relating to any series without charge upon written request of a holder of record of a security of that series addressed to CWALT, Inc., 4500 Park Granada, Calabasas, California 91302, Attention: Secretary.

General

The securities of each series will be issued in book-entry or fully registered form, in the authorized denominations specified in the related prospectus supplement, will, in the case of certificates, evidence specified beneficial ownership interests in, and in the case of notes, be secured by, the assets of the related trust fund created pursuant to the related Agreement and will not be entitled to payments in respect of the assets included in any

other trust fund established by the depositor. The applicable prospectus
supplement may provide for guarantees or insurance obtained from a
governmental entity or other person, but if it does not, the Trust Fund Assets
will not be guaranteed or insured by any governmental entity or other person.
Each trust fund will consist of, to the extent provided in the related
Agreement,

o        the Trust Fund Assets, as from time to time are subject to the related
         Agreement (exclusive of any amounts specified in the related prospectus
         supplement ("Retained Interest")), including all payments of interest
         and principal received with respect to the loans after the cut-off date
         (to the extent not applied in computing the principal balance of the
         loans as of the cut-off date (the "Cut-off Date Principal Balance"));

o        the assets required to be deposited in the related Security Account
         from time to time;

o        property which secured a loan and which is acquired on behalf of the
         securityholders by foreclosure or deed in lieu of foreclosure and

o        any insurance policies or other forms of credit enhancement required
         to be maintained pursuant to the related Agreement.

If so specified in the related prospectus supplement, a trust fund may also
include one or more of the following: reinvestment income on payments received
on the Trust Fund Assets, a reserve fund, a mortgage pool insurance policy, a
special hazard insurance policy, a bankruptcy bond, one or
more letters of credit, a surety bond, guaranties or similar instruments.

                                      28
<PAGE>


         Each series of securities will be issued in one or more classes. Each
class of certificates of a series will evidence beneficial ownership of a
specified percentage (which may be 0%) or portion of future interest payments
and a specified percentage (which may be 0%) or portion of future principal
payments on, and each class of notes of a series will be secured by, the
related Trust Fund Assets. A series of securities may include one or more
classes that are senior in right to payment to one or more other classes of
securities of that series. Certain series or classes of securities may be
covered by insurance policies, surety bonds or other forms of credit
enhancement, in each case as described under "Credit Enhancement" herein and
in the related prospectus supplement. One or more classes of securities of a
series may be entitled to receive distributions of principal, interest or any
combination thereof. Distributions on one or more classes of a series of
securities may be made prior to one or more other classes, after the
occurrence of specified events, in accordance with a schedule or formula or on
the basis of collections from designated portions of the related Trust Fund
Assets, in each case as specified in the related prospectus supplement. The
timing and amounts of the distributions may vary among classes or over time as
specified in the related prospectus supplement.

         Distributions of principal and interest (or, where applicable, of
principal only or interest only) on the related securities will be made by the
trustee on each distribution date (i.e., monthly, quarterly, semi-annually or
at the other intervals and on the dates as are specified in the related
prospectus supplement) in proportion to the percentages specified in the
related prospectus supplement. Distributions will be made to the persons in
whose names the securities are registered at the close of business on the
dates specified in the related prospectus supplement (each, a "Record Date").

Distributions will be made in the manner specified in the related prospectus
supplement to the persons entitled thereto at the address appearing in the
register maintained for holders of securities (the "Security Register");
provided, however, that the final distribution in retirement of the securities
will be made only upon presentation and surrender of the securities at the
office or agency of the trustee or other person specified in the notice to
securityholders of the final distribution.

The securities will be freely transferable and exchangeable at the
Corporate Trust Office of the trustee as set forth in the related prospectus
supplement. No service charge will be made for any registration of exchange or
transfer of securities of any series, but the trustee may require payment of a
sum sufficient to cover any related tax or other governmental charge.

Certain Issues Related to the Suitability of Investments in the
Securities for Holders. Under current law the purchase and holding by or on
behalf of any employee benefit plan or other retirement arrangement subject to
provisions of the Employee Retirement Income Security Act of 1974, as amended,
or the Code of certain classes of certificates may result in "prohibited
transactions" within the meaning of ERISA and the Code. See "ERISA
Considerations." Retirement arrangements subject to these provisions include
individual retirement accounts and annuities, Keogh plans and collective
investment funds in which the plans, accounts or arrangements are invested.
The applicable prospectus supplement may specify other conditions under which
transfers of this type would be permitted, but if it does not, transfer of the
certificates will not be registered unless the transferee represents that it
is not, and is not purchasing on behalf of, a plan, account or other
retirement arrangement or provides an opinion of counsel satisfactory to the
trustee and the depositor that the purchase of the certificates by or on
behalf of a plan, account or other retirement arrangement is permissible under
applicable law and will not subject the trustee, the master servicer or the
depositor to any obligation or liability in addition to those undertaken in
the pooling and servicing agreement.

