# ASSET

# PURCHASE

| | | |
|---|---|---|
| | **Settlement Date**<br>6/29/2007 | **Trader**<br>Cathy Hewlett |
| **Trade Date**<br>6/28/2007 | | **Broker**<br>Dan S./Morgan Stanley |
| Customer Ref  /  Citibank Ref | **Date**<br>6/28/2007 | **Time** |
| Customer Ref  /  Citibank Ref | **Summit ID**<br># | |

| | | | | |
|---|---|---|---|---|
| Description:      Summit ID      %160685 | | | | **Par/Original Face**<br>65,500,000.00 |
| **CWALT 06-J6**<br><br>**A3** | | | | **Factor**<br>0.9138473280 |
| Rate | Maturity | Issue | 1st Payment | **Current Face**<br>59,856,999.98 |
| 6 | 9/25/2036 | 9/1/2006 | | **Price**<br>99.554687500 |
| Yield<br>6.10 | | Day Count<br>30/360 | | **Principal**<br>59,590,449.28 |
| Broker/Delivery Instructions       Broker # 050 | | | | **# of Days**<br>28<br>**Interest**<br>279,332.67 |
| MORGAN STANLEY      ~~SARAH BERRY  242 761 0866~~ | | | | **Total** |
| Settle via      **CITI DTC** | | | | 59,869,781.95 |

| | | | |
|---|---|---|---|
| **Money**<br>Market Code _____ | Summit _____ | CUSIP | **23244EAC1** |
| | Trades Log _____ | | |
| FAS115   **HTM** _____ | | | |

| | Debt | Debt | Debt | Debt | Hedge |
|---|---|---|---|---|---|
| Type | 1yr      2yr | 4yr | 3nc1 | 4nc2      5nc3 | |
| Amount | 8      8 | 4 | 15 | 10      11 | |
| Cusip / Hedge ID | 3133XLMM2/3133XFLG9 | 3133XLHQ9 | 3133XLMG5 | 3133XLMH3/3133XLMJ9 | |

| | | | |
|---|---|---|---|
| Intex file CWA06J06,A3 | LAB CWALT 06-J6 A3 | CMO_ALTA | |
| PREPAY MODEL AA_30 | OAS 1.05 | | Orig. MDO |
| PURCHASED +117/CVE/100PPC | | | Copy Safekeeping |
| | wam 348   war 6.81 | | Copy Trader |

# EXHIBIT 7

**PROSPECTUS SUPPLEMENT**
**(To Prospectus dated November 14, 2006)**

**$493,712,524**
**(Approximate)**

**CWALT, INC.**
Depositor



**HOME LOANS**
**Sponsor and Seller**

**Countrywide Home Loans Servicing LP**
**Master Servicer**

**Alternative Loan Trust 2007-1T1**
**Issuing Entity**

**Mortgage Pass-Through Certificates, Series 2007-1T1**
**Distributions payable monthly, beginning February 26, 2007**

The issuing entity will issue certificates, including the following classes of certificates, that are offered pursuant to this prospectus supplement and the accompanying prospectus:

| | Initial Class Certificate Balance/Initial Notional Amount (1) | Pass-Through Rate (2) | | Initial Class Certificate Balance/Initial Notional Amount (1) | Pass-Through Rate (2) |
|---|---|---|---|---|---|
| Class 1-A-1 | $ 187,732,000 (3) | 6.00% | Class 2-A-9 | $ 35,133,000 (3) | 6.00% |
| Class 1-A-2 | $ 50,000,000 | 6.00% | Class 2-A-10 | $ 44,200,000 (3) | 5.50% |
| Class 1-A-3 | $ 50,000,000 | 6.00% | Class 2-A-11 | $ 44,200,000 (3) | 5.75% |
| Class 1-A-4 | $ 6,871,000 | 6.00% | Class 2-A-12 | $ 3,683,333 (3) | 6.00% |
| Class 1-A-5 | $ 13,264,000 (3) | 6.00% | Class 2-A-13 | $ 4,550,000 (3) | 5.50% |
| Class 1-A-6 | $ 3,425,000 | 6.00% | Class 2-A-14 | $ 4,550,000 (3) | 5.75% |
| Class 1-A-7 | $ 12,404,000 (3) | 6.00% | Class 2-A-15 | $ 379,166 (3) | 6.00% |
| Class 1-A-8 | $ 860,000 (3) | 6.00% | Class 2-A-16 | $ 3,887,000 (3) | 5.50% |
| Class 1-A-9 | $ 187,732,000 (3) | 5.50% | Class 2-A-17 | $ 3,887,000 (3) | 5.75% |
| Class 1-A-10 | $ 187,732,000 (3) | 5.75% | Class 2-A-18 | $ 323,916 (3) | 6.00% |
| Class 1-A-11 | $ 15,644,333 (3) | 6.00% | Class 2-A-19 | $ 8,437,000 (3) | 6.00% |
| Class 1-A-12 | $ 13,264,000 (3) | 5.50% | Class 2-X | $ 140,939,080 (4) | Variable |
| Class 1-A-13 | $ 13,264,000 (3) | 5.75% | Class PO | $ 1,651,224 | (5) |
| Class 1-A-14 | $ 1,105,333 (3) | 6.00% | Class A-R | $ 100 | 6.00% |
| Class 1-X | $ 304,020,858 (4) | Variable | Class M-A | $ 4,250,000 | 6.00% |
| Class 2-A-1 | $ 65,000,000 | Floating | Class M-1 | $ 10,749,200 | 6.00% |
| Class 2-A-2 | $ 65,000,000 (4) | Floating | Class M-2 | $ 2,500,000 | 6.00% |
| Class 2-A-3 | $ 44,200,000 (3) | 6.00% | Class M-3 | $ 2,250,000 | 6.00% |
| Class 2-A-4 | $ 4,550,000 (3) | 6.00% | Class M-4 | $ 1,750,000 | 6.00% |
| Class 2-A-5 | $ 3,887,000 (3) | 6.00% | Class M-5 | $ 3,250,000 | 6.00% |
| Class 2-A-6 | $ 32,880,000 (3) | 6.00% | Class B-1 | $ 1,250,000 | 6.00% |
| Class 2-A-7 | $ 2,253,000 (3) | 6.00% | Class B-2 | $ 2,000,000 | 6.00% |
| Class 2-A-8 | $ 52,637,000 (3) | 6.00% | | | |

**Consider carefully the risk factors beginning on page S-23 in this prospectus supplement and on page 2 in the prospectus.**

The certificates represent obligations of the issuing entity only and do not represent an interest in or obligation of CWALT, Inc., Countrywide Home Loans, Inc. or any of their affiliates.

This prospectus supplement may be used to offer and sell the offered certificates only if accompanied by the prospectus.

(1) This amount is subject to a permitted variance in the aggregate of plus or minus 5%.
(2) The classes of certificates offered by this prospectus supplement, together with their pass-through rates and their initial ratings, are listed in the tables under "*Summary — Description of the Certificates*" beginning on page S-6 of this prospectus supplement.
(3) The Class 1-A-7, Class 1-A-9, Class 1-A-10, Class 1-A-11, Class 1-A-12, Class 1-A-13, Class 1-A-14, Class 2-A-8, Class 2-A-9, Class 2-A-10, Class 2-A-11, Class 2-A-12, Class 2-A-13, Class 2-A-14, Class 2-A-15, Class 2-A-16, Class 2-A-17, Class 2-A-18 and Class 2-A-19 Certificates are exchangeable for certain proportions of the Class 1-A-1, Class 1-A-5, Class 2-A-3, Class 2-A-4, Class 2-A-5, Class 2-A-6 and Class 2-A-7 Certificates as described in this prospectus supplement. The Class 1-A-11, Class 1-A-14, Class 2-A-15 and Class 2-A-18 Certificates are interest-only notional amount certificates. The maximum initial class certificate balances and notional amounts of the exchangeable certificates are set forth in the table but are not included in the aggregate class certificate balance of the certificates offered.
(4) The Class 2-A-2, Class 1-X and Class 2-X Certificates are interest-only notional amount certificates. The notional amounts of these classes are shown in the table but are not included in the aggregate class certificate balance of all of the certificates offered.
(5) The Class PO Certificates are principal only certificates and will not accrue interest.

This prospectus supplement and the accompanying prospectus relate only to the offering of the certificates listed above and not to the other classes of certificates that will be issued by the issuing entity. The certificates represent interests in a pool consisting of two loan groups of primarily 30-year conventional, fixed rate mortgage loans secured by first liens on one-to-four family residential properties.

Credit enhancement and other support for the transaction will consist of:
• Subordination; and
• Cross-collateralization between loan groups.

The credit enhancement for each class of certificates varies. Not all credit enhancement is available for every class. The credit enhancement for the certificates is described in more detail in this prospectus supplement.

The Class 2-A-1 Certificates will also have the benefit of an interest rate corridor contract.

**These securities have not been approved or disapproved by the Securities and Exchange Commission or any state securities commission nor has the Securities and Exchange Commission or any state securities commission passed upon the accuracy or adequacy of this prospectus supplement or the prospectus. Any representation to the contrary is a criminal offense.**

Countrywide Securities Corporation will offer the Class A, Class M-A, Class M, Class B-1 and Class B-2 Certificates to the public at varying prices to be determined at the time of sale. The proceeds to the depositor from the sale of these classes of certificates are expected to be approximately $490,929,996, plus accrued interest, before deducting expenses. The Class PO and Class X Certificates will not be purchased by Countrywide Securities Corporation. They will be transferred to Countrywide Home Loans, Inc. on or about January 30, 2007 as partial consideration for the sale of the mortgage loans to the depositor. See "*Method of Distribution*" in this prospectus supplement.

# Countrywide Securities Corporation

**January 29, 2007**

**Table of Contents**

**Prospectus Supplement**               **Page**

Summary...............................................................S-4
Summary of Transaction Parties.........................S-22
Risk Factors........................................................S-23
The Mortgage Pool .............................................S-31
    General...........................................................S-31
    Assignment of the Mortgage Loans...............S-35
    Underwriting Process......................................S-37
Servicing of Mortgage Loans .............................S-42
    General...........................................................S-42
    Countrywide Home Loans Servicing LP .......S-43
    Countrywide Home Loans ..............................S-44
    Mortgage Loan Production ............................S-44
    Loan Servicing...............................................S-45
    Collection Procedures ....................................S-46
    Servicing Compensation and Payment of
    Expenses .........................................................S-46
    Adjustment to Servicing Compensation
    in Connection with Certain Prepaid
    Mortgage Loans ..............................................S-47
    Advances.........................................................S-47
    Certain Modifications and Refinancings........S-48
The Issuing Entity................................................S-48
Static Pool Data ..................................................S-49
Description of the Certificates ............................S-49
    General...........................................................S-49
    Calculation of Class Certificate Balance........S-52
    Component Class ............................................S-53
    Notional Amount Certificates .......................S-53
    Book-Entry Certificates; Denominations.......S-54
    Determination of LIBOR ...............................S-55
    Payments on Mortgage Loans; Accounts.......S-55
    Investments of Amounts Held in
    Accounts .........................................................S-58
    Exchangeable Certificates..............................S-58
    Fees and Expenses .........................................S-60
    Distributions...................................................S-62
    Priority of Distributions Among
    Certificates.....................................................S-62
    Interest ...........................................................S-63
    Allocation of Net Interest Shortfalls .............S-65
    The Corridor Contract....................................S-66
    The Corridor Contract Reserve Fund............S-68
    Principal..........................................................S-69
    Allocation of Losses ......................................S-79
    Reports to Certificateholders ........................S-81

Structuring Assumptions................................S-81
Optional Purchase of Defaulted Loans ..........S-83
Optional Termination.....................................S-83
Events of Default; Remedies .........................S-84
Certain Matters Regarding the Master
Servicer, the Depositor and the Sellers ..........S-85
The Trustee........................................................S-85
    Voting Rights.................................................S-86
    Restrictions on Transfer of the Class A-
    R Certificates ................................................S-87
    Ownership of the Residual Certificates..........S-87
    Restrictions on Investment, Suitability
    Requirements .................................................S-87
Yield, Prepayment and Maturity
    Considerations ..............................................S-87
    General...........................................................S-87
    Prepayment Considerations and Risks...........S-88
    Sensitivity of the Inverse Floating Rate
    Certificates.....................................................S-90
    Sensitivity of the Notional Amount
    Certificates (other than the Class 2-A-2
    and Class X Certificates) ..............................S-91
    Sensitivity of the Class 1-X and Class 2-
    X Certificates ................................................S-92
    Sensitivity of the Class PO Certificates .....S-93
    Weighted Average Lives of the Offered
    Certificates.....................................................S-94
    Decrement Tables...........................................S-95
    Last Scheduled Distribution Date ...............S-103
    The Subordinated Certificates.....................S-103
Credit Enhancement .........................................S-104
    Subordination................................................S-104
Use of Proceeds ...............................................S-104
Legal Proceedings............................................S-104
Material Federal Income Tax Consequences.....S-105
Other Taxes ......................................................S-111
ERISA Considerations......................................S-111
Method of Distribution ....................................S-114
Legal Matters....................................................S-115
Ratings..............................................................S-115
Annex A............................................................S-A-I
Annex I .............................................................S-I-1

**Prospectus**                                   **Page**

Important Notice About Information in
   This Prospectus and Each Accompanying
   Prospectus Supplement ....................................................1
Risk Factors ...........................................................................2
The Trust Fund ......................................................................12
Use of Proceeds ....................................................................24
The Depositor ........................................................................24
Loan Program ........................................................................25
Static Pool Data .....................................................................27
Description of the Securities ...................................................28
Credit Enhancement ..............................................................45
Yield, Maturity and Prepayment Considerations ..............51
The Agreements .....................................................................54
Certain Legal Aspects of the Loans .................................73
Material Federal Income Tax Consequences ...................81
Other Tax Considerations ...............................................102
ERISA Considerations .....................................................103
Legal Investment ............................................................106
Method of Distribution ...................................................107
Legal Matters ..................................................................108
Financial Information .....................................................108
Rating .............................................................................109
Index to Defined Terms ..................................................110

## Summary

**This summary highlights selected information from this document and does not contain all of the information that you need to consider in making your investment decision. To understand all of the terms of an offering of the certificates, read carefully this entire document and the accompanying prospectus.**

**While this summary contains an overview of certain calculations, cash flow priorities and other information to aid your understanding, you should read carefully the full description of these calculations, cash flow priorities and other information in this prospectus supplement and the accompanying prospectus before making any investment decision.**

### Issuing Entity

Alternative Loan Trust 2007-1T1, a common law trust formed under the laws of the State of New York.

*See "The Issuing Entity" in this prospectus supplement.*

### Depositor

CWALT, Inc., a Delaware corporation, is a limited purpose finance subsidiary of Countrywide Financial Corporation. Its address is 4500 Park Granada, Calabasas, California 91302, and its telephone number is (818) 225-3000.

*See "The Depositor" in the prospectus.*

### Sponsor and Sellers

Countrywide Home Loans, Inc. will be the sponsor of the transaction and a seller of a portion of the mortgage loans. The remainder of the mortgage loans will be sold directly to the depositor by one or more special purpose entities that were established by Countrywide Financial Corporation or one of its subsidiaries, which acquired the mortgage loans they are selling directly from Countrywide Home Loans, Inc.

*See "Servicing of Mortgage Loans — Countrywide Home Loans" in this prospectus supplement.*

### Master Servicer

Countrywide Home Loans Servicing LP

*See "Servicing of Mortgage Loans — Countrywide Home Loans Servicing LP" in this prospectus supplement.*

### Trustee

The Bank of New York

*See "Description of the Certificates — The Trustee" in this prospectus supplement.*

### Pooling and Servicing Agreement

The pooling and servicing agreement among the sellers, the master servicer, the depositor and the trustee, under which the issuing entity will be formed.

### Cut-off Date

For any mortgage loan, the later of January 1, 2007 and the date of origination for that mortgage loan (the "cut-off date").

### Closing Date

On or about January 30, 2007.

