IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF PITTSBURGH, <br><br> Plaintiff, <br><br> v. <br><br> COUNTRYWIDE SECURITIES CORPORATION, COUNTRYWIDE HOME LOANS, INC., CWALT, INC., CWMBS, INC., COUNTRYWIDE FINANCIAL CORPORATION, MOODY'S CORPORATION, MOODY'S INVESTORS SERVICES, INC., THE MCGRAW-HILL COMPANIES, INC, and FITCH, INC. <br><br> Defendants. | No. 2:09-cv-1520-AJS <br><br> Judge Arthur J. Schwab <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND** |

## I.    INTRODUCTION

The Federal Home Loan Bank of Pittsburgh ("Pittsburgh FHLB") filed four suits in the

Court of Common Pleas of Allegheny County, Pennsylvania, and the Defendants in all four have

sought to remove them to this District.[1] Because the Ratings Agencies are parties to all four

suits, common defendants and common counsel exist in the four actions. Pittsburgh FHLB filed

its motions for remand of the other three actions on November 9, 2009. The Notice of Removal

in this action includes the same arguments set forth in the Notices for the three previously filed

cases, and one new argument: that this Court has diversity jurisdiction. Diversity jurisdiction

---

[1]     These matters have all been assigned to this Court and are on a briefing schedule that results in them being ripe for consideration at the same time. Pittsburgh FHLB is the sole plaintiff in each case and the case numbers are as follows: No. 2:09-cv-1420, No. 2:09-cv-1421, and No. 2:09-cv-1457. Moody's Corporation, Moody's Investors Services, Inc., and the McGraw-Hill Companies, Inc. are defendants in all four actions. Fitch, Inc. appears in all but 2:09-cv-1421. J.P. Morgan-related entities are in both No. 2:09-cv-1420 and No. 2:09-cv-1421.

does not exist; Pittsburgh FHLB is a federally chartered organization that is not a citizen of any one state.

The other arguments raised by the Defendants in their removal petition have no more merit in this petition than they do in the Defendants' other petitions. First, Defendants argue that under 28 U.S.C. § 1334(b) this matter is "related to" the American Home Mortgage bankruptcy because one of the nine defendants has a relationship with American Home Mortgage. In the removal petition filed in No. 2:09-cv-1421—a case in which Defendants argued for removal based on another bankruptcy—the Defendants characterized their claims as "contingent" directly implicating controlling Third Circuit precedent that says contingent claims are insufficient to support jurisdiction under 28 U.S.C. § 1334(b).[2] Here, Defendants do not provide any materials to evaluate the nature of the claims but a simple investigation reveals that the relationship is contingent, and tenuous. The Third Circuit ruling continues to control: contingent liability is an insufficient basis on which to find a matter "related to" a bankruptcy proceeding. Second, Defendants argue that this Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), despite the fact that this is not a class action or even a "mass action." In fact, Pittsburgh FHLB is a single corporate entity that purchased for itself the securities that are the subject of this lawsuit. Finally, Defendants argue that this Court has original jurisdiction under Pittsburgh FHLB's charter. Pittsburgh FHLB's charter states that, among many other enumerated powers, it may "sue and be sued ... in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a). This language makes clear that this Court must be one of "competent" jurisdiction—that is, there must be some independent basis for jurisdiction, which the charter does not confer. The removal is without merit; remand is required.

---

[2]     The Defendants in 2:09-CV-01421 have since withdrawn the "related to" argument.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Pittsburgh FHLB filed this suit on October 15, 2009, in the Court of Common Pleas of Allegheny County, Pennsylvania. The action seeks damages for losses that Pittsburgh FHLB sustained and will sustain as a result of Defendants' violations of state and federal law in connection with the sale of certain mortgage-backed securities. The Defendants are Countrywide Securities Corporation, Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., Countrywide Financial Corporation, Moody's Corporation, Moody's Investors Services, Inc., The McGraw-Hill Companies, Inc., and Fitch, Inc. (collectively,  "Defendants"). The term "Ratings Agencies" refers to Moody's Corporation, Moody's Investors Services, Inc., The McGraw-Hill Companies, Inc., and Fitch, Inc. The suit does not name American Home Mortgage Corporation ("AHM"), which the Defendants allege is a subsidiary of a company currently in bankruptcy in Delaware.

Pittsburgh FHLB's complaint does not claim or seek class-action status. It names Pittsburgh FHLB as the sole plaintiff and it alleges six counts: fraud, negligent misrepresentation, violation of the Pennsylvania Securities Act of 1972, and three violations of the Securities Act of 1933: § 11 (15 U.S.C. § 77k), § 12(a) (15 U.S.C. § 77l(a)), and § 15 (15 U.S.C. § 77o). Half of the claims sound in Pennsylvania law—two common-law and one statutory. The federal Securities Act claims plainly cannot be removed. The statute explains that these claims can be brought in state or federal courts:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this title... concurrent with State and Territorial courts… of all suits in equity and actions at law brought to enforce any liability or duty created by this title.

15 U.S.C. § 77v(a). If the claims are brought in state court, they cannot be removed to federal

court; on this point, the Securities Act contains an unambiguous prohibition on removal (with the

exception of certain situations not relevant in this case):

> **[N]o case** arising under this title and **brought in any State court** of competent jurisdiction **shall be removed** to any court of the United States."

*Id*. (emphases added).

## III.   ARGUMENT

This matter should be remanded to the forum selected by Pittsburgh FHLB. Defendants'

arguments in support of removal are without merit. While all of the Defendants' arguments will

be addressed, this brief does not track the same outline used by the Defendants for this simple

reason: three of the four arguments raised by these Defendants have already been addressed in

recently filed motions for remand.

Section A below addresses the Defendants' new argument (one that the Ratings Agencies

elected to forego in three earlier filings), which is the assertion that this Court has diversity

jurisdiction even though Pittsburgh FHLB is a national citizen and not a citizen of any one state.

