UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------- X

FEDERAL HOME LOAN BANK OF PITTS-
BURGH,

               Plaintiff,

        v.

COUNTRYWIDE SECURITIES
CORPORATION, COUNTRYWIDE
HOME LOANS, INC., CWALT, INC.,
CWMBS, INC., COUNTRYWIDE
FINANCIAL CORPORATION,
MOODY'S CORPORATION,
MOODY'S INVESTORS SERVICE,
INC., THE MCGRAW-HILL COMPANIES, INC.,
and FITCH, INC.,

               Defendants.

-------------------------------------------------------------- X

: 
: 
: 
: 
:   Civil Action No. 2:09-cv-01520-AJS
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I. REMOVAL WAS PROPER UNDER CAFA. ............................................................................ 3

    A.    Pittsburgh FHLB Is a Nominal Party.................................................................... 5

    B.    Only Plaintiff's Member Banks Allegedly Have Incurred Losses. ........................ 6

II. REMOVAL WAS PROPER UNDER "RELATED TO" JURISDICTION. ............................ 8

    A.    CHL's Claims Confer "Related to" Bankruptcy Jurisdiction. .............................. 10

    B.    The Liquidation Plan Does Not Preclude Related to Bankruptcy
        Jurisdiction.......................................................................................................... 12

III. REMOVAL WAS PROPER UNDER PITTSBURGH FHLB'S CHARTER........................ 14

    A.    Section 1349 Does Not Apply. ............................................................................ 16

    B.    This Is a Court of "Competent Jurisdiction."....................................................... 17

    C.    Pittsburgh FHLB Does Not Have an Absolute Choice of Forum......................... 19

IV. REMOVAL WAS PROPER ON THE BASIS OF DIVERSITY JURISDICTION. ............. 20

    A.    Pittsburgh FHLB Is a "Body Corporate" of Pennsylvania. ................................. 21

    B.    Pittsburgh FHLB's Activities Are Localized in Pennsylvania. ............................ 23

V. SECTION 22(A) OF THE SECURITIES ACT DOES NOT BAR REMOVAL. ................... 26

Conclusion ........................................................................................................................... 29

# TABLE OF AUTHORITIES

CASES

Am. Nat'l Red Cross v. S.G.,
   505 U.S. 247 (1992).........................................................................................12, 13, 14, 16

Ass'n of Data Processing Serv. Orgs., Inc. v. Fed. Home Loan Bank of Cincinnati,
   421 F. Supp. 384 (S.D. Ohio 1976) ................................................................................13

Belcufine v. Aloe,
   112 F.3d 633 (3d Cir. 1997).............................................................................................10

Bennett v. Bally Manufacturing Corp.,
   785 F. Supp. 559 (D.S.C. 1992).......................................................................................23

Brown v. Jevic,
   575 F.3d 322 (3d Cir. 2009).......................................................................................22, 23

Burton v. U.S. Olympic Comm.,
   574 F. Supp. 517 (C.D. Cal. 1983) ..................................................................................20

Cal. Public Employees Retirement System v. Moody's Corp.,
   No. C 09-03628 SI, 2009 WL 3809816 (N.D. Cal. Nov. 10 , 2009) ..................................6

C.C. Port, Ltd. v. Davis-Penn Mortgage Co.,
   891 F. Supp. 371 (S.D. Tex. 1994) ..................................................................................16

Commercial Fed. Bank v. Dorado Network Sys. Corp.,
   No. 8:05CV391, 2005 WL 2218421 (D. Neb. Sept. 13, 2005) ...................................17, 20

Conjugal Society v. Chicago Title Insurance Co.,
   497 F. Supp. 41 (D.P.R. 1979)........................................................................................19

Connelly v. Fed. Nat'l Mortgage Ass'n,
   251 F. Supp. 2d 1071 (D. Conn. 2003)............................................................................16

Crockett Mortgage Co. v. Gov't Mortgage Ass'n,
   418 F. Supp. 1081 (E.D. Pa. 1976) .............................................................................13-14

DeBenedictis v. Merrill Lynch & Co., Inc.,
   492 F.3d 209 (3d Cir. 2007)............................................................................................23

Domenikos v. Roth,
   288 F. App'x 718 (2d Cir. 2008) .....................................................................................24

Elwert v. Pacific First Federal Savings & Loan Association of Tacoma, Wash.,
   138 F. Supp. 395 (D. Or. 1956) ..................................................................................18, 19

Ewing v. Fed. Home Loan Bank of Des Moines,
    645 F. Supp. 2d 707 (S.D. Iowa 2009) ........................................................................2, 13, 15

Fed. Land Bank of Columbia v. Cotton,
    410 F. Supp. 169 (N.D. Ga. 1975) ............................................................................17

Fed. Land Bank of St. Louis v. Keiser,
    628 F. Supp. 769 (C.D. Ill. 1986) ............................................................................17

Feuchtwanger v. Lake Hiawatha Federal Credit Union,
    272 F.2d 453 (3d Cir. 1959)..............................................................................18, 19

Ginsburg v. Agora, Inc.,
    915 F. Supp. 733 (D. Md. 1995) ..............................................................................23

Grun v. Countrywide Home Loans, Inc.,
    No. SA-03-CA-0141-XR, 2004 WL 1509088 (W.D. Tex. July 1, 2004)...............................16

Hardin v. Reliance Trust Co.,
    No. 1:04 CV 02079, 2006 WL 2850455 (N.D. Ohio Sept. 29, 2006) .....................................24

Highland Crusader Offshore Partners, L.P. v. Motient Corp.,
    No. A-06-CA-540-LY, 2006 WL 3358425 (W.D. Tex. Nov. 17, 2006).......................... 22-23

Hohl v. Bastian,
    279 B.R. 165 (W.D. Pa. 2002)..................................................................................10

Iceland Seafood Corp. v. Nat'l Consumer Co-op. Bank,
    285 F. Supp.2d 719 (E.D. Va. 2003) .........................................................................18

In re Am. Funds Sec. Litig.,
    556 F. Supp. 2d 1100 (C.D. Cal. 2008) ...................................................................24

In re Briscoe,
    448 F.3d 201 (3d Cir. 2006)..............................................................................22, 23

In re Columbia Gas Sys., Inc.,
    50 F.3d 233 (3d Cir. 1995)......................................................................................12

In re Combustion Eng'g,
    391 F.3d 190 (3d Cir. 2004)...........................................................................7, 10, 11

In re Fannie Mae 2008 Sec. Litig.,
    No. 09 Civ. 1352 (PAC), 2009 WL 4067266 (S.D.N.Y. Nov. 24, 2009)......................... 15-16

In re Resorts Int'l, Inc. v. Price Waterhouse & Co., LLP,
    372 F.3d 154 (3d Cir. 2004).....................................................................................11

In re U.S. Metalsource Corp.,
   163 B.R. 260 (Bankr. W.D. Pa. 1993) ...................................................................12

Katz v. Gerardi,
   552 F.3d 558 (7th Cir. 2009) ...............................................................................22

Kitazato v. Black Diamond Hospitality Investments,
   No. 09-00271, 2009 WL 3209298 (D. Haw. Oct. 6, 2009) .......................................6

Lehman Bros. Bank, FSB v. Frank T. Yoder Mortgage,
   415 F. Supp. 2d 636 (E.D. Va. 2006) ...............................................................17, 20

Lewis v. Fresne,
   252 F.3d 352 (5th Cir. 2001) ...............................................................................23

Little League Baseball v. Welsh Publ'g Group, Inc.,
   874 F. Supp. 648 (M.D. Pa. 1995) ........................................................................20

La. v. Allstate Ins. Co.,
   536 F.3d 418 (5th Cir. 2008) ...........................................................................4, 5, 6

Loyola Fed. Savings Bank v. Fickling,
   58 F.3d 603 (11th Cir. 1995) ..........................................................................20, 21

Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.,
   No. 07-5423, 2009 WL 2590087 (E.D. Pa. Aug. 20, 2009) ......................................5

Martin v. Franklin Capital Corp.,
   546 U.S. 132 (2005)............................................................................................24

N.J. Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4,
   581 F. Supp. 2d 581 (S.D.N.Y. 2008).....................................................................22

Pacor v. Higgins,
   743 F.2d 984 (3d Cir. 1984)..................................................................... 7, 9-10,11

Parent v. Murphy Exploration & Production Company-USA,
   No. 07-446-C, 2008 WL 191636 (M.D. La. Jan. 22, 2008) .....................................23

Peoples Mortgage Co. v. Fed. Nat'l Mortgage Ass'n,
   856 F. Supp. 910 (E.D. Pa. 1994) .........................................................................16

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines,
   534 F.3d 779 (D.C. Cir. 2008)..........................................................................12, 15

Provident National Bank v. California Federal Savings & Loan Association,
   624 F. Supp. 858 (E.D. Pa. 1985) .........................................................................21

Cal. Pub. Empls.' Ret. Sys. v. WorldCom, Inc.,
   368 F.3d 86 (2d Cir. 2004)......................................................................................22

State of N.J., Dep't of Treasury, Div. of Inv. v. Fuld,
   Civ. No. 09-1629, 2009 WL 1810356 (D.N.J. June 25, 2009) .................................22

Steel Workers Pension Trust v. Citigroup, Inc.,
   295 B.R. 747 (E.D. Pa. 2003) ..................................................................................10

## STATUTES

12 U.S.C. § 1432.............................................................................................................12, 18

12 U.S.C. § 1723a..................................................................................................................15

15 U.S.C. § 77........................................................................................................................23

28 U.S.C. § 1332.......................................................................................................1, 2, 3, 17

28 U.S.C. § 1334...............................................................................................................1, 7

28 U.S.C. § 1349....................................................................................................................12

28 U.S.C. § 1452.............................................................................................................2, 6, 7

28 U.S.C. § 1453......................................................................................................................1

Defendants[1] respectfully submit this opposition to Plaintiff Federal Home Loan Bank of Pittsburgh's ("Pittsburgh FHLB") motion to remand this action to Pennsylvania state court.

## PRELIMINARY STATEMENT

Plaintiff's motion to remand should be denied because this case was properly removed to this Court on four independently sufficient grounds:

<u>First</u>, this Court has jurisdiction over this case because it is a "mass action" brought by Pittsburgh FHLB on behalf of its approximately 320 member banks and is thus removable under the Class Action Fairness Act of 2005 ("CAFA").  <u>See</u> 28 U.S.C. §§ 1332(d)(2)(A), 1332(d)(11), 1453(b).  Plaintiff argues that this action is not a "mass action" because Pittsburgh FHLB is supposedly the real party in interest.  As Plaintiff itself concedes, however, it is a "cooperative institution, owned by financial institutions that are also its primary customers."  And, the Complaint alleges losses only to Plaintiff's member banks, not to Pittsburgh FHLB itself, making the member banks the real parties in interest and making this suit a "mass action."

<u>Second</u>, this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) because this case is related to the bankruptcy of American Home Mortgage Holdings ("AHMH").  The mortgage pools underlying the securities at issue in this case include loans purchased by defendant Countrywide Home Loans, Inc. ("CHL") from AHMH's wholly-owned subsidiary, American Home Mortgage Corporation ("American Home"), and Plaintiff's allegations of misrepresentations concerning those loans trigger indemnity obligations running from American Home to CHL. Plaintiff contends that "related to" bankruptcy jurisdiction does not exist because CHL's indem-

---

[1]   Defendants are Countrywide Securities Corporation, Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., Countrywide Financial Corporation, Moody's Corporation, Moody's Investors Service, Inc., The McGraw-Hill Companies, Inc., and Fitch, Inc.

nity claim supposedly is "contingent" and allegedly has been "rejected" by the AHMH Plan of Liquidation.  CHL's claim is still pending, however, and arises from an indemnity agreement automatically triggered by Plaintiff's allegations in this case.  There is thus nothing "contingent" about CHL's claim, and this case may be removed under 28 U.S.C. § 1452.

Third, this Court has jurisdiction pursuant to Pittsburgh FHLB's Charter, which explicitly states that Plaintiff may be sued in federal court.  Pittsburgh FHLB's sister bank, the Federal Home Loan Bank of Des Moines ("Des Moines FHLB"), recently relied on precisely this ground as a basis to remove a case.  The court in that case held that it had removal jurisdiction.  See Ewing v. Fed. Home Loan Bank of Des Moines, 645 F. Supp. 2d 707, 709 (S.D. Iowa 2009).  Plaintiff ignores this precedent, as well as the express language of its federal Charter, which the United States Supreme Court has held confers federal jurisdiction.

Fourth, this Court has jurisdiction under 28 U.S.C. § 1332 on the basis of the parties' complete diversity.  Plaintiff argues that diversity jurisdiction is unavailable because Pittsburgh FHLB is a federally chartered corporation that does not reside in any state.  That is incorrect. Here, complete diversity exists because Pittsburgh FHLB is a citizen of Pennsylvania since it is incorporated there and its activities are localized there.  Plaintiff's sister institution Des Moines FHLB recently asserted diversity jurisdiction on precisely these grounds as a basis for removing a case filed against it.

To keep the Court from focusing on the grounds in *this case* that warrant removal, Plaintiff tries to downplay the differences between this matter and its other suits that have been removed to this Court.  The Notice of Removal in this case, however, raises two grounds for removal not present in the other cases: related to bankruptcy jurisdiction and complete diversity jurisdiction.  Although Defendants believe that each of Plaintiff's cases was properly removed,

this action presents grounds for removal not asserted in any other case.  Those grounds and the others addressed in this brief demonstrate that removal was proper.

## ARGUMENT

### I.  REMOVAL WAS PROPER UNDER CAFA.

Under CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  The term "class action" en-compasses "mass actions," 28 U.S.C. § 1332(d)(11)(A) – actions "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(B)(i).  This action is removable as a "mass action" because Pittsburgh FHLB's 320 member banks – not Pittsburgh FHLB – are the real parties in interest.

Plaintiff does not dispute that:

- this action satisfies CAFA's minimal diversity requirement, 28 U.S.C. § 1332(d)(2)(A) (see Notice of Removal ¶ 16);

- this action satisfies CAFA's mass action amount-in-controversy requirement, 28 U.S.C. § 1332(d)(11)(B)(i) (see Notice of Removal ¶¶ 17-18); and

- no exceptions to CAFA, no bases for discretionary declination of jurisdiction, and no other restrictions on federal jurisdiction apply, §§ 1332(d)(3), (4), (5), (9), and (11) (see Notice of Removal ¶ 19).

Rather, Plaintiff argues that this case is not removable under CAFA because Pittsburgh FHLB is supposedly an "independent entity" and the true party in interest.  (Plaintiff's Memorandum of

3

Law in Support of Motion to Remand ("Pl. Mem.") 17.) The Complaint and Plaintiff's brief,

however, confirm that its member banks are the true parties in interest.

## A.   Pittsburgh FHLB Is a Nominal Party.

Courts must look beyond captions and labels to determine whether a suit nominally

brought by a single entity is in fact a "mass action" under CAFA.  As the Fifth Circuit explained

in assessing whether a complaint ostensibly brought by a single entity should be treated as a CA-

FA mass action:  "It is true that the words 'class action' or 'mass action' do not appear in [the

plaintiff]'s complaint.  However, that does not end our inquiry.  It is well-established that in de-

termining whether there is jurisdiction, federal courts look to the substance of the action and not

only at the labels that the parties may attach."  La. v. Allstate Ins. Co., 536 F.3d 418, 424 (5th

Cir. 2008).  To decide whether removal is appropriate, courts must identify the "real party in in-

terest" in the litigation.  Id. at 428.

