IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF PITTSBURGH,<br><br>      Plaintiff,<br><br>v.<br><br>COUNTRYWIDE SECURITIES CORPORATION, COUNTRYWIDE HOME LOANS, INC., CWALT, INC., CWMBS, INC., COUNTRYWIDE FINANCIAL CORPORATION, MOODY'S CORPORATION, MOODY'S INVESTORS SERVICES, INC., THE MCGRAW-HILL COMPANIES, INC, and FITCH, INC.<br><br>      Defendants. | No. 2:09-cv-1520-AJS<br><br>Judge Arthur J. Schwab |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO REMAND**

Defendants make five arguments in opposition to Plaintiff's motion to remand—three of which are the same as those asserted in *Federal Home Loan Bank v. J.P. Morgan Securities Inc. et al*, Case No. 2:09-cv-01420-AJS. ("*JP Morgan I*") (Docket No. 43.) and in *Federal Home Loan Bank of Pittsburgh v. J.P. Morgan Securities Inc. et al.*, Civ. No. 2:09-cv-01421 ("*JP Morgan II*") (Docket No. 58). The three repeated arguments are found in Defendants' brief at Section I (Removal was Proper Under CAFA), Section III (Removal was Proper Under Pittsburgh FHLB's Charter), and Section V (Section 22 (a) of the Securities Act Does Not Bar Removal). The Defendants' memorandum also raises two additional issues: (1) whether there is "related to" jurisdiction (raised in the removal petition but dropped in the briefing in *JP Morgan II*) and (2) whether diversity jurisdiction exists, which could have been raised in the other three

-1-

removal petitions but was not. For the sake of judicial economy and efficiency, Pittsburgh FHLB will focus this reply on the two new issues: Section A shows that Defendants' contingent claim does not invoke "related to" jurisdiction while Section B shows that Pittsburgh FHLB is not a citizen of any state for diversity purposes. Because Plaintiff's reply memoranda in *JP Morgan I* and *II* fully brief the other three issues raised by Defendants, Plaintiff addresses each of those issues only briefly and incorporates those arguments from its other reply briefs as though fully set forth in this memorandum. Pittsburgh FHLB thus, reasserts, in Sections C, D, and E, that (1) Defendants' argument regarding the viability of the 1933 Security Act claims is irrelevant; (2) Pittsburgh FHLB, as the sole plaintiff, did not bring a "mass action" under CAFA; and (3) Pittsburgh FHLB's charter does not confer federal jurisdiction. In sum, this Court should remand this matter (and the three other matters before it involving Pittsburgh FHLB) back to the Alleghany County Court of Common Pleas.

      A.      **The Court Does Not Have Diversity Jurisdiction**

The Defendants have failed to establish that diversity jurisdiction exists because they: (1) mischaracterize the concept of being a "body corporate" of a particular state, and (2) fail to establish, given the nature of Pittsburgh FHLB's activities, that Pittsburgh FHLB could be considered localized in nature.

      1.      **Pittsburgh FHLB Is Not a "Body Corporate" of Pennsylvania.**

Defendants incorrectly maintain that Pittsburgh FHLB is a citizen of Pennsylvania because, in their words, it is incorporated as a "body corporate" in that state. (Def. Opposition, at 17-19.) Defendants, however, misstate the law on what it is to be a "body corporate" of a particular state. Defendants rely heavily on the case of *Elwert v. Pacific First Federal Savings & Loan Association of Tacoma, Wash.*, 138 F. Supp. 395 (D. Or. 1956), but that case involved a

Federal savings and loan association formed pursuant to the Home Owners Loan Act of 1933, 12 U.S.C. § 1464, which the court found had sufficiently localized operations to make it a citizen of Washington. *Id.* at 402.  The court stated the general rule that federally chartered corporations created to operate in more than one state are not citizens of any state. *Id.* at 400.  The court also recognized the exception to this general rule where the federal corporation's operations are localized in one state. *Id.* at 401. The court then considered whether the 28 U.S.C. § 1349 and the statute relating to "national banking associations," 12 U.S.C. § 1348,  repealed or abolished these rules regarding the citizenship of federal corporations, and concluded that they did not. *Id.* at 401-02. Pittsburgh FHLB, which is the product of the Federal Home Loan Bank Act, 12 U.S.C. § 1421, is neither a federal savings and loan association, nor a "national banking association," and its operations are not localized. *See Lehman Bros. Bank, FSB v. Frank T. Yoder Mortgage*, 415 F. Supp. 2d 636, 642 (E.D. Va. 2006) (refusing to extend the Supreme Court's 28 U.S.C. §1348 analysis in *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) to federally chartered savings banks).  As *Elwert* establishes, the general rules apply here:  a federal corporation, which is not a "national banking association," with operations in several states is not a citizen of any state for diversity purposes.

