# EXHIBIT 2

**EXHIBIT 2**

1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6          FOR THE NORTHERN DISTRICT OF CALIFORNIA
7

8  CALIFORNIA PUBLIC EMPLOYEES              No. C 09-03628 SI
   RETIREMENT SYSTEM,                       Related Case No. C 09-03629 JCS
9
                Plaintiff,                  **ORDER GRANTING PLAINTIFF'S**
10   v.                                     **MOTION TO REMAND**

11  MOODY'S CORP., *et al.*,

12              Defendants.
                                        /
13

14         Plaintiff has filed a motion to remand this action to San Francisco County Superior Court. The

15  motion is scheduled for hearing on November 13, 2009. Pursuant to Civil Local Rule 7-1(b), the Court

16  finds this matter appropriate for resolution without oral argument and VACATES the hearing. Having

17  considered the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiff's

18  motion and remands this case. The Case Management Conference scheduled for November 13, 2009

19  is VACATED.

20

21                                  **BACKGROUND**

22         Plaintiff California Public Employees' Retirement System ("CalPERS") administers retirement,

23  health, and financial benefits for more than 1.6 million California public employees, retirees, and their

24  families. Biderman Decl., Ex. B [Docket No. 49-2]. It is the nation's largest public pension fund with

25  approximately $200 billion in market assets. *Id.* CalPERS was created by, and is governed according

26  to, the California State Constitution and California Government Code. Cal. Const. art. XVI, § 17; Cal.

27  Gov't Code §§ 20000, *et seq.* It is considered a unit of the California State and Consumer Services

28  Agency. Cal. Gov't Code § 20002.

United States District Court
For the Northern District of California

Plaintiff filed this lawsuit on July 9, 2009 in San Francisco County Superior Court, alleging that defendant credit rating agencies negligently gave their highest investment grade rating to three Structured Investment Vehicles ("SIVs"). Complaint ¶ 1. In 2006, Plaintiff invested $1.3 billion in short-term debt securities issued by these SIVs. The three SIVs collapsed in 2007 and 2008 and plaintiff alleges that it suffered investment losses of hundreds of millions, and possibly more than one billion, dollars as a result. The complaint asserts common law and state statutory claims for negligent misrepresentation and negligent interference with prospective economic advantage. *Id.* ¶ 118-138.

On August 7, 2009, defendants Moody's Corp., Moody's Investors Service, Inc. (collectively "Moody's"), The McGraw-Hill Companies, Inc. ("McGraw-Hill"), and Fitch, Inc., Fitch Group, Inc., and Fitch Ratings, Ltd. (collectively "Fitch") removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). Fitch individually filed a second notice of removal asserting original jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 ("CAFA").[1]

### LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977). The bases for federal subject-matter jurisdiction are: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity of citizenship jurisdiction under 28 U.S.C. § 1332. The removal statute is strictly construed against removal jurisdiction, and doubt is resolved in favor of remand. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).

A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28

---

[1]Both notices of removal seek to remove the same underlying case. The first notice of removal was filed on behalf of all the defendants and assigned to this Court as Case No. 09-03628. Fitch's second notice of removal opened a second federal case based on the same state court action and was originally assigned to the Honorable Joseph C. Spero as Case No. 09-03629. Defendants subsequently moved to relate the two notices of removal and plaintiff responded in support of the motion. [Case No. 09-03628, Docket Nos. 6-7]. This Court issued an order relating the two cases on September 10, 2009. [Docket No. 15]. Plaintiff now makes a consolidated motion to remand, addressing both notices of removal.

U.S.C. § 1447(c). The court may remand sua sponte or on motion of a party, and the parties who invoked the federal court's removal jurisdiction have the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

## DISCUSSION

Plaintiff moves to remand this action to state court, where it was initially filed. Plaintiff argues that it is an arm of the State of California and therefore not a citizen for diversity purposes. Defendants contend that this Court has diversity jurisdiction over the matter under 28 U.S.C. § 1332 because plaintiff is not an arm of the state, but rather a citizen of the State of California. Alternatively, defendant Fitch contends that this Court may exercise removal jurisdiction pursuant to CAFA. The Court will address both of these arguments.

## I. Diversity Jurisdiction

In order to establish federal diversity jurisdiction, a party seeking removal must show that a dispute has arisen between citizens of different states and that the sum or value in controversy exceeds $ 75,000. 28 U.S.C. § 1332. Both parties agree that the statutory amount in controversy requirement is satisfied and that defendants are not citizens of California. The only dispute is whether CalPERS is a citizen of the State of California for purposes of diversity jurisdiction.