As to each series, an election may be made to treat the related trust
fund or designated portions thereof as one or more "real estate mortgage
investment conduits" ("REMICs") as defined in the Code. The related prospectus
supplement will specify whether one or more REMIC elections are to be made.
Alternatively, the Agreement for a series may provide that one or more REMIC
elections may be made at the discretion of the depositor or the master
servicer and may only be made if certain conditions are satisfied. The terms
and provisions applicable to the making of a REMIC election for each related
series, if applicable, will be set forth in the related prospectus supplement.
If one or more REMIC elections are made with respect to a series, one of the
classes will be designated as evidencing the sole class of "residual
interests" in the related REMIC, as defined in the Code. All other classes of
securities in the series will constitute "regular interests" in the related
REMIC or REMICs, as applicable, as defined in the Code. As to each series with
respect to which one or more REMIC elections are to be made, the master
servicer or a holder of the related residual certificate will be obligated to
take all actions required in order to comply with applicable laws and
regulations and will be obligated to pay any prohibited transaction taxes.
Unless otherwise provided in the

29

<PAGE>

related prospectus supplement, the master servicer will be entitled to
reimbursement if it makes any prohibited transaction tax payment from the
assets of the trust fund or from any holder of the related residual

certificate. Unless otherwise specified in the related prospectus supplement, if the amounts distributable to related residual certificates are insufficient to cover the amount of any prohibited transaction taxes, the amount necessary to reimburse the master servicer may be deducted from the amounts otherwise payable to the other classes of certificates of the series.

Distributions on Securities

General. In general, the method of determining the amount of distributions on a particular series of securities will depend on the type of credit support, if any, that is used with respect to the related series. See "Credit Enhancement." Set forth below are descriptions of various methods that may be used to determine the amount of distributions on the securities of a particular series. The prospectus supplement for each series of securities will describe the method to be used in determining the amount of distributions on the securities of the related series.

Distributions allocable to principal and interest on the securities will be made by the trustee out of, and only to the extent of, funds in the related Security Account, including any funds transferred from any reserve fund or the pre-funding account. As between securities of different classes and as between distributions of principal (and, if applicable, between distributions of Principal Prepayments, as defined below, and scheduled payments of principal) and interest, distributions made on any distribution date will be applied as specified in the related prospectus supplement. The prospectus supplement will also describe the method for allocating distributions among securities of a particular class, but if the prospectus supplement does not, distributions to any class of securities will be made pro rata to all securityholders of that class.

Available Funds. All distributions on the securities of each series on each distribution date will be made from the Available Funds described below, in accordance with the terms described in the related prospectus supplement and specified in the Agreement. The applicable prospectus supplement may define Available Funds with references to different accounts or different amounts, but if it does not, "Available Funds" for each distribution date will generally equal the amount on deposit in the related Security Account on that distribution date (net of related fees and expenses payable by the related trust fund) other than amounts to be held therein for distribution on future distribution dates.

Distributions of Interest. Interest will accrue on the aggregate principal balance of the securities (or, in the case of securities entitled only to distributions allocable to interest, the aggregate notional amount) of each class of securities (the "Class Security Balance") entitled to interest from the date, at the Pass-Through Rate or interest rate, as applicable (which in either case may be a fixed rate or rate adjustable as specified in the related prospectus supplement), and for the periods specified in the related prospectus supplement. To the extent funds are available therefor, interest accrued during each specified period on each class of securities entitled to interest (other than a class of securities that provides for interest that accrues, but is not currently payable) will be distributable on the distribution dates specified in the related prospectus supplement until the aggregate Class Security Balance of the securities of that class has been distributed in full or, in the case of securities entitled only to distributions allocable to interest, until the aggregate notional amount of those securities is reduced to zero or for the period of time designated in the related prospectus supplement. The original Class Security Balance of each security will equal the aggregate distributions allocable to principal to which the security is entitled. The applicable prospectus supplement may specify some other basis for these distributions, but if it does not, distributions allocable to interest on each security that is not entitled to

distributions allocable to principal will be calculated based on the notional amount of the security. The notional amount of a security will not evidence an interest in or entitlement to distributions allocable to principal but will be used solely for convenience in expressing the calculation of interest and for certain other purposes.

Interest payable on the securities of a series on a distribution date will include all interest accrued during the period specified in the related prospectus supplement. In the event interest accrues over a period ending two or more days prior to a distribution date, the effective yield to securityholders will be reduced from the yield that would otherwise be obtainable if interest payable on the security were to accrue through the day immediately preceding that distribution date, and the effective yield (at par) to securityholders will be less than the indicated coupon rate.