### The Mortgage Loans

The mortgage loans will consist of two loan groups. Both loan groups will consist primarily of 30-year conventional, fixed rate mortgage loans secured by first liens on one-to-four family residential properties.

The statistical information presented in this prospectus supplement is as of the cut-off date. The depositor believes that the information set forth in this prospectus supplement regarding the mortgage loans as of the cut-off date is representative of the characteristics of the mortgage loans that will be delivered on the closing date.  However, certain mortgage loans may prepay or may be determined not to meet the eligibility requirements for inclusion in the final mortgage pool.  A limited number of mortgage loans may be substituted for the mortgage loans that are described in this prospectus supplement.  Any substitution will not result in a material difference in the final mortgage pool although the cut-off date information regarding the actual mortgage loans may vary somewhat from the information regarding the mortgage loans presented in this prospectus supplement.

As of the cut-off date, the aggregate current principal balance of the mortgage loans in both loan groups was approximately $499,962,260 and the mortgage loans in each of loan group 1 and loan group 2 had the following characteristics:

## Loan Group 1

| | |
|---|---|
| Aggregate Current Principal Balance | $335,149,239 |
| Geographic Concentrations in excess of 10%: | |
| California | 39.87% |
| Weighted Average Original LTV Ratio | 73.64% |
| Weighted Average Mortgage Rate | 6.591% |
| Range of Mortgage Rates | 5.500% to 7.625% |
| Average Current Principal Balance | $682,585 |
| Range of Current Principal Balances | $418,272 to $3,000,000 |
| Weighted Average Remaining Term to Maturity | 360 months |
| Weighted Average FICO Credit Score | 708 |

## Loan Group 2

| | |
|---|---|
| Aggregate Current Principal Balance | $164,813,021 |
| Geographic Concentrations in excess of 10%: | |
| California | 39.95% |
| Weighted Average Original LTV Ratio | 73.68% |
| Weighted Average Mortgage Rate | 6.590% |
| Range of Mortgage Rates | 5.500% to 7.625% |
| Average Current Principal Balance | $681,046 |
| Range of Current Principal Balances | $419,000 to $4,046,841 |
| Weighted Average Remaining Term to Maturity | 360 months |
| Weighted Average FICO Credit Score | 707 |

*See "The Mortgage Pool" in this prospectus supplement.*

Additional information regarding the mortgage loans is set forth in Annex A attached to this prospectus supplement.

## *Description of the Certificates*

The issuing entity will issue the following classes of certificates:

| Class | Initial Class Certificate Balance / Initial Notional Amount(1) | | Type | Initial Rating (Fitch)(2) | Initial Rating (S&P)(2) | Initial Rating (Moody's)(2) |
|---|---|---|---|---|---|---|
| *Offered Certificates* | | | | | | |
| Class 1-A-1 | $ | 187,732,000 | Senior/Fixed Pass-Through Rate/Depositable(3) | AAA | AAA | Aaa |
| Class 1-A-2 | $ | 50,000,000 | Senior/Fixed Pass-Through Rate/Super Senior | AAA | AAA | Aaa |
| Class 1-A-3 | $ | 50,000,000 | Senior/Fixed Pass-Through Rate | AAA | AAA | Aaa |
| Class 1-A-4 | $ | 6,871,000 | Senior/Fixed Pass-Through Rate | AAA | AAA | Aaa |
| Class 1-A-5 | $ | 13,264,000 | Senior/Fixed Pass-Through Rate/NAS/Depositable(3) | AAA | AAA | Aaa |
| Class 1-A-6 | $ | 3,425,000 | Senior/Fixed Pass-Through Rate/Support | AAA | AAA | Aa1 |
| Class 1-A-7 | $ | 12,404,000 | Senior/Fixed Pass-Through Rate/NAS/Super Senior/Exchangeable(3) | AAA | AAA | Aaa |
| Class 1-A-8 | $ | 860,000 | Senior/Fixed Pass-Through Rate/NAS/Support/ Exchangeable(3) | AAA | AAA | Aaa |
| Class 1-A-9 | $ | 187,732,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 1-A-10 | $ | 187,732,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 1-A-11 | $ | 15,644,333 | Senior/Fixed Pass-Through Rate/Interest Only/Notional Amount/Exchangeable(3) | AAA | AAA | Aaa |
| Class 1-A-12 | $ | 13,264,000 | Senior/Fixed Pass-Through Rate/NAS/Exchangeable(3) | AAA | AAA | Aaa |
| Class 1-A-13 | $ | 13,264,000 | Senior/Fixed Pass-Through Rate/NAS/Exchangeable(3) | AAA | AAA | Aaa |
| Class 1-A-14 | $ | 1,105,333 | Senior/Fixed Pass-Through Rate/Interest Only/Notional Amount/ Exchangeable(3) | AAA | AAA | Aaa |
| Class 1-X | $ | 304,020,858 | Senior/Notional Amount/Interest Only/Variable Pass-Through Rate | AAA | AAA | Aaa |

| Class | Initial Class Certificate Balance / Initial Notional Amount(1) | | Type | Initial Rating (Fitch)(2) | Initial Rating (S&P)(2) | Initial Rating (Moody's)(2) |
|---|---|---|---|---|---|---|
| Class 2-A-1 | $ | 65,000,000 | Senior/Floating Pass-Through Rate | AAA | AAA | Aaa |
| Class 2-A-2 | $ | 65,000,000 | Senior/Inverse Floating Pass-Through Rate/Notional Amount/Interest Only | AAA | AAA | Aaa |
| Class 2-A-3 | $ | 44,200,000 | Senior/Fixed Pass-Through Rate/Depositable(3) | AAA | AAA | Aaa |
| Class 2-A-4 | $ | 4,550,000 | Senior/Fixed Pass-Through Rate/Depositable(3) | AAA | AAA | Aaa |
| Class 2-A-5 | $ | 3,887,000 | Senior/Fixed Pass-Through Rate/Depositable(3) | AAA | AAA | Aaa |
| Class 2-A-6 | $ | 32,880,000 | Senior/Fixed Pass-Through Rate/Super Senior/Depositable(3) | AAA | AAA | Aaa |
| Class 2-A-7 | $ | 2,253,000 | Senior/Fixed Pass-Through Rate/Support/Depositable(3) | AAA | AAA | Aa1 |
| Class 2-A-8 | $ | 52,637,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-9 | $ | 35,133,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-10 | $ | 44,200,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-11 | $ | 44,200,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-12 | $ | 3,683,333 | Senior/Fixed Pass-Through Rate/Interest Only/Notional Amount/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-13 | $ | 4,550,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-14 | $ | 4,550,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-15 | | 379,166 | Senior/Fixed Pass-Through Rate/Interest Only/Notional Amount/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-16 | $ | 3,887,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-17 | $ | 3,887,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-A-18 | | 323,916 | Senior/Fixed Pass-Through Rate/Interest Only/Notional Amount/Exchangeable(3) | AAA | AAA | Aaa |

| Class | Initial Class Certificate Balance / Initial Notional Amount(1) | | Type | Initial Rating (Fitch)(2) | Initial Rating (S&P)(2) | Initial Rating (Moody's)(2) |
|---|---|---|---|---|---|---|
| Class 2-A-19 | $ | 8,437,000 | Senior/Fixed Pass-Through Rate/Exchangeable(3) | AAA | AAA | Aaa |
| Class 2-X | $ | 140,939,080 | Senior/Notional Amount/Interest-Only/Variable Pass-Through Rate | AAA | AAA | Aaa |
| Class PO | $ | 1,651,224 | Senior/Principal Only/Component | AAA | AAA | Aaa |
| Class A-R | $ | 100 | Senior/Residual | AAA | AAA | Aaa |
| Class M-A | $ | 4,250,000 | Mezzanine/Fixed Pass-Through Rate | AA+ | AA+ | Aa1 |
| Class M-1 | $ | 10,749,200 | Subordinate/Fixed Pass-Through Rate | AA+ | AA | Aa3 |
| Class M-2 | $ | 2,500,000 | Subordinate/Fixed Pass-Through Rate | AA | AA- | A1 |
| Class M-3 | $ | 2,250,000 | Subordinate/Fixed Pass-Through Rate | AA- | A+ | A2 |
| Class M-4 | $ | 1,750,000 | Subordinate/Fixed Pass-Through Rate | A+ | A | A3 |
| Class M-5 | $ | 3,250,000 | Subordinate/Fixed Pass-Through Rate | A- | BBB+ | Baa2 |
| Class B-1 | $ | 1,250,000 | Subordinate/Fixed Pass-Through Rate | BBB+ | BBB- | Baa3 |
| Class B-2 | $ | 2,000,000 | Subordinate/Fixed Pass-Through Rate | BBB | N/R | N/R |

***Non-Offered Certificates(4)***

| Class | | | Type | | | |
|---|---|---|---|---|---|---|
| Class B-3 | $ | 2,499,900 | Subordinate/Fixed Pass-Through Rate | | | |
| Class B-4 | $ | 1,999,900 | Subordinate/Fixed Pass-Through Rate | | | |
| Class B-5 | $ | 1,749,935 | Subordinate/Fixed Pass-Through Rate | | | |

————

(1)  This amount is subject to a permitted variance in the aggregate of plus or minus 5% depending on the amount of mortgage loans actually delivered on the closing date.

(2)  The offered certificates will not be offered unless they are assigned the indicated ratings by Fitch Ratings ("Fitch"), Standard & Poor's, a division of The McGraw Hill Companies, Inc. ("S&P") and Moody's Investors Service, Inc. ("Moody's").  "N/R" indicates that the agency was not asked to rate the certificates.  The Class B-3, Class B-4 and Class B-5 Certificates are not offered by this prospectus supplement, so ratings for those classes of certificates have not been provided.  A rating is

not a recommendation to buy, sell or hold securities.  These ratings may be lowered or withdrawn at any time by either of the rating agencies.  See *"Ratings"* in this prospectus supplement.

(3)   Certain proportions of the Class 1-A-1, Class 1-A-5, Class 2-A-3, Class 2-A-4, Class 2-A-5, Class 2-A-6 and Class 2-A-7 Certificates may be deposited in exchange for the Class 1-A-7, Class 1-A-8, Class 1-A-9, Class 1-A-10, Class 1-A-11, Class 1-A-12, Class 1-A-13, Class 1-A-14, Class 2-A-8, Class 2-A-9, Class 2-A-10, Class 2-A-11, Class 2-A-12, Class 2-A-13, Class 2-A-14, Class 2-A-15, Class 2-A-16, Class 2-A-17, Class 2-A-18 and Class 2-A-19 Certificates, as applicable, as described in this prospectus supplement under *"Description of the Certificates—Exchangeable Certificates."* The maximum initial class certificate balance or notional amount of the Class 1-A-7, Class 1-A-8, Class 1-A-9, Class 1-A-10, Class 1-A-11, Class 1-A-12, Class 1-A-13, Class 1-A-14, Class 2-A-8, Class 2-A-9, Class 2-A-10, Class 2-A-11, Class 2-A-12, Class 2-A-13, Class 2-A-14, Class 2-A-15, Class 2-A-16, Class 2-A-17, Class 2-A-18 and Class 2-A-19 Certificates is set forth in the table.

(4)   The Class B-3, Class B-4 and Class B-5 Certificates are not offered by this prospectus supplement. Any information contained in this prospectus supplement with respect to the Class B-3, Class B-4 and Class B-5 Certificates is provided only to permit a better understanding of the offered certificates.

The certificates also will have the following characteristics:

| Class | Pass-Through Rate | Interest Accrual Period | Interest Accrual Convention |
|---|---|---|---|
| *Offered Certificates* | | | |
| Class 1-A-1 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-2 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-3 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-4 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-5 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-6 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-7 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-8 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-9 | 5.50% | calendar month (1) | 30/360 (2) |
| Class 1-A-10 | 5.75% | calendar month (1) | 30/360 (2) |
| Class 1-A-11 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-A-12 | 5.50% | calendar month (1) | 30/360 (2) |
| Class 1-A-13 | 5.75% | calendar month (1) | 30/360 (2) |
| Class 1-A-14 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 1-X | (5) | calendar month (1) | 30/360 (2) |
| Class 2-A-1 | LIBOR + 0.47% (3) | (4) | 30/360 (2) |
| Class 2-A-2 | 5.53% − LIBOR (3) | (4) | 30/360 (2) |
| Class 2-A-3 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-4 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-5 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-6 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-7 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-8 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-9 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-10 | 5.50% | calendar month (1) | 30/360 (2) |
| Class 2-A-11 | 5.75% | calendar month (1) | 30/360 (2) |
| Class 2-A-12 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-13 | 5.50% | calendar month (1) | 30/360 (2) |
| Class 2-A-14 | 5.75% | calendar month (1) | 30/360 (2) |
| Class 2-A-15 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-16 | 5.50% | calendar month (1) | 30/360 (2) |
| Class 2-A-17 | 5.75% | calendar month (1) | 30/360 (2) |
| Class 2-A-18 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-A-19 | 6.00% | calendar month (1) | 30/360 (2) |
| Class 2-X | (6) | calendar month (1) | 30/360 (2) |
| Class PO | (7) | N/A | N/A |
| Class A-R | 6.00% | calendar month (1) | 30/360 (2) |
| Class M-A | 6.00% | calendar month (1) | 30/360 (2) |
| Class M-1 | 6.00% | calendar month (1) | 30/360 (2) |
| Class M-2 | 6.00% | calendar month (1) | 30/360 (2) |
| Class M-3 | 6.00% | calendar month (1) | 30/360 (2) |
| Class M-4 | 6.00% | calendar month (1) | 30/360 (2) |
| Class M-5 | 6.00% | calendar month (1) | 30/360 (2) |
| Class B-1 | 6.00% | calendar month (1) | 30/360 (2) |
| Class B-2 | 6.00% | calendar month (1) | 30/360 (2) |
| *Non-Offered Certificates* | | | |
| Class B-3 | 6.00% | calendar month (1) | 30/360 (2) |
| Class B-4 | 6.00% | calendar month (1) | 30/360 (2) |
| Class B-5 | 6.00% | calendar month (1) | 30/360 (2) |

_____

(1)  The interest accrual period for any distribution date will be the calendar month before the month of that distribution date.

(2) Interest will accrue at the rate described in this table on the basis of a 360 day year divided into twelve 30 day months.

(3) The pass-through rates on the LIBOR Certificates may adjust monthly based on the level of one-month LIBOR, subject to a cap.  LIBOR for the related interest accrual period is calculated as described in this prospectus supplement under *"Description of the Certificates – Determination of LIBOR."*

(4) The interest accrual period for any distribution date will be the one-month period commencing on the 25th day of the month prior to the month in which that distribution date occurs and ending on the 24th day of the month of that distribution date.

(5) The pass-through rate for the Class 1-X Certificates for the interest accrual period related to any distribution date will be equal to the weighted average of the net mortgage rates of the non-discount mortgage loans in loan group 1, weighted on the basis of the stated principal balances thereof as of the due date in the preceding calendar month (after giving effect to prepayments received in the prepayment period related to such prior due date) *less* 6.00%.  See *"Description of the Certificates — Interest"* in this prospectus supplement.

(6) The pass-through rate for the Class 2-X Certificates for the interest accrual period related to any distribution date will be equal to the weighted average of the net mortgage rates of the non-discount mortgage loans in loan group 2, weighted on the basis of the stated principal balances thereof as of the due date in the preceding calendar month (after giving effect to prepayments received in the prepayment period related to such prior due date) *less* 6.00%.  See *"Description of the Certificates — Interest"* in this prospectus supplement.

(7) The Class PO Certificates are principal only certificates and are not entitled to any distributions of interest.  See *"Description of the Certificates"* in this prospectus supplement.