Section B responds to the argument that this case is "related to" the alleged bankruptcy of

American Home Mortgage Corporation ("AHM") even though AHM is not a party to this suit

and even though under established Third Circuit case law, the contingent claim that only one of

these Defendants may have in that bankruptcy does not require removal to bankruptcy court.

Section C covers the Defendants' lead argument—that a statute governing class actions

somehow applies to this suit by a single corporate entity. Defendant Fitch, Inc. lost this same

argument as recently as November 10, 2009, in the Northern District of California (the day after

Pittsburgh FHLB filed its three remand motions in the other cases pending before the Court).

Section D addresses the Defendants' last argument, namely that Pittsburgh FHLB's federal

charter creates original jurisdiction in this Court and confers on the *Defendants* the right to choose where Pittsburgh FHLB pursues its litigation. Finally, Pittsburgh FHLB would be entitled to legal fees after remand if, as shown here, the removal was not justified. This is addressed in Section E.

### A.  This Court Does Not Have Diversity Jurisdiction

Generally speaking, federally-chartered corporations are not citizens of any state for diversity jurisdiction purposes and so they are not subject to diversity-based removal. *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 455 (3d Cir. 1959).[3] Two exceptions to this rule exist. The first is if the governing statute declares jurisdiction to exist in a particular state. *Iceland Seafood Corp. v. Nat'l Consumer Co-op. Bank*, 285 F. Supp.2d 719, 723 (E.D.Va. 2003) *relying on Bankers' Trust Co. v. Texas Pac. Rw. Co.*, 241 U.S. 295, 308-309 (1916). For example, when discussing banking associations, Section 1348 of Title 28 explicitly states "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." No such language exists for the Federal Home Loan Bank system or for Pittsburgh FHLB. Thus the Defendants' proposal not only lacks statutory foundation but runs contrary to the statutory scheme.

In the *Iceland Seafood* case, the court found no statutory establishment of citizenship and rejected the argument that the National Consumer Cooperative Bank Act created jurisdiction in Washington, D.C., even though it provided that "the principal office of the Bank shall be in Washington, District of Columbia, and, for the purpose of venue, shall be considered a resident thereof." 285 F. Supp. 2d at 723 (quoting  12 U.S.C. § 3011). Here, the Defendants make the

---

[3]     If the United States were to be the owner of the majority interest in Pittsburgh FHLB, then federal subject-matter jurisdiction would exist. But that is not the case here and is not alleged. *See* 12 U.S.C. § 1349; *Provident National Bank v. California Savings & Loan Association,* 624 F.Supp. 858, 861 (E.D. Pa. 1985).

same argument—which essentially boils down to "since it is called the Federal Home Loan Bank of Pittsburgh, it must be a citizen of Pennsylvania"[4]—while not addressing the fact that Pittsburgh FHLB's charter does not have, but clearly could have, an explicit statement of citizenship. The *Iceland Seafood* court rightly held that "[p]rincipal office, as used in the chartering statutes, is not the same as principal place of business as used in determining jurisdiction." *Id.* (citing *Monsanto Co. v. Tenn. Valley Auth.*, 448 F. Supp. 648, 650 (N.D. Ala. 1978)).

The second exception to this general rule is this: A federally chartered corporation can still be a citizen of a particular state if its activities, either factually or by charter, are limited to a particular state. *Burton v. U.S. Olympic Comm.,* 574 F. Supp. 517, 519 (C.D. Cal. 1983) (citing *Feuchtwanger Corp.*, 272 F.2d at 454-56). If not, the federally chartered corporation is considered a national citizen and federal jurisdiction does not exist. *Little League Baseball v. Welsh Publ'g Group, Inc.*, 874 F. Supp. 648, 651 (M.D. Pa. 1995).

Here, Pittsburgh FHLB's activities are expressly *not* limited to one state; it has 320 member financial institutions, with 18 members in Delaware and 62 members in West Virginia. Unlike the test for a state corporation—which compares the operations of the corporation in various states to determine in which state those operations are most concentrated and, thus, where the principal place of business lies—"[t]he test for federal corporations is not a comparison but an examination of whether or not the corporation conducts its activities over a

---

[4]     As the Defendants write, "Here, the Plaintiff is the Federal Home Loan Bank <u>of Pittsburgh, Pennsylvania</u>..." Notice of Removal at ¶ 38. Not mentioned is the fact that this nomenclature is mandated by the very same charter provision that directs the creation of no more than 12 federal home banks to cover the whole of the United States and has no implications for citizenship. 12 U.S.C. § 1423.

widespread area." *Little League,* 874 F. Supp. at 653. Thus, the Defendants' calculations of the percentage of Pittsburgh FHLB members located in Pennsylvania misses the point.

The chartering statutes considered in *Little League*, authorized activities outside of Pennsylvania. *Id*. at 652. The remaining question then was whether the activities of Little League were confined to Pennsylvania and "localized." *See id*. While it was undisputed that the principal offices, land, and facilities owned by Little League were located in Pennsylvania, that the Little League World Series was often held there, and that the majority of daily operations were carried out there, the court found that Little League was not localized. *Id*. at 655.

Similarly, in *Burton*, the court found that the United States Olympic Committee ("USOC") was authorized to do business throughout the United States and, in fact, did so. That the USOC conducted its daily operations solely in Colorado, owned no property outside of Colorado, and paid taxes solely in Colorado, did not serve to establish localization. 574 F. Supp. at 522 n.7. The court found that "localization requires confinement of activities, either by charter or in fact, to a single state." *Id*. Here, evidence of this nature was not alleged in the removal petition nor can it be adduced. In addition to Pittsburgh having members in three states, "[a]ny building and loan association, savings and loan association, commercial bank, homestead association, insurance company, savings bank, credit union or insured depository institution" with its principal place of business in Pittsburgh FHLB's jurisdiction can apply for membership. 12 U.S.C. § 1424(b). Pittsburgh FHLB transacts business with all of its member institutions by offering loans, purchasing their residential mortgages, and offering other types of credit and non-credit products and services. *See* Federal Home Loan Bank of Pittsburgh, Form 10-Q (for quarter ended June 2009), at 1 (Defts.' Ex. C) ("Pittsburgh 10-Q"). The bank also issues debt to the public through the Office of Finance, and does so all over the country. *Id*. There are only twelve

Federal Home Loan Mortgage banks, and they are intended to cover the entire country. *Id*. This particular home loan bank cannot be said to be a citizen of just one state.