Here, Pittsburgh FHLB is a nominal party.  Plaintiff is not a traditional corporation, and

its members are not typical shareholders.  Plaintiff argues that it is no different "from IBM, a

company with hundreds of thousands of shareholders . . . "  (Pl. Mem. 15.)  Not so.  Unlike IBM,

Pittsburgh FHLB "is a cooperative institution, owned by financial institutions that are also its

primary customers."  (Id. 16 n.9 (internal quotation marks omitted).)  It maintains strict criteria

for membership and permits only members to purchase its capital stock.  (Pittsburgh FHLB,

Form 10-Q (filed Nov. 12, 2009) ("Pittsburgh FHLB 10-Q"), Concannon Decl. Ex. 1, at 1-2.)[2]

Pittsburgh FHLB members – in contrast to IBM shareholders – must purchase stock in amounts

proportional to their borrowing needs.  (Pittsburgh FHLB Capital Plan, Concannon Decl. Ex. 2,

---

[2]   The term "Concannon Decl." refers to the Declaration of Sarah H. Concannon, filed here-
      with.

at 4.)  Those purchases are not investments but capital contributions that provide them with access to a low-interest credit facility.  (Pittsburgh FHLB 10-Q at 1-2.)  Unlike IBM's stock, which is actively traded on the public markets, Pittsburgh FHLB's "[c]apital stock is not traded" and "no market mechanism exists for the exchange of stock outside the cooperative structure of the bank."  (Id. at 116.)  To compare Pittsburgh FHLB to IBM makes no sense.

### B.      Only Plaintiff's Member Banks Allegedly Have Incurred Losses.

"Generally speaking, a party is a real party in interest when it is directly and personally concerned in the outcome of the litigation to the extent that his participation therein will insure a genuine adversary issue between the parties."  Louisiana, 536 F.3d at 428 (citation and internal quotation marks omitted).  As Plaintiff concedes, whether it is the true party in interest depends on "whether the wrong suffered is suffered by the corporation or by the shareholders directly." (Pl. Mem. 17.)  Plaintiff, however, has not alleged any actionable loss to Pittsburgh FHLB, and only Plaintiff's member banks are alleged to have incurred losses.

This case concerns the alleged purchase of mortgage-backed securities (Compl. ¶¶ 40-116), which "are long-term debt instruments that represent the income stream from a pool of mortgages," Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co., No. 07-5423, 2009 WL 2590087, at *1 (E.D. Pa. Aug. 20, 2009) (citations omitted).  A purchaser of mortgage-backed securities has suffered a compensable loss only if it has not received all the income that it was due.  Id. at *13.  Pittsburgh FHLB, however, has not alleged that it has failed to receive even a single payment from the securities at issue here.[3]   Consequently, it has incurred no loss.

---

[3] Plaintiff alleges only the speculative possibility that at some point in the future cash flows may be disturbed.  (See Compl. ¶¶ 74, 84, 94, 105, 116 (unspecified number of mortgages "will default in the future"); id. ¶ 116 (mortgage pools allegedly "expected to deteriorate further in the future").)

In contrast, the Complaint alleges harm to Pittsburgh FHLB's <u>members only</u>.  For example, Plaintiff alleges that, "because of the conduct of the Defendants (and others), Pittsburgh FHLB announced in late December 2008 that it was suspending its dividends to its members." (Compl. ¶ 264.)  Likewise, the Complaint alleges that Pittsburgh FHLB paid dividends "until the losses caused by the Defendants and others forced it to suspend the payment of a dividend in late 2008." (<u>Id.</u> ¶ 38.)[4]  Pittsburgh FHLB's members are thus the true parties in interest because they allegedly have seen their dividends suspended.  <u>See</u> <u>Louisiana</u>, 536 F.3d at 429 ("In fact, Louisiana's argument that it is the only real party in interest is belied by the petition it filed in state court, which makes clear that it is seeking to recover damages suffered by <u>individual policyholders</u>." (emphasis in original)).[5]  Because this action seeks recovery for the alleged harm to Pittsburgh FHLB's approximately 320 members, it is a "mass action" removable under CAFA.[6]

## II.   REMOVAL WAS PROPER UNDER "RELATED TO" JURISDICTION.

Section 1452 provides for the "[r]emoval of claims related to bankruptcy cases."  Here, the Complaint has triggered contractual indemnity obligations owed to CHL by American Home. Because CHL's indemnity claim could affect the administration of the AHMH bankruptcy estate, this case is "related to" the AHMH bankruptcy and removal was proper under Section 1452.

---

[4]   Defendants do not concede that any damages allegedly suffered by Pittsburgh FHLB's members were caused by any Defendant's alleged actions.

[5]   Pittsburgh FHLB's members need not be the <u>only</u> parties in interest for the Court to conclude that this case is a mass action.  In <u>Louisiana</u>, the court held that the suit was a mass action even though the Louisiana attorney general was also a true party in interest insofar as it sought injunctive relief.  536 F.3d at 430.

[6]   <u>California Public Employees Retirement System v. Moody's Corp.</u>, No. C 09-03628 SI, 2009 WL 3809816 (N.D. Cal. Nov. 10 , 2009) ("<u>CalPERS</u>"), and <u>Kitazato v. Black Diamond Hospitality Investments</u>, No. 09-00271, 2009 WL 3209298 (D. Haw. Oct. 6, 2009) (cited at Pl. Mem. 13-14 & n.8), are inapposite.  These cases were found not to be "mass actions" because neither concerned the direct claims of the named plaintiff's members.  <u>See</u> <u>CalPERS</u>, 2009 WL 3809816, at *7; <u>Kitazato</u>, 2009 WL 3209298, at *6.  Here, in contrast, only the member banks – not Pittsburgh FHLB – are alleged to have any possible direct claims.

Section 1452(a) provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or action under section 1334 of this title."  Under 28 U.S.C. § 1334(b), this Court has jurisdiction to hear all civil proceedings that are "related to cases under title 11," which is the United States Bankruptcy Code.  A case is "related to" a bankruptcy proceeding within the meaning of 28 U.S.C. § 1334(b) when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  In re Combustion Eng'g, 391 F.3d 190, 226 (3d Cir. 2004) (internal quotation marks and emphasis omitted).  As the Third Circuit has explained, "the proceeding need not be against the debtor or the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling or administration of the bankrupt estate."  Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds, Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995).

Here, this action is "related to" the AHMH bankruptcy proceeding because American Home made 57 separate representations and warranties to CHL regarding the quality of the American Home mortgage loans that are included in the pools of mortgages underlying the securities at issue in this case.  (See Purchase Agreement, Ernstene Decl. Ex. 3, § 3.2.)[7]  Those representations and warranties relate to loan underwriting (e.g., id. §§ 3.2(a), (b), (p), (cc), (kk), (mm), (pp), (uu)), lending standards (e.g., id. §§ 3.2(g), (aa), (uu)), and appraisals (e.g., id. §§ 3.2(r), (x), (uu)), among other things.  For example, American Home represented and warranted:

---

[7]  The term "Ernstene Decl." refers to the Declaration of Eric C. Ernstene, filed in support of Pittsburgh FHLB's motion to remand on December 8, 2009 (Docket No. 49).

> No error, omission, misrepresentation, negligence, fraud or similar occurrence with re-spect to a Mortgage Loan has taken place on the part of the Seller or any other person, in-cluding, without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan; no predatory or deceptive lending prac-tices, including, without limitation, the extension of credit without regard to the ability of the borrower to repay and the extension of credit which has no apparent benefit to the borrower, were employed in the origination of the Mortgage Loan[.]