  Defendants also assert that Pittsburgh FHLB's Certificate of Organization makes it a "body corporate" of the state of Pennsylvania. Yet, nothing in that certificate suggests that conclusion. One of the few cases in which courts have found that a federally chartered corporation's incorporating statute confers citizenship in a particular state as a "body corporate" unambiguously states that it is "a *body corporate* and politic in the District of Columbia." *Burton v. United States Olympic Comm.*, 574 F.Supp. 517, 519 n.4 (C.D. Cal. 1983) (emphasis added). Neither Pittsburgh FHLB's Certificate of Organization nor its charter make such an explicit

statement. Instead, the Certificate of Organization states: "[t]he location of the principal office of this Bank will be in the City of Pittsburgh." Defts. Notice of Removal at Ex. E.

Not only is a statement that a corporation is "located in" a place not the equivalent of being a "body corporate" of a place, but courts have also made clear that the existence of a principal office is not enough to confer diversity jurisdiction. *See Iceland Seafood Corp. v. Nat'l Consumer Coop.*, 285 F. Supp. 2d 719, 723 (E.D. Va. 2003) (stating that a "[p]rincipal office, as used in chartering statutes, is not the same as principal place of business as used in determining jurisdiction.") (internal citations omitted). Indeed, the court in *Iceland Seafood* held that a statement that "[t]he principal office of the Bank shall be in Washington, District of Columbia, and, for the purpose of venue, shall be considered a resident thereof" is insufficient to confer diversity jurisdiction. The language discussed in *Iceland Seafood* goes beyond anything found in FHLB Pittsburgh's Certificate of Organization. Thus, Pittsburgh FHLB cannot be considered incorporated in Pennsylvania as a "body corporate."

Finally, as noted in Section E of this brief, below, and as detailed in Plaintiff's *J.P. Morgan II* reply, Defendants' assertion that statements made by the Federal Home Loan Bank of Des Moines are somehow relevant to the case at hand is misplaced. Des Moines FHLB and Pittsburgh FHLB are separate entities, these actions are before different courts, and those cases are neither binding nor persuasive.

    **2.**    **Pittsburgh FHLB's Purpose and Activities Are National in Scope.**

Not only is it Defendants' high burden to prove that diversity jurisdiction exists in a case such as this one, *see Iceland Seafood*, 285 F. Supp. 2d at 725, but there is a presumption against diversity jurisdiction in the case of federally chartered corporations. *See Lehman Bros. Bank*, 415 F. Supp. 2d at 642. As stated in *Lehman*, over-extending grants of diversity jurisdiction to

federally chartered corporations "would run counter to Congress' trend to narrow, not enlarge, federal diversity…." *Id.* The existing case law is reflective of these concepts. *See*, *e.g.*, *Id.* (finding federally chartered savings bank ineligible to invoke diversity jurisdiction); *see also Little League Baseball Inc. v. Welsh Publ'g Group, Inc.*, 874 F.Supp. 648, 655 (M.D. Pa. 1995).

The Defendants propose that the Court conduct "an expansive inquiry into the corporation's business activities," and must consider "a number of factors." (Defts.' Opposition, at 20.) Defendants are distracted by ultimately meaningless statistical breakdowns of Pittsburgh FHLB's membership and do not consider the overarching purpose of Pittsburgh FHLB. Pittsburgh FHLB was established with national interests at its core, not local or private interests. As Pittsburgh FHLB's 10-Q states: "The Bank is a GSE[1], chartered by Congress to assure the flow of liquidity through its member financial institutions into the *American* housing market." Further: "[its] primary mission is to intermediate between the capital markets and the housing market through member financial institutions." And finally, "the Bank is different from a traditional banking institution because its GSE charter is based on a ***public policy purpose*** to assure liquidity for housing, and to enhance the availability of affordable housing for lower-income households." (All cites to Defts.' Ex. C) (emphasis added). Nowhere does Pittsburgh FHLB claim in its 10-Q to serve only the populations of Pennsylvania. In fact, there are only 12 Federal Home Loan Banks to serve the entire population of the United States, i.e. fully localized activities would make the Banks' mission impossible. *See id.* The sensible organization of the Banks into a region-based structure does not make any of the Federal Home Loan Banks local in scope.