To determine whether diversity jurisdiction exists, the Court must look to the citizenship of the real parties to the controversy, not the citizenship of nominal or formal parties. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-461 (1980). "[A] state is not a 'citizen' for purposes of diversity jurisdiction." *Moor v. Alameda County*, 411 U.S. 693, 717 (1973) (citing *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894)). However, "a political subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the state for diversity purposes." *Id.* The underlying question the Court must ask is whether the State is the real party in interest. *See State Highway Com. v. Utah Constr. Co.*, 278 U.S. 194 (1929); *see also Fowler v. Cal. Toll-Bridge Auth.*, 128 F.2d 549, 550 (9th Cir. 1942). If so, this Court is without diversity jurisdiction. *Id.*

3

1    In making this determination, several courts have looked to the standards announced in Eleventh

2   Amendment cases addressing whether public entities are entitled to sovereign immunity as an arm of

3   the state. *See Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260-61 (4th Cir. 2005) (holding

4   that Eleventh Amendment immunity test is applicable to diversity jurisdiction analysis); *Univ. of South*

5   *Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999) (same); *Tradigrain, Inc. v. Miss. State Port*

6   *Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983) (find that the analysis of an agency's status for purposes of

7   the Eleventh Amendment and diversity jurisdiction are "virtually identical"); *cf. Univ. of R.I. v. A. W.*

8   *Chesterton Co.*, 2 F.3d 1200, 1202-03 n.4 (1st Cir. 1993) (rejecting two proposed distinctions between

9   the immunity and diversity tests). The Ninth Circuit has not directly ruled on the question of whether

10   the factors used in an Eleventh Amendment immunity analysis should be used to determine whether an

11   entity is an arm of the state for diversity purposes. *See Befitel v. Global Horizons, Inc.*, 461 F. Supp.

12   2d 1218, 1221 (D. Haw. 2006). However, it has recognized that "a similar rule controls the

13   determination of diversity jurisdiction [and Eleventh Amendment immunity] when individual state

14   officers or agencies are named in lieu of the state." *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir.

15   1981). Consequently, both parties agree that Eleventh Amendment factors should inform the diversity

16   analysis in the instant case.

17    The Ninth Circuit examines five factors to determine whether an entity is an arm of the state for

18   purposes of sovereign immunity: "[1] whether a money judgment would be satisfied out of state funds,

19   [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be

20   sued, [4] whether the entity has the power to take property in its own name or only the name of the state,

21   and [5] the corporate status of the entity." *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201

22   (9th Cir. 1988).

23

24   **A.    State's financial interest**

25    The first *Mitchell* factor considers whether monetary relief would be paid out of state funds.

26   This prong contemplates a sovereign immunity case, where the public entity is sued as a defendant in

27   federal court. This specific issue does not arise in diversity cases where, as here, the state-related entity

28   is the plaintiff. However, the analysis centers on whether the state has any financial interest in the

litigation or in the affairs of the state agency. *See Fowler v. Cal. Toll-Bridge Auth.*, 128 F.2d 549 (9th Cir. 1942); *see also DeLong Corp. v. Or. State Highway Comm'n.*, 343 F.2d 911 (9th Cir.). Therefore, the relevant question in this case is whether a money judgment for CalPERS would benefit the California Treasury.

Defendants contend that recovery in this action will not impact the treasury because the State's Constitution and statutory scheme specify that CalPERS funds are restricted for use by CalPERS for the system's beneficiaries. *See* Cal. Const. art. 16, § 17(a) ("The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system."); Cal. Gov't. Code § 20176 ("Notwithstanding any other provision of law, no funds in the retirement fund shall be expended for any purpose other than the cost of administration of this system, investments for the benefit of this system, the reduction of employer contributions, and the provision of benefits to the members and retired members of this system and their survivors and beneficiaries."). The Government Code also requires CalPERS' administrative expenses to be paid from funds appropriated as interest income from the retirement fund. *See* Cal. Gov't. Code § 20173. Defendants argue that the fact that these administrative expenditures are not made using state funds weighs against a finding that CalPERS is an arm of the state.