30

<PAGE>

With respect to any class of accrual securities, if specified in the related prospectus supplement, any interest that has accrued but is not paid on a given distribution date will be added to the aggregate Class Security Balance of that class of securities on that distribution date. The applicable prospectus supplement may specify some other basis for these distributions, but if it does not, distributions of interest on any class of accrual securities will commence only after the occurrence of the events specified in the related prospectus supplement. Prior to that time, in the aggregate Class Security Balance of the class of accrual securities will increase on each distribution date by the amount of interest that accrued during the preceding interest accrual period but that was not required to be distributed to the class on that distribution date. Thereafter the class of accrual securities accrue interest on its outstanding Class Security Balance as so adjusted.

Distributions of Principal. The related prospectus supplement will specify the method by which the amount of principal to be distributed on the securities on each distribution date will be calculated and the manner in which the amount will be allocated among the classes of securities entitled to distributions of principal. The aggregate Class Security Balance of any class of securities entitled to distributions of principal generally will be the aggregate original Class Security Balance of the class of securities specified in the prospectus supplement,

o      reduced by all distributions reported to the holders of the class of securities as allocable to principal,

o      in the case of accrual securities, in general, increased by all interest accrued but not then distributable on the accrual securities;

o      in the case of adjustable rate securities, subject to the effect of negative amortization, if applicable; and

o      if specified in the related prospectus supplement, reduced by the amount of any losses allocated to the Class Security Balance of the class of securities.

If so provided in the related prospectus supplement, one or more classes of securities will be entitled to receive all or a disproportionate percentage of the payments of principal which are received from borrowers in advance of their scheduled due dates and are not accompanied by amounts representing scheduled interest due after the month in which the payment is made

("Principal Prepayments") in the percentages and under the circumstances or
for the periods specified in the prospectus supplement. The effect of this
allocation of Principal Prepayments to the class or classes of securities will
be to accelerate the amortization of those securities while increasing the
interests evidenced by one or more other classes of securities in the trust
fund. Increasing the interests of the other classes of securities relative to
that of certain securities is intended to preserve the availability of the
subordination provided by the securities for which the interests have been
increased. See "Credit Enhancement -- Subordination."

        Unscheduled Distributions. If specified in the related prospectus
supplement, the securities will be subject to receipt of distributions before
the next scheduled distribution date under the circumstances and in the manner
described below and in the prospectus supplement. If applicable, the trustee
will be required to make unscheduled distributions on the day and in the
amount specified in the related prospectus supplement if, due to substantial
payments of principal (including Principal Prepayments) on the Trust Fund
Assets, the trustee or the master servicer determines that the funds available
or anticipated to be available from the Security Account and, if applicable,
any reserve fund, may be insufficient to make required distributions on the
securities on that distribution date. The applicable prospectus supplement may
provide for limits on the amount of an unscheduled distribution, but if it
does not, the amount of any unscheduled distribution that is allocable to
principal will not exceed the amount that would otherwise have been required
to be distributed as principal on the securities on the next distribution
date. The applicable prospectus supplement may specify whether the unscheduled
distribution will include interest, but if it does not, the unscheduled
distributions will include interest at the applicable Pass-Through Rate (if
any) or interest rate (if any) on the amount of the unscheduled distribution
allocable to principal for the period and to the date specified in the
prospectus supplement.

        Advances

        To the extent provided in the related prospectus supplement, the master
servicer will be required to advance on or before each distribution date (from
its own funds, funds advanced by sub-servicers or funds held in the

                                       31

<PAGE>

Security Account for future distributions to the holders of securities of the
related series), an amount equal to the aggregate of payments of interest
and/or principal that were delinquent on the related Determination Date (as
the term is defined in the related prospectus supplement) and were not
advanced by any sub-servicer, subject to the master servicer's determination
that the advances may be recoverable out of late payments by borrowers,
Liquidation Proceeds, Insurance Proceeds or otherwise. In the case of
cooperative loans, the master servicer also may be required to advance any
unpaid maintenance fees and other charges under the related proprietary leases
as specified in the related prospectus supplement.

        In making advances, the master servicer will endeavor to maintain a
regular flow of scheduled interest and principal payments to holders of the
securities, rather than to guarantee or insure against losses. If advances are
made by the master servicer from cash being held for future distribution to
securityholders, the master servicer will replace those funds on or before any
future distribution date to the extent that funds in the applicable Security
Account on the future distribution date would be less than the amount required
to be available for distributions to securityholders on that distribution
date. Any master servicer funds advanced will be reimbursable to the master
servicer out of recoveries on the specific loans with respect to which the