### *Designations*

We sometimes use the following designations to refer to the specified classes of certificates in order to aid your understanding of the offered certificates.

| Designation | Classes of Certificates |
|---|---|
| Group 1 Senior Certificates | Class 1-A-1, Class 1-A-2, Class 1-A-3, Class 1-A-4, Class 1-A-5, Class 1-A-6, Class 1-X and Class A-R Certificates and Class PO-1 Component |
| Group 2 Senior Certificates | Class 2-A-1, Class 2-A-2, Class 2-A-3, Class 2-A-4, Class 2-A-5, Class 2-A-6, Class 2-A-7 and Class 2-X Certificates and Class PO-2 Component |
| Senior Certificate Group | Each of the Group 1 Senior Certificates and the Group 2 Senior Certificates |
| Senior Certificates | Group 1 Senior Certificates and Group 2 Senior Certificates |

| Designation | Classes of Certificates |
|---|---|
| Mezzanine Certificates | Class M-A Certificates |
| Subordinated Certificates | Class M Certificates and Class B Certificates |
| LIBOR Certificates | Class 2-A-1 and Class 2-A-2 Certificates |
| Class A Certificates | Class 1-A-1, Class 1-A-2, Class 1-A-3, Class 1-A-4, Class 1-A-5, Class 1-A-6, Class 1-A-7, Class 1-A-8, Class 1-A-9, Class 1-A-10, Class 1-A-11, Class 1-A-12, Class 1-A-13, Class 1-A-14, Class 2-A-1, Class 2-A-2, Class 2-A-3, Class 2-A-4, Class 2-A-5, Class 2-A-6, Class 2-A-7, Class 2-A-8, Class 2-A-9, Class 2-A-10, Class 2-A-11, Class 2-A-12, Class 2-A-13, Class 2-A-14, Class 2-A-15, Class 2-A-16, Class 2-A-17, Class 2-A-18, Class 2-A-19 and Class A-R Certificates |

| Designation | Classes of Certificates |
|---|---|
| Class X Certificates | Class 1-X and Class 2-X Certificates |
| Class M Certificates | Class M-1, Class M-2, Class M-3, Class M-4 and Class M-5 Certificates |
| Class B Certificates | Class B-1, Class B-2, Class B-3, Class B-4 and Class B-5 Certificates |
| Notional Amount Certificates | Class 1-A-11, Class 1-A-14, Class 2-A-2, Class 2-A-12, Class 2-A-15, Class 2-A-18, Class 1-X and Class 2-X Certificates |
| Class PO Certificates | Class PO-1 and Class PO-2 Components |
| Depositable Certificates | Class 1-A-1, Class 1-A-5, Class 2-A-3, Class 2-A-4, Class 2-A-5, Class 2-A-6 and Class 2-A-7 Certificates |
| Exchangeable Certificates | Class 1-A-7, Class 1-A-8, Class 1-A-9, Class 1-A-10, Class 1-A-11, Class 1-A-12, Class 1-A-13, Class 1-A-14, Class 2-A-8, Class 2-A-9, Class 2-A-10, Class 2-A-11, Class 2-A-12, Class 2-A-13, Class 2-A-14, Class 2-A-15, Class 2-A-16, Class 2-A-17, Class 2-A-18 and Class 2-A-19 Certificates |
| Offered Certificates | Class A, Class X, Class PO, Class M-A, Class M, Class B-1 and Class B-2 Certificates |

### Record Date

The last business day of the month preceding the month of that distribution date.

### Denominations

*Offered Certificates (other than the Class 1-A-4 and Class A-R Certificates):*

$25,000 and multiples of $1 in excess thereof.

*Class 1-A-4 Certificates:*

$1,000 and multiples of $1 in excess thereof.

*Class A-R Certificates:*

Two certificates of $99.99 and $0.01, respectively.

### Registration of Certificates

*Offered Certificates other than the Class A-R Certificates:*

Book-entry form.  Persons acquiring beneficial ownership interests in the offered certificates (other than the Class A-R Certificates) will hold their beneficial interests through The Depository Trust Company.

*Class A-R Certificates:*

Fully registered certificated form.  The Class A-R Certificates will be subject to certain restrictions on transfer described in this prospectus supplement and as more fully provided for in the pooling and servicing agreement.

*See "Description of the Certificates — Book-Entry Certificates" and "— Restrictions on Transfer of the Class A-R Certificates" in this prospectus supplement.*

### Distribution Dates

Beginning on February 26, 2007, and thereafter on the 25th day of each calendar month, or if the 25th is not a business day, the next business day.

### Last Scheduled Distribution Date

The last scheduled distribution date for each class of certificates is the distribution date in March 2037.  Since the rate of distributions in reduction of the class certificate balance or notional amount of each class of offered certificates will depend on the rate of payment (including prepayments) of the mortgage loans, the class certificate balance or notional amount of any class could be reduced to zero significantly earlier or later than the last scheduled distribution date.

*See "Yield, Prepayment and Maturity Considerations – Last Scheduled Distribution Date" in this prospectus supplement.*

### Interest Payments

The related interest accrual period, interest accrual convention and pass-through rate for each class of interest-bearing certificates is shown in the table on page S-10.

On each distribution date, to the extent funds are available for the related loan group, each interest-bearing class of certificates will be entitled to receive:

- interest accrued at the applicable pass-through rate during the related interest accrual period on the class certificate balance or notional amount, as applicable, immediately prior to that distribution date; and

- any interest that was not paid on prior distribution dates; _less_

- any net interest shortfalls allocated to that class for that distribution date.

On each distribution date, each class of exchangeable certificates will be entitled to receive a proportionate share of the amounts distributed as interest on the related depositable certificates that have been deposited.

The Class PO Certificates do not bear interest.

_See "Description of the Certificates — Interest" in this prospectus supplement._

### Allocation of Net Interest Shortfalls

For any distribution date, the interest entitlement for each class of interest-bearing certificates will be reduced by the amount of net interest shortfalls experienced by the mortgage loans in the related loan group or loan groups resulting from:

- prepayments on the mortgage loans; and

- reductions in the interest rate on the related mortgage loans due to Servicemembers Relief Act reductions or debt service reductions.

Net interest shortfalls for a loan group on any distribution date will be allocated pro rata among all interest-bearing classes of the related senior certificates, the mezzanine certificates and the classes of subordinated certificates based on their respective entitlements (or, in the case of the subordinated certificates, based on interest accrued on each subordinated class' share of the assumed balance, as described more fully under _"Description of the Certificates — Interest"_), in each case before taking into account any reduction in the interest entitlements due to shortfalls.

If on any distribution date, available funds for a loan group are not sufficient to make a full distribution of the interest entitlement on the related certificates in the order described below under _"— Priority of Distributions Among Certificates"_, interest will be distributed on each class of related certificates of equal priority, pro rata, based on their respective entitlements. Any unpaid interest amount will be carried forward and added to the amount holders of each affected class of certificates will be entitled to receive on the next distribution date.

On each distribution date, each class of exchangeable certificates will be allocated a proportionate share of the net interest shortfalls allocated to the related depositable certificates that have been deposited.

_See "Description of the Certificates — Interest" and " — Allocation of Interest Shortfalls" in this prospectus supplement._

### Corridor Contracts

Countrywide Home Loans, Inc. has purchased an interest rate corridor contract with respect to the Class 2-A-1 Certificates, which will be assigned by means of novation to the supplemental interest trustee on behalf of a separate supplemental interest trust created under the pooling and servicing agreement.

On or prior to the corridor contract termination date, amounts received by the supplemental interest trustee, on behalf of the supplemental interest trust, in respect of the corridor contract

will be available as described in this prospectus supplement to make payments of the yield supplement amount to the Class 2-A-1 Certificates if LIBOR (as calculated for the interest accrual period related to that distribution date) exceeds 5.53%, with a ceiling of 9.03%.

*See "Description of the Certificates — The Corridor Contract" and "— The Corridor Contract Reserve Fund" in this prospectus supplement.*

### Principal Payments

On each distribution date, certificateholders will only receive a distribution of principal on their certificates if there is cash available on that date for the payment of principal according to the principal distribution rules described in this prospectus supplement.

All payments and other amounts in respect of principal of the mortgage loans in a loan group will be allocated between the related Class PO Component, on the one hand, and the related senior certificates (other than the notional amount certificates and the related Class PO Component) and the mezzanine certificates and the subordinated certificates, on the other hand, in each case based on the applicable PO percentage and the applicable non-PO percentage, respectively, of those amounts. The non-PO percentage with respect to any mortgage loan in a loan group with a net mortgage rate less than the related required coupon will be equal to the net mortgage rate divided by the related required coupon and the PO percentage of that mortgage loan will be equal to 100% minus that non-PO percentage. With respect to a mortgage loan in a loan group with a net mortgage rate equal to or greater than the related required coupon, the non-PO percentage will be 100% and the PO percentage will be 0%. The required coupon for both loan group 1 and loan group 2 is 6.00%. The applicable non-PO percentage of amounts in respect of principal will be allocated to the related senior certificates (other than the notional amount certificates and the related Class PO Component) as set forth below, and any remainder of that non-PO

amount is allocated to the mezzanine certificates and the subordinated certificates:

- in the case of scheduled principal collections, the amount allocated to the related senior certificates is based on the ratio of the aggregate class certificate balance of those senior certificates to the non-PO percentage of the principal balance of the mortgage loans in the related loan group; and

- in the case of principal prepayments, the amount allocated to the related senior certificates is based on a fixed percentage (equal to 100%) until the fifth anniversary of the first distribution date, at which time the percentage will step down as described herein, if the specified conditions are met.

Notwithstanding the foregoing, no decrease in the senior prepayment percentage of any loan group will occur unless certain conditions related to the loss and delinquency performance of the mortgage loans are satisfied with respect to each loan group.

Principal will be distributed on each class of certificates entitled to receive principal payments as described below under "—*Amounts Available for Distributions on the Certificates.*"

On each distribution date, each class of exchangeable certificates will be entitled to receive a proportionate share of the amounts distributed as principal of the related classes of depositable certificates that have been deposited.

The notional amount certificates do not have class certificate balances and are not entitled to any distributions of principal but will bear interest during each interest accrual period on their respective notional amounts. *See "Description of the Certificates — Principal" in this prospectus supplement.*

### Exchanging Certificates Through Combination and Recombination

Depositable certificates may be exchanged for a proportionate interest in one or more classes of exchangeable certificates as shown on Annex I.

Depositable certificates can be exchanged for the exchangeable certificates by notifying the trustee, depositing the correct proportions of the applicable depositable certificates and paying an exchange fee. Principal of and interest on the depositable certificates so deposited is used to pay principal of and interest on the related exchangeable certificates. Annex I lists the available combinations of the depositable certificates eligible for exchange for the exchangeable certificates.

*See "Description of the Certificates— Exchangeable Certificates" in this prospectus supplement and "Description of the Securities— Exchangeable Securities" in the prospectus for a description of Exchangeable Certificates and exchange procedures and fees.*

### Amounts Available for Distributions on the Certificates

The amount available for distributions on the certificates on any distribution date will be calculated on a loan group by loan group basis and generally consists of the following with respect to the mortgage loan in a loan group (after the fees and expenses described under the next heading are subtracted):

- all scheduled installments of interest and principal due and received on the mortgage loans in that loan group in the applicable period, together with any advances with respect to them;

- all proceeds of any primary mortgage guaranty insurance policies and any other insurance policies with respect to the mortgage loans in that loan group, to the extent the proceeds are not applied to the restoration of the related mortgaged property or released to the borrower in accordance with the master servicer's normal servicing procedures;

- net proceeds from the liquidation of defaulted mortgage loans in that loan group by foreclosure or otherwise during the calendar month preceding the month of the distribution date (to the extent the amounts

do not exceed the unpaid principal balance of the mortgage loan, plus accrued interest);

- subsequent recoveries with respect to mortgage loans in that loan group;

- partial or full prepayments with respect to mortgage loans in that loan group collected during the applicable period, together with interest paid in connection with the prepayment, other than certain excess amounts payable to the master servicer, and the compensating interest; and

- any substitution adjustment amounts or purchase price in respect of a deleted mortgage loan or a mortgage loan in that loan group repurchased by a seller or originator or purchased by the master servicer during the applicable period.

### Fees and Expenses

The amounts available for distributions on the certificates on any distribution date generally will not include the following amounts:

- the master servicing fee and additional servicing compensation (as described in this prospectus supplement under *"Servicing of Mortgage Loans— Servicing Compensation and Payment of Expenses" and "Description of the Certificates —Priority of Distributions Among Certificates"*) due to the master servicer;

- the trustee fee due to the trustee;

- lender-paid mortgage insurance premiums, if any;

- the amounts in reimbursement for advances previously made and other amounts as to which the master servicer and the trustee are entitled to be reimbursed from the Certificate Account pursuant to the pooling and servicing agreement; and

- all other amounts for which the depositor, a seller or the master servicer is entitled to be reimbursed.

Any amounts paid from amounts collected with respect to the mortgage loans will reduce the amount that could have been distributed to the certificateholders.

### *Servicing Compensation*

*Master Servicing Fee:*

The master servicer will be paid a monthly fee (referred to as the master servicing fee) with respect to each mortgage loan.  The master servicing fee for the mortgage loans in each loan group will equal one-twelfth of the stated principal balance of each mortgage loan multiplied by the master servicing fee rate.  The master servicing fee rate for each mortgage loan will be 0.200% per annum.  The amount of the master servicing fee is subject to adjustment with respect to certain prepaid mortgage loans, as described under *"Servicing of Mortgage Loans—Adjustment to Servicing Compensation in Connection with Certain Prepaid Mortgage Loans"* in this prospectus supplement.

*Additional Servicing Compensation:*

The master servicer is also entitled to receive, as additional servicing compensation, all late payment fees, assumption fees and other similar charges including prepayment charges and all reinvestment income earned on amounts on deposit in certain of the issuing entity's accounts and excess proceeds with respect to liquidated mortgage loans as described under *"Description of the Certificates —Priority of Distributions Among Certificates"*.

*Source and Priority of Distributions:*

The master servicing fee and the additional servicing compensation described above will be paid to the master servicer from collections on the mortgage loans prior to any distributions on the certificates.

*See "Servicing of Mortgage Loans — Servicing Compensation and Payment of Expenses" and "Description of the Certificates —Priority of Distributions Among Certificates" in this prospectus supplement.*

### *Priority of Distributions*

Priority of Distributions Among Certificates

In general, on any distribution date, available funds for each loan group will be distributed in the following order:

- to interest on each interest-bearing class of senior certificates related to that loan group, pro rata, based on their respective interest entitlements;

- to principal of the classes of senior certificates and components relating to that loan group then entitled to receive distributions of principal, in the order and subject to the priorities set forth below;

- to any deferred amounts payable on the Class PO Component related to that loan group, but only from amounts that would otherwise be distributed on that distribution date as principal of the mezzanine certificates and the subordinated certificates;

- to interest on and then principal of the Class M-A Certificates;

- to interest on and then principal of each class of subordinated certificates, in the order of their distribution priorities, beginning with the Class M-1 Certificates, in each case subject to the limitations set forth below; and

- any remaining available amounts to the Class A-R Certificates.

Principal

On each distribution date, the non-PO formula principal amount for each loan group will be distributed first as principal of the related classes of senior certificates (other than the notional amount certificates and the related Class PO Component) as specified below, and second as principal of the mezzanine certificates and the subordinated certificates, in an amount up to the subordinated principal distribution amount for each loan group.

*Senior Certificates (other than the notional amount certificates and the Class PO Certificates):*

On each distribution date, the non-PO formula principal amount related to each loan group, in each case up to the amount of the senior principal distribution amount for that loan group, will be distributed as principal of the following classes of related senior certificates:

**Distributions with Respect to Loan Group 1**

- Sequentially:

    (1)  to the Class A-R Certificates, until its class certificate balance is reduced to zero;

    (2)  concurrently, (A) 60.3073641468%, to the Class 1-A-1 Certificates, until its class certificate balance is reduced to zero, and (B) 39.6926358532% in the following order:

        (i)   to the Class 1-A-5 Certificates, the priority amount (which is zero for the first five years and will increase as described under "*Description of the Certificates—Principal*" in this prospectus supplement), until its class certificate balance is reduced to zero;

        (ii)  concurrently, to the Class 1-A-2, Class 1-A-3 and Class 1-A-6 Certificates, pro rata, until their respective class certificate balances are reduced to zero;

        (iii) to the Class 1-A-4 Certificates, until its class certificate balance is reduced to zero; and

        (iv) to the Class 1-A-5 Certificates, without regard to the priority amount, until its class certificate balance is reduced to zero.