Finally, there is a well established policy of strictly construing the removal statute, particularly when based on diversity grounds. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 110-12 (3d Cir. 1990). This policy is intended to secure state sovereignty by not removing cases that properly belong in state court. Any doubts about the propriety of removal are to be resolved in favor of remand to state court. *Id. See also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). The burden is the Defendants', and it has not been met. *Boyer*, 913 F.2d at 111.

**B.      Pittsburgh FHLB's Claims are Not "Related to" the American Home Mortgage Bankruptcy Proceedings**

The Defendants claim that if Defendant Countrywide Home Loans, Inc. is found liable in this action, Countrywide Home Loans, Inc. would have a right to indemnification and repurchase from American Home Mortgage Corporation ("AHM"), which issued some of the mortgages that Countrywide securitized and that Pittsburgh FHLB purchased.[5] *See* Notice of Removal ¶¶ 28-29. The Defendants believe that the holding company of AHM is in bankruptcy. *See* Notice of Removal at ¶ 27. Thus, they argue, this Court has "related to" jurisdiction over this action under 28 U.S.C. § 1334(b). This is contrary to Third Circuit precedent and, at least as importantly, the Defendants have omitted from their Notice essential facts that eliminate AHM's already negligible link to *this* action.

A proceeding is "related to" a bankruptcy if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v.*

---

[5]      Although not mentioned by the Defendants, only three of the five Countrywide Certificates at issue in this action involve mortgages underwritten by AHM. *See* Compl. ¶¶ 149-156.  Moreover, Defendants themselves only point to one of the nine defendants as having any claims having to do with AHM.  Notice of Removal at ¶¶ 28-29.

*Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984), *overruled on other grounds*, *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). But this conceivable-effect test becomes limited "[a]fter confirmation of a reorganization plan, [where] retention of bankruptcy jurisdiction may be problematic." *In re Resorts Intl., Inc. v. Price Waterhouse & Co., LLP*, 372 F.3d 154, 165 (3rd Cir. 2004). The reason for this is that "the debtor's estate ceases to exist once confirmation has occurred." *Id.* To find a "conceivable effect" in a post-confirmation situation, "the claim must affect an integral aspect of the bankruptcy process, there must be a close nexus to the bankruptcy plan or proceeding." *Id.* at 168. In *Resorts* the court found that this close nexus between the claims and the bankruptcy proceeding was ***lacking*** because resolution of the claims would "not interfere with the implementation of the Reorganization Plan." *Id.*

Here, the Defendants fail to mention in their Notice of Removal that AHM has had a confirmed Plan of Liquidation since February 23, 2009. Because of this Plan, jurisdiction is more than problematic—it cannot exist. With the Plan in place, the tangential claim that one defendant here might have on the AHM estate cannot be said to "interfere" with the bankruptcy reorganization plan. *See id.*; *see also Amended Chapter 11 Plan of Liquidation*, Feb. 18, 2009 ("Liquidation Plan") (Exhibit 1 to the Declaration of Eric C. Ernstene ("Ernstene Decl.")); *see also Findings of Fact, Conclusions of Law and Order Conforming the Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009*, February 23, 2009 ("Liquidation Order") (Ernstene Decl. Ex. 2). For purposes of this motion, there is no relevant distinction between a reorganization plan and a liquidation plan.[6] The Liquidation Plan not only determines

---

[6]     Reorganization plans and liquidation plans serve the same ultimate purpose—distribution of the assets. *See* 11 U.S.C. §§ 1121, 1123, 1125 (Chapter 11 of the Bankruptcy Code simply refers to a "plan," and does not specifically use the terms "reorganization plan" or "liquidation plan"); *see The CIT Group/Equipment Financing, Inc. v. BDO Seidman, LLP*, 2009 WL 2171231 (W.D. Pa.) (holding that it was "not persuaded" by the argument that the case under

the fate of all claims related to the estate, but it also likely specifically limits Defendants' claims where it states that: "each Executory Contract entered into by… any of the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be rejected." Ernstene Decl. Ex. 1 at Art. 11.  While Defendants fail to indicate the current status of their alleged claims against AHM, if those claims have in fact been rejected, then the extent of Defendants' claims have already been determined and can no longer have a "close nexus to the bankruptcy plan or proceeding."

Even if it were not the case that a post-petition plan had been confirmed, Pittsburgh FHLB has not asserted any claims against non-party AHM, and despite *Pacor*'s seemingly broad conceivable-effect test, a single  Defendant's potential contingent indemnification claims do not necessarily confer "related to" bankruptcy jurisdiction. *See In re Combustion Eng'g, Inc.,* 391 F.3d 190, 225 (3d Cir. 2004). An indemnification claim may be related to a bankruptcy proceeding *after* the right to indemnification has arisen, but so long as the right to indemnification is contingent on the outcome of another lawsuit, "related to" bankruptcy jurisdiction does not exist. *See Combustion Eng'g,* 391 F.3d at 227; *see also In re Federal-Mogul Global, Inc.,* 300 F.3d 368, 382 (3d Cir. 2002) (holding that the district court lacked subject-matter jurisdiction because any potential indemnification and contribution claims against the debtor had not accrued and would not accrue until another lawsuit determined whether the defendant had liability and therefore a right to indemnification.) As stated unambiguously by this Court, "not all indemnification agreements between a defendant in a civil action and a non-party bankrupt debtor create 'related to' jurisdiction," rather, "only when the right to indemnification

---

consideration was distinguishable from *Resorts Int'l* because it involved a liquidation plan, but *Resorts Int'l* involved a reorganization plan); *see also In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 120 n.4 (3d Cir. 2004) (explaining that Chapter 11 contemplates both liquidation plans as well as reorganization plans for addressing the distribution of assets).

is established and is not contingent on the filing of a separate action is the case related to the bankruptcy proceeding." *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 753 (E.D. Pa. 2003).