(Id. § 3.2(uu).)  American Home also agreed to indemnify CHL in connection with any alleged or actual breach of its representations and warranties and to repurchase mortgage loans that ma-terially breached its representations and warranties.  (Id. §§ 3.3, 3.4.)  None of these obligations is contingent in any way.

On August 6, 2007, American Home's parent, AHMH, filed for bankruptcy.  See In re Am. Home Mortgage Holdings, Inc., No. 07-11047-CSS (Bankr. D. Del. filed Aug. 6, 2007).  CHL filed a proof of bankruptcy claim arising out of American Home's indemnification and re-purchase obligations under the Purchase Agreement and applicable law.  (Proof of Claim, Ernestene Decl. Ex. 5.)  That claim is still pending.

## A.    CHL's Claims Confer "Related to" Bankruptcy Jurisdiction.

As Plaintiff recognizes, if CHL's right to indemnification is not contingent on the filing of a separate lawsuit, it confers related to bankruptcy jurisdiction.  (Pl. Mem. 10-11.)  Here, no such separate suit is necessary to trigger American Home's obligations.  Plaintiff  nonetheless argues that CHL has "potential contingent indemnification claims" because (1) CHL must prove its rights to claims, which supposedly are not guaranteed independent of showing American Home's liability under the Purchase Agreement, and (2) CHL's proof of claim states that the in-demnification obligations under the Purchase Agreement "have not been formally calculated and/or asserted by CHL or may otherwise be contingent and/or unliquidated."  (Id. 11 (emphasis omitted).)  Both arguments are meritless.

8

First, American Home's obligation to pay for the costs that CHL incurs in defending Pittsburgh FHLB's claims in this action is automatic – regardless of American Home's ultimate liability for breach of its representations and warranties:

> [T]he Seller [i.e., American Home] *shall defend and indemnify* the Purchaser [i.e., CHL] and hold it harmless against any losses, damages, penalties, fines, forfeitures, judgments and any related costs including, without limitation, reasonable and necessary legal fees, resulting from any claim, demand, defense or liability based upon or arising out of any act or omission on the part of the Seller in receiving, processing, funding or servicing any Mortgage Loan, or from any assertion based on, grounded upon or resulting from a breach or *alleged breach* of any of the Seller's representations and warranties contained in this Article III.

(Purchase Agreement § 3.4 (italics added).)  Pittsburgh FHLB's Complaint in this case alleges misstatements concerning the quality of American Home loans and thus alleges claims "resulting from" or "arising out of" the "alleged breach" of American Home's representations and warranties about those loans to CHL.  As such, American Home is contractually required to pay for CHL's defense in this action, and CHL is not required to prove its right to ultimate recovery on these claims.

Second, Plaintiff misunderstands CHL's proof of claim.  That proof of claim asserts claims arising under the Purchase Agreement – including attorneys' fees, expenses and costs – as of the petition date and thereafter.  (Proof of Claim at 6.)  Those indemnification claims include "a claim in an amount yet to be determined for additional liabilities, losses, damages, fees, costs and other amounts and claims payable under" the Purchase Agreement.  (Id.)  Although the amount of the claim has not been formally calculated and the final amount cannot yet be determined, that does not make CHL's claim "contingent" on any other lawsuit within the meaning of Pacor and Combustion Engineering.  As the Third Circuit has explained, when a debtor has contractually agreed to indemnify a third-party for any liability incurred as a result of the agreement (as American Home did here), an action that triggers those indemnification obligations "could

and would affect the estate in bankruptcy" because the indemnification agreement "would automatically result in indemnification liability . . ." Pacor, 743 F.2d at 995; accord In re Combustion Eng'g, 391 F.3d at 226 ("We noted that other cases finding 'related to' jurisdiction over actions involving non-debtors involved contractual indemnity obligations between the debtor and non-debtor that automatically resulted in indemnification liability against the debtor." (citing Pacor)); Belcufine v. Aloe, 112 F.3d 633, 636 (3d Cir. 1997) ("existence of [contractual] indemnification claim demonstrated that the employees' claims against the [debtor] could conceivably have an effect on the bankruptcy estate and therefore satisfied the 'related to' test"); Hohl v. Bastian, 279 B.R. 165, 175 (W.D. Pa. 2002) ("related to" jurisdiction existed because debtor's "[b]ylaws do not require [the defendant] to initiate a separate action against the corporation or meet other preconditions in order to invoke the indemnification provision").

The Purchase Agreement creates an immediate obligation for American Home to indemnify CHL against legal fees and other costs, as well as any judgments, related to American Home's <u>alleged</u> breach of its representations and warranties.  Under controlling Third Circuit authority, this action is related to the AHMH bankruptcy proceeding and removable under Section 1334(b).  See Pacor, 743 F.2d at 994.[8]

---

[8]  Steel Workers Pension Trust v. Citigroup, Inc., 295 B.R. 747 (E.D. Pa. 2003) (cited at Pl. Mem. 12), is inapposite because the indemnity obligation in that case was not automatic (as it is here), but was contingent and required the indemnified party to prove its claim first.  295 B.R. at 753 (no related to jurisdiction because any indemnification claim "'[had] not yet accrued and would require another lawsuit' before it could have an impact on [the debtor's] bankruptcy").

**B.** **The Liquidation Plan Does Not Preclude Related to Bankruptcy Jurisdiction.**

Plaintiff argues that the AHMH Plan of Liquidation has been confirmed, and that CHL's proof of claim will not "interfere" with the plan because it supposedly involves an "executory" contract rejected under the Plan.  (Pl. Mem. 9-10.)  This argument is specious.

First, although the Plan of Liquidation has been confirmed, that does not mean that CHL's claim will not conceivably alter American Home's liabilities – the correct standard for related to bankruptcy jurisdiction.  See Combustion Eng'g, 391 F.3d at 226; Pacor, 743 F.2d at 994.  To the contrary, the Plan of Liquidation provides that, if CHL's pending claim against American Home is allowed, CHL will receive its pro rata share of the estate's assets in full satis- faction of its claim, thereby reducing the payout to other creditors.  (Plan of Liquidation, Ern- stene Ex. 1, Art. 4, § G.2.)  Moreover, the Court has retained jurisdiction over the allowance and estimation of claims, including CHL's claims, even after the confirmation of the Plan of Liquida- tion.  (Id., Art. 14, § A.5.; Order Confirming Plan of Liquidation, Ernstene Ex. 2, § O.)[9]  The disposition of CHL's proof of claim – to the extent it is allowed – will affect the portion of AHMH's assets that will remain for distribution to other creditors.

Second, CHL's claims do not arise from a pre-bankruptcy petition executory contract. To the contrary, American Home excluded them from its schedule of executory contracts.

---

[9]  In re Resorts Int'l, Inc. v. Price Waterhouse & Co., LLP, 372 F.3d 154 (3d Cir. 2004) (cited at Pl. Mem. at 9), is inapposite.  Resorts involved a reorganization plan that transferred the right to sue Donald Trump and certain affiliates to a litigation trust.  372 F.3d at 157-58.  Af- ter the plan's confirmation, the trustee brought an auditor malpractice claim against the ac- counting firm for the Trust (i.e., not the debtor).  Id. at 158.  The court found that there was no bankruptcy jurisdiction because the malpractice suit would have only an attenuated effect on creditors, which no longer held claims in the bankruptcy estate but only rights in the liti- gation trust holding the claim against Trump.  Id. at 169-70.  Here, CHL's claim would have a direct effect on other unsecured creditors, which share pro rata in assets of AHMH's estate and the size of whose shares will be affected by the disposition of CHL's proof of claim.  See supra p. 11.