---

[1]   GSE: Government Sponsored Enterprise.

### B. Pittsburgh FHLB's Claims Are Not Related To the American Home Mortgage Bankruptcy Proceedings

Plaintiff fully briefed in its opening memorandum that Defendants have a higher standard for showing related-to jurisdiction in post-confirmation disputes. American Home Mortgage's Plan of Liquidation has been confirmed since February 23, 2009. Now, because the "scope of bankruptcy court diminishes with the plan of confirmation," the essential inquiry post-confirmation is "whether there is a *close* nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction." *In re Resorts Intl., Inc. v. Price Waterhouse & Co., LLP*, 372 F.3d 154, 165, 166-67 (3rd Cir. 2004) (emphasis added). Yet, even if this heightened standard did not apply, as implied by Defendants in their responsive memorandum, Defendants cannot show that related-to jurisdiction exists even under the lower *Pacor*[2] standard.

#### 1. Defendants' Claim Against American Home Mortgage is Contingent

After attempting to convince this Court that Countrywide Home Loans, Inc's ("CHL") proof of claim arising out of an alleged indemnification agreement with American Home Mortgages is "automatic," Defendants slip and admit the contingent nature of CHL's proof of claim: "*if* CHL's pending claim against American Home is allowed" and "[t]he disposition of CHL's proof of claim—*to the extent it is allowed*." (Defts.' Opposition. at 11.)  Third Circuit law is clear that contingent liability will not suffice to supply the nexus necessary for the exercise of "related to" jurisdiction.  *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3rd Cir. 2002). See *also In re Franscella Enterprise, Inc.*, 349 B.R. 421, 433 (E.D. Pa. 2006) (holding that "related jurisdiction is not unlimited").

An indemnification agreement between a non-debtor defendant and a debtor will only

---

[2] As discussed in the Plaintiff's opening memorandum, a proceeding is "related to" a bankruptcy if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984).

trigger related-to jurisdiction if the right of indemnification is "clearly established and accrues upon the filing of the civil action." *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003). "Where the right to indemnification is contingent on a factual finding in the action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankrupt estate." *Id*. *See also In re Combustion*, Eng.'r, 391 F.3d 190, 230-31 (3rd Cir. 2005) (finding no related-to jurisdiction over claims against debtor's codefendant in large asbestos litigation despite arguments that bankruptcy estate could be affected by future contribution or indemnification claims). Given the fact that CHL filed its proof of claim in August 2008 (before Pittsburgh FHLB ever filed its claims) and the fact that CHL still does not know if the claim will be allowed, it is hard to imagine that CHL's claim is automatic or related to Plaintiff's claim here.

      Moreover, Defendants' reliance on *Belcufine v. Aloe*, 112 F.3d 633 (3rd Cir. 1997) and *Hohl v. Bastian*, 279 B.R. 165 (W.D. Pa. 2002) is unpersuasive, especially given *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 753 (E.D. Pa. 2003), a case which cannot be distinguished. Both *Belcufine* and *Hohl* involve claims under Pennsylvania's Wage Payment and Collection Law ("WPCL"). WPCL allows employees to hold certain officers of companies that file bankruptcy liable for unpaid wages and benefits. *Belcufine*, 112 F.3d at 635. In *Hohl*, the plaintiffs, who were former employees of the debtor, sued debtor officers for non-payment of severance benefits. Distinguishing the case from *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984), where the court held that "related to" jurisdiction did not exist because the defendant would need to bring a separate indemnification claim against the debtor, the court noted that the debtor had "agreed to indemnify Ms. Hoel with regard to actions she took within the scope of her employment." 279 B.R. at 174. The court also noted that there were not any onerous conditions

attached to the indemnification provision. 279 B.R. at 174 (comparing the provision to the one in *Central Maine Restaurant Supply v. Omni Hotels Management Corp.*, 73 B.R. 1018 (D. Me. 1987), which required the indemnified party to promptly notify the other party of its intent to invoke the provision and a specific request for defense and payment had to be made to the debtor).