However, the State has substantial fiscal obligations to CalPERS. The State has a statutorily created contractual obligation to contribute to CalPERS' fund in order to provide employees' vested rights to pension benefits. *Bd. of Admin. v. Wilson*, 61 Cal. Rptr. 2d 207, 223 (Cal. Ct. App. 1997); *Valdes v. Cory*, 189 Cal. Rptr. 212, 223 (Cal. Ct. App. 1983). If CalPERS cannot meet its payment obligations, the State is required to pay for any shortfall in its funding. *Westly v. Bd. of Admin.*, 130 Cal. Rptr. 2d 149, 165 (Cal. Ct. App. 2003) ("[I]f the CalPERS fund is insufficient to pay the benefits owed to state employees, the state is obligated to pay the money to pensioners from other sources."). California law provides that contributions to the retirement system be appropriated annually from the State Treasury's General Fund and quarterly from other State Treasury funds. Cal. Gov't Code §§ 20822, 20824. Therefore, plaintiff contends that a monetary recovery by CalPERS in this action will alleviate this obligation to the extent any shortfall is experienced.

1    The Court is persuaded that CalPERS' financial identity is not completely autonomous from the

2  State. The State's continuing obligation to pay vested benefits to the beneficiaries suggests that the

3  California Treasury may well stand to benefit from a money judgment in favor of CalPERS. Further,

4  although the CalPERS fund is not commingled with general state funds, it constitutes a trust fund within

5  the state treasury and is managed by various state actors, including elected officers and appointed

6  government leaders. Cal. Gov't Code §§ 20170, 20177, 20120, 20090, 20096, 20096.5. For these

7  reasons, the Court concludes that this factor weighs slightly in favor of construing CalPERS to be an

8  arm of the state.

9

10    **B.    Central government function**

11    CalPERS' stated purpose is "to effect economy and efficiency in the public service by providing

12  a means whereby employees who become superannuated or otherwise incapacitated may, without

13  hardship or prejudice, be replaced by more capable employees, and to that end provide a retirement

14  system consisting of retirement compensation and death benefits." Cal. Gov't Code § 20001. The

15  California Supreme Court has observed that the system "serve[s] two objectives: to induce persons to

16  enter and continue in public service, and to provide subsistence for disabled or retired employees and

17  their dependents." *Wheeler v. Bd. of Admin. of Pub. Employees' Ret. Sys.*, 601 P.2d 568, 570 (Cal.

18  1979) (internal quotation marks and citation omitted). Defendant's contention that CalPERS merely

19  serves a proprietary function is unpersuasive in light of these broader objectives.

20    Defendants also argue that the fact that CalPERS serves non-state employees of local school

21  districts and other public agencies indicates that it does not perform an inherently central government

22  function. The Second Circuit rejected this argument in holding that the retirement system at issue in

23  that case was an arm of the state. *McGinty v. New York*, 251 F.3d 84, 98 (2d Cir. 2001). The court

24  found that "[a]lthough the Retirement System does not service state employees exclusively, it assists

25  in the business of the state by enabling the state to meet its pension and benefits obligations." *Id.* The

26  Court is persuaded by this reasoning. The fact that CalPERS serves other agencies does not render it

27  an entity separate from the state. In fact, as plaintiff points out, the broad coverage provided by

28  CalPERS tends to show that it performs a central government service because it addresses "matter[s]

1   of statewide rather than local or municipal concern." *Beentjes v. Placer County Air Pollution Control*

2   *Dist.*, 397 F.3d 775, 782 (9th Cir. 2005).

3       Defendants further contend that the enactment of Proposition 162 provides CalPERS with

4   substantial autonomy from the state, thereby indicating that the state does not "exercise[] centralized

5   government control over the entity." *Id.* at 782. Proposition 162, known as the "California Pension

6   Protection Act of 1992," amended the State Constitution "[t]o give the sole and exclusive power over

7   the management and investment of public pension funds to the retirement boards elected or appointed

8   for that purpose, to strictly limit the Legislature's power over such funds, and to prohibit the Governor

9   or any executive or legislative body of any political subdivision of this state from tampering with public

10   pension funds." California Pension Protection Act of 1992, § 3(e). It also affirmed the principle that

11   the retirement board's fiduciary "duty to its participants and their beneficiaries shall take precedence

12   over any other duty." Cal. Const. art 16, § 17(b); *see also* California Pension Protection Act of 1992,

13   § 3(g). This was intended to provide CalPERS with a degree of autonomy from the State in order to

14   facilitate the execution of its fiduciary duties without interference. As the California Senate Office of

15   Research explained, the Act "would have the effect of removing retirement systems within the hierarchy

16   of particular agencies, eliminating most (if not all) of the powers of oversight and the limited, related

17   degree of control that the creating/authorizing bodies currently hold." Biderman Decl., ex. R, p. 19

18   [Docket No. 49-18].