**Distributions with Respect to Loan Group 2**

- Sequentially:

    (1)  in an amount up to $1,000 on each distribution date, to the Class 2-A-1 Certificates, until its class certificate balance is reduced to zero;

    (2)  in an amount up to $130,000 on each distribution date, concurrently, to the Class 2-A-6 and Class 2-A-7 Certificates, pro rata, until their respective class certificate balances are reduced to zero;

    (3)  in an amount up to $390,000 on each distribution date, sequentially, to the Class 2-A-3, Class 2-A-4 and Class 2-A-5 Certificates, in that order, until their respective class certificate balances are reduced to zero;

    (4)  sequentially, to the Class 2-A-1, Class 2-A-3, Class 2-A-4 and Class 2-A-5 Certificates, in that order, until their respective class certificate balances are reduced to zero; and

    (5)  concurrently, to the Class 2-A-6 and Class 2-A-7 Certificates, pro rata, until their respective class certificate balances are reduced to zero.

*Class PO Certificates:*

On each distribution date, principal will be distributed to each Class PO Component in an amount equal to the lesser of (x) the PO formula principal amount for the related loan group for that distribution date and (y) the product of:

- available funds for the related loan group remaining after distribution of interest on the senior certificates in the same certificate group; and

- a fraction, the numerator of which is the related PO formula principal amount and the denominator of which is the sum of that PO formula principal amount and the related senior principal distribution amount.

*Mezzanine and Subordinated Certificates; Applicable Credit Support Percentage Trigger:*

On each distribution date and with respect to each loan group, to the extent of available funds available therefor, the non-PO formula principal amount for each loan group, up to the subordinated principal distribution amount for each loan group, will be distributed first as principal of the mezzanine certificates and then as principal of the subordinated certificates in order of their distribution priorities, beginning

with the Class M-1 Certificates, until their respective class certificate balances are reduced to zero. The mezzanine certificates and each class of subordinated certificates will be entitled to receive its pro rata share of the subordinated principal distribution amount from both loan groups (based on its respective class certificate balance); provided, that if the applicable credit support percentage of the mezzanine certificates or a class of subordinated certificates (other than the mezzanine certificates or the class of subordinated certificates then outstanding with the highest distribution priority) is less than the original applicable credit support percentage for that class (referred to as a "restricted class"), the restricted class will not receive distributions of partial principal prepayments and prepayments in full from any loan group. Instead, the portion of the partial principal prepayments and prepayments in full otherwise distributable to each restricted class will be allocated to the mezzanine certificates and those classes of subordinated certificates that are not a restricted class, pro rata, based upon their respective class certificate balances and distributed in the sequential order described above.

### *Allocation of Realized Losses*

On each distribution date, the amount of any realized losses on the mortgage loans in a loan group will be allocated as follows:

- the applicable PO percentage of any realized losses on a discount mortgage loan in a loan group will be allocated to the related Class PO Component; provided, however, that on or before the senior credit support depletion date, (i) those realized losses will be treated as Class PO Deferred Amounts and will be paid on the related Class PO Component (to the extent funds are available from amounts otherwise allocable to the subordinated principal distribution amount) before distributions of principal on the mezzanine certificates and the subordinated certificates and (ii) the class certificate balance of the class of mezzanine certificates or the subordinated certificates then outstanding with the lowest distribution priority will be

reduced by the amount of any payments of Class PO Deferred Amounts; and

- the applicable non-PO percentage of any realized losses on the mortgage loans in a loan group will be allocated in the following order of priority:

  - first, to the subordinated certificates in the reverse order of their priority of distribution, beginning with the class of subordinated certificates outstanding, with the lowest distribution priority until their respective class certificate balances are reduced to zero;

  - second, to the mezzanine certificates, until its class certificate balance is reduced to zero; and

  - third, concurrently to the senior certificates (other than the notional amount certificates and the related Class PO Component) related to that loan group, pro rata, based upon their respective class certificate balances, except that (i) the non-PO percentage of any realized losses on the mortgage loans in loan group 1 that would otherwise be allocated to the Class 1-A-2 Certificates will instead be allocated to the Class 1-A-6 Certificates, until its class certificate balance is reduced to zero and (ii) the non-PO percentage of any realized losses on the mortgage loans in loan group 2 that would otherwise be allocated to the Class 2-A-6 Certificates will instead be allocated to the Class 2-A-7 Certificates, until its class certificate balance is reduced to zero.

On each distribution date, the class certificate balance of each class of then outstanding exchangeable certificates also will be reduced by a proportionate share of the amount of the realized losses allocated on that distribution date to the related classes of depositable certificates that have been deposited.

### *Credit Enhancement*

The issuance of senior certificates, mezzanine certificates and subordinated certificates by the issuing entity is designed to increase the likelihood that senior certificateholders will receive regular distributions of interest and principal.

#### *Subordination*

The senior certificates will have a distribution priority over the mezzanine certificates and the classes of subordinated certificates. The mezzanine certificates will also have a distribution priority over the classes of subordinated certificates. Among the subordinated certificates, the Class M Certificates will have a distribution priority over the Class B Certificates. Within the Class M and Class B Certificates, each class of certificates will have a distribution priority over those classes of certificates, if any, with a higher numerical designation.

Subordination is designed to provide the holders of certificates with a higher distribution priority with protection against losses realized when the remaining unpaid principal balance of a mortgage loan exceeds the proceeds recovered upon the liquidation of that mortgage loan. In general, this loss protection is accomplished by allocating the realized losses on the mortgage loans in a loan group first, to the subordinated certificates, beginning with the class of subordinated certificates then outstanding with the lowest distribution priority, second, to the mezzanine certificates and third, to the related senior certificates (other than the notional amount certificates) in accordance with the priorities set forth above under "*— Allocation of Realized Losses.*" Further, the class certificate balance of the class of subordinated certificates with the lowest distribution priority, or the mezzanine certificate if no class of subordinated certificates is outstanding, will be reduced by the amount of distributions on the Class PO Certificates in reimbursement for the Class PO deferred amounts as described above under "*— Allocation of Losses.*"

Additionally, as described above under "*— Principal Payments,*" the senior prepayment percentage related to a loan group (which determines the allocation of unscheduled payments of principal among the related senior certificates, the mezzanine certificates and the subordinated certificates) will exceed the related senior percentage (which represents such senior certificates' pro rata percentage interest in the mortgage loans in that loan group) for the first 9 years after the closing date. This disproportionate allocation of unscheduled payments of principal will have the effect of accelerating the amortization of the senior certificates which receive these unscheduled payments of principal while, in the absence of realized losses, increasing the interest in the principal balance of the mortgage pool evidenced by the mezzanine certificates and the subordinated certificates. Increasing the respective interest of those certificates relative to that of the senior certificates is intended to preserve the availability of the subordination provided by the mezzanine and subordinated certificates.

*See "Description of the Certificates — Allocation of Losses" in this prospectus supplement and "Credit Enhancement — Subordination" in this prospectus supplement and in the prospectus.*

#### *Cross-Collateralization*

If on any distribution date the aggregate class certificate balance of the senior certificates of a senior certificate group, other than the related Class PO Component and related notional amount certificates, after giving effect to distributions to be made on that distribution date, is greater than the non-PO pool balance for that loan group (any such group, an "undercollateralized group"), all amounts otherwise distributable as principal to the mezzanine certificates and the subordinated certificates (or, following the senior credit support depletion date, the amounts described in the following sentence) will be distributed as principal to the senior certificates of that undercollateralized group, other than the related Class PO Component and related notional

amount certificates, until the aggregate class certificate balance of the senior certificates, other than the related Class PO Component and related notional amount certificates, of the undercollateralized group equals the non-PO pool balance for that loan group (such distribution, an *"undercollateralization distribution"*). If the senior certificates, other than the related Class PO Component and related notional amount certificates, of a senior certificate group constitute an undercollateralized group on any distribution date following the senior credit support depletion date, undercollateralization distributions will be made from the excess of the available funds for the other loan group remaining after all required amounts for that distribution date have been distributed to the senior certificates, other than the related Class PO Component and related notional amount certificates, of that senior certificate group.

Accordingly, the mezzanine certificates and subordinated certificates will not receive distributions of principal until the undercollateralized group is no longer undercollateralized.

All distributions described in this *"Cross-Collateralization"* section will be made in accordance with the priorities set forth below under *"Distributions on the Certificates — Principal — Senior Principal Distribution Amount" and "— Subordinated Principal Distribution Amount."*

### Advances

The master servicer will make cash advances with respect to delinquent payments of principal and interest on the mortgage loans to the extent the master servicer reasonably believes that the cash advances can be repaid from future payments on the mortgage loans. These cash advances are only intended to maintain a regular flow of scheduled interest and principal payments on the certificates and are not intended to guarantee or insure against losses.

*See "Servicing of Mortgage Loans — Advances" in this prospectus supplement.*

### Repurchase, Substitution and Purchase of Mortgage Loans

The sellers may be required to repurchase, or substitute with a replacement mortgage loan, any mortgage loan as to which there exists deficient documentation or as to which there has been an uncured breach of any representation or warranty relating to the characteristics of the mortgage loans that materially and adversely affects the interests of the certificateholders in that mortgage loan.

Additionally, the master servicer may purchase from the issuing entity any mortgage loan that is delinquent in payment by 151 days or more.

Countrywide Home Loans, Inc. also will be obligated to purchase any mortgage loan with respect to which it has modified the mortgage rate at the request of the borrower.

*See "Servicing of Mortgage Loans — Certain Modifications and Refinancings" in this prospectus supplement.*

The purchase price for any mortgage loans repurchased or purchased by a seller or the master servicer will be generally equal to the stated principal balance of the mortgage loan plus interest accrued at the applicable mortgage rate (and in the case of purchases by the master servicer, less the master servicing fee rate).

*See "The Mortgage Pool — General", "— Assignment of the Mortgage Loans" and "Description of the Certificates — Optional Purchase of Defaulted Loans" in this prospectus supplement and "Loan Program — Representations by Sellers; Repurchases" in the prospectus.*

### Optional Termination

The master servicer may purchase all of the remaining assets of the issuing entity and retire all the outstanding classes of certificates on or after the distribution date on which the aggregate stated principal balance of the mortgage loans and any related real estate owned by the issuing entity is less than or equal to 10% of the

aggregate stated principal balance of the mortgage loans as of the cut-off date.

See "Description of the Certificates — Optional Termination" in this prospectus supplement.

### Tax Status

For federal income tax purposes, the issuing entity (exclusive of the pre-funding account and the capitalized interest account) will be composed of multiple entities consisting of a trust beneath which are one or more REMICs: one or more underlying REMICs (if any) and the master REMIC.  The assets of the lowest underlying REMIC in this tiered structure (or the master REMIC if there are no underlying REMICs) will consist of the mortgage loans and any other assets designated in the pooling and servicing agreement. The master REMIC will issue several classes of uncertificated REMIC regular interests, all of which will be held in trust, and a single class of REMIC residual interest.  The senior and subordinate certificates (including the depositable certificates and the exchangeable certificates) will represent beneficial ownership of one or more of the uncertificated Master REMIC regular interests held in trust.   The Class 2-A-1 Certificates will also represent the right to receive yield supplement amounts from the supplemental interest trust. The Class A-R Certificates will represent ownership of both the residual interest in the master REMIC and the residual interests in any underlying REMICs.

The supplemental interest trust, the corridor contract and corridor contract reserve fund will not constitute any part of any REMIC described in the pooling and servicing agreement.

See "Material Federal Income Tax Consequences" in this prospectus supplement and in the prospectus.

### ERISA Considerations

The offered certificates (other than the Class 1-X, Class 2-X, Class PO and Class A-R Certificates) may be purchased by a pension or other benefit plan subject to the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986, as amended, or by an entity investing the assets of such a benefit plan, so long as certain conditions are met.  The Class 2-A-1 Certificates may not be acquired or held by a person investing assets of any such plans or arrangements before the termination of the corridor contract, unless such acquisition or holding is eligible for the exemptive relief available under one of the class exemptions or the statutory exemption described in this prospectus supplement under "ERISA Considerations  — ERISA Considerations With Respect to the Corridor Contract."

See "ERISA Considerations" in this prospectus supplement and in the prospectus.

### Legal Investment

The Class A, Class PO, Class X, Class M-A, Class M-1, Class M-2 and Class M-3 Certificates will be "mortgage related securities" for purposes of the Secondary Mortgage Market Enhancement Act of 1984 as long as they are rated in one of the two highest rating categories by at least one nationally recognized statistical rating organization.  None of the other classes of offered certificates will be "mortgage related securities" for purposes of the Secondary Mortgage Market Enhancement Act of 1984.

See "Legal Investment" in the prospectus.



Summary of Transaction Parties

**Sponsor and Seller**
Countrywide Home Loans, Inc.

**Other Sellers**
Special Purpose Entities

**Depositor**
CWALT, Inc.

**Issuing Entity**
Alternative Loan Trust
2007-1T1

**Trustee**
The Bank of New York

**Master Servicer and Servicer**
Countrywide Home Loans Servicing LP

**Corridor Contract Counterparty**
Bank of America, N.A.

**Supplemental Interest Trust**
The Bank of New York

**Certificateholders**

Mortgage Loans

Mortgage Loans

Mortgage Loans

Mortgage Loans

Mortgage Loan Servicing

Corridor Contract Payments

Yield Supplement Amount

Distributions

S-22

**Risk Factors**

**The following information, which you should carefully consider, identifies significant sources of risk associated with an investment in the certificates. You should also carefully consider the information under "Risk Factors" beginning on page 2 in the prospectus.**

**Your Yield Will Be Affected By Prepayments**

Borrowers may, at their option, prepay their mortgage loans in whole or in part at any time. We cannot predict the rate at which borrowers will repay their mortgage loans.  The prepayment experience of the mortgage loans may be affected by many factors, including:

- general economic conditions,

- the level of prevailing interest rates,

- the availability of alternative financing,

- the applicability of prepayment charges, and

- homeowner mobility.

A prepayment of a mortgage loan, however, will result in a prepayment on the related certificates.

The rate and timing of prepayment of the mortgage loans will affect the yields to maturity and weighted average lives of the certificates.  You will bear any reinvestment risks from faster or slower prepayments of the applicable mortgage loans.

- If you purchase principal only certificates or you purchase your certificates at a discount and principal is repaid slower than you anticipate, then your yield may be lower than you anticipate.

- If you purchase notional amount certificates or certificates at a premium and principal is repaid faster than you anticipate, then your yield may be lower than you anticipate.

- If you purchase notional amount certificates and principal is repaid faster than you anticipated, you may lose your initial investment.

- Approximately 4.06% and 5.27% of the mortgage loans in loan group 1 and loan group 2, respectively, by aggregate stated principal balance of the mortgage loans in that loan group as of the cut-off date, require the mortgagor to pay a charge if the mortgagor prepays the mortgage loan during periods ranging from six months to five years after the mortgage loan was originated.  A

prepayment charge may discourage a mortgagor from prepaying the mortgage loan during the applicable period.  Prepayment charges will not be available for distribution to the certificateholders.

See *"Description of the Certificates  — Interest"* and *"Yield, Prepayment and Maturity Considerations"* in this prospectus supplement for a description of factors that may influence the rate and timing of prepayments on the mortgage loans.

**Your Yield May Be Affected By The Interest-Only Feature Of Some Of The Mortgage Loans**

Approximately 46.84% and 46.90% of the mortgage loans in loan group 1 and loan group 2, respectively, by aggregate stated principal balance of the mortgage loans in that loan group as of the cut-off date, require monthly payments of only accrued interest for the first ten years after origination. The borrower is not required to pay any principal on the borrower's loan during this interest-only period but thereafter is required to make monthly payments sufficient to amortize the loan over its remaining term.  These loans are sometimes referred to as interest-only loans.  Interest-only loans have only recently been originated in significant volumes.  As a result, the long-term performance characteristics of interest-only loans are largely unknown.

Because interest-only loans initially require only the payment of interest, a borrower may be able to borrow a larger amount than would have been the case for a fully amortizing mortgage loan.