The Defendants elected to attach neither the "Purchase Agreement" between Countrywide Home Loans, Inc. and AHM (which allegedly creates indemnification and repurchase claims against AHM) nor the proof of claim that Countrywide Home Loans, Inc. has filed in the AHM bankruptcy, despite relying on both documents in their Notice of Removal. Notice of Removal at ¶¶ 26-29. Undersigned counsel has located what appears to be the "Purchase Agreements" (Ernstene Decl. Exs. 3, 4) in the AHM bankruptcy docket and the related proofs of claim (Ernstene Decl. Ex. 5). The two documents show that those agreements in fact create ***contingent claims***. The signatory Defendant, Countrywide Home Loans, Inc., must prove its rights to claims under both agreements, and its claims are not guaranteed independent of showing AHM's liability. The proofs of claim filed by Countrywide Home Loans, Inc. state that "the Repurchase Obligations and Indemnification Obligations under the Purchase Agreements, the Broker Agreement and the Loan Purchase Agreement to which CHL ***believes*** AHM will ***ultimately*** be liable to CHL ***have not been formally calculated and/or asserted*** by CHL or may otherwise be ***contingent and/or unliquidated***." *See* Ernstene Decl. Ex. 5 and the exhibit thereto at Ex. A (emphasis added). Countrywide Home Loans, Inc. can also decline to exercise its alleged repurchase rights. *See* Ernstene Decl. Ex. 4.

Indeed, the Third Circuit's decision in *Pacor* and *Combustion Engineering*—the only cases that Defendants cite for "related to" jurisdiction—require that this Court remand this case to state court. *See Combustion Eng'g,* 391 F.3d at 232 (holding that "any indemnification claims against Combustion Engineering resulting from a shared production facility would require the

intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for "related to" jurisdiction."); *Pacor,* 743F.2d at 995 (holding that related-to jurisdiction did not exist because "there would be no automatic creation of liability," rather "[a]t best, [the proceeding] is a precursor to the potential third party claim for indemnification by [defendant] against [the debtor].").

*Steel Workers Pension Trust v. Citigroup, Inc.,* 295 B.R. 747, 750 (E.D. Pa. 2003), is of particular relevance to this motion. There the plaintiffs, holders of WorldCom bonds rendered worthless by WorldCom's bankruptcy, brought a state-court action against the bond underwriters and issuer's accounting firm alleging failure to conduct adequate due diligence and asserting claims under Sections 11, 12, and 15 of the Securities Act. *Id.* at 748. The underwriter defendants removed the case and later filed a motion with the MDL requesting transfer to the Southern District of New York for consolidation with other securities actions involving the WorldCom bankruptcy. *Id.* at 749. The defendants argued that the existence of an indemnification agreement between them and the debtor WorldCom, whether it applied immediately or at some later point, supplied a basis for "related to" bankruptcy jurisdiction. *Id.* The court remanded the case to state court because "[a]ny indemnification claim asserted by the underwriter defendants against WorldCom '[had] not yet accrued and would require another lawsuit' before it could have an impact on WorldCom's bankruptcy." *Id.* at 753.  The same is true here.

Finally, the Defendants also attempt to rely on the bankruptcy proof of claim filed only by Countrywide Home Loans, Inc., against AHM as grounds for "related to" jurisdiction.  Notice of Removal at ¶¶ 28, 29. The mere filing of a proof of claim cannot by itself confer automatic jurisdiction to the bankruptcy court. *See Transamerica Fin. Life Ins. Co. v. Merrill Lynch & Co.*

*et al.*, 302 B.R. 620 (N.D. Iowa 2003) (holding that plaintiffs' filing of proofs of claims in the Enron bankruptcy did not constitute "the requisite 'related to' jurisdiction because [it was not the case that] an award in this lawsuit [would] reduce their claims in bankruptcy court, such that recovery in bankruptcy court would reduce the award of damages here."); *see also In Re Exide Techs.*, 544 F.3d 196,  (3d Cir. 2008) (holding that "the filing of a proof of claim *may* cause claims against non-debtors to be deemed 'related to' proceedings") (emphasis added).

Because the Bankruptcy Court has confirmed a Liquidation Plan for AHM, and as the Defendants have identified no statutory indemnity obligations or express agreements that would automatically give rise to indemnification, this Court lacks subject-matter jurisdiction over Countrywide Home Loans, Inc.'s claims and should remand the proceedings to Pennsylvania state court.[7]

### C.      This is Not a Mass Action under the Class Action Fairness Act

This section of this Memorandum of Law in support of the remand motion, which is related to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b), mirrors the similar sections in the other Memoranda of Law that Pittsburgh FHLB filed earlier with the Court, with one exception, as follows.