(American Home Summary of Schedules, Schedule G—Executory Contracts and Unexpired Leases, Concannon Decl. Ex. 3). That is not surprising. As CHL's proof of claim makes clear, the claims arise post-petition. (Proof of Claim at 6.) Moreover, for the purposes of the Bankruptcy Code, a contract is executory where performance remains due *on both sides*. See In re Columbia Gas Sys., Inc., 50 F.3d 233, 239 (3d Cir. 1995). Where one party has no obligation other than the payment of money, the contract is not executory. See In re U.S. Metalsource Corp., 163 B.R. 260, 269 (Bankr. W.D. Pa. 1993). CHL fully performed its obligation under the Purchase Agreement by paying American Home for mortgage loans. There is no executory contract.

Third, CHL's claims against American Home are currently pending in the bankruptcy proceeding of AHMH and have not been disallowed. (Notice of Removal ¶¶ 28-29.) Because the extent to which CHL's bankruptcy claims will be allowed remains to be determined by the bankruptcy court, those claims have a close nexus to the bankruptcy proceeding and provide a basis for jurisdiction here. (See Pl. Mem. 10.)

## III. REMOVAL WAS PROPER UNDER PITTSBURGH FHLB'S CHARTER.

This Court has jurisdiction over this matter pursuant to Pittsburgh FHLB's congressional Charter. Pittsburgh FHLB's sister bank, Des Moines FHLB, itself recently argued that the FHLB Charter confers removal jurisdiction:

> FHLB is a federal instrumentality or a federally chartered corporation established by act of Congress under the Federal Home Loan Bank Act of 1932. 12 U.S.C. §§ 1421, et seq. Its corporate charter statute provides that it has the power "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a). This language confers original subject matter jurisdiction in federal courts. See, e.g., American Nat'l Red Cross v. S.G., 505 U.S. 247, 255 (1992); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines, 534 F.3d 779, 785 (D.C. Cir. 2008). Thus, the Court has original subject matter jurisdiction over this matter as long as FHLB is a party to it and for this reason should be removed to this Court.

O'Connor Enter. Group v. Spindustry Sys. Inc., Civ. No. 4:09-CV-01483 (S.D. Tex. May 18, 2009) (Des Moines FHLB's Notice of Removal, Concannon Decl. Ex. 4, ¶ 2, Docket No. 4:09-cv-01483).  O'Connor remains in federal court.  Des Moines FHLB made the same argument in Ewing v. Federal Home Loan Bank of Des Moines, No. 4:09-cv-106 (S.D. Iowa 2009) (Des Moines FHLB's Amended Notice of Removal, Concannon Decl. Ex. 5, ¶ 13-15, Docket No. 4:09-cv-106).  The Ewing court found that it had jurisdiction.  See Ewing v. Fed. Home Loan Bank of Des Moines, 645 F. Supp. 2d at 709.[10]

A.    **Section 1349 Does Not Apply.**

Plaintiff argues that "federal jurisdiction based on the Pittsburgh FHLB federal charter is barred under § 1349."  (Pl. Mem. 18.)  That is not the basis for removal here.  Section 1349 provides that "[t]he district court shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress."  As Plaintiff recognizes, Section 1349 by its very terms applies only to civil actions where federal incorporation is the basis for federal jurisdiction.  (Pl. Mem. 18.)  Here, federal jurisdiction is based on a different ground – the "sue and be sued" provision of Pittsburgh FHLB's Charter.  The Supreme Court has distinguished between jurisdiction under Section 1349 and jurisdiction under a federal charter's "sue and be sued" provision, holding that the "sue and be sued" provision "suffices to confer federal jurisdiction independently of the organization's federal incorporation."  Red Cross, 505 U.S. at 251 & n.3.[11]  In removing on the basis of the same charter language at

---

[10]  See also Ass'n of Data Processing Serv. Orgs., Inc. v. Fed. Home Loan Bank of Cincinnati, 421 F. Supp. 384, 392 (S.D. Ohio 1976) (relying on the "sue and be sued" clause of the Federal Home Loan Banks' congressional charter as a ground for jurisdiction).

[11]  Plaintiff cites Crockett Mortgage Co. v. Gov't Mortgage Ass'n, 418 F. Supp. 1081 (E.D. Pa. 1976) (cited at Pl. Mem. 18), but that case is inapposite.  Not only does it predate Red Cross,
[Footnote continued on next page]

issue in this case, Des Moines FHLB specifically noted that Section 1349 "do[es] not undermine the creation of federal jurisdiction under sue and be sued provisions of federal corporate charters." Ewing (Des Moines FHLB's Brief in Support of Resistance to Motion to Remand, Concannon Decl. Ex. 6, at 3-4.)

   B.   **This Is a Court of "Competent Jurisdiction."**

   Plaintiff contends that a "federal court is not a court of 'competent jurisdiction' over the claims asserted by Pittsburgh FHLB." (Pl. Mem. 19.) The Supreme Court, however, has squarely held that a federal charter which specifically refers to federal courts confers federal jurisdiction. In Red Cross, the Supreme Court interpreted an analogous "sue and be sued" provision in the charter of the American National Red Cross, which authorizes it "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 505 U.S. at 248 (internal quotation marks omitted). The Supreme Court held that "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." Id. at 255. As the dissent in Red Cross confirmed: "The Court today concludes that whenever a statute granting a federally chartered corporation the 'power to sue and be sued' specifically mentions the federal courts (as opposed to merely embracing them within general language), the law will be deemed . . . to confer on federal district courts jurisdiction over any and all controversies to which that corporation is a party." Id. at 265 (Scalia, J., dissenting) (emphasis in original). Pittsburgh FHLB's Charter does precisely that.

   There are no material differences in the language or legislative history of the "sue and be sued" provisions of the Pittsburgh FHLB and Red Cross charters. Indeed, following Red Cross,

---

[Footnote continued from previous page]
   but federal jurisdiction was based solely on defendant's status as a federal corporation – not on its "sue and be sued" provision. Crockett, 418 F. Supp. at 1083.

the D.C. Circuit – the only Court of Appeals to consider the issue – applied <u>Red Cross</u> to the "sue and be sued" provision in the charter of the Federal National Mortgage Association ("Fannie Mae"), which is almost identical to the "sue and be sued" provision in Pittsburgh FHLB's Charter.  (Pl. Mem. 20.)[12]   The D.C. Circuit held "that express reference to federal courts in a federally chartered entity's sue-and-be-sued clause was necessary <u>and sufficient</u> to confer jurisdiction."  <u>Pirelli</u>, 534 F.3d at 784 (internal quotation marks omitted).  "Applying the <u>Red Cross</u> rule to the present case," the Circuit Court held "that there is federal jurisdiction because the Fannie Mae 'sue and be sued' provision expressly refers to the federal courts in a manner similar to the Red Cross statute."  <u>Id.</u>  Citing <u>Red Cross</u> and <u>Pirelli</u>, Des Moines FHLB made precisely this argument in both <u>Ewing</u> and <u>O'Connor</u>.[13]

Also citing <u>Red Cross</u> and <u>Pirelli</u>, the Southern District of New York recently denied a motion to remand in a similar case.  <u>See</u> <u>In re Fannie Mae 2008 Sec. Litig.</u>, No. 09 Civ. 1352 (PAC), 2009 WL 4067266, at *3 (S.D.N.Y. Nov. 24, 2009).  In <u>Fannie Mae</u>, the plaintiff sued Fannie Mae in New Jersey state court, alleging violations of the Securities Act of 1933 (the "Securities Act") in connection with a Fannie Mae securities offering.  2009 WL 4067266, at *1. The defendants removed.  The court held that Fannie Mae's charter conferred federal jurisdiction

---

[12]  Fannie Mae's charter also authorizes it to "sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal . . . "  12 U.S.C. § 1723a(a).