In *Belcufine*, the plaintiffs were also former employees of a company that declared bankruptcy. 112 F.3d at 635. And like the plaintiffs in *Hohl*, they sued officers of the bankrupt company for unpaid wages and benefits. *Id.* The court held that "related to" jurisdiction existed because, among other reasons, the defendants, through a third-party complaint, had joined the debtor company based on the company's by-laws imposing an affirmative obligation to indemnify officers and directors for reasonable expenses, judgments, fines, or costs incurred in a legal proceeding. *Id.* at 635, n.2.

Here, Defendants have shown no evidence that American Home Mortgage has agreed to indemnify CHL. The relevant Purchase Agreement contains multiple conditions before American Home Mortgage would repurchase CHL mortgage loans. For instance, the Purchase Agreement requires that CHL provide American Home Mortgage sixty (60) days from receipt of the notice of breach to correct or cure the breach and states that "[a]ny *cause of action* against [American Home Mortgage] relating to or arising out of the breach of any representation and warranties [shall accrue upon] demand upon [American Home Mortgage] by [CHL] for the compliance with the relevant provisions of this Agreement." (Purchase Agreement, § 3.3)[3] (emphasis added). Moreover, it is important to put Defendants' "related to" jurisdiction argument in context. Compared to *Belcufine* and *Hohl*, where all defendants involved were entitled to

---

[3] The Purchase Agreement was attached as Exhibit 3 to Eric. C. Ernstene's Declaration attached to Plaintiff's opening Memorandum in Support of its Motion to Remand.

indemnification for all losses associated with the lawsuit, only one of nine Defendants here have a proof of claim and only three out of the five Certificates at issue in this case involved mortgages underwritten by American Home Mortgage. Plaintiff's claim is simply not sufficiently "related to" the American Home Mortgage's bankruptcy.

### C. Defendants' Viability Argument is Irrelevant to a Motion to Remand

Defendants' argument addressing the viability of Pittsburgh FHLB's claims under the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, and 77o, is irrelevant. *See Ray v. Albertson's Inc.*, No. 08-2664, 2008 WL 4508261, at *2 (D.N.J. Sept. 26, 2008) (stating that the issue when deciding a motion to remand is not whether plaintiff's claim will be successful but whether the claim is colorable).[4] Pittsburgh FHLB's Complaint alleges facts illustrating compliance with the applicable statute of limitations. Complaint ¶¶ 422, 448, 461, 470, 478. Furthermore, the 1933 Securities Act claims, which may be brought in state court and are not removable, do not provide an independent source of federal jurisdiction. 15 U.S.C. § 22(a).

### D. Defendants' "Mass Action" Argument Under CAFA is Misguided

Pittsburgh FHLB's suit is not a "mass action" under Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b). Pittsburgh FHLB brings this case on behalf of itself as the sole owner of the securities at issue and, accordingly, alleges its own damages. *See e.g.,* Complaint ¶¶ 224-262.  Defendants' reliance on *College of Dental Surgeons of Puerto Rico v. Connecticut General Life Insurance Co.*, 585 F.3d 33 (1st Cir. 2009), as set forth in detail in Plaintiff's *J.P. Morgan II* reply, is misplaced.  Rather, Defendants' recent—yet unmentioned—adverse decision in *California Public Employees Retirement System v. Moody's Corp.,* No. C 09-03628 SI, Order Granting Plaintiff's Motion to Remand (N.D. Cal. Nov. 10, 2009)

---

[4] This case are attached as Exhibit 1 to the concurrently filed Declaration of Eric C. Ernstene ("Ernstene Decl.").

("*CalPERS*"),[5] is squarely on point. There, the Court rejected CAFA as a basis for federal jurisdiction because none of CalPERS 1.6 million beneficiaries made direct claims—only CalPERS, the sole Plaintiff, made claims.