19       However, plaintiff asserts that California courts have indicated that the plenary authority that

20   Proposition 162 purportedly gave the retirement board is not without limits. In *Westly v. Board of*

21   *Administration*, 130 Cal. Rptr. 2d 149, the State Controller brought suit challenging certain actions the

22   CalPERS Board had taken pursuant to its plenary authority under Proposition 162. Specifically, the

23   Board had 1) exempted at least 10 portfolio mangers from civil service, 2) issued its own warrants for

24   the pay of its portfolio managers, 3) increased the compensation of the Board members, and 4) adopted

25   an expense reimbursement policy that exceeded limits under state law. *Id.* at 156-57. The Controller

26   claimed that Proposition 162 did not give the Board the authority to take these actions in violation of

27   state laws. *Id.* at 153. The trial court agreed, finding that "the voters had intended to stop the raiding

28   of the pension funds, not grant [CalPERS] unlimited authority to ignore state laws governing state

1  employees." *Id.* at 156 (internal quotation marks omitted). The California Court of Appeal affirmed,

2  concluding that:

> [W]ith regard to administration of the system, the Board's authority is limited to
> actuarial services and to the protection and delivery of the assets, benefits, and services
> for which the Board has a fiduciary responsibility. No such power is given over the
> administration of the matters at issue here.

*Id.* at 161. The Court of Appeal clarified that while Proposition 162 gave the Board the power to

administer the investments and payments of CalPERS, this administrative authority does not extend to

compensation of the Board and its employees. *Id.* at 162.

On balance, the Court concludes that the second factor weights slightly in favor of finding that

CalPERS is an arm of the state. Although CalPERS enjoys considerable autonomy since the enactment

of Proposition 162, it is not substantially independent of State control in all its affairs. CalPERS'

"plenary authority" is limited to the investment and payment of benefits and does not extend to all

administrative matters. *Id.* at 161. Further, even within the realm of investments and benefits, the State

retains a degree of control, including the power to reduce or eliminate pension benefits not already

vested as well as the power to prohibit certain investments if it is in the public interest. Biderman Decl,

ex. R, p. 19-20. Additionally, as discussed above, CalPERS' stated objectives as well as its broad

coverage indicate that CalPERS addresses a matter of statewide concern. These factors collectively

demonstrate that CalPERS serves a central government function.

## C.  Other *Mitchell* Factors

Plaintiff concedes that CalPERS has the right to sue and be sued. However, plaintiff notes that

many entities that can sue and be sued in their own names have been held to be arms of the state. *See*

*Belanger v. Madera Unified School Dist.*, 963 F.2d 248, 254 (9th Cir. 1992); *Regents of the Univ. of*

*Cal. v. Indem. Ins. Co. of N. Am.*, No. C 07-02721, 2007 U.S. Dist. LEXIS 587000 (N.D. Cal. Aug. 3,

2007); *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, No. C 07-3747, 2007 U.S. Dist.

LEXIS 77360, at *3 (N.D. Cal. Oct. 9, 2007) Nonetheless, although this factor is not dispositive, it

weighs against finding that CalPERS is an arm of the state.

The parties also do not dispute that CalPERS has the power to take property in its own name.

1   It is explicitly authorized to make investments and sell any security, obligation, or property incidental

2   to those investments. *See* Cal. Gov't Code § 20191.[2]

3       The weight of all the factors identified by the Ninth Circuit in *Mitchell* leads this Court to

4   conclude that CalPERS is an arm of the state and therefore not a citizen of California for purposes of

5   federal diversity jurisdiction. Although CalPERS may sue and be sued in its own name, and take

6   property in its own name, the State has a financial interest in CalPERS' affairs, and it performs a central

7   government function. Furthermore, the Court reiterates that the removal statute is strictly construed

8   against removal jurisdiction, and doubt is resolved in favor of remand to the state court. *Libhart*, 592

9   F.2d at 1064.

10      Additionally, as plaintiff points out, previous cases addressing this issue have found that

11  CalPERS is an arm of the state. *See Cal. Pub. Employees' Ret. Sys. v. Stride Rite Children's Group*, No.

12  96-6558, slip op. (S.D. Fla. Dec. 3, 1996) (holding that CalPERS is an arm of the state for purposes of

13  diversity); *Retired Pub. Employees' Ass'n, Chapter 22 v. California*, 614 F. Supp. 571, 581 (N.D. Cal.

14  1984) (finding that the Eleventh Amendment precluded federal jurisdiction to hear "a pendant state

15  claim against the state and state officials and agencies" because the defendants, including CalPERS,

16  were immune from suit).