Interest-only loans may have risks and payment characteristics that are not present with fully amortizing mortgage loans, including the following:

- no principal distributions will be made to certificateholders from interest-only loans during their interest-only period except in the case of a prepayment, which may extend the weighted average lives of the certificates,

- during the interest-only period, interest-only loans may be less likely to be prepaid since the perceived benefits of refinancing may be less than with a fully amortizing mortgage loan,

- as the end of the interest-only period approaches, an interest-only loan may be more likely to be refinanced in order to avoid the increase in the monthly payment required to amortize the loan over its remaining term,

- interest-only loans may be more likely to default than fully amortizing loans at the end of the interest-only period due to the increased monthly payment required to amortize the loan over its remaining term, and

- if an interest-only loan defaults, the severity of loss may be greater due to the larger unpaid principal balance.

**The Yields On The LIBOR Certificates Will Be Affected By The Level Of LIBOR**

The pass-through rate on the Class 2-A-1 Certificates will be based on LIBOR plus a margin, subject to a cap.  The pass-through rate on the Class 2-A-2 Certificates will be based on a fixed rate minus LIBOR. The yields on the LIBOR Certificates will be affected by the level of LIBOR.  If the level of LIBOR is different than the level you expect, then the yield on your LIBOR Certificates may be lower than you expect.  The pass-through rate on the Class 2-A-2 Certificates may be as little as 0%.

See *"Description of the Certificates — Interest"* and *"Yield, Prepayment and Maturity Considerations"* in this prospectus supplement for more information.

**Your Yield Will Be Affected By How Distributions Are Allocated To The Certificates**

The timing of principal payments on the certificates will be affected by a number of factors, including:

- the extent of prepayments on the mortgage loans in the related loan group,

- how payments of principal are allocated among the classes of certificates as specified on page S-69,

- whether the master servicer exercises its right, in its sole discretion, to terminate the issuing entity,

- the rate and timing of payment defaults and losses on the mortgage loans in the related loan group, and

- repurchases of mortgage loans in the related loan group, for material breaches of representations and warranties.

Because distributions on the certificates are dependent upon the payments on the applicable mortgage loans, we cannot guarantee the amount of any particular payment or the amount of time that will elapse before the issuing entity is terminated.

See *"Description of the Certificates — Principal,"* and *" — Optional Termination"* in this prospectus supplement for a description of the manner in which principal will be paid to the certificates. See *"The Mortgage Pool — Assignment of the Mortgage Loans"* in this prospectus

supplement for more information regarding the repurchase or substitution of mortgage loans.

The certificates are not insured by any financial guaranty insurance policy. The subordination features are intended to enhance the likelihood that senior certificateholders will receive regular payments of interest and principal.

**Mezzanine Certificates and Subordinated Certificates Have a Greater Risk of Loss Because Of Subordination; Credit Enhancement May Not Be Sufficient To Protect Senior Certificates From Losses**

**Subordination.**  Credit enhancement will be provided for the certificates, first, by the right of the holders of more senior certificates to receive payments of principal before the classes subordinated to them and, second, by the allocation of realized losses to mezzanine certificates and subordinated classes in the reverse order of their priority of distribution. This form of credit enhancement uses collections on the mortgage loans otherwise payable to holders of mezzanine certificates and subordinated classes to pay amounts due on more senior classes. Collections otherwise payable to the mezzanine certificates and the subordinated classes comprise the sole source of funds from which this type of credit enhancement is provided. Realized losses are allocated first, to the subordinated certificates in the reverse order of their priority of distribution, beginning with the subordinated certificates then outstanding with the lowest distribution priority, then to the mezzanine certificates, in each case until the class certificate balance of the mezzanine certificates and each class of subordinated certificates has been reduced to zero. Accordingly, if the aggregate class certificate balance of the mezzanine certificates and each subordinated class were to be reduced to zero, delinquencies and defaults on the mortgage loans would reduce the amount of funds available for monthly distributions to holders of the related senior certificates. Realized losses allocable to the senior certificates in a senior certificate group (other than the notional amount certificates and the related Class PO Component) will be allocated on a pro rata basis.  However, (i) realized losses on the mortgage loans in loan group 1 that would otherwise be allocated to the Class 1-A-2 Certificates will instead be allocated to the 1-A-6 Certificates, until its class certificate balance is reduced to zero and (ii) realized losses on the mortgage loans in loan group 2 that would otherwise be allocated to the Class 2-A-6 Certificates will instead be allocated to the Class 2-A-7 Certificates, until its class certificate balance is reduced to zero .  Investors in the classes of super senior certificates should note that the initial class certificate balance of the related class of senior support certificates is substantially lower than the initial class certificate balance of the applicable class of super senior certificates, and consequently, a class of senior support certificates will be

able to absorb only a limited amount of realized losses that are otherwise allocable to a class of super senior certificates.

The mezzanine certificates have a higher distribution priority than the subordinated certificates. Among the subordinated certificates, the Class M Certificates have a higher distribution priority than the Class B Certificates. The distribution priority within the Class M and Class B Certificates is in numerical order.

See *"Description of the Certificates — Allocation of Losses" in this prospectus supplement and "Credit Enhancement — Subordination"* in this prospectus supplement and in the prospectus.

**Certain Interest Shortfalls Will Be Allocated To The Certificates Which Could Result In Shortfalls On The Payments Of The Certificates**

When a borrower makes a full or partial prepayment on a mortgage loan, the amount of interest that the borrower is required to pay may be less than the amount of interest holders of certificates would otherwise be entitled to receive with respect to the mortgage loan. The master servicer is required to reduce its master servicing fee to offset this shortfall, but the reduction for any distribution date is limited to an amount equal to the product of one-twelfth of 0.125% and the aggregate stated principal balance of the mortgage loans in that loan group as of the first day of the prior month.  If the aggregate amount of interest shortfalls resulting from prepayments on the mortgage loans exceeds the amount of the reduction in the master servicing fee, the interest entitlement for each class of certificates will be reduced proportionately by the amount of this excess.

In addition, your certificates may be subject to certain shortfalls in interest collections arising from the application of the Servicemembers Civil Relief Act and similar state laws (referred to as the Relief Act). The Relief Act limits the interest charged on a mortgage loan for certain borrowers in excess of 6% per annum during the period of the borrower's active duty. These shortfalls are not required to be paid by the borrower at any future time, will not be offset by a reduction in the master servicing fee, and will reduce accrued interest on each related class of certificates on a pro rata basis.  In addition, pursuant to the laws of various states, under certain circumstances, payments on mortgage loans by residents in such states who are called into active duty with the National Guard or the reserves will be deferred.  These state laws may also limit the ability of the servicer to foreclose on the related mortgaged property. This could result in delays or reductions in payment and increased losses on the mortgage loans which would be borne by the certificateholders.

See *"Risk Factors – Impact of World Events"* in the prospectus.

**Certain Mortgage Loans Do Not Yet Have A Payment Due**

Approximately 22.24% and 25.88% of the mortgage loans in loan group 1 and loan group 2, respectively, by aggregate stated principal balance of the mortgage loans in that loan group as of the cut-off date have an initial payment date after the due date in the month of the first distribution date. Countrywide Home Loans will deposit an amount equal to one month's interest on these loans into the distribution account prior to the first distribution date.  As a result, there will be no principal paid with respect to these loans on the first distribution date.  In addition, if Countrywide Home Loans were unable or unwilling to deposit such amount, there would not be enough interest collections to distribute the required amount of interest on the certificates.

**Certificates May Not Be Appropriate For Some Investors**

The offered certificates may not be an appropriate investment for investors who do not have sufficient resources or expertise to evaluate the particular characteristics of each applicable class of offered certificates. This may be the case because, among other things:

- the yield to maturity of offered certificates purchased at a price other than par will be sensitive to the uncertain rate and timing of principal prepayments on the mortgage loans in the related loan group;

- the rate of principal distributions on and the weighted average lives of the offered certificates will be sensitive to the uncertain rate and timing of principal prepayments on the mortgage loans in the related loan. Accordingly, the offered certificates may be an inappropriate investment if you require a distribution of a particular amount of principal on a specific date or an otherwise predictable stream of distributions;

- you may not be able to reinvest distributions on an offered certificate (which, in general, are expected to be greater during periods of relatively low interest rates) at a rate at least as high as the pass-through rate applicable to your certificate; or

- a secondary market for the offered certificates may not develop or provide certificateholders with liquidity of investment.

**The Class 2-A-1 Certificates Involve Counterparty Risk**

Although the Class 2-A-1 Certificates may receive the yield supplement amount, collections on the mortgage loans cannot support these payments.  Payments of this amount is solely dependent upon the performance of the corridor

contract counterparty under the corridor contract.  The likelihood of receipt of this amount is not covered by the ratings of the Class 2-A-1 Certificates.  Thus, the payment of this amount involves counterparty risk.  Investors in the Class 2-A-1 Certificates should note that the long-term ratings of the counterparty are lower than "AAA."

See *"Description of the Certificates — The Corridor Contract"* in this prospectus supplement.

**Geographic Concentration Increases Risk That Certificate Yields Could Be Impaired**

The tables under *"The Mortgage Pool — Geographic Distribution of Mortgaged Properties"* in Annex A to this prospectus supplement set forth the geographic concentration of the mortgaged properties as of the initial cut-off date, including the percentage by principal balance of the mortgage loans in each loan group secured by mortgaged property located in California.  Homes in California are more susceptible than homes located in other parts of the country to some types of uninsurable hazards, such as earthquakes, floods, mudslides and other natural disasters.  In addition,

- economic conditions in states with significant concentrations (which may or may not affect real property values) may affect the ability of borrowers to repay their loans on time;

- declines in the residential real estate markets in states with significant concentrations may reduce the values of properties located in these states, which would result in an increase in the loan-to-value ratios; and

- any increase in the market value of properties located in states with significant concentrations would reduce the loan-to-value ratios and could, therefore, make alternative sources of financing available to the borrowers at lower interest rates, which could result in an increased rate of prepayment of the mortgage loans.

**Inability To Replace Master Servicer Could Affect Collections And Recoveries On The Mortgage Loans**

The structure of the master servicing fee might affect the ability to find a replacement master servicer.  Although the trustee is required to replace the master servicer if the master servicer is terminated or resigns, if the trustee is unwilling (including for example because the master servicing fee is insufficient) or unable (including for example, because the trustee does not have the systems to service mortgage loans), it may be necessary to appoint a replacement master servicer.  Because the master servicing fee is structured as a percentage of the stated principal balance of each mortgage loan, it may be difficult to replace the master servicer at a time when the balance of the mortgage loans has been significantly reduced because the fee may be insufficient to

cover the costs associated with servicing the mortgage loans and related REO Properties remaining in the pool.  The performance of the mortgage loans may be negatively impacted, beyond the expected transition period during a servicing transfer, if a replacement master servicer is not retained within a reasonable amount of time.

**Additional Considerations Related to the Exchangeable Certificates**

The characteristics of the Class 1-A-7, Class 1-A-8, Class 1-A-9, Class 1-A-10, Class 1-A-11, Class 1-A-12, Class 1-A-13, Class 1-A-14, Class 2-A-8, Class 2-A-9, Class 2-A-10, Class 2-A-11, Class 2-A-12, Class 2-A-13, Class 2-A-14, Class 2-A-15, Class 2-A-16, Class 2-A-17, Class 2-A-18 and Class 2-A-19 Certificates, which are referred to as exchangeable certificates, will reflect the characteristics of the Class 1-A-1, Class 1-A-5, Class 2-A-3, Class 2-A-4, Class 2-A-5, Class 2-A-6 and Class 2-A-7 Certificates, which are referred to as depositable certificates. Investors should also consider a number of factors that will limit a certificateholder's ability to exchange depositable certificates for exchangeable certificates and vice versa:

- at the time of the proposed exchange, a certificateholder must own certificates of the related classes in the proportions necessary to make the desired exchange;

- a certificateholder that does not own the certificates may be unable to obtain the necessary depositable certificates or exchangeable certificates;

- the certificateholder of needed certificates may refuse to sell them at a reasonable price (or any price) or may be unable to sell them;

- certain certificates may have been purchased or placed into other financial structures and thus be unavailable;

- principal distributions will decrease the amounts available for exchange over time;

- only the combinations listed on Annex I to this prospectus supplement are permitted; and

- you must own the required classes of depositable certificates to participate in an exchange and receive the corresponding class or classes of exchangeable certificates.

**Some of the statements contained in or incorporated by reference in this prospectus supplement and the accompanying prospectus consist of forward-looking statements relating to future economic performance or projections and other financial items. These statements can be identified by the use of forward-looking words such as "may," "will," "should," "expects," "believes," "anticipates," "estimates," or other comparable words. Forward-looking statements are subject to**

**a variety of risks and uncertainties that could cause actual results to differ from the projected results. Those risks and uncertainties include, among others, general economic and business conditions, regulatory initiatives and compliance with governmental regulations,  customer preferences and various other matters, many of which are beyond our control. Because we cannot predict the future, what actually happens may be very different from what we predict in our forward-looking statements.**

## The Mortgage Pool

**General**

The depositor, CWALT, Inc., will purchase the mortgage loans in the mortgage pool from Countrywide Home Loans, Inc. ("Countrywide Home Loans") and one or more other sellers affiliated with Countrywide Financial Corporation (each of which is referred to as a seller and together they are referred to as the "sellers") pursuant to a pooling and servicing agreement (the "pooling and servicing agreement") dated as of January 1, 2007 among the sellers, Countrywide Home Loans Servicing LP, as master servicer, the depositor and The Bank of New York, as trustee, and will cause the mortgage loans to be assigned to the trustee for the benefit of the holders of the certificates.  In this prospectus supplement, mortgage loans in loan group 1 are referred to as the "group 1 mortgage loans" and mortgage loans in loan group 2 are referred to as the "group 2 mortgage loans," and together they are referred to as the "mortgage loans".  Each seller, other than Countrywide Home Loans, will be a special purpose entity established by Countrywide Financial Corporation or one or more of its subsidiaries, which will sell mortgage loans previously acquired from Countrywide Home Loans.

Under the pooling and servicing agreement, Countrywide Home Loans will make certain representations, warranties and covenants to the depositor relating to, among other things, the due execution and enforceability of the pooling and servicing agreement and certain characteristics of the mortgage loans.  In addition, each of the sellers will represent and warrant that, prior to the sale of the related mortgage loans to the depositor, the applicable seller had good title to the mortgage loans sold by it, was the sole owner of those mortgage loans free and clear of any pledge, lien, encumbrance or other security interest and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign those mortgage loans pursuant to the pooling and servicing agreement.  Subject to the limitations described in the next sentence and under *"— Assignment of the Mortgage Loans,"* Countrywide Home Loans (or the related seller, in the case of the representation regarding good title) will be obligated to repurchase or substitute a similar mortgage loan for any mortgage loan as to which there exists deficient documentation or as to which there has been an uncured breach of any representation or warranty relating to the characteristics of the mortgage loans that materially and adversely affects the interests of the certificateholders in that mortgage loan.  Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one-to-four family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely.  See *"Loan Program — Representations by Sellers; Repurchases"* in the prospectus.

Under the pooling and servicing agreement, the depositor will assign all its right, title and interest in the representations, warranties and covenants (including the sellers' repurchase or substitution obligation) to the trustee for the benefit of the certificateholders.  The depositor will represent that following the transfer of the mortgage loans to it by the sellers, the depositor had good title to the mortgage loans and that each of the mortgage notes was subject to no offsets, defenses or counterclaims. The depositor will make no other representations or warranties with respect to the mortgage loans and

will have no obligation to repurchase or substitute mortgage loans with deficient documentation or which are otherwise defective.  The sellers are selling the mortgage loans without recourse and will have no obligation with respect to the certificates in their respective capacities as sellers other than the repurchase or substitution obligation described above.  The obligations of the master servicer with respect to the certificates are limited to the master servicer's contractual servicing obligations under the pooling and servicing agreement.