On November 10, 2009, in the Northern District of California, Defendant Fitch, Inc. lost the very same CAFA-based argument that it makes now. *California Public Employees Retirement System v. Moody's Corp. et al,* No. C 09-03628 SI, Order Granting Plaintiff's Motion to Remand (N.D. Cal. Nov. 10, 2009) (Ernstene Decl. Ex. 6) ("*CalPERS*"). In the *CalPERS* case,

---

[7]      Because removal is not proper under 28 U.S.C. § 1452(a), Defendants' argument in Paragraph 27 of their Notice or Removal that the bankruptcy removal statute controls over the anti-removal provision of § 22(a) of the Securities Act of 1933 is moot. *Steel Workers Pension Trust v. Citigroup, Inc.,* 295 B.R. 747, 750 (ED. Pa. 2003) (holding its decision to remand because the matter was not "related to" a bankruptcy proceeding was dispositive and that it did not need to consider the prohibition against removal contained in § 22(a) of the Act).

the court rejected the argument that the suit was really brought on behalf of the 1.6 million

beneficiaries of CalPERS. *Id.* at 9. The court cited the legislative history of CAFA, noting that

"the Senate Committee Report for CAFA defines 'mass actions' as 'suits brought on behalf of

numerous *named plaintiffs* who claim that their suits present common questions of law or fact

that should be tried together even though they do not seek class certification status." *Id.* (citing S.

Rep. No. 109-14 (2005)) (emphasis added). The court then concluded that "CalPERS' individual

beneficiaries have not made any direct claims in this action; rather, the sole plaintiff in this case

is CalPERS itself," and thus the court rejected CAFA as a basis for federal jurisdiction. *Id.*[8]

> [*Note: The briefing that follows from this point forward is essentially identical to the briefing on these topics filed in support of remand in Case No. 2:09-cv-1420, Case No. 2:09-cv-1421, and Case No. 2:09-cv-1457 but it is presented here for completeness and so as to avoid any waiver argument.*]

Defendants bear the burden of establishing that the federal court has jurisdiction over

class-action lawsuits removed under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§

1332(d) and 1453(b). *See Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006). CAFA confers

jurisdiction on federal courts in certain limited cases, but CAFA explicitly covers only "class

actions" and "mass actions," the latter of which is defined to mean "any civil action . . . in which

monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that

the plaintiffs' claims involve common questions of law or fact" 28 U.S.C. § 1332(d)(11)(B)(i).

---

[8]     The *Calpers* court cited to *Kitazato v. Black Diamond Hospitality Investments*, No. 09-00271, 2009 U.S. Dist. LEXIS 92927, at *10 (D. Haw., Oct. 5, 2009) (Exhibit 7). In *Kitazato*, the court rejected the defendants' argument that because among the plaintiffs there was an unincorporated association with 490 members, CAFA applied. The *Kitazato* court explained that "mass actions simply concern the direct claims of individual plaintiffs without regard to any 'putative plaintiff class,' as is typical in a class action," and noted that "[h]ere, there is nothing before this Court even suggesting that the purported 490 other Resort Owners have appeared or otherwise made direct claims in this action." *Id.* at *18.

This matter is not a class action, and the Defendants do not contend otherwise. They do contend that this is a "mass action," although as shown below, this argument is unsupportable.

### 1.    Pittsburgh FHLB is Not "100 or more persons"

The claims in this lawsuit are asserted on behalf of one single plaintiff—Pittsburgh FHLB. A "mass action" under CAFA requires "100 or more persons." 28 U.S.C. § 1332(d)(11)(B)(i). While Pittsburgh FHLB is indeed a corporation and all of its shares are owned by approximately 320 financial institution members, it is without a doubt a corporate institution in its own right. Under Section 1432(12) of Title 12, Pittsburgh FHLB's status as an individual corporate entity is unambiguous:

> (a) The directors of each Federal Home Loan Bank shall, in accordance with such rules and regulations as the Board may prescribe, make and file with the Board at the earliest practicable date after the establishment of such bank, an organization certificate which shall contain such information as the Board may require. Upon the making and filing of such organization certificate with the Board, *such bank shall become, as of the date of the execution of its organization certificate, a body corporate*, and as such and in its name as designated by the Board it shall [have certain enumerated powers] . . . .

12 U.S.C. § 1432(a) (emphasis added). As a simple matter of statutory analysis then, this suit does not involve multiple plaintiffs and it does not involve "common questions of law or fact" among multiple plaintiffs. A single plaintiff, itself a corporate entity, has brought suit for losses it has personally suffered relating to securities it alone has bought. The Defendants try to avoid this plain fact by arguing that the 320 shareholders of Pittsburgh FHLB are the real "parties in interest." But from CAFA's perspective, having member banks who are shareholders does not make Pittsburgh FHLB different from IBM, a company with hundreds of thousands of shareholders but that is not subject to CAFA anytime it brings suit.

### 2.     Pittsburgh FHLB is the "True Party" in Interest in this Suit

The Defendants' bizarre argument that Pittsburgh FHLB's member banks, the

shareholders of Pittsburgh FHLB, are actually the parties in interest here—even though those

entities are not even identified in the Complaint—is based on the findings of a single, inapposite

case.[9] Misusing *Louisiana v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008), the Defendants

claim that the "members are the true parties in interest," and thus are mass action plaintiffs

within the meaning of CAFA. Notice of Removal, ¶ 14.[10]

The *Louisiana* lawsuit was brought as a *parens patriae* action by the state Attorney

General and it sought to recover, on behalf of more than 100 individual policyholders, damages

suffered as a result of the insurers' and related parties' anticompetitive practices. *Id*. at 422. The

removing defendants argued that the suit was in fact a "mass action." *Id.* at 423. The court

determined that to be a "true party," the plaintiff must have a direct interest of its own in the

outcome: "'Generally speaking, a party is a real party in interest when it is directly and

personally concerned in the outcome of the litigation to the extent that his participation therein

will insure a genuine adversary issue between the parties." *Id.* at 428 (citations and internal

quotation marks omitted). In *Louisiana*, the state had no such direct interest and the court held

that the relief sought was for the benefit of certain consumers and not for the benefit of the state

in its sovereign capacity. *Id*. at 428-29. As the court concluded, "Louisiana's argument that it is

the only real party in interest is belied by the petition it filed in state court, which makes clear

---

[9]     The capital structure, including stock ownership of Pittsburgh FHLB is described in its filings with the SEC, including its 10-Ks and 10-Qs. *See*, *e.g.*, Pittsburgh 10-Q (Defts.' Ex. C) , where at page 1, Pittsburgh FHLB states: "The Bank is a cooperative institution, owned by financial institutions that are also its primary customers."