[13]  Plaintiff contends that the phrase "in any court of competent jurisdiction" in Pittsburgh FHLB's charter makes <u>Red Cross</u> inapposite because the Red Cross charter did not contain such language.  (Pl. Mem. 19.)  As the D.C. Circuit explains, however, that language does not constitute a material difference.  Rather, "[t]he words 'of competent jurisdiction' help clarify that: (i) litigants in state courts of limited jurisdiction must satisfy the appropriate jurisdictional requirements; (ii) litigants, whether in federal or state court, must establish that court's personal jurisdiction over the parties; (iii) litigants relying on the 'sue-and-be-sued' provision can sue in federal district courts but not necessarily in all federal courts. . . ." <u>Pirelli</u>, 534 F.3d at 785 (citations omitted).  Des Moines FHLB also agrees that the "competent jurisdiction" language does not render <u>Red Cross</u> inapplicable, citing <u>Pirelli</u>.  <u>See</u> <u>Ewing</u> (Brief in Support of Resistance to Motion to Remand at 6.)

because it provided that Fannie Mae may "sue and be sued" in federal courts: "Since federal courts have jurisdiction over Fannie Mae, its removal of the <u>Kramer</u> action was appropriate." <u>Id.</u> at *3.[14]

### C.      **Pittsburgh FHLB Does Not Have an Absolute Choice of Forum.**

Plaintiff argues that its right to sue in state court would be lost if "the Pittsburgh FHLB federal charter confers federal jurisdiction over <u>all</u> actions in which Pittsburgh FHLB is a party – even those actions based solely on state claims or non-removable federal claims . . ." (Pl. Mem. 23 (emphasis in original).)  Not so.  It still has the right to sue in state court, but its Charter like-wise gives defendants the right to remove.  Des Moines FHLB made exactly this point about the FHLB Charter language in removing state court actions filed against it.  <u>See</u> <u>O'Connor</u> (Des Moines FHLB's Notice of Removal ¶ 2 (citations omitted)).  Moreover, this is precisely the re-sult the Supreme Court intended in <u>Red Cross</u>: the federal charter provision "confers original ju-risdiction on federal courts over all cases to which the Red Cross is a party, with the consequence that the organization is thereby authorized to remove from state to federal court any state-law action it is defending."  505 U.S. at 248.  What Plaintiff is really arguing is that Pittsburgh FHLB

---

14  The vast majority of other district courts to consider the language of Fannie Mae's charter have also found that it confers federal jurisdiction.  <u>See</u> <u>Peoples Mortgage Co. v. Fed. Nat'l Mortgage Ass'n</u>, 856 F. Supp. 910, 917 (E.D. Pa. 1994) ("Fannie Mae is a federally chartered corporation, 12 U.S.C. § 1717(a)(2)(B), and the National Housing Act, 12 U.S.C. § 1723a(a), confers subject matter jurisdiction upon this court."); <u>Grun v. Countrywide Home Loans, Inc.</u>, No. SA-03-CA-0141-XR, 2004 WL 1509088, at *2 (W.D. Tex. July 1, 2004); <u>Connelly v. Fed. Nat'l Mortgage Ass'n</u>, 251 F. Supp. 2d 1071, 1072-73 (D. Conn. 2003); <u>C.C. Port, Ltd. v. Davis-Penn Mortgage Co.</u>, 891 F. Supp. 371, 372 (S.D. Tex. 1994), <u>aff'd</u>, 61 F.3d 288 (5th Cir. 1995).

alone may invoke federal jurisdiction under its Charter.  Plaintiff, however, cites no authority for the novel argument that its choice of forum is absolute.[15]

## IV.    REMOVAL WAS PROPER ON THE BASIS OF DIVERSITY JURISDICTION.

Even if Pittsburgh FHLB were the true party in interest (which it is not), the Court none-theless would have jurisdiction under 28 U.S.C. § 1332 on the basis of complete diversity.[16] Plaintiff does not dispute that the amount in controversy exceeds $75,000, exclusive of interest and costs, or that no defendant is a citizen of Pennsylvania.  (See Notice of Removal ¶¶ 17-18, 37.)  Moreover, although federally chartered entities are generally not citizens of any state for diversity jurisdiction purposes, Plaintiff acknowledges that two exceptions to this general rule exist under which diversity jurisdiction arises: (1) when Congress incorporates a federally char-tered corporation as a "body corporate" of a particular state (as it did here) and (2) when a feder-ally chartered corporation's activities are sufficiently localized in a given state (as Pittsburgh FHLB's activities are here).  See Lehman Bros. Bank, FSB v. Frank T. Yoder Mortgage, 415 F. Supp. 2d 636, 639-40 (E.D. Va. 2006); Commercial Fed. Bank v. Dorado Network Sys. Corp., No. 8:05CV391, 2005 WL 2218421, at *3 (D. Neb. Sept. 13, 2005).  Here, Pittsburgh FHLB is a citizen of Pennsylvania under both standards.

---

[15]  The cases Plaintiff cites (Pl. Mem. 23-24) provide no support for an absolute forum right, holding that a defendant may not remove an action where there is no original jurisdiction. See Fed. Land Bank of Columbia v. Cotton, 410 F. Supp. 169, 171 (N.D. Ga. 1975); Fed. Land Bank of St. Louis v. Keiser, 628 F. Supp. 769, 772 (C.D. Ill. 1986).

[16]  Under Section 1332, this Court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

A.    **Pittsburgh FHLB Is a "Body Corporate" of Pennsylvania.**

Pittsburgh FHLB is a citizen of Pennsylvania because the Federal Home Loan Bank Act, 12 U.S.C. § 1421, et seq., and Pittsburgh FHLB's certificate of organization (Notice of Removal Ex. E) incorporated Plaintiff in this state as a "body corporate."  The Act provides that each federal home loan bank "shall become, as of the date of the execution of its organization certificate, a body corporate."  12 U.S.C. § 1432(a).  In turn, Pittsburgh FHLB's organization certificate provides that "[t]he location of the principal office of this Bank will be in the City of Pittsburgh, State of Pennsylvania," id. ¶ 2, and that "[t]his Bank shall be established in the City of Pittsburgh, State of Pennsylvania," id. ¶ 3.

Plaintiff argues that it is not a citizen of this state because the Federal Home Loan Bank Act itself does not explicitly address citizenship.  (Pl. Mem. 5-6.)  That assertion is incorrect, as Plaintiff's sister bank has recognized.  Des Moines FHLB recently acknowledged that it was "a federal instrumentality created by Congress with its principal place of business in Iowa" and, therefore, was a citizen of Iowa for diversity jurisdiction purposes.  O'Connor (Des Moines FHLB's Notice of Removal ¶ 4).  It is specious for Plaintiff to argue that the Act, in conjunction with Pittsburgh FHLB's organization certification, "has no implications for citizenship."  (Pl. Mem. 6 n.4.)[17]

---

[17] Iceland Seafood Corp. v. Nat'l Consumer Co-op. Bank, 285 F. Supp.2d 719 (E.D. Va. 2003) (cited at Pl. Mem. 5-6), is not apposite because, in that case, the cooperative bank's charter did not incorporate the bank in any state for jurisdiction purposes. 285 F. Supp. 2d at 723, 726.  The court explained that "[i]f the chartering statutes expressly provide for citizenship in a particular state, or incorporate the entity as a 'body corporate' of a particular state, then a federally chartered corporation, even with widespread actual and authorized activities, may have state citizenship for diversity purposes." Id. at 723 (citations omitted).  That is the case with Pittsburgh FHLB.  See supra pp. 17-18.