### E. Pittsburgh FHLB's Charter Does Not Confer Federal Jurisdiction

Focusing on materially different cases from other jurisdictions, Defendants ignore controlling Third Circuit law which holds that the language "any court of competent jurisdiction, State or Federal"—which is identical to the language in Pittsburgh FHLB's charter—fails to confer federal jurisdiction. *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3rd Cir. 1974). Defendants' continued reliance on *American National Red Cross v. S.G.*, 505 U.S. 247 (1992) is particularly misplaced because the Red Cross charter does not contain the phrase "any court of competent jurisdiction, State or Federal." And, moreover, the Court held nothing more than that the Red Cross's "sue and be sued" provision "*may* be read to confer federal court jurisdiction" depending on the precise language of the charter, read in light of the unique legislative history. 505 U.S. at 255 (emphasis added).

While refuted in further detail in Plaintiff's *J.P. Morgan II* reply, Defendants' discussion of other out-of-district cases simply does not trump this Circuit's long-standing interpretation that "any court of competent jurisdiction" requires an independent basis for jurisdiction. Thus, the language of Pittsburgh FHLB's charter—as interpreted by Third Circuit precedent—does not confer federal jurisdiction.

### CONCLUSION

For these reasons, and the reasons in Plaintiff's opening memorandum, the Court should enter an order of remand.

---

[5] *CalPERS* is found at Ernstene Decl. Ex. 2.

Dated: December 21, 2009

Respectfully submitted,

ROBINS, KAPLAN, MILLER & CIRESI LLP

   /s/ Thomas B. Hatch

Thomas B. Hatch, MN ID No. 150939
  *(admitted pro hac vice)*
Bruce D. Manning, MN ID No. 312289
  *(admitted pro hac vice)*
Jennifer L. McKenna, MN ID No. 295802
  *(admitted pro hac vice)*
Jenny Gassman-Pines, MN ID No. 0386511
  *(admitted pro hac vice)*
Margaret M. Lockner, MN ID No. 0386861
  *(admitted pro hac vice)*
Katherine K. Bruce, MN ID No. 0388887
  *(admitted pro hac vice)*
800 LaSalle Avenue South, Suite 2800
Minneapolis, MN 55402
(612) 349-8500 (Telephone)
(612) 339-4181 (Facsimile)

LYNCH WEIS, LLC
Daniel P. Lynch
PA ID No. 68280
William J. Wyrick
PA ID No. 70656
501 Smith Drive, Suite 3
Cranberry Twp., PA 16066
(724) 776-8000 (Telephone)
(724) 776-8001 (Facsimile)

*Counsel for Plaintiff Federal Home Loan Bank of Pittsburgh*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 21st day of December, 2009, a true and correct copy of the foregoing Plaintiff's Reply Memorandum of Law in Support of Motion to Remand with attached Declaration of Eric C. Ernstene was electronically filed with the Court using the CM/ECF system, which sends e-mail notification of such filings to the following counsel of record, using the following e-mail addresses indicated as being of record:

  Brian E. Pastuszenski    bpastuszenski@goodwinprocter.com
  Sarah H. Concannon    sconcannon@goodwinprocter.com
  Daniel P. Roeser     droeser@goodwinprocter.com
  *Counsel for Countrywide Securities Corporation, Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., and Countrywide Financial Corporation*

  Samuel W. Braver     samuel.braver@bipc.com
  *Local Counsel for Countrywide Securities Corporation, Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., and Countrywide Financial Corporation*

  Joshua M. Rubins     jrubins@ssbb.com
  James J. Coster      jcoster@ssbb.com
  *Counsel for Moody's Corporation and Moody's Investors Service, Inc.*

  Mark A. Willard      mwillard@eckertseamans.com
  *Local Counsel for Moody's Corporation and Moody's Investors Service, Inc.*

  Floyd Abrams      fabrams@cahill.com
  Susan Buckley      sbuckley@cahill.com
  Tammy L. Roy      troy@cahill.com
  *Counsel for Defendant The McGraw-Hill Companies, Inc.*

  Walter P. DeForest     deforest@dkykb.com
  *Local Counsel for Defendant The McGraw-Hill Companies, Inc.*

  William M. Wycoff     wwycoff@thorpreed.com
  *Local Counsel for Fitch, Inc.*

               s/ Thomas B. Hatch
               Thomas B. Hatch

81169138.1