17      In sum, this Court lacks diversity jurisdiction because the parties are not citizens of different

18  states.

19

20  **II.      Class Action Fairness Act**

21      Alternatively, Fitch invokes this Court's removal jurisdiction pursuant to 28 U.S.C. § 1332(d)

22  on the ground that CalPERS' lawsuit constitutes a removable "mass action." The Class Action Fairness

23  Act of 2005 ("CAFA") extends federal removal jurisdiction to class actions as well as certain civil suits,

24  defined as "mass actions." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009). The "term

25  'mass action' means any civil action in which monetary relief claims of 100 or more persons are

26  proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law

27

28  [2]Defendants do not contend that CalPERS has corporate status pursuant to the last prong of the *Mitchell* test.

1  or fact." 28 U.S.C. 1332(d)(11)(B)(i) (internal parenthetical omitted). A "qualifying mass action 'shall

2  be deemed to be a class action' removable to federal court under the Act, so long as the rest of CAFA's

3  jurisdictional requirements are met." *Tanoh*, 561 F.3d at 952 (quoting 28 U.S.C. § 1332(d)(11)(A)).

4  These requirements include (1) that the aggregate amount in controversy exceed $5,000,000, exclusive

5  of interest and costs, (2) minimal diversity, meaning that at least one plaintiff must be a citizen of a state

6  or foreign state different from that of any defendant, and (3) that plaintiffs' individual claims satisfy the

7  $75,000 jurisdictional amount in controversy requirement for federal diversity jurisdiction. *See id.* The

8  proponent of federal jurisdiction has the burden of establishing removal jurisdiction under CAFA.

9  *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

10      The threshold inquiry is whether or not the instant action involves monetary relief claims of 100

11  or more persons. Defendants argue that this requirement is met because CalPERS brought suit on behalf

12  of its beneficiaries, comprising more than 1.6 million California public employees, retirees, and their

13  families. A similar argument was raised in *Kitazato v. Black Diamond Hospitality Investments*, No.

14  09-00271, 2009 U.S. Dist. LEXIS 92927, at *10 (D. Haw. Oct. 5, 2009), wherein defendants argued that

15  CAFA's numerosity requirement was met because one of the plaintiffs, an unincorporated association,

16  was comprised of and purported to represent approximately 490 co-owners of a resort. The court

17  rejected this argument, stating that "mass actions simply concern the direct claims of individual

18  plaintiffs without regard to any 'putative plaintiff class,' as is typical in a class action." *Id.* at *18.

19  Indeed, the Ninth Circuit has recognized that "plaintiffs in a mass action, unlike in a class action, do not

20  seek to represent the interests of parties not before the court." *Tanoh*, 561 F.3d at 952; *see also* Senate

21  Judiciary Committee Report for CAFA. Moreover, the Senate Committee Report for CAFA defines

22  "mass actions" as "suits that are brought on behalf of numerous *named plaintiffs* who claim that their

23  suits present common questions of law or fact that should be tried together even though they do not seek

24  class certification status." S. Rep. No. 109-14 (2005) (emphasis added). This action does not fall within

25  this definition because it does not concern numerous named plaintiffs who are electing to try their claims

26  together. CalPERS' individual beneficiaries have not made any direct claims in this action; rather, the

27  sole plaintiff in this case is CalPERS itself. Accordingly, the Court finds that the removing defendants

28  have not established federal jurisdiction under CAFA.

10

1    Alternatively, defendants contend that removal under CAFA advances the express legislative

2  purpose of having federal courts adjudicate interstate cases of national importance.  Defendants cite

3  language in the Senate Judiciary Committee Report that indicates that one of the factors to be considered

4  "in the interests of justice" is whether the claims asserted are of significant national or interstate interest.

5  *See id.*  However, this discussion pertains to subsection 1332(d)(3), which gives district courts discretion

6  to decline jurisdiction "in the interests of justice" for class actions in which more than one-third but

7  fewer than two-thirds of the members of the plaintiff class and the primary defendants are citizens of

8  the state in which the action was filed.  Since this action does not fall into that category of class actions,

9  the provision cited by defendants is not relevant to the issue before the Court.

10

11                                    **CONCLUSION**

12    For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's

13  motion to remand for lack of subject matter jurisdiction, and REMANDS this action to the San

14  Francisco Superior Court. [Docket No. 12]

15

16    **IT IS SO ORDERED.**

17

18  Dated: November 10, 2009

                                    _____
19                                   SUSAN ILLSTON
                                    United States District Judge

20

21

22

23

24

25

26

27

28

                                    11