The statistical information with respect to the mortgage loans set forth in this prospectus supplement is based on the Stated Principal Balance of each mortgage loan as of the later of (x) January 1, 2007 and (y) the date of origination of such mortgage loan (referred to as, the "cut-off date")  The depositor believes that the information set forth in this prospectus supplement regarding the mortgage loans as of the cut-off date is representative of the characteristics of the mortgage loans that will be delivered on the closing date. However, certain mortgage loans may prepay or may be determined not to meet the eligibility requirements for inclusion in the final mortgage pool.  A limited number of mortgage loans may be substituted for the mortgage loans described in this prospectus supplement, although any substitution will not result in a material difference in the mortgage pool on the closing date.  As a result, the cut-off date information regarding the actual mortgage loans delivered on the closing date may vary somewhat from the cut-off date information regarding the mortgage loans presented in this prospectus supplement.

As of the cut-off date, the aggregate of the Stated Principal Balances of the mortgage loans was approximately $499,962,260, which is referred to as the "Cut-off Date Pool Principal Balance".  These mortgage loans have been divided into two groups of mortgage loans — loan group 1, which had a principal balance as of the cut-off date of approximately $335,149,239 and loan group 2, which had a principal balance as of the cut-off date of approximately $164,813,021.  All of the mortgage loans to be included in the issuing entity will be evidenced by promissory notes secured by first lien deeds of trust, security deeds or mortgages on one-to-four family residential properties.  Substantially all of the mortgage loans have original terms to maturity of 30 years.

Approximately 46.84% and 46.90% of the aggregate Stated Principal Balance of the mortgage loans in loan group 1 and loan group 2, respectively, as of the cut-off date, only require the related mortgagor to pay interest on the principal balance of the mortgage loan for the first ten years after its origination, but require that the entire principal balance of the mortgage loan be fully amortized over the related remaining term of the mortgage loan following such interest-only period.  The remaining mortgage loans will provide for the amortization of the amount financed over a series of substantially equal monthly payments.  All of the mortgage loans will provide that payments are due on the first day of each month (the "Due Date").

Scheduled monthly payments made by the mortgagors on the mortgage loans (referred to as scheduled payments) either earlier or later than their scheduled Due Dates will not affect the amortization schedule or the relative application of the payments to principal and interest.  Except for approximately 4.06% and 5.27% of the mortgage loans in loan group 1 and loan group 2, respectively, by aggregate Stated Principal Balance of the mortgage loans in that loan group as of the cut-off date, the mortgagors may prepay their mortgage loans at any time without charges.  Any prepayment charges received on that mortgage loan will not be distributed to certificateholders.

Whenever reference is made in this prospectus supplement to a percentage of some or all of the mortgage loans, that percentage is determined on the basis of the Stated Principal Balance of such mortgage loans as of the cut-off date, unless otherwise specified.  The Cut-off Date Pool Principal Balance of the mortgage loans set forth above is subject to a variance of plus or minus five percent.

The earliest first payment date and the earliest and latest stated maturity date of any mortgage loan in each loan group is as follows:

| | Earliest First Payment Date | Earliest Stated Maturity Date | Latest Stated Maturity Date |
|---|---|---|---|
| Loan Group 1 | January 1, 2006 | February 1, 2032 | February 1, 2037 |
| Loan Group 2 | December 1, 2006 | January 1, 2032 | February 1, 2037 |

As of the cut-off date, no mortgage loan in any loan group was delinquent 30 or more days.  In the twelve-month period prior to the cut-off date, no mortgage loan in any loan group has been 30 or more days delinquent.

Delinquencies with respect to the mortgage loans will be recognized in accordance with the methodology used by the Mortgage Bankers Association of America.  Under this methodology, a mortgage loan is considered "30 days delinquent" if the borrower fails to make a scheduled monthly payment prior to the close of business on the day immediately preceding the Due Date for the next scheduled monthly payment.  A similar methodology is used for determining whether a mortgage loan is 60 days delinquent.  For example, a mortgage loan will be considered 30 days delinquent if the borrower fails to make a scheduled monthly payment originally due on March 1 by the close of business on March 31, and it will be considered 60 days delinquent if the borrower fails to make that scheduled monthly payment by the close of business on April 30.

As of the cut-off date, no mortgage loan in any loan group was subject to a buydown agreement.

No mortgage loan in any loan group provides for deferred interest or negative amortization.

No mortgage loan in any loan group had a Loan-to-Value Ratio at origination or on the closing date of more than 100.00%.  Generally, each mortgage loan with a Loan-to-Value Ratio at origination of greater than 80% will be covered by a primary mortgage guaranty insurance policy issued by a mortgage insurance company acceptable to Fannie Mae or Freddie Mac. The policy provides coverage in an amount equal to a specified percentage times the sum of the remaining principal balance of the related mortgage loan, the accrued interest thereon and the related foreclosure expenses. The specified coverage percentage for mortgage loans with terms to maturity of between 25 and 30 years is generally:

- 12% for Loan-to-Value Ratios between 80.01% and 85.00%,

- 25% for Loan-to-Value Ratios between 85.01% and 90.00%,

- 30% for Loan-to-Value Ratios between 90.01% and 95.00%, and

- 35% for Loan-to-Value Ratios between 95.01% and 100%.

The specified coverage percentage for mortgage loans with terms to maturity of up to 20 years ranges from:

- 6% to 12% for Loan-to-Value Ratios between 80.01% to 85.00%,

- 12% to 20% for Loan-to-Value Ratios between 85.01% to 90.00%, and

- 20% to 25% for Loan-to-Value Ratios between 90.01% to 95.00%.

The required coverage percentage of mortgage insurance is determined by the type, term and Loan-to-Value Ratio of the mortgage loan and may also vary based on occupancy type.  However, under certain circumstances, the specified coverage level may vary from the foregoing.  With respect to four

mortgage loans in loan group 1 and three mortgage loans in loan group 2, that will be identified on the mortgage loan schedule and representing approximately 0.62% and 0.89% of the aggregate Stated Principal Balance of the mortgage loans in loan group 1 and loan group 2, respectively, in each case as of the cut-off date, the lender (rather than the borrower) acquired the primary mortgage guaranty insurance and charged the related borrower an interest premium. Except for these lender acquired mortgage insurance mortgage loans, no primary mortgage guaranty insurance policy will be required with respect to any mortgage loan if maintaining the policy is prohibited by applicable law or after the date on which the related Loan-to-Value Ratio is 80% or less or, based on a new appraisal, the principal balance of the mortgage loan represents 80% or less of the new appraised value. The primary mortgage guaranty insurance policy will be maintained for the life of the lender acquired mortgage insurance mortgage loans, unless otherwise provided in the mortgage note or prohibited by law.

The "Loan-to-Value Ratio" of a mortgage loan at any given time is a fraction, expressed as a percentage, the numerator of which is the principal balance of the related mortgage loan at the date of determination and the denominator of which is the Collateral Value. The "Collateral Value" is:

- in the case of a purchase, the lesser of the selling price of the mortgaged property or its appraised value at the time of sale, or

- in the case of a refinance, the appraised value of the mortgaged property at the time of the refinance, except in the case of a mortgage loan underwritten pursuant to Countrywide Home Loans' Streamlined Documentation Program as described under *"—Underwriting Process."*

With respect to mortgage loans originated pursuant to the Streamlined Documentation Program,

- if the loan-to-value ratio at the time of the origination of the mortgage loan being refinanced was 80% or less and the loan amount of the new loan being originated is $650,000 or less, then the "Loan-to-Value Ratio" will be the ratio of the principal amount of the new mortgage loan being originated divided by the appraised value of the related mortgaged property at the time of the origination of the mortgage loan being refinanced, as reconfirmed by Countrywide Home Loans using an automated property valuation system; or

- if the loan-to-value ratio at the time of the origination of the mortgage loan being refinanced was greater than 80% or the loan amount of the new loan being originated is greater than $650,000, then the "Loan-to-Value Ratio" will be the ratio of the principal amount of the new mortgage loan being originated divided by the appraised value of the related mortgaged property as determined by an appraisal obtained by Countrywide Home Loans at the time of the origination of the new mortgage loan. See *"— Underwriting Process"* in this prospectus supplement.

No assurance can be given that the value of any mortgaged property has remained or will remain at the level that existed on the appraisal or sales date. If residential real estate values generally or in a particular geographic area decline, the Loan-to-Value Ratios might not be a reliable indicator of the rates of delinquencies, foreclosures and losses that could occur with respect to the mortgage loans.

Although all of the mortgage loans are secured by first liens, the tables set forth in Annex A include certain Combined Loan-to-Value Ratios. The "Combined Loan-to-Value Ratio" of a mortgage loan originated by Countrywide Home Loans is a fraction, expressed as a percentage, the numerator of which is the sum of (i) the principal balance of the mortgage loan at origination and (ii) the outstanding principal balance at origination of the mortgage loan of any junior mortgage loan(s) originated by Countrywide Home Loans contemporaneously with the origination of the senior mortgage loan (or, in the case of any open-ended junior revolving home equity line of credit, the maximum available line of credit

with respect to that junior mortgage loan), and the denominator of which is the Collateral Value. If a mortgage loan was originated by Countrywide Home Loans in connection with the refinancing of an existing mortgage loan, the numerator of the Combined Loan-to-Value Ratio for that mortgage loan will also include the outstanding principal balance at origination of any junior mortgage loan(s) originated by Countrywide Home Loans during the 12 months following the origination of the mortgage loan being refinanced.

Further statistical information regarding certain characteristics of the mortgage loans in loan group 1 and loan group 2 as of the cut-off date is set forth in Annex A hereto.

**Assignment of the Mortgage Loans**

Pursuant to the pooling and servicing agreement, on the closing date, the depositor will sell, transfer, assign, set over and otherwise convey without recourse to the trustee in trust for the benefit of the certificateholders all right, title and interest of the depositor in and to each mortgage loan in loan group 1 and loan group 2 and all right, title and interest in and to all other assets included in Alternative Loan Trust 2007-1T1, including all principal and interest received on or with respect to the mortgage loans in loan group 1 and loan group 2, but not any principal and interest due on or before the cut-off date.

In connection with the transfer and assignment of a mortgage loan, the depositor will deliver or cause to be delivered to the trustee, or a custodian for the trustee, the mortgage file, which contains among other things,

- the original mortgage note (and any modification or amendment to it) endorsed in blank without recourse, except that the depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original mortgage note that has been lost;

- the original instrument creating a first lien on the related mortgaged property with evidence of recording indicated thereon or a copy of such instrument;

- an assignment in recordable form of the mortgage or a copy of such assignment;

- the original or a copy of the title policy with respect to the related mortgaged property; and

- if applicable, all recorded intervening assignments of the mortgage or copies thereof and any riders or modifications to the mortgage note and mortgage or copies thereof (except for any documents not returned from the public recording office, which will be delivered to the trustee as soon as the same is available to the depositor).

With respect to up to 50% of the mortgage loans in each loan group, the depositor may deliver all or a portion of each related mortgage file to the trustee not later than thirty days after the closing date. Assignments of the mortgage loans to the trustee (or its nominee) will be recorded in the appropriate public office for real property records, except in states where, in the opinion of counsel, recording is not required to protect the trustee's interests in the mortgage loan against the claim of any subsequent transferee or any successor to or creditor of the depositor or any seller or a transferor, as the case may be. The depositor expects that substantially all of the assignments will not be recorded based on an opinion of counsel.

The trustee will hold the mortgage loan documents in trust for the benefit of the holders of the certificates in accordance with its customary procedures, including storing the documents in fire-resistant facilities. The trustee will review each mortgage file relating to the mortgage loans within 90 days of the

closing date (or promptly after the trustee's receipt of any document permitted to be delivered after the closing date), and if any document in a mortgage file is found to be missing or defective in a material respect and Countrywide Home Loans does not cure the defect within 90 days of notice of the defect from the trustee (or within such longer period not to exceed 720 days after the closing date as provided in the pooling and servicing agreement in the case of missing documents not returned from the public recording office), Countrywide Home Loans will be obligated to repurchase the related mortgage loan from the issuing entity at the purchase price described in the prospectus under *"Loan Program — Representations by Sellers; Repurchases."* Rather than repurchase the mortgage loan as provided above, Countrywide Home Loans may remove the mortgage loan (referred to as a deleted mortgage loan) from the issuing entity and substitute in its place another mortgage loan (referred to as a replacement mortgage loan); however, such a substitution is permitted only within two years of the closing date and may not be made unless an opinion of counsel is provided to the trustee to the effect that such a substitution will not disqualify any REMIC or result in a prohibited transaction tax under the Internal Revenue Code of 1986, as amended (the "Code"). Any replacement mortgage loan generally will, on the date of substitution, among other characteristics set forth in the pooling and servicing agreement,

- have a principal balance, after deduction of all scheduled payments due in the month of substitution, not in excess of, and not more than 10% less than, the Stated Principal Balance of the deleted mortgage loan (the amount of any shortfall to be deposited by Countrywide Home Loans in the Certificate Account and held for distribution to the certificateholders on the related Distribution Date (referred to as a "Substitution Adjustment Amount")),

- have a mortgage rate not lower than, and not more than 1% per annum higher than, that of the deleted mortgage loan,

- have a Loan-to-Value Ratio not higher than that of the deleted mortgage loan,

- have a remaining term to maturity not greater than (and not more than one year less than) that of the deleted mortgage loan, and

- comply with all of the representations and warranties set forth in the pooling and servicing agreement as of the date of substitution.

This cure, repurchase or substitution obligation constitutes the sole remedy available to certificateholders or the trustee for omission of, or a material defect in, a mortgage loan document.

Notwithstanding the foregoing, in lieu of providing the duly executed assignment of the mortgage to the trustee or copies thereof and the original recorded assignment or assignments of the mortgage together with all interim recorded assignments of such mortgage or copies thereof, above, the depositor may at its discretion provide evidence that the related mortgage is held through the MERS® System. In addition, the mortgages for some or all of the mortgage loans in the issuing entity that are not already held through the MERS® System may, at the discretion of the master servicer, in the future be held through the MERS® System. For any mortgage held through the MERS® System, the mortgage is recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, as nominee for the owner of the mortgage loan, and subsequent assignments of the mortgage were, or in the future may be, at the discretion of the master servicer, registered electronically through the MERS® System. For each of these mortgage loans, MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the trustee, and does not have any interest in the mortgage loan.

**Underwriting Process**

All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process. Countrywide Home Loans has been originating mortgage loans since 1969.  Countrywide Home Loans' underwriting process are applied in accordance with applicable federal and state laws and regulations. Except as otherwise provided in this prospectus supplement, the underwriting procedures are consistent with those identified under *"Loan Program — Underwriting Standards"* in the prospectus.

As part of its evaluation of potential borrowers, Countrywide Home Loans generally requires a description of income. If required by its underwriting guidelines, Countrywide Home Loans obtains employment verification providing current and historical income information and/or a telephonic employment confirmation.  Such employment verification may be obtained, either through analysis of the prospective borrower's recent pay stub and/or W-2 forms for the most recent two years, relevant portions of the most recent two years' tax returns, or from the prospective borrower's employer, wherein the employer reports the length of employment and current salary with that organization. Self-employed prospective borrowers generally are required to submit relevant portions of their federal tax returns for the past two years.

In assessing a prospective borrower's creditworthiness, Countrywide Home Loans may use FICO Credit Scores. "FICO Credit Scores" are statistical credit scores designed to assess a borrower's creditworthiness and likelihood to default on a consumer obligation over a two-year period based on a borrower's credit history.  FICO Credit Scores were not developed to predict the likelihood of default on mortgage loans and, accordingly, may not be indicative of the ability of a mortgagor to repay its mortgage loan.  FICO Credit Scores range from approximately 250 to approximately 900, with higher scores indicating an individual with a more favorable credit history compared to an individual with a lower score.  Under Countrywide Home Loans' underwriting guidelines, borrowers possessing higher FICO Credit Scores, which indicate a more favorable credit history, and who give Countrywide Home Loans the right to obtain the tax returns they filed for the preceding two years may be eligible for Countrywide Home Loans' processing program (the "Preferred Processing Program").  Approximately 3.47% and 1.93% of the mortgage loans in loan group 1 and loan group 2, respectively, by aggregate Stated Principal Balance of the mortgage loans in that loan group as of the cut-off date, have been underwritten pursuant to Countrywide Home Loans' Preferred Processing Program.  Countrywide Home Loans may waive some documentation requirements for mortgage loans originated under the Preferred Processing Program.