[10]     Among Pittsburgh FHLB's members is Chase Bank USA, National Association, based in Delaware. Chase Bank USA is an affiliate of JPMorgan Chase & Co., one of the defendants in this case. Defts.' Ex. D.

that it is seeking to recover damages suffered by *individual policyholders.*" *Id.* at 429. Indeed, Louisiana's "petition [was] rife with statements that make clear that the policyholders are the real parties in interest in this action." *Id.* at 430.

Whether Pittsburgh FHLB is the true party in interest depends not on whether Pittsburgh FHLB has shareholders, but whether the wrong suffered is suffered by the corporation or by the shareholders directly. *See CCC Information Services, Incorp. v. American Salavage Pool Assoc.*, 230 F.3d 342 (7th Cir. 2000) (holding that because the defendant breached its contract to share information with plaintiff and not plaintiff's members, it is plaintiff that "feels the blow," and that whether "the members feel the blow through a trickle down effect is irrelevant to jurisdictional analysis"). Using the phrasing from the *Louisiana* court, Pittsburgh FHLB has a direct and unique interest in the outcome of the case. The losses for which it seeks redress are on its own books (Complaint ¶ 173) and stem from securities that it purchased and holds in its own name. (Complaint ¶¶ 39, 53, 67, 83). That its shareholders may be affected through a "trickle down effect" does not mean they are the parties in interest. Indeed, the Complaint describes the indirect way in which the members are affected by the Defendants' conduct (the suspension by Pittsburgh FHLB of the payment of a dividend to the shareholders), but the prayer for relief seeks relief for Pittsburgh FHLB alone. Because Pittsburgh FHLB is an independent entity, with the rights and duties that accompany that status, and because Pittsburgh FHLB is the true party in interest in this case, there is only one Plaintiff in this action and CAFA cannot create a basis for removal.

### D. Defendants Cannot Remove under § 1441 based on the Pittsburgh FHLB Federal Charter

Defendants cannot invoke federal jurisdiction based on Pittsburgh FHLB's federal charter. To hold that Pittsburgh FHLB's charter establishes automatic federal jurisdiction would

violate notions of law and logic for three reasons. First, Congress intentionally acted to eliminate automatic federal-question jurisdiction for federally chartered corporations when it passed 28 U.S.C. § 1349. Second, the provision from Pittsburgh FHLB's charter allowing it to sue or be sued in "any court of competent jurisdiction" fails to confer federal jurisdiction. And finally, Pittsburgh FHLB's right to sue in state court would be stripped if, by merely being a party to the case, federal jurisdiction were automatically granted regardless of the types of claims brought.

> **1.     Federal Jurisdiction based on the Pittsburgh FHLB Federal Charter is Barred under § 1349**

Congress specifically passed 28 U.S.C. § 1349 to eliminate automatic federal-question jurisdiction over federally chartered corporations. Originally passed in 1925, and amended in 2006, Section 1349 provides that "[t]he district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."[11] In *Crockett Mortgage Co. v. Gov't Nat'l Mortgage Ass'n (Ginnie Mae)*, the plaintiff filed its claims in federal court by pleading that Ginnie Mae, by virtue of its federal charter, was subject to federal jurisdiction. 418 F. Supp. 1081, 1083 (D.C. Pa. 1976). Dismissing the action for want of jurisdiction, the court held that, under Section 1349, federal incorporation may be the basis for federal jurisdiction only if the United States owns more than one-half of the capital stock. *Id.*

Here, the government neither owns the majority of Pittsburgh FHLB nor treats it as an extension of governmental services. Rather, Pittsburgh FHLB operates as a business corporation

---

[11]     This broadly phrased law was enacted after Congress twice acted to stem a flood of federal charter cases that were deemed to arise under federal law based solely on their charter. *See* Act of July 12, 1882, ch. 290, § 4, 22 Stat. 162, 163, amended by Act of March 3, 1887, ch. 373, § 4, 24 Stat. 552, 554-55 (eliminating federal question jurisdiction in cases involving banks); Act of Jan. 28, 1915, ch. 22, § 5, 38 Stat. 803, 804 (eliminating federal question jurisdiction over suits involving federally chartered railroad companies).

that falls squarely within the express language of Section 1349 barring federal-question jurisdiction over federally charted corporations.

> **2.      Federal Court is Not a Court of "Competent Jurisdiction" Over the Claims Asserted by Pittsburgh FHLB**

Defendants' reliance on *American Nat'l Red Cross v. S.G.*, 505 U.S. 247 (1992), as grounds for federal jurisdiction over Pittsburgh FHLB's claims is misplaced. First, the Supreme Court in *Red Cross* held nothing more than that the Red Cross's "sue and be sued" provision "*may* be read to confer court federal court jurisdiction" depending on the precise language of the charter. 505 U.S. at 255. *Red Cross* does not hold that another federal charter that mentions federal court is a grant of federal jurisdiction.