Elwert v. Pacific First Federal Savings & Loan Association of Tacoma, Wash., 138 F. Supp. 395 (D. Or. 1956), confirms that removal was appropriate here.[18]  In Elwert, the defendant's charter provided that "[t]he home office of the association shall be located at Tacoma, in the County of Pierce, State of Washington," but that the association could maintain branch offices in Seattle and Bellingham, Washington, and Portland and Eugene, Oregon.  138 F. Supp. at 399.  Although the defendant had established a branch office in Portland, Oregon, the court nevertheless found that it was a citizen of Washington for purposes of diversity jurisdiction.  Id. at 402.  The court explained that Congress had "evinced the policy that a corporation localized in any particular state shall be regarded as a citizen of that state; and that therefore, where by its Federal Charter a corporation has its domicile fixed in any particular state, it may be regarded as a citizen of that state for the purpose of jurisdiction of Federal courts on the ground of diverse citizenship."  Id. at 401-02 (internal quotation marks omitted).[19]

## B.      Pittsburgh FHLB's Activities Are Localized in Pennsylvania.

Pittsburgh FHLB's activities are localized in Pennsylvania, and jurisdiction exists under the Third Circuit's decision in Feuchtwanger and its progeny.  In Feuchtwanger, the defendant was a "cooperative association" whose chartering statute and federal charter specified its place of business and its membership, making it a "peculiarly local institution" of a single community in New Jersey.  272 F.2d at 453-55.  The Third Circuit held that it was "logical" to relate the citizenship of a membership corporation "to the place where its members live or work and its busi-

---

[18] Elwert was cited with approval by the Third Circuit in Feuchtwanger v. Lake Hiawatha Federal Credit Union, 272 F.2d 453, 455-56 (3d Cir. 1959).

[19] Accord Conjugal Society v. Chicago Title Ins. Co., 497 F. Supp. 41, 46-47 (D.P.R. 1979) (because the defendant's charter provided for its home office to be located in Puerto Rico, the defendant was a citizen of Puerto Rico for diversity jurisdiction purposes (citing Elwert)), vacated on other grounds, First Fed. Sav. and Loan Ass'n of Puerto Rico v. Ruiz De Jesus, 644 F.2d 910 (1st Cir. 1981).

ness is required to be transacted." Id. at 455.  The Third Circuit then went further, making clear

that "for the future, localizations less extreme than we have in this case will suffice to establish

corporate citizenship in the administration of diversity jurisdiction."  Id. at 456.

Plaintiff tries to restrict Feuchtwanger, arguing that a federally chartered corporation can

be a citizen of a particular state only if its activities are limited to that state.  (Pl. Mem. 6-7.)[20]

That is not the law.  To the contrary, Feuchtwanger's holding has been applied broadly.  As the

Eleventh Circuit explained, the localized activities exception is not limited to corporations that

conduct all of their activities in one state.  See Loyola Fed. Savings Bank v. Fickling, 58 F.3d

603, 606 (11th Cir. 1995).  Rather, this exception requires an expansive inquiry into the corpora-

tion's business activities.  Id.  Courts thus must look to a number of factors to determine whether

a federal corporation qualifies for the exception, including (1) the principal place of business, (2)

the existence of branch offices outside of the state, (3) the amount of business transacted in dif-

ferent states, and (4) any other evidence that the corporation is local or national in nature.  Id.;

accord Lehman Bros., 415 F. Supp. 2d at 640; Commercial Fed., 2005 WL 2218421, at *4.  No

single factor is determinative.  Loyola Fed., 58 F.3d at 606; Lehman Bros., 415 F. Supp. 2d at

640.  Those factors support federal jurisdiction here.

Here, Pittsburgh FHLB's activities are localized in Pennsylvania because (among other

things): (1) its principal place of business is located in Pennsylvania (Notice of Removal Ex. E);

(2) of its approximately 320 members and primary customers, 235 (i.e., approximately 74 per-

---

[20] Little League Baseball v. Welsh Publ'g Group, Inc., 874 F. Supp. 648 (M.D. Pa. 1995), and
Burton v. U.S. Olympic Comm., 574 F. Supp. 517 (C.D. Cal. 1983) (cited at Pl. Mem. 6-7),
are both inapposite because, in each case, the courts held that the defendant's activities were
conducted well beyond any particular locality.  See Little League, 874 F. Supp. at 654-55
(Little League Baseball sponsored over 7,000 leagues worldwide); Burton, 574 F. Supp. at
522.  Pittsburgh FHLB's activities, however, are confined primarily to Pennsylvania.

cent) are located in Pennsylvania (Notice of Removal Ex. D); (3) 7 of Pittsburgh FHLB's top 10

borrowing members are located in Pennsylvania and alone hold more than 62 percent of Pitts-

burgh FHLB's actual loans outstanding (Pittsburgh FHLB 10-Q at 46); and (4) 3 of Pittsburgh

FHLB's 4 members holding ten percent or more of Pittsburgh FHLB's capital stock are from

Pennsylvania and together hold almost 40 percent of Pittsburgh FHLB's total capital stock

(Pittsburgh FHLB 10-Q at 103).  Further, Plaintiff admits that "Pittsburgh FHLB transacts busi-

ness with all of its member institutions by offering loans, purchasing their residential mortgages,

and offering other types of credit and noncredit products and services."  (Pl. Mem. 7.)  Since 74

percent of its customers are located in Pennsylvania, Pittsburgh FHLB presumably conducts the

vast majority of its business in Pennsylvania as well.

 Plaintiff's activities thus are no less localized than those of other federally-chartered cor-

porations over which courts have held diversity jurisdiction exists.  For example, in Loyola Fed-

eral, the Eleventh Circuit held that the plaintiff was a citizen of Maryland for diversity purposes

because (among other things): (1) the plaintiff's principal place of business was located in Mary-

land, (2) all but one of its thirty-one branch offices were located in Maryland, (3) more than two-

thirds of its residential mortgages were located in Maryland, and (4) two-thirds of the loans that

it serviced were secured with property located in Maryland.  58 F.3d at 606.  As the Court ex-

plained, a corporation's activities may be sufficiently "localized" in a given state, despite some

out-of-state business activities, because "[t]he activities do not have to be 100% localized in or-

der to trigger this exception."  Id.  In Provident National Bank v. California Federal Savings &

Loan Association, 624 F. Supp. 858 (E.D. Pa. 1985), aff'd, 819 F.2d 434 (3d Cir. 1987), the dis-

trict court similarly held that the defendant's business activity was sufficiently localized in Cali-

fornia to be a citizen of California for diversity jurisdiction purposes because 71 percent of its

branch offices and a substantial amount of its deposits and outstanding loans were located in

California.  Id. at 861.  The activities of Pittsburgh FHLB are likewise localized here, making it a

citizen of this state for diversity jurisdiction purposes.

**V.      SECTION 22(A) OF THE SECURITIES ACT DOES NOT BAR REMOVAL.**

Plaintiff asserts in passing that Section 22(a) of the Securities Act precludes removal.

(Pl. Mem. 3-4.)  Yet Pittsburgh FHLB nowhere addresses, let alone disputes, the decisions cited

in Defendants' Notice of Removal (see Notice of Removal ¶ 20) which confirm that Securities

Act claims are removable under CAFA, see Katz v. Gerardi, 552 F.3d 558, 562 (7th Cir. 2009);

N.J. Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4, 581 F. Supp. 2d

581, 588 (S.D.N.Y. 2008).  Plaintiff likewise does not address the decisions cited in Defendants'

Notice of Removal (see Notice of Removal ¶ 31) which hold that the bankruptcy removal statute

controls over the anti-removal provision of Section 22(a), see Cal. Pub. Empls.' Ret. Sys. v.

WorldCom, Inc., 368 F.3d 86, 108 (2d Cir. 2004); State of N.J., Dep't of Treasury, Div. of Inv.

v. Fuld, Civ. No. 09-1629, 2009 WL 1810356, at *2 (D.N.J. June 25, 2009).  Nor does Pittsburgh

FHLB address the fact that Section 22(a) does not preclude removal of Plaintiff's claims under

Section 1441 because the Securities Act claims are plainly time-barred and must be disregarded

for removal purposes.  (See Notice of Removal ¶¶ 41-43.)  Because Plaintiff has tacitly conceded

these points by failing even to address them, Defendants will discuss them only briefly here.