Periodically the data used by Countrywide Home Loans to complete the underwriting analysis may be obtained by a third party, particularly for mortgage loans originated through a loan correspondent or mortgage broker. In those instances, the initial determination as to whether a mortgage loan complies with Countrywide Home Loans' underwriting guidelines may be made by an independent company hired to perform underwriting services on behalf of Countrywide Home Loans, the loan correspondent or mortgage broker. In addition, Countrywide Home Loans may acquire mortgage loans from approved correspondent lenders under a program pursuant to which Countrywide Home Loans delegates to the correspondent the obligation to underwrite the mortgage loans to Countrywide Home Loans' standards. Under these circumstances, the underwriting of a mortgage loan may not have been reviewed by Countrywide Home Loans before acquisition of the mortgage loan and the correspondent represents that Countrywide Home Loans' underwriting standards have been met. After purchasing mortgage loans under those circumstances, Countrywide Home Loans conducts a quality control review of a sample of the mortgage loans. The number of loans reviewed in the quality control process varies based on a variety of factors, including Countrywide Home Loans' prior experience with the correspondent lender and the results of the quality control review process itself.

Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral. Under those standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs. Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower.

Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%. Countrywide Home Loans' underwriting guidelines do not prohibit or otherwise restrict a mortgagor from obtaining secondary financing from lenders other than Countrywide Home Loans, whether at origination of the mortgage loan or thereafter.

The nature of the information that a borrower is required to disclose and whether the information is verified depends, in part, on the documentation program used in the origination process. In general under the Full Documentation Loan Program (the "Full Documentation Program"), each prospective borrower is required to complete an application which includes information with respect to the applicant's assets, liabilities, income, credit history, employment history and other personal information. Self-employed individuals are generally required to submit their two most recent federal income tax returns. Under the Full Documentation Program, the underwriters verify the information contained in the application relating to employment, income, assets or mortgages.

A prospective borrower may be eligible for a loan approval process that limits or eliminates Countrywide Home Loans' standard disclosure or verification requirements or both.  Countrywide Home Loans offers the following documentation programs as alternatives to its Full Documentation Program: an Alternative Documentation Loan Program (the "Alternative Documentation Program"), a Reduced Documentation Loan Program (the "Reduced Documentation Program"), a CLUES Plus Documentation Loan Program (the "CLUES Plus Documentation Program"), a No Income/No Asset Documentation Loan Program (the "No Income/No Asset Documentation Program"), a Stated Income/Stated Asset Documentation Loan Program (the "Stated Income/Stated Asset Documentation Program") and a Streamlined Documentation Loan Program (the "Streamlined Documentation Program").

For all mortgage loans originated or acquired by Countrywide Home Loans, Countrywide Home Loans obtains a credit report relating to the applicant from a credit reporting company. The credit report typically contains information relating to such matters as credit history with local and national merchants and lenders, installment debt payments and any record of defaults, bankruptcy, dispossession, suits or judgments. All adverse information in the credit report is required to be explained by the prospective borrower to the satisfaction of the lending officer.

Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the

appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect.

Countrywide Home Loans requires title insurance on all of its mortgage loans secured by first liens on real property. Countrywide Home Loans also requires that fire and extended coverage casualty insurance be maintained on the mortgaged property in an amount at least equal to the principal balance of the related single-family mortgage loan or the replacement cost of the mortgaged property, whichever is less.

In addition to Countrywide Home Loans' standard underwriting guidelines (the "Standard Underwriting Guidelines"), which are consistent in many respects with the guidelines applied to mortgage loans purchased by Fannie Mae and Freddie Mac, Countrywide Home Loans uses underwriting guidelines featuring expanded criteria (the "Expanded Underwriting Guidelines"). The Standard Underwriting Guidelines and the Expanded Underwriting Guidelines are described further under the next two headings.

*Standard Underwriting Guidelines*

Countrywide Home Loans' Standard Underwriting Guidelines for mortgage loans with non-conforming original principal balances generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 75% for mortgage loans with original principal balances of up to $1,000,000, up to 65% for mortgage loans with original principal balances of up to $1,500,000, and up to 60% for mortgage loans with original principal balances of up to $2,000,000.

For cash-out refinance mortgage loans, Countrywide Home Loans' Standard Underwriting Guidelines for mortgage loans with non-conforming original principal balances generally allow Loan-to-Value Ratios at origination of up to 75% and original principal balances ranging up to $650,000. The maximum "cash-out" amount permitted is $200,000 and is based in part on the original Loan-to-Value Ratio of the related mortgage loan. As used in this prospectus supplement, a refinance mortgage loan is classified as a cash-out refinance mortgage loan by Countrywide Home Loans if the borrower retains an amount greater than the lesser of 2% of the entire amount of the proceeds from the refinancing of the existing loan, or $2,000.

Countrywide Home Loans' Standard Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination on owner occupied properties of up to 95% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii) and 2 unit properties with principal balances up to $533,850 ($800,775 in Alaska and Hawaii) and up to 80% on 3 unit properties with principal balances of up to $645,300 ($967,950 in Alaska and Hawaii) and 4 unit properties with principal balances of up to $801,950 ($1,202,925 in Alaska and Hawaii).  On second homes, Countrywide Home Loans' Standard Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination of up to 95% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii).  Countrywide Home Loans' Standard Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination on investment properties of up to 90% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii) and 2 unit properties with principal balances up to $533,850 ($800,775 in Alaska and Hawaii) and up to 75% on 3 unit properties with principal balances of up to

$645,300 ($967,950 in Alaska and Hawaii) and 4 unit properties with principal balances of up to $801,950 ($1,202,925 in Alaska and Hawaii).

Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 33% and a debt-to-income ratio based on the borrower's total monthly debt of up to 38%.

In connection with the Standard Underwriting Guidelines, Countrywide Home Loans originates or acquires mortgage loans under the Full Documentation Program, the Alternative Documentation Program, the Reduced Documentation Program, the CLUES Plus Documentation Program or the Streamlined Documentation Program.

The Alternative Documentation Program permits a borrower to provide W-2 forms instead of tax returns covering the most recent two years, permits bank statements in lieu of verification of deposits and permits alternative methods of employment verification.

Under the Reduced Documentation Program, some underwriting documentation concerning income, employment and asset verification is waived.  Countrywide Home Loans obtains from a prospective borrower either a verification of deposit or bank statements for the two-month period immediately before the date of the mortgage loan application or verbal verification of employment. Since information relating to a prospective borrower's income and employment is not verified, the borrower's debt-to-income ratios are calculated based on the information provided by the borrower in the mortgage loan application. The maximum Loan-to-Value Ratio ranges up to 95%.

The CLUES Plus Documentation Program permits the verification of employment by alternative means, if necessary, including verbal verification of employment or reviewing paycheck stubs covering the pay period immediately prior to the date of the mortgage loan application. To verify the borrower's assets and the sufficiency of the borrower's funds for closing, Countrywide Home Loans obtains deposit or bank account statements from each prospective borrower for the month immediately prior to the date of the mortgage loan application. Under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio is 75% and property values may be based on appraisals comprising only interior and exterior inspections. Generally, cash-out refinances and investor properties are not permitted under the CLUES Plus Documentation Program.

The Streamlined Documentation Program is available for borrowers who are refinancing an existing mortgage loan that was originated or acquired by Countrywide Home Loans provided that, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve-month period. Under the Streamlined Documentation Program, appraisals are obtained only if the loan amount of the loan being refinanced had a Loan-to-Value Ratio at the time of origination in excess of 80% or if the loan amount of the new loan being originated is greater than $650,000. In addition, under the Streamlined Documentation Program, a credit report is obtained but only a limited credit review is conducted, no income or asset verification is required, and telephonic verification of employment is permitted. The maximum Loan-to-Value Ratio under the Streamlined Documentation Program ranges up to 95%.

*Expanded Underwriting Guidelines*

Mortgage loans which are underwritten pursuant to the Expanded Underwriting Guidelines may have higher Loan-to-Value Ratios, higher loan amounts and different documentation requirements than those associated with the Standard Underwriting Guidelines. The Expanded Underwriting Guidelines also

permit higher debt-to-income ratios than mortgage loans underwritten pursuant to the Standard Underwriting Guidelines.

Countrywide Home Loans' Expanded Underwriting Guidelines for mortgage loans with non-conforming original principal balances generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 80% for mortgage loans with original principal balances of up to $1,000,000, up to 75% for mortgage loans with original principal balances of up to $1,500,000 and up to 70% for mortgage loans with original principal balances of up to $3,000,000. Under certain circumstances, however, Countrywide Home Loans' Expanded Underwriting Guidelines allow for Loan-to-Value Ratios of up to 100% for purchase money mortgage loans with original principal balances of up to $375,000.

For cash-out refinance mortgage loans, Countrywide Home Loans' Expanded Underwriting Guidelines for mortgage loans with non-conforming original principal balances generally allow Loan-to-Value Ratios at origination of up to 90% and original principal balances ranging up to $1,500,000. The maximum "cash-out" amount permitted is $400,000 and is based in part on the original Loan-to-Value Ratio of the related mortgage loan.

Countrywide Home Loans' Expanded Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination on owner occupied properties of up to 100% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii) and 2 unit properties with principal balances up to $533,850 ($800,775 in Alaska and Hawaii) and up to 85% on 3 unit properties with principal balances of up to $645,300 ($967,950 in Alaska and Hawaii) and 4 unit properties with principal balances of up to $801,950 ($1,202,925 in Alaska and Hawaii).  On second homes, Countrywide Home Loans' Expanded Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination of up to 95% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii).  Countrywide Home Loans' Expanded Underwriting Guidelines for conforming balance mortgage loans generally allow Loan-to-Value Ratios at origination on investment properties of up to 90% on 1 unit properties with principal balances up to $417,000 ($625,500 in Alaska and Hawaii) and 2 unit properties with principal balances up to $533,850 ($800,775 in Alaska and Hawaii) and up to 85% on 3 unit properties with principal balances of up to $645,300 ($967,950 in Alaska and Hawaii) and 4 unit properties with principal balances of up to $801,950 ($1,202,925 in Alaska and Hawaii).

Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 36% and a debt-to-income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios are 33% and 38%, respectively.

In connection with the Expanded Underwriting Guidelines, Countrywide Home Loans originates or acquires mortgage loans under the Full Documentation Program, the Alternative Documentation Program, the Reduced Documentation Loan Program, the No Income/No Asset Documentation Program and the Stated Income/Stated Asset Documentation Program. Neither the No Income/No Asset Documentation Program nor the Stated Income/Stated Asset Documentation Program is available under the Standard Underwriting Guidelines.

The same documentation and verification requirements apply to mortgage loans documented under the Alternative Documentation Program regardless of whether the loan has been underwritten under the Expanded Underwriting Guidelines or the Standard Underwriting Guidelines. However, under the

Alternative Documentation Program, mortgage loans that have been underwritten pursuant to the Expanded Underwriting Guidelines may have higher loan balances and Loan-to-Value Ratios than those permitted under the Standard Underwriting Guidelines.

Similarly, the same documentation and verification requirements apply to mortgage loans documented under the Reduced Documentation Program regardless of whether the loan has been underwritten under the Expanded Underwriting Guidelines or the Standard Underwriting Guidelines. However, under the Reduced Documentation Program, higher loan balances and Loan-to-Value Ratios are permitted for mortgage loans underwritten pursuant to the Expanded Underwriting Guidelines than those permitted under the Standard Underwriting Guidelines. The maximum Loan-to-Value Ratio, including secondary financing, ranges up to 90%. The borrower is not required to disclose any income information for some mortgage loans originated under the Reduced Documentation Program, and accordingly debt-to-income ratios are not calculated or included in the underwriting analysis. The maximum Loan-to-Value Ratio, including secondary financing, for those mortgage loans ranges up to 85%.

Under the No Income/No Asset Documentation Program, no documentation relating to a prospective borrower's income, employment or assets is required and therefore debt-to-income ratios are not calculated or included in the underwriting analysis, or if the documentation or calculations are included in a mortgage loan file, they are not taken into account for purposes of the underwriting analysis. This program is limited to borrowers with excellent credit histories. Under the No Income/No Asset Documentation Program, the maximum Loan-to-Value Ratio, including secondary financing, ranges up to 95%. Mortgage loans originated under the No Income/No Asset Documentation Program are generally eligible for sale to Fannie Mae or Freddie Mac.

None of the mortgage loans in loan group 1 and loan group 2 were originated under either the No Income/No Asset Documentation Program or the Reduced Documentation Program pursuant to which debt-to-income ratios are not calculated as described above.

Under the Stated Income/Stated Asset Documentation Program, the mortgage loan application is reviewed to determine that the stated income is reasonable for the borrower's employment and that the stated assets are consistent with the borrower's income. The Stated Income/Stated Asset Documentation Program permits maximum Loan-to-Value Ratios up to 90%. Mortgage loans originated under the Stated Income/Stated Asset Documentation Program are generally eligible for sale to Fannie Mae or Freddie Mac.

Under the Expanded Underwriting Guidelines, Countrywide Home Loans may also provide mortgage loans to borrowers who are not U.S. citizens, including permanent and non-permanent residents. The borrower is required to have a valid U.S. social security number or a certificate of foreign status (IRS form W-8). The borrower's income and assets must be verified under the Full Documentation Program or the Alternative Documentation Program. The maximum Loan-to-Value Ratio, including secondary financing, is 80%.

## Servicing of Mortgage Loans

### General

The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders. The master servicer has also agreed to represent and protect the interest of the trustee in the

mortgage loans in the same manner as it currently protects its own interest in mortgage loans in its own portfolio in any claim, proceeding or litigation regarding a mortgage loan. The master servicer is permitted to make a modification, waiver or amendment of a mortgage loan so long as the modification, waiver or amendment would comply with the general servicing standard described above, not cause any REMIC to fail to qualify as a REMIC, not result in the imposition of certain taxes and not extend the due date for a payment due on the related mortgage note for a period greater than 180 days. A modification, waiver or amendment may initially result in a reduction in the payments made under a mortgage loan, but it is expected that a modification, waiver or amendment will increase the payments made under the mortgage loan over the life of the mortgage loan.

The master servicer may perform any of its obligations under the pooling and servicing agreement through one or more subservicers. Notwithstanding any subservicing arrangement, the master servicer will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if the master servicer alone were servicing the mortgage loans. It is expected that as of the closing date Countrywide Home Loans Servicing LP will directly service all of the mortgage loans.

**Countrywide Home Loans Servicing LP**

The principal executive offices of Countrywide Home Loans Servicing LP ("Countrywide Servicing") are located at 7105 Corporate Drive, Plano, Texas 75024. Countrywide Servicing is a Texas limited partnership directly owned by Countrywide GP, Inc. and Countrywide LP, Inc., each a Nevada corporation and a direct wholly owned subsidiary of Countrywide Home Loans. Countrywide GP, Inc. owns a 0.1% interest in Countrywide Servicing and is the general partner. Countrywide LP, Inc. owns a 99.9% interest in Countrywide Servicing and is a limited partner.

Countrywide Home Loans established Countrywide Servicing in February 2000 to service mortgage loans originated by Countrywide Home Loans that would otherwise have been serviced by Countrywide Home Loans. In January and February 2001, Countrywide Home Loans transferred to Countrywide Servicing all of its rights and obligations relating to mortgage loans serviced on behalf of Fannie Mae and Freddie Mac, respectively. In October 2001, Countrywide Home Loans transferred to Countrywide Servicing all of its rights and obligations relating to the bulk of its non-agency loan servicing portfolio (other than the servicing of home equity lines of credit), including with respect to those mortgage loans (other than home equity lines of credit) formerly serviced by Countrywide Home Loans and securitized by certain of its affiliates. While Countrywide Home Loans expects to continue to directly service a portion of its loan portfolio, it is expected that the servicing rights for most newly originated Countrywide Home Loans mortgage loans will be transferred to Countrywide Servicing upon sale or securitization of the related mortgage loans. Countrywide Servicing is engaged in the business of servicing mortgage loans and will not originate or acquire loans, an activity that will continue to be performed by Countrywide Home Loans. In addition to acquiring mortgage servicing rights from Countrywide Home Loans, it is expected that Countrywide Servicing will service mortgage loans for non-Countrywide Home Loans affiliated parties as well as subservice mortgage loans on behalf of other master servicers.