Second, the "sue and be sued" provision found in Pittsburgh FHLB's charter is materially different than the provision found in the Red Cross charter. In *Red Cross*, the charter provides that Red Cross could "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." *Red Cross*, 505 U.S. at 251. On the other hand, the Pittsburgh FHLB charter allows it "to sue and be sued, to complain and to defend, *in any court of competent jurisdiction*, State or Federal." 12 U.S.C. § 1432(a) (emphasis added). The presence of the phrase "in any court of any competent jurisdiction" is a material difference and a difference that this Circuit has recognized for decades. Consider *Lindy v. Lynn*, a Third Circuit case interpreting the same language at issue here. 501 F.2d 1367, 1368 (3d Cir. 1974). The relevant language came from Section 1702 of Title 12, which authorized the Secretary of Housing and Urban Development, in his official capacity, "to sue and be sued in any court of competent jurisdiction, State or Federal." *Id.* The plaintiff in *Lindy* sued the Secretary over a contract dispute that required the application of Pennsylvania state law. *Id.* The Circuit Court vacated the judgment of the district court for lack of jurisdiction, finding that the language "any court of competent

jurisdiction, State or Federal"—which is identical to the language in Pittsburgh FHLB's

charter—failed to confer federal jurisdiction. *Id.* at 1369. ("The same is true of 12 U.S.C. §1702,

which makes the Secretary suable in his official capacity in a court which is otherwise of

competent jurisdiction. Here it is clear that the district court is not otherwise of competent

jurisdiction to entertain this lawsuit.").

Other decisions dating after *Red Cross* have similarly followed the Third Circuit's

reasoning that "any court of competent jurisdiction, State or Federal" does not confer federal

jurisdiction. For instance, in *Knuckles v. RBMG, Inc.*, 481 F.Supp.2d 559 (S.D. W.Va. 2007), the

court held, after an extensive review of *Red Cross'* holding, that Fannie Mae's charter did not

confer federal jurisdiction because Fannie Mae's charter included the phrase "in any court of

competent jurisdiction":

> [T]he phrase "any court of competent jurisdiction, State or Federal," found in
> Fannie Mae's charter, but not in the charter of the Red Cross, must be given
> effect.  For the phrase "any court of competent jurisdiction" to have any meaning
> it should be read as differentiating between state and federal courts that possess
> "competent" jurisdiction, i.e., an independent basis for jurisdiction, from those
> that do not.

*Knuckles*, 481 F.Supp.2d at 563.

Whether Fannie Mae's "sue and be sued" provision confers federal jurisdiction has been

dealt with by two other courts, both outside the Third Circuit and thus without *Lindy* as

controlling authority. In 2006, the district court for the District of Columbia, reciting principles

of statutory construction, correctly stated that Fannie Mae's "sue and be sued" clause—which is

almost identical to the Pittsburgh FHLB "sue and be sued" provision—is "substantively different

from that of the similar clause contained within the charter examined in *American National Red*

*Cross*":

> [T]o accept [the] argument that [Fannie Mae's provision] provides a blanket grant
> of federal jurisdiction to all actions in which Fannie Mae is a party, regardless of
> whether an independent basis for federal jurisdiction also exists, is to read the
> term 'of competent jurisdiction' entirely out of that 'sue and be sued' clause.

*Fed. Nat'l Mortgage Ass'n (Fannie Mae) v. Sealed*, 457 F. Supp.2d 41, 44 (D.D.C. 2006).[12] In a

curious case two years later, a spirited 2-1 split decision of the D.C. Circuit held that Fannie

Mae's charter conferred federal jurisdiction. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits

Trust v. Raines*, 534 F.3d 779, 788 (D.C. Cir. 2008). Factually distinguishable from this case,

*Pirelli* involved shareholders filing derivative suits on behalf of Fannie Mae against Fannie Mae

directors. *Id*. at 783. And unlike here, both parties agreed that federal jurisdiction was proper,

and litigated their claims in federal court for four years. *Id*. at 784. On the appeal of a summary

judgment order, the two-member majority, addressing the jurisdiction issue for the first time,

agreed that jurisdiction was proper and then moved onto affirming the district court's decision to

dismiss the protracted suit in its entirety. *Id*. at 783. While concurring in judgment (that the suit

could not survive), the third panel member made a thorough and well-reasoned dissent on the

jurisdiction issue. *Id*. at 795-800. Judge Brown stated that parties should not be able to "team[]

up to manufacture jurisdiction"; that Congress's use of "competent jurisdiction" is meaningful

and requires an independent source of subject-matter jurisdiction; and that interpreting *Red Cross*

to mean that federal jurisdiction is automatically conferred simply because the "sue and be sued"

provision mentions "federal court" is "silly" and "shirk[s the court's] responsibility to examine

---

[12]     The court also observed that adopting Fannie Mae's interpretation that the phrase "any
court of competent jurisdiction, State or Federal," authorized suit in *any* state or federal court—
whether or not an independent basis for jurisdiction existed—"would be grievously out of step
with these myriad other statutes [Fair Labor Standards Act, the Age Discrimination in
Employment Act, the Family and Medical Leave Act, and the Americans with Disabilities Act],
none of which have been interpreted with such staggering breadth." 457 F. Supp.2d at 45. This is
consistent with the ultimate holding that the chosen court must have an independent basis for
jurisdiction.

'the ordinary sense of the language used [and] basic canons of statutory construction." *Id*. at 795-99.

Third, not only is the language in the Red Cross "sue and be sued" provision substantively different than the Pittsburgh FHLB provision, the legislative history of the Red Cross provision is materially different. The Red Cross "sue and be sued" provision was amended in 1947 to include the terms "State and Federal." *Red Cross*, 505 U.S. at 251-52. In holding that the Red Cross provision conferred federal jurisdiction, the Supreme Court observed that five years before Congress amended the Red Cross charter, the Supreme Court held that substantially similar language was sufficient to confer federal jurisdiction. *Id.* at 256-57 (comparing the Red Cross charter to the charter in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942)). The Supreme Court, therefore, concluded that Congress was "on prospective notice of the language necessary and sufficient to confer jurisdiction" and, indeed, relied on the Court's previous holding when drafting the amendment. *Id.* at 252, 257. Here, Congress has amended 12 U.S.C. § 1432, relating to the Federal Home Loan Banks, multiple times since Congress was placed "on prospective notice of the language necessary and sufficient to confer jurisdiction," and has never changed the language to confer federal jurisdiction.