"Federal courts should not sanction devices intended to prevent a removal to a Federal

court where one has that right."  Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009) (internal quo-

tation marks omitted).  If there is "no reasonable basis in fact or colorable ground" supporting a

claim, the court can disregard the claim for jurisdictional purposes.  In re Briscoe, 448 F.3d 201,

216 (3d Cir. 2006).[21]  Indeed, numerous courts have denied motions to remand cases alleging Securities Act claims where, as here, there was no colorable ground for those claims.  See, e.g., Lewis v. Fresne, 252 F.3d 352, 356-58 (5th Cir. 2001).[22]  Moreover, the Third Circuit has held that where a claim is time-barred as a matter of law, it is not colorable and may be disregarded in assessing the federal court's jurisdiction.  Briscoe, 448 F.3d at 219; accord Brown, 575 F.3d at 327 (statute of limitations defense may be considered in assessing whether claim colorable).

Here, Plaintiff's Securities Act claims are time-barred on their face.  Claims under the Securities Act must be brought "within one year after the discovery of the untrue statement or the omission or after such discovery should have been made by exercise of reasonable diligence." See 15 U.S.C. § 77m.  The statute of limitations begins to run on the date that "a reasonable investor of ordinary intelligence would have discovered the information." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 216 (3d Cir. 2007) (internal quotation marks omitted).  As Defendants explained in their Notice of Removal, putative class action complaints concerning all the Certificates at issue in this case were filed more than one year before Plaintiff filed this complaint.  See Luther, et al. v. Countrywide Fin. Corp., et al., Lead Case No. BC 380698 (Cal. Super. Ct. (Los Angeles County) filed Nov. 14, 2007) (Complaint, Concannon Decl. Ex. 7); Wash. State Plumbing & Pipefitting Pension Trust v. Countrywide Fin. Corp., et al., Lead Case No. BC

---

[21]  The standard for improper joinder of a claim is the same as the standard for improper joinder of a party.  See Highland Crusader Offshore Partners, L.P. v. Motient Corp., No. A-06-CA-540-LY, 2006 WL 3358425, at *3 (W.D. Tex. Nov. 17, 2006), adopted by, 2007 WL 6926718, at *2 (W.D. Tex. Jan. 23, 2007); Parent v. Murphy Exploration & Production Company-USA, No. 07-446-C, 2008 WL 191636, at *5 (M.D. La. Jan. 22, 2008).

[22]  Accord Highland, 2006 WL 3358425, at *5-6; Ginsburg v. Agora, Inc., 915 F. Supp. 733, 735-36 (D. Md. 1995); Bennett v. Bally Manufacturing Corp., 785 F. Supp. 559, 560-62 (D.S.C. 1992).

392571 (Cal. Super. Ct. (Los Angeles County) filed June 12, 2008) (Complaint, Concannon Decl. Ex. 8).

Like the Complaint here, those earlier complaints asserted violations of the Securities Act arising out of alleged misrepresentations and omissions regarding the loan underwriting and origination practices associated with, and the allegedly true credit quality of, the loans underlying each of the Certificates. Compare, e.g., Compl. ¶¶ 138-139, 173-243 (alleging misstatements as to quality of appraisals and nature of loan underwriting standards) with Luther (Complaint ¶¶ 7, 45-58) (same) and Washington State (Complaint ¶¶ 5, 56-71) (same). The investors who brought these earlier actions obviously had discovered the same facts on which Plaintiff here bases its claims more than one year before Plaintiff filed its complaint in this action. "The very existence of the [previously filed] complaint[s] . . . is nearly dispositive evidence that there was sufficient information in the public sphere to impart inquiry notice on reasonable investors of the existence of a claim . . . for securities law violations." In re Am. Funds Sec. Litig., 556 F. Supp. 2d 1100, 1109 (C.D. Cal. 2008). Moreover, the filing of these earlier complaints also "would have alerted an investor of ordinary intelligence" to the existence of similar claims. Domenikos v. Roth, 288 F. App'x 718, 720 (2d Cir. 2008).[23] Because Plaintiff's Securities Act claims are time-barred, they must be disregarded for purposes of removal.[24]

---

[23] Accord Hardin v. Reliance Trust Co., No. 1:04 CV 02079, 2006 WL 2850455, at *9 (N.D. Ohio Sept. 29, 2006) ("The lawsuits discussed above were all filed more than two years before the [plaintiffs] filed suit which shows that the [plaintiffs] should have discovered the purported basis for their claims upon a reasonably diligent inquiry more than two years prior to this suit being filed.").

[24] Plaintiff's opposition contains a request for fees. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Here, removal was not only reasonable, but proper.

## CONCLUSION

Removal of this action was proper under four separate grounds: (1) this case is a "mass action" removable under CAFA because Pittsburgh FHLB's approximately 320 members are the true parties in interest; (2) Defendant CHL's contractual indemnity claim against American Home creates "related to" bankruptcy jurisdiction because it could affect the bankruptcy proceeding of AHMH; (3) the "sue and be sued" language of Pittsburgh FHLB's Charter confers federal jurisdiction; and (4) complete diversity jurisdiction exists because Pittsburgh FHLB is a citizen of Pennsylvania since it is a "body corporate" incorporated in this state and its activities also are localized here.  These grounds are based in part on controlling authority from the Third Circuit and the Supreme Court and will withstand appellate scrutiny.  This Court thus should deny Plaintiff's motion to remand.

Dated December 15, 2009

Respectfully submitted,

/s/ Samuel W. Braver
Samuel W. Braver
Pa. ID 19682
BUCHANAN INGERSOLL & ROONEY PC
301 Grant Street
One Oxford Centre, 20th Floor
Pittsburgh, Pennsylvania  15219-1410
Telephone:  (412) 562-8939
Facsimile:  (412) 562-1041

Brian E. Pastuszenski (*pro hac vice*)
Sarah Heaton Concannon (*pro hac vice*)
Daniel Roeser (*pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, Massachusetts  02109
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231

*Attorneys for Defendants Countrywide Securities*
*Corporation, Countrywide Home Loans, Inc.,*

25

*CWALT, Inc., CWMBS, Inc., and Countrywide Financial Corporation*

/s/ Mark A. Willard
Mark A. Willard
Pa. ID 18103
ECKERT SEAMANS CHERIN & MELLOTT,
LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, Pennsylvania  15219
Telephone:  (412) 566-6171
Facsimile:  (412) 566-6099

Joshua M. Rubins (*pro hac vice*)
James J. Coster (*pro hac vice*)
James Regan (*pro hac vice*)
SATTERLEE STEPHENS BURKE & BURKE
LLP
230 Park Avenue
New York, New York  10169
Telephone:  (212) 818-9200
Facsimile:  (212) 818-9606

*Attorneys for Defendants Moody's Corporation and*
*Moody's Investors Service, Inc.*

27

/s/ William M. Wycoff_____
William M. Wycoff
Pa. ID 01119
THORP REED & ARMSTRONG, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA  15219
Telephone:  (412) 394-7782
Facsimile:  (412) 394-2555

Martin Flumenbaum (*pro hac vice*)
Roberta A. Kaplan (*pro hac vice*)
Andrew J. Ehrlich (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GAR-
RISON LLP
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3166
Facsimile:  (212) 492-0166

*Attorneys for Defendant Fitch, Inc.*

/s/ Walter P. DeForest

Walter P. DeForest
Pa. ID 05009
DEFOREST KOSCELNIK YOKITIS KAPLAN &
BERARDINELLI
3000 Koppers Building
436 Seventh Avenue
Pittsburgh, Pennsylvania  15219
Telephone:  (412) 227-3101
Facsimile:  (412) 227-3130

Floyd Abrams (*pro hac vice*)
Susan Buckley (*pro hac vice*)
Tammy L. Roy (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420

*Attorneys for Defendant The McGraw-Hill Companies, Inc.*

29