In connection with the establishment of Countrywide Servicing, certain employees of Countrywide Home Loans became employees of Countrywide Servicing. Countrywide Servicing has engaged Countrywide Home Loans as a subservicer to perform certain loan servicing activities on its behalf.

Countrywide Servicing is an approved mortgage loan servicer for Fannie Mae, Freddie Mac, Ginnie Mae, HUD and VA and is licensed to service mortgage loans in those states where a license is

required. Its loan servicing activities are guaranteed by Countrywide Financial and Countrywide Home Loans (when required by the owner of the mortgage loans).

**Countrywide Home Loans**

Countrywide Home Loans, Inc., a New York corporation ("Countrywide Home Loans"), is the sponsor for the transaction and also a seller.  Countrywide Home Loans is a direct wholly owned subsidiary of Countrywide Financial Corporation, a Delaware corporation ("Countrywide Financial"). The principal executive offices of Countrywide Home Loans are located at 4500 Park Granada, Calabasas, California 91302. Countrywide Home Loans is engaged primarily in the mortgage banking business, and as part of that business, originates, purchases, sells and services mortgage loans. Countrywide Home Loans originates mortgage loans through a retail branch system and through mortgage loan brokers and correspondents nationwide. Mortgage loans originated by Countrywide Home Loans are principally first-lien, fixed or adjustable rate mortgage loans secured by single-family residences.

Countrywide Home Loans has historically sold substantially all the mortgage loans that it has originated and purchased, generally through securitizations. Countrywide Home Loans does not always sell mortgage loans immediately after origination or acquisition, but may decide to sell certain mortgage loans in later periods as part of its overall management of interest rate risk.  Countrywide Home Loans has been involved in the securitization of mortgage loans since 1969 when it was approved as a Federal National Mortgage Association seller/servicer.  Countrywide Home Loans reviews the structure of its securitizations and discusses the structure with the related underwriters.

Except as otherwise indicated, reference in the remainder of this prospectus supplement to "Countrywide Home Loans" should be read to include Countrywide Home Loans and its consolidated subsidiaries, including Countrywide Servicing.

Countrywide Home Loans services substantially all of the mortgage loans it originates or acquires.  In addition, Countrywide Home Loans has purchased in bulk the rights to service mortgage loans originated by other lenders. Countrywide Home Loans has in the past and may in the future sell to mortgage bankers and other institutions a portion of its portfolio of loan servicing rights. As of December 31, 2002, December 31, 2003, December 31, 2004, December 31, 2005 and September 30, 2006, Countrywide Home Loans provided servicing for mortgage loans with an aggregate principal balance of approximately $452.405 billion, $644.855 billion, $838.322 billion, $1,111.090 billion and $1,244.311 billion, respectively, substantially all of which were being serviced for unaffiliated persons.

**Mortgage Loan Production**

The following table sets forth, by number and dollar amount of mortgage loans, Countrywide Home Loans' residential mortgage loan production for the periods indicated.

| | Ten Months Ended December 31, 2001 | Years Ended December 31, | | | | Nine Months Ended September 30, 2006 |
|---|---|---|---|---|---|---|
| | | 2002 | 2003 | 2004 | 2005 | |
| | | | **(Dollars in millions, except average loan amount)** | | | |
| **Consolidated Mortgage Loan Production** | | | | | | |
| Conventional Conforming Loans | | | | | | |
| Number of Loans | 504,975 | 999,448 | 1,517,743 | 846,395 | 809,630 | 559,501 |
| Volume of Loans | $ 76,432 | $ 150,110 | $ 235,868 | $ 138,845 | $ 167,675 | $ 109,872 |
| Percent of Total Dollar Volume | 61.7% | 59.6% | 54.2% | 38.2% | 34.1% | 32.9% |
| Conventional Non-conforming Loans | | | | | | |
| Number of Loans | 137,593 | 277,626 | 554,571 | 509,711 | 826,178 | 479,627 |
| Volume of Loans | $ 22,209 | $ 61,627 | $ 136,664 | $ 140,580 | $ 225,217 | $ 148,652 |
| Percent of Total Dollar Volume | 17.9% | 24.5% | 31.4% | 38.7% | 45.9% | 44.5% |
| FHA/VA Loans | | | | | | |
| Number of Loans | 118,734 | 157,626 | 196,063 | 105,562 | 80,528 | 65,618 |
| Volume of Loans | $ 14,109 | $ 19,093 | $ 24,402 | $ 13,247 | $ 10,712 | $ 9,436 |
| Percent of Total Dollar Volume | 11.4% | 7.6% | 5.6% | 3.6% | 2.2% | 2.8% |
| Prime Home Equity Loans | | | | | | |
| Number of Loans | 164,503 | 316,049 | 453,817 | 587,046 | 683,887 | 519,895 |
| Volume of Loans | $ 5,639 | $ 11,650 | $ 18,103 | $ 30,893 | $ 42,706 | $ 35,229 |
| Percent of Total Dollar Volume | 4.5% | 4.6% | 4.2% | 8.5% | 8.7% | 10.6% |
| Nonprime Mortgage Loans | | | | | | |
| Number of Loans | 43,359 | 63,195 | 124,205 | 250,030 | 278,112 | 188,558 |
| Volume of Loans | $ 5,580 | $ 9,421 | $ 19,827 | $ 39,441 | $ 44,637 | $ 30,545 |
| Percent of Total Dollar Volume | 4.5% | 3.7% | 4.6% | 11.0% | 9.1% | 9.2% |
| Total Loans | | | | | | |
| Number of Loans | 969,164 | 1,813,944 | 2,846,399 | 2,298,744 | 2,678,335 | 1,813,199 |
| Volume of Loans | $ 123,969 | $ 251,901 | $ 434,864 | $ 363,006 | $ 490,947 | $ 333,734 |
| Average Loan Amount | $ 128,000 | $ 139,000 | $ 153,000 | $ 158,000 | $ 183,000 | $ 184,000 |
| Non-Purchase Transactions(1) | 63% | 66% | 72% | 51% | 53% | 53% |
| Adjustable-Rate Loans(1) | 12% | 14% | 21% | 52% | 52% | 48% |

_____

(1)   Percentage of total mortgage loan production (excluding commercial real estate loans) based on dollar volume.

## Loan Servicing

Countrywide Servicing has established standard policies for the servicing and collection of mortgages. Servicing includes, but is not limited to:

- collecting, aggregating and remitting mortgage loan payments;

- accounting for principal and interest;

- holding escrow (impound) funds for payment of taxes and insurance;

- making inspections as required of the mortgaged properties;

- preparation of tax related information in connection with the mortgage loans;

- supervision of delinquent mortgage loans;

- loss mitigation efforts;

- foreclosure proceedings and, if applicable, the disposition of mortgaged properties; and

- generally administering the mortgage loans, for which it receives servicing fees.

Billing statements with respect to mortgage loans are mailed monthly by Countrywide Servicing. The statement details all debits and credits and specifies the payment due.  Notice of changes in the applicable loan rate are provided by Countrywide Servicing to the mortgagor with these statements.

**Collection Procedures**

When a mortgagor fails to make a payment on a mortgage loan, Countrywide Servicing attempts to cause the deficiency to be cured by corresponding with the mortgagor. In most cases, deficiencies are cured promptly. Pursuant to Countrywide Servicing's servicing procedures, Countrywide Servicing generally mails to the mortgagor a notice of intent to foreclose after the loan becomes 61 days past due (three payments due but not received) and, generally within 59 days thereafter, if the loan remains delinquent, institutes appropriate legal action to foreclose on the mortgaged property. Foreclosure proceedings may be terminated if the delinquency is cured. Mortgage loans to borrowers in bankruptcy proceedings may be restructured in accordance with law and with a view to maximizing recovery of the loans, including any deficiencies.

Once foreclosure is initiated by Countrywide Servicing, a foreclosure tracking system is used to monitor the progress of the proceedings. The system includes state-specific parameters to monitor whether proceedings are progressing within the time frame typical for the state in which the mortgaged property is located. During the foreclosure proceeding, Countrywide Servicing determines the amount of the foreclosure bid and whether to liquidate the mortgage loan.

If foreclosed, the mortgaged property is sold at a public or private sale and may be purchased by Countrywide Servicing. After foreclosure, Countrywide Servicing may liquidate the mortgaged property and charge-off the loan balance which was not recovered through liquidation proceeds.

Servicing and charge-off policies and collection practices with respect to mortgage loans may change over time in accordance with, among other things, Countrywide Servicing's business judgment, changes in the servicing portfolio and applicable laws and regulations.

**Servicing Compensation and Payment of Expenses**

The Expense Fees with respect to the mortgage pool are payable out of the interest payments on each mortgage loan. The Expense Fees will be 0.209% per annum of the Stated Principal Balance of each mortgage loan. The Expense Fees consist of:

- the master servicing fee payable to the master servicer in respect of its master servicing activities; and

- fees payable to the trustee in respect of its activities as trustee under the pooling and servicing agreement.

The master servicing fee will be 0.200% per annum (the "master servicing fee rate") of the Stated Principal Balance of each mortgage loan.  The master servicer is obligated to pay some but not all ongoing expenses associated with the issuing entity and incurred by the master servicer in connection with its responsibilities under the pooling and servicing agreement and those amounts will be paid by the master servicer out of the master servicing fee. The amount of the master servicing fee is subject to adjustment with respect to prepaid mortgage loans, as described under *"— Adjustment to Servicing Compensation in Connection with Certain Prepaid Mortgage Loans."*  The master servicer is also entitled to receive, as additional servicing compensation, all late payment fees, assumption fees, prepayment charges and other similar charges and all reinvestment income earned on amounts on deposit in the

Certificate Account and Distribution Account and Excess Proceeds with respect to the mortgage loans as described under *"Description of the Certificates —Fees and Expenses."*

The net mortgage rate of a mortgage loan is its mortgage rate (net of the interest premium charged by the related lenders for the lender acquired mortgage insurance mortgage loans, if any) less the sum of the master servicing fee and the trustee fee on the mortgage loan (expressed as a per annum percentage of its Stated Principal Balance).

**Adjustment to Servicing Compensation in Connection with Certain Prepaid Mortgage Loans**

When a borrower prepays a mortgage loan between Due Dates, the borrower is required to pay interest on the amount prepaid only to the date of prepayment and not thereafter.  Except with respect to the month of the cut-off date, principal prepayments by borrowers received by the master servicer from the first day through the fifteenth day of a calendar month will be distributed to certificateholders on the Distribution Date in the same month in which the prepayments on these mortgage loans are received and, accordingly, no shortfall in the amount of interest to be distributed to certificateholders with respect to the prepaid mortgage loans results. Conversely, principal prepayments by borrowers received by the master servicer from the sixteenth day (or, in the case of the first Distribution Date, from January 1, 2007) through the last day of a calendar month will be distributed to certificateholders on the Distribution Date in the month following the month of receipt and, accordingly, a shortfall in the amount of interest to be distributed to certificateholders with respect to the prepaid mortgage loans would result.  Pursuant to the pooling and servicing agreement, the master servicing fee for any month will be reduced, but not by more than an amount equal to the product of one-twelfth of 0.125% and the aggregate Stated Principal Balance of the mortgage loans in such loan group as of the first day of the prior month ("Compensating Interest"), by an amount sufficient to pass through to certificateholders the full amount of interest to which they would be entitled for each prepaid mortgage loan on the related Distribution Date.

If shortfalls in interest as a result of prepayments in any Prepayment Period exceed the Compensating Interest for the related Distribution Date, the amount of interest distributed to certificateholders will be reduced by the amount of the excess.  See *"Description of the Certificates – Interest"* in this prospectus supplement.

**Advances**

Subject to the following limitations, the master servicer will be required to advance before each Distribution Date, from its own funds or funds in the Certificate Account that do not constitute Available Funds for that Distribution Date, an amount equal to:

- the aggregate of payments of principal and interest on the mortgage loans (net of the master servicing fee) which were due on the related Due Date and which were delinquent on the related Determination Date; and

- an amount equivalent to interest (net of the master servicing fee rate) on each mortgage loan as to which the related mortgaged property has been acquired by the issuing entity through foreclosure or deed-in-lieu of foreclosure (net of any net income on the property).

The "Determination Date" is the 22nd day of each month or, if that day is not a business day, the preceding business day; provided that the Determination Date in each month will be at least two business days before the related Distribution Date.

Advances are intended to maintain a regular flow of scheduled interest and principal payments on the certificates rather than to guarantee or insure against losses. The master servicer is obligated to make

advances with respect to delinquent payments of principal of or interest on each mortgage loan to the extent that the advances are, in its reasonable judgment, recoverable from future payments and collections or insurance payments or proceeds of liquidation of the related mortgage loan. If the master servicer determines on any Determination Date to make an advance, the advance will be included with the distribution to certificateholders on the related Distribution Date. Any failure by the master servicer to make a deposit in the Certificate Account as required under the pooling and servicing agreement, including any failure to make an advance, will constitute an event of default under the pooling and servicing agreement if the failure remains unremedied for five days after written notice of the event of default. If the master servicer is terminated as a result of the occurrence of an event of default, the trustee or the successor master servicer will be obligated to make any advance, in accordance with the terms of the pooling and servicing agreement.

An advance will be reimbursed from the payments on the mortgage loan with respect to which the advance was made.  However, if an advance is determined to be nonrecoverable and the master servicer delivers an officer's certificate to the trustee indicating that the advance is nonrecoverable, the master servicer will be entitled to withdraw from the Certificate Account an amount equal to the nonrecoverable advance.  Reimbursement for advances and nonrecoverable advances will be made prior to distributions on the certificates.

## Certain Modifications and Refinancings

Countrywide Home Loans will be permitted under the pooling and servicing agreement to solicit borrowers for reductions to the mortgage rates of their respective mortgage loans. If a borrower requests such a reduction, the master servicer will be permitted to agree to the rate reduction provided that Countrywide Home Loans purchases the mortgage loan from the issuing entity immediately following the modification. Any purchase of a mortgage loan subject to a modification will be for a price equal to 100% of the Stated Principal Balance of that mortgage loan, plus accrued and unpaid interest on the mortgage loan up to the next Due Date at the applicable net mortgage rate, net of any unreimbursed advances of principal and interest on the mortgage loan made by the master servicer.  Countrywide Home Loans will remit the purchase price to the master servicer for deposit into the Certificate Account within one business day of the purchase of that mortgage loan. Purchases of mortgage loans may occur when prevailing interest rates are below the interest rates on the mortgage loans and mortgagors request modifications as an alternative to refinancings. Countrywide Home Loans will indemnify the issuing entity against liability for any prohibited transactions taxes and related interest, additions or penalties incurred by any REMIC as a result of any modification or purchase.

## The Issuing Entity

In connection with the issuance of the certificates, the depositor has formed Alternative Loan Trust 2007-1T1, a common law trust created under the laws of the State of New York, pursuant to the pooling and servicing agreement.  Alternative Loan Trust 2007-1T1 is referred to in this prospectus supplement as the "issuing entity" and is referred to in the prospectus as the "trust" or "trust fund".  The trustee serves as trustee of the issuing entity and acts on behalf of the issuing entity as the issuing entity does not have any directors, officers or employees.  The fiscal year end of the issuing entity is December 31.

The issuing entity's activities are limited to the transactions and activities entered into in connection with the securitization described in this prospectus supplement, and except for those activities, the issuing entity is not authorized and has no power to borrow money or issue debt, merge with another entity, reorganize, liquidate or sell assets or engage in any business or activities.  Consequently, the issuing entity is not permitted to hold any assets, or incur any liabilities, other than those described in this