Finally, Defendants' ability to remove under § 1441 based solely on the Pittsburgh FHLB federal charter—and, importantly, *without* any independent basis—must be construed in light of the concerns that federal jurisdiction is strictly confined to congressionally set limits. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941).  And, if federal jurisdiction is unclear, "all doubts should be resolved in favor of remand." *Johnson v. Roth*, No. 08-331, 2009 WL 2986607, at *2 (W.D. Pa. Sept. 15, 2009) (internal citations omitted) (citing *Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1262 (3d Cir. 1994)). Defendants bear the burden of

establishing that removal is appropriate and must overcome the strong presumption against removal. *Id.*; *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108 (3d Cir. 1990). Given Congress's decision to eliminate automatic federal question jurisdiction over federally charted corporations in § 1349, and given Congress's decision not to expressly grant federal jurisdiction in the Pittsburgh FHLB "sue and be sued" provision, the Court must resolve this issue in favor of remanding Pittsburgh FHLB's claim to state court jurisdiction.

> **3.     FHLB Pittsburgh's Choice to Sue in State or Federal Court would be Unfairly Thwarted if Defendants are Able to Remove Based Solely on Its Federal Charter**

If this Court were to accept Defendants' unprecedented position that the Pittsburgh FHLB federal charter confers federal jurisdiction over *all* actions in which Pittsburgh FHLB is a party—even those actions based solely on state claims or non-removable federal claims— Pittsburgh FHLB's choice to sue in Pennsylvania state court, which is expressly given to it in its charter, would be stripped. *See* 12 U.S.C. § 1432(a) (allowing federal home loan banks "to sue and be sued, to complain, and to defend, in any court of competent jurisdiction, *State* or Federal." (emphasis added)).

In contrast to *Red Cross* and most all other cases analyzing removal under the "sue and be sued" provision, Pittsburgh FHLB, the federally chartered corporation, is not attempting to file its claim in federal court or remove claims against it to federal court. Rather, the nonfederal Defendants are attempting to bootstrap their way into federal court using Pittsburgh FHLB's federal charter. But in two cases where a federally chartered bank brought a state court action and the defendant removed, the courts held that the defendants were not entitled to remove. In *Federal Land Bank of St. Louis v. Keiser*, 628 F. Supp. 769 (C.D. Ill. 1986), the Federal Land Bank brought a mortgage foreclosure action against defendant and the defendant removed.

Remanding the case, the court held that because the plaintiff's claims were based on state law, and because § 1349 failed to confer federal jurisdiction to federally chartered corporations which functioned like private corporations, the defendant was inappropriately using the plaintiff's federal status to attempt to get itself into federal court. 628 F. Supp. at 770-73. The court further noted that the defendant had "no standing" to remove the case based on plaintiff's federal charter and it was plaintiff's prerogative to choose state court. *Id.* at 770.

Similarly, in *Federal Land Bank of Columbia v. Cotton*, 410 F. Supp. 169 (N.D. Ga. 1975), the federally chartered plaintiff filed an action in state court attempting to enforce a contract claim pursuant to state law and the defendant removed. Rejecting the defendant's argument that the action arises under the laws of the United States because the plaintiff was a federally chartered corporation, the court held that "Congress has specifically declared that federally-chartered corporations cannot sue or be sued in federal court merely because they are federally chartered, unless the United States government owns 51% of the capital stock." *Id.* at 170 (citing 28 U.S.C. § 1349 as stated before 2006 amendment). The Court also noted that "[i]f plaintiff were considered an agency merely because it was chartered and regulated by the federal government, § 1349 would be rendered meaningless." *Id.* at 171.

Because Pittsburgh FHLB asserted only state claims and non-removable securities claims, similar to the federally chartered plaintiffs in *Cotton* and *Keiser*, Defendants should not be allowed to use the federal charter to trump Pittsburgh FHLB's choice of state court as its forum to litigate its claims.

### E.      Pittsburgh FHLB is entitled to fees upon remand

An order remanding this action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.

§ 1447(c). The Court need not determine that the defendants acted in bad faith in order to award costs and attorney's fees incurred as a result of seeking remand to state court. *Mints v. Educational Testing Service*, 99 F.3d 1253, 1260 (3d Cir. 1996). In this case, costs and attorney's fees are warranted. Defendant's removal in this case, particularly its claims under CAFA, was not justified, especially after the Defendants had the benefit of the earlier briefing showing the lack of merit in their removal petitions.

## IV.   CONCLUSION

For the reasons stated above, Pittsburgh FHLB respectfully requests that this Court order this matter remanded to state court and award Pittsburgh FHLB its fees and costs.

Dated: December 8, 2009

Respectfully submitted,

ROBINS, KAPLAN, MILLER & CIRESI LLP

   /s/ Bruce D. Manning

Thomas B. Hatch, MN ID No. 150939
  *(admitted pro hac vice)*
Bruce D. Manning, MN ID No. 312289
  *(admitted pro hac vice)*
Jennifer L. McKenna, MN ID No. 295802
  *(admitted pro hac vice)*
Jenny Gassman-Pines, MN ID No. 0386511
  *(admitted pro hac vice)*
Margaret M. Lockner, MN ID No. 0386861
  *(admitted pro hac vice)*
Katherine K. Bruce, MN ID No. 0388887
  *(admitted pro hac vice)*
800 LaSalle Avenue South, Suite 2800
Minneapolis, MN 55402
(612) 349-8500 (Telephone)
(612) 339-4181 (Facsimile)

LYNCH WEIS, LLC
Daniel P. Lynch

PA ID No. 68280
William J. Wyrick
PA ID No. 70656
501 Smith Drive, Suite 3
Cranberry Twp., PA 16066
(724) 776-8000 (Telephone)
(724) 776-8001 (Facsimile)

*Counsel for Plaintiff Federal Home Loan Bank of Pittsburgh*

